EXHIBIT 1

1    [COUNSEL LISTED ON FOLLOWING PAGE]

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11   BRANDON HARVEY, individually and on         Case No. 3:18-cv-02835 WHO
     behalf of all others similarly situated,
12                                               **CLASS ACTION SETTLEMENT**
                         Plaintiff,              **AGREEMENT AND RELEASE**
13
                  v.
14
     MORGAN STANLEY SMITH BARNEY
15   LLC,

16                       Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

1   LYNNE C. HERMLE (SBN: 99779)
    lchermle@orrick.com
2   ORRICK, HERRINGTON &
    SUTCLIFFE LLP
3   1000 Marsh Road
    Menlo Park, CA  94025-1015
4   Telephone:     650-614-7400
    Facsimile:     650-614-7401
5
    ANDREW R. LIVINGSTON (SBN: 148646)
6   alivingston@orrick.com
    ORRICK, HERRINGTON &
7   SUTCLIFFE LLP
    The Orrick Building
8   405 Howard Street
    San Francisco, CA  94105-2669
9   Telephone:     415-773-5700
    Facsimile:     415-773-5759
10
    JINNIFER PITCHER (SBN: 252880)
11  jpitcher@orrick.com
    ORRICK, HERRINGTON &
12  SUTCLIFFE LLP
    400 Capitol Mall, Suite 3000
13  Sacramento, CA  95814-4497
    Telephone:     916-447-9200
14  Facsimile:     916-329-4900

15  **Attorneys for Defendant**
    **MORGAN STANLEY SMITH**
16  **BARNEY LLC**

    EDWARD J. WYNNE (165819)
    ewynne@wynnelawfirm.com
    WYNNE LAW FIRM
    Wood Island
    80 E. Sir Francis Drake Blvd., Ste. 3-G
    Larkspur, CA 94939
    Telephone:     (415) 461-6400
    Facsimile:     (415) 461-3900

    DAVID S. MARKUN (108067)
    dmarkun@mzclaw.com
    JEFFREY K. COMPTON (142969)
    jcompton@mzclaw.com
    MARKUN ZUSMAN FRENIERE &
    COMPTON LLP
    17383 Sunset Boulevard, Suite A380
    Pacific Palisades, CA 90272
    Telephone:     (310) 454-5900
    Facsimile:     (310) 454-5970

    JAMES F. CLAPP (145814)
    jclapp@clapplegal.com
    CLAPP & LAUINGER LLP
    701 Palomar Airport Road, Suite 300
    Carlsbad, CA 92011
    Telephone:     (760) 209-6565
    Facsimile:     (760) 209-6565

    **Attorneys for Plaintiff BRANDON**
    **HARVEY,**
    **individually and on behalf of all others**
    **similarly situated**

17

18

19

20

21

22

23

24

25

26

27

28

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Agreement") is made and entered into by and between Plaintiff Brandon Harvey ("Plaintiff" or "Class Representative"), individually and on behalf of all Class Members and Aggrieved Employees as defined herein, and Defendant Morgan Stanley Smith Barney LLC ("Defendant" or "MSSB"), and their respective counsel of record, subject to the terms and conditions hereof and the approval of the Court.

**A.    DEFINITIONS**

1.    "Action" means the case entitled *Brandon Harvey, individually and on behalf of all others similarly situated, v. Morgan Stanley Smith Barney LLC,* pending in the United States District Court for the Northern District of California, Case No. 3:18-cv-02835-WHO.

2.    "Accrued Interest" means interest that will accrue at the rate of 5% on the Cash Payment Amount if the order granting final approval of this settlement and related judgment are appealed by any named Plaintiff in the *Chen* Case for the period starting with the filing of the notice of appeal and running until the appeal has been finally resolved (i.e., the Payment Obligation and Release Date).  Any such interest will be added to the Cash Payment Amount. The "*Chen* Case" is *Chen v. Morgan Stanley Smith Barney*, Case No. 30-2014-00724866-CU-OE-CXC, currently pending before Judge William D. Claster in the Superior Court of the State of California, County of Orange.

3.    "Administration Costs" means the actual and direct costs reasonably charged by the Settlement Administrator for its services in administering the Settlement, currently projected by the Parties not to exceed $32,000.

4.    "Aggrieved Employees" means all current and former Financial Advisors who were employed by MSSB within the State of California at any time during the PAGA Period.

5.    "Cash Payment Amount" is Eight Million Five Hundred Thousand Dollars ($8,500,000) plus any Accrued Interest.  The Cash Payment Amount means the Maximum Settlement Amount ($10,235,000) less the Expense Fund ($1,735,000), plus any Accrued Interest.  The Individual Class Settlement Payments, the Fee and Cost Award, the Named Plaintiff Award, the Tier 1 PAGA Payment and Tier 2 PAGA Payment, and Administration

1  Costs shall be paid out of the Cash Payment Amount.  The entire Cash Payment Amount will be

2  paid out pursuant to the terms of this Agreement.

3      6.    "Class" means all current and former Financial Advisors who were employed by

4  MSSB within the State of California at any time during the Class Period.  Members of the Class

5  are referred to herein as a "Class Member" or "Class Members."

6      7.    "Class Counsel" means the Wynne Law Firm, Clapp & Lauinger LLP, and

7  Markun Zusman Freniere & Compton LLP, who are the attorneys for Plaintiff, the LWDA by

8  way of Plaintiff as its proxy, and the Aggrieved Employees, and who seek to be appointed as

9  counsel for the Class Members at the Preliminary Approval hearing.

10      8.    "Class Period" is the period beginning May 14, 2014 through the date of

11  Preliminary Approval.

12      9.    "Class Released Claims" means any and all claims, demands, rights, liabilities,

13  obligations, penalties, attorneys' fees and causes of action that were pled or could have been pled

14  by Class Members in the operative complaint based on the facts, transactions, events, policies,

15  occurrences, acts, disclosures, statements, omissions, or failures to act alleged in the operative

16  complaint against MSSB from May 14, 2014 through the date of Preliminary Approval, including

17  but not limited to claims for alleged unlawful wage deductions; failure to pay wages; cash bond

18  or violations of the California Employee Bond Law untimely final or other pay; inaccurate

19  itemized wage statements and records; unreimbursed business expenses and/or failure to

20  indemnify all necessary business expenses; claims alleging violations of California Labor Code

21  sections 201-204.2, 221-224, 226, 400-410, 1174, 1174.5, 1198, 2802 and 2804; derivative

22  claims for unfair business practices under California Business & Professions Code section 17200

23  *et seq.*; derivative claims for penalties under the Private Attorneys General Act ("PAGA"),

24  California Labor Code section 2698 *et seq.*; and any and all California state common law claims

25  based on the conduct alleged in the operative complaint or that could have been asserted based on

26  the conduct alleged, including but not limited to claims for fees and costs, damages, conversion,

27  penalties, equitable remedies, and/or pre- or post-judgment interest, up to Preliminary Approval.

28

CLASS ACTION SETTLEMENT AGREEMENT
3:18-CV-02835 WHO

10.     "Complaint" means the operative Complaint filed in the Action and all amendments thereto.

11.     "Court" means the United States District Court for the Northern District of California.

12.     "Defendant's Counsel" means the law firm of Orrick, Herrington & Sutcliffe LLP.

13.     "Employer Payroll Taxes" means the employer's portion of FICA, FUTA and all other state and federal payroll taxes.

14.     "Exclusion Request" means a request submitted by a Class Member to the Settlement Administrator and postmarked by the Objection/Exclusion Deadline that includes the Class Member's name, signature, date, and last 4 digits of the Class Member's social security number and words that must be substantially similar to the following statement: "I request to be excluded from the class action proceedings in the matter of *Brandon Harvey v. Morgan Stanley Smith Barney LLC*, Case No. 18-cv-02835."

15.     "Expense Fund" refers to the portion of the Maximum Settlement Amount consisting of One Million Seven Hundred and Thirty-Five Thousand Dollars ($1,735,000) that MSSB will allocate to future payments of business expenses.  This Expense Fund shall be available separate and apart from the Alternative Flexible Grid ("AFG") Program.  The Expense Fund shall be made available to current California Financial Advisors for expenses that otherwise could have been submitted to AFG through Defendant's current policies, and for specific categories of expenses to be determined solely by Defendant.

16.     "Fee and Cost Award" means such award of fees and actual litigation costs/expenses as the Court may award to Class Counsel for the services they have rendered and will render to Plaintiff, the Class, the LWDA, and the Aggrieved Employees in relation to prosecuting the claims involved in this Action, which will be paid out of the Cash Payment Amount and which is agreed by the Parties not to exceed twenty-five percent (25%) of the Maximum Settlement Amount as the Fee Award, in addition to reasonable actual expenses, not

1   to exceed $35,000, as the Cost Award.  Any portion of the Fee and Cost Award not awarded to

2   Class Counsel shall become part of the Net Cash Distribution.

3         17.   "Financial Advisors" or "FAs" refers to current or former MSSB employees who

4   worked for MSSB within the State of California in the job titles of Financial Advisors and/or

5   Private Wealth Advisors.

6         18.   "Final Approval Order and Judgment" or "Final Approval" means an Order

7   Granting Final Approval of the Settlement of the Action and Judgment have been entered by the

8   Court.

9         19.   "Individual Class Pay Periods" means the semimonthly pay periods that each

10  Class Member worked during the Class Period as an FA as reflected by Defendant's corporate

11  and business records, exclusive of leaves of absence.  Approximations and averages will be used

12  to cover periods to the extent any data is missing or otherwise not available.

13        20.   "Individual Class Settlement Payment" means the portion of the Net Cash

14  Distribution distributable to each Class Member.

15        21.   "Individual PAGA Pay Periods" means the semimonthly pay periods that each

16  Aggrieved Employee worked during the PAGA Period as an FA as reflected by Defendant's

17  corporate and business records, exclusive of leaves of absence.  Approximations and averages

18  will be used to cover periods to the extent any data is missing or otherwise not available.

19        22.   "Individual PAGA Settlement Payment" means the portion(s) of the Tier 1 PAGA

20  Payment and/or Tier 2 PAGA Payment distributable to each Aggrieved Employee.

21        23.   "Individual Tier 1 PAGA Pay Periods" are those Individual PAGA Pay Periods

22  worked by an Aggrieved Employee as an FA from April 23, 2013 up to May 9, 2014.

23        24.   "Individual Tier 2 PAGA Pay Periods" are those Individual PAGA Pay Periods

24  worked by an Aggrieved Employee as an FA from May 9, 2014 through the end of the PAGA

25  Period.

26        25.   "Individual Tier 1 PAGA Payment" means the portion(s) of the Tier 1 PAGA

27  Payment distributable to each Aggrieved Employee.

28

CLASS ACTION SETTLEMENT AGREEMENT
3:18-CV-02835 WHO

26.     "Individual Tier 2 PAGA Payment" means the portion(s) of the Tier 2 PAGA Payment distributable to each Aggrieved Employee.

27.     "Maximum Settlement Amount" means Ten Million Two Hundred and Thirty-Five Thousand Dollars ($10,235,000) reflecting the Cash Payment ($8,500,000) plus the Expense Fund ($1,735,000).  Any Accrued Interest of the Cash Payment Amount may be added to the Maximum Settlement Amount.  The Maximum Settlement Amount, plus Accrued Interest, is the maximum amount that Defendant shall pay as settlement consideration as a result of this Settlement Agreement and in exchange for, among other things, the release of the Class Released Claims and PAGA Released Claims.  The Maximum Settlement Amount excludes MSSB's Employer Payroll Taxes.

28.     "Mediators" means Tripper Ortman and Mark Rudy.

29.     "Named Plaintiff Award" means the sum to be paid to Plaintiff Brandon Harvey in recognition of his service, initiative, and effort in obtaining the benefits of the Settlement, his agreement to release all known and unknown claims against the Released Parties, and agreement to no re-employment.  Subject to Court approval, the Named Plaintiff Award shall be Ten Thousand Dollars ($10,000).  The Named Plaintiff Award shall be paid out of the Cash Payment Amount.

30.     "Net Cash Distribution" means the Cash Payment Amount less (1) the Fee and Cost Award, (2) the Named Plaintiff Award, (3) 75% of the Tier 1 PAGA Payment and 75% of the Tier 2 PAGA Payments, and (4) Administration Costs, as approved and awarded by the Court.  Any portion of the Fee and Cost Award, Named Plaintiff Award and/or Administration Costs not awarded shall become part of the Net Cash Distribution.

31.     "Net Settlement Value" means that Net Cash Distribution plus the Expense Fund.  At this time, the Net Settlement Value is estimated to be $7,149,250.

32.     "Notice" means the Court-approved form of notice to Class Members and the letter to Aggrieved Employees, substantially in the form as <u>Exhibit 1</u>, attached hereto.

33.     "Objection/Exclusion Deadline" means the date forty-five (45) days following the date on which the Settlement Administrator first mails the Notice to the Class Members.

34.     "PAGA Period" is the period beginning April 23, 2013 through the date of Preliminary Approval.

35.     "PAGA Released Claims" means all claims, demands, rights, liabilities, obligations, penalties, attorneys' fees and causes of action based on any and all PAGA claims seeking civil penalties or any other relief under California Labor Code sections 558 and/or 2698 *et seq.* predicated on any alleged Labor Code violations that are alleged in, or could have been alleged in, the operative Complaint by Aggrieved Employees based on the facts, events, policies, occurrences, or acts alleged in the operative Complaint and/or based any alleged unlawful wage deductions, failure to pay wages, cash bond or violations of the California Employee Bond Law, untimely final or other pay, inaccurate itemized wage statements or records, failure to reimburse or indemnify all necessary business expenses, or any California Labor Code violations alleged in the Complaint (which include Labor Code sections 201-204.2, 221-224, 226, 400-410, 1174, 1174.5, 1198, 2802 and 2804) during the PAGA Period.

36.     "Parties" means Plaintiff and Defendant, collectively.

37.     "Payment Obligation and Release Date" means the date on which the Court's Final Approval Order and Judgment becomes final.  For purposes of this paragraph, the Court's Final Approval Order and Judgment "becomes final" upon the last to occur of the following: (a) the date of final affirmance on appeal of the Judgment; (b) the date of final dismissal of any appeal from the Judgment or the final dismissal of any proceeding to review the Judgment; or (c) if no appeal is filed, the expiration date of the time for filing or noticing of any appeal from the Court's Final Approval Order and Judgment.

38.      "Percentage Class Share" means each Class Member's Individual Class Pay Periods divided by the Total Class Pay Periods.

39.     "Percentage Tier 1 PAGA Share" means each Aggrieved Employee's Individual Tier 1 PAGA Periods divided by Total PAGA Tier 1 Pay Periods.

40.     "Percentage Tier 2 PAGA Share" means each Aggrieved Employee's Individual Tier 2 PAGA Periods divided by Total PAGA Tier 2 Pay Periods.

41.     "Plaintiff" or "Class Representative" shall mean Brandon Harvey, the named

plaintiff in the Action and the private attorney general standing in as a proxy for the LWDA, and who will seek appointment as the Class Representative at the time of Preliminary Approval.

42.     "Preliminary Approval" means that the Court has entered an order substantially in the form as Exhibit 2, attached hereto, preliminarily approving the terms and conditions of this Settlement Agreement, including the manner of providing the Notice to Class Members.

43.     "QSF" shall mean the Qualified Settlement Fund established by the Settlement Administrator for the benefit of the Class Members and Aggrieved Employees into which Defendant will deposit the Cash Payment Amount.

44.     "Released Parties" means MSSB and its past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, attorneys, consultants, insurers and reinsurers, and their respective successors and predecessors in interest, assigns, subsidiaries, affiliates and parents.

45.     "Settlement" and "Settlement Agreement" shall refer to this Settlement Agreement and the terms and conditions set forth in this document.

46.     "Settlement Class Member" means any Class Member who does not submit a timely and valid Exclusion Request.

47.     "Settlement Administrator" means KCC Class Action Services, LLC or such other entity which the Parties mutually agree shall serve as Settlement Administrator.

48.     "Tier 1 PAGA Payment" means the sum of One Hundred Thousand Dollars ($100,000.00), which shall be allocated from the Cash Payment Amount to settle claims for civil penalties pursuant to PAGA, Labor Code sections 2698, *et seq.*, for the portion of the PAGA Period extending from May 9, 2014 through the end of the PAGA Period; seventy-five percent (75%) of which shall be paid to the Labor and Workforce Development Agency ("LWDA") in accordance with PAGA, and twenty-five percent (25%) of which shall be distributed to Aggrieved Employees as set forth in this Agreement.

49.     "Tier 2 PAGA Payment" means the sum of Five Hundred Thousand Dollars ($500,000.00), which shall be allocated from the Cash Payment Amount to settle claims for civil penalties pursuant to PAGA, Labor Code sections 2698, *et seq.*, for the portion of the PAGA

Period extending from April 23, 2013 to May 9, 2014; seventy-five percent (75%) of which shall be paid to the LWDA in accordance with PAGA, and twenty-five percent (25%) of which shall be distributed to Aggrieved Employees as set forth in this Agreement.

50.     "Total Class Pay Periods" means the sum of all Individual Class Pay Periods for all Class Members.

51.     "Total Tier 1 PAGA Pay Periods" means the sum of all Individual PAGA Pay Periods for Aggrieved Employees between May 9, 2014 through the end of the PAGA Period.

52.     "Total Tier 2 PAGA Pay Periods" means the sum of all Individual PAGA Pay Periods for Aggrieved Employees between April 23, 2013 to May 9, 2014.

**B.     <u>GENERAL</u>**

53.     On or about May 14, 2018, Plaintiff filed a putative class action on behalf of himself and other employees that Defendant employed as Financial Advisors in California from May 14, 2014 through the present.  On July 12, 2018, Plaintiff filed a First Amended Complaint ("FAC") alleging that Defendant—as to Plaintiff, the Aggrieved Employees and the Class— failed to pay wages, made unlawful wage deductions, violated the California Employee Bond Law, failed to provide accurate itemized wage statements, and failed to indemnify all reasonable and necessary business expenses, enumerating alleged violations of Labor Code §§ 221-224, 226, 400-410, 1174, 1174.5, 1198, 2802 and Cal. Code of Reg., tit. 8, § 11040(8).  Plaintiff also alleged derivative claims pursuant to the California Unfair Competition Law, California Business & Professions Code § 17200, et seq. ("UCL") and PAGA, Labor Code § 2698, *et seq*.  Plaintiff's claims are based on MSSB's Alternative Flexible Grid ("AFG") program.  Plaintiff alleges that the claims should be certified as a class action.  In Plaintiff's FAC, he seeks recovery of allegedly unpaid wages, expense reimbursements, penalties, interest, and attorneys' fees and costs.

54.     On April 23, 2014, written notice of Defendant's Labor Code violations was given by an allegedly aggrieved employee to the LWDA and to Defendant via certified mail on behalf of all current and former California employees of Morgan Stanley Smith Barney LLC,

including Plaintiff Harvey.  The LWDA did not respond to the notice within the time provided by Labor Code § 2699.3.

55.     Defendant denies any liability and wrongdoing of any kind associated with the claims alleged in the Action, and further denies that the Action is appropriate for class or representative treatment for any purpose other than this Settlement.  Defendant contends, among other things, that it has complied at all times with the California Labor Code, the Industrial Welfare Commission Wage Orders, the California Business and Professions Code and the Fair Labor Standards Act.  In addition, it is Defendant's position that, if this case were to be litigated, class certification would be inappropriate and the PAGA claim would be unmanageable as a representative action.

56.     The Class Representative believes that the Action is meritorious and that class certification is appropriate.

57.     Class Counsel have conducted a thorough investigation into the facts of the Action, including extensive pre-litigation investigation, litigation of similar claims, and appropriate informal discovery.  Based on the informal and formal discovery as well as their own independent investigation and evaluation, and experience litigating similar claims, Class Counsel are of the opinion that the settlement with Defendant for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable and adequate and is in the best interest of the Class Members in light of all known facts and circumstances.  Further, the Class Representative has carefully evaluated the terms of the Settlement, and, based upon that review, has determined that it is fair and reasonable.  By signing this Settlement Agreement, Plaintiff agrees to be bound by the terms herein.  If Plaintiff Harvey objects to or opts-out of the Settlement, Defendant will have the option at its discretion of rejecting the Class Settlement in its entirety.  Defendant agrees not to dispute that the Settlement is fair, reasonable and adequate.

58.     The Parties stipulate and agree to the conditional certification of the Class for purposes of this Settlement only.  Should, for whatever reason, the Court not grant Final Approval, the Parties' stipulation to class certification as part of the Settlement shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with,

the issue of whether or not certification would be appropriate in a non-settlement context. Defendant expressly reserves its right and declares that it intends to continue to oppose class certification and manageability vigorously should this Settlement not be granted Final Approval. The Parties stipulate and agree that no certification is requested or required for the Aggrieved Employees or the PAGA claims alleged in this Action.

**C.      PRELIMINARY APPROVAL MOTION AND AMENDED COMPLAINT**

59.      Class Counsel shall request a hearing before the Court to seek Preliminary Approval of the Settlement on the earliest practical mutually available date.  In conjunction with such hearing, Class Counsel shall submit this Settlement Agreement, together with the exhibits attached hereto, and any other documents necessary to implement the Settlement.  Class Counsel shall provide the papers they intend to file in support of Preliminary Approval to Defendant's Counsel for their review at least two (2) business days prior to filing.

60.      Immediately prior to the filing of Plaintiff's Motion for Preliminary Approval, Plaintiff and Defendant shall file a stipulation seeking leave to file a Second Amended Complaint (SAC) in the form attached hereto in Exhibit 3.

**D.      SETTLEMENT COMPONENTS**

61.      The Settlement in this Action shall have six components: (1) the Individual Class Settlement Payments; (2) the Tier 1 PAGA Payment and Tier 2 PAGA Payment; (3) the Named Plaintiff Award; (4) the Fee and Cost Award; (5) the Expense Fund and (6) the Administration Costs.  All these components are included in the Maximum Settlement Amount.  Defendant will pay the Maximum Settlement Amount in full and final settlement of the Action (except that Defendant will also pay the Employer Payroll Taxes, separate and apart from, and in addition to, the Maximum Settlement Amount).  The Maximum Settlement Amount will constitute adequate consideration for this Settlement.  Since any uncashed Individual Class Settlement Payment and Individual PAGA Settlement Payment check funds will be distributed pursuant to the *cy pres* doctrine, this Agreement and the associated Judgment do not and will not create any unpaid residue or unpaid residual, and no distribution of such shall be required.

a.      **Calculation of Individual Class Settlement and PAGA Payments:**

The Settlement Administrator shall have the authority and obligation to calculate the amounts of Individual Class Settlement Payments and Individual PAGA Settlement Payments in accordance with the methodology set forth in this Settlement Agreement and orders of the Court. Defendant contends that claims for relief in the Action are extremely difficult to determine with any certainty for any given year, or at all, and are subject to myriad differing calculations and formulas. The Parties agree that the formula for allocating the Individual Class Settlement Payments and Individual PAGA Settlement Payments to Settlement Class Members and Aggrieved Employees, respectively, provided herein is reasonable and that the payments provided herein are designed to provide a fair settlement to such persons.

It shall be the responsibility of the Settlement Administrator to timely and properly withhold from Individual Class Settlement Payments and Individual PAGA Settlement Payments all applicable payroll and employment taxes, but not Employer Payroll Taxes, and to prepare and deliver the necessary tax documentation and, thereafter, to cause the appropriate deposits of withholding taxes and informational and other tax return filing to occur. Each Settlement Class Member and Aggrieved Employee's share of all applicable payroll and employment taxes (excluding Employer Payroll Taxes) withheld and deposited with the applicable governmental authorities in accordance with this Settlement Agreement shall be a part of, and paid out of, the Individual Class Settlement Payments and Individual PAGA Settlement Payments to each Settlement Class Member and/or Aggrieved Employee, respectively. Each Settlement Class Member and Aggrieved Employee will be responsible for paying the employee's share of all applicable state, local, and federal income taxes on all amounts the Settlement Class Member receives pursuant to this Settlement Agreement (excluding Employer Payroll Taxes).

(i)     *Individual Class Settlement Payments*: The Parties have agreed that the Individual Settlement Payments will be calculated on the basis of the number of Individual Class Pay Periods and Individual PAGA Pay Periods. The Individual Class Settlement Payments will be calculated by multiplying the Net Cash Distribution by each Settlement Class Member's Percentage Class Share, and the result of this multiplication will be the Settlement Class Member's Individual Class Settlement Payment. The Individual Class Settlement Payments will

be allocated as follows: 20% (one-fifth) to settlement of wage claims, which portion will be subject to required tax withholdings, and 80% (four-fifths) to settlement of claims for expenses, penalties and interest, which portion will be paid without withholding any amount.  The portion allocated to wages shall be reported on an IRS Form W-2, and the portion allocated to expenses, interest and penalties shall be reported on an IRS Form 1099.

(ii)     *Individual PAGA Settlement Payments*: The Parties have agreed that the Individual PAGA Settlement Payments will be calculated as follows:  Each Aggrieved Employee's Individual PAGA Settlement Payment shall be the sum of that Aggrieved Employee's (1) Individual Tier 1 PAGA Payment and (2) Individual Tier 2 PAGA Payment. Each Aggrieved Employee's Individual Tier 1 PAGA Payment will be calculated by multiplying the following: (a) 25%; (b) the Tier 1 PAGA Payment; and (c) the Aggrieved Employee's Percentage Tier 1 PAGA Share.  Similarly, each Aggrieved Employee's Individual Tier 2 PAGA Payment will be calculated by multiplying the following: (a) 25%; (b) the Tier 2 PAGA Payment; (c) and the Aggrieved Employee's Percentage Tier 2 PAGA Share.  The Individual PAGA Settlement Payments will be allocated entirely to settlement of claims for civil penalties pursuant to PAGA, which portion will be paid without withholding any amount and which shall be reported on an IRS Form 1099.

b.     **Named Plaintiff Award:**  Defendant agrees not to challenge Class Counsel's request for the Named Plaintiff Award to the Class Representative.  The Named Plaintiff Award will be paid in addition to Plaintiff's Individual Class Settlement Payment and Individual PAGA Settlement Payment.  Should the Named Plaintiff Award approved by the Court be less than the amount sought, the difference shall become part of the Net Cash Distribution.  An IRS Form 1099 will be issued to the Class Representative in connection with the Named Plaintiff Award.

Plaintiff agrees not to request exclusion from the Settlement.  Any such request for exclusion shall therefore be void and of no force or effect.  Plaintiff stipulates to a general release of all Released Parties for all claims, demands, rights, liabilities, and causes of action, including without limitation known or unknown claims, whether for economic damages, non-economic

damages, punitive damages, restitution, tort, contract, penalties, injunctive or declaratory relief, attorneys' fees, costs, or other monies or remedies that Plaintiff had, has, or may have arising out of any event, act, occurrence, or omission taking place on or before Final Approval.  This release by Plaintiff (on his own behalf and on behalf of his heirs, beneficiaries, trustees, executors, administrators, assigns, agents, insurers, representatives and successors) includes all federal, state and local statutory claims, and federal and state common law claims (including but not limited to those for contract, tort and equity), including, without limitation, the Americans with Disabilities Act, Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §1981, 42 U.S.C. § 1983, the Fair Labor Standards Act, the Employee Retirement Security Income Act of 1974, the California Constitution, the California Fair Employment and Housing Act, the California Unfair Competition Act (California Business and Professions Code section 17200 et seq.), and the California Labor Code, including section 132a claims.  Plaintiff acknowledges the language of Section 1542 of the California Civil Code, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Plaintiff expressly waives the protection of Section 1542.  Plaintiff understands and agrees that claims or facts in addition to or different from those which are now known or believed by him to exist may hereafter be discovered.  It is Plaintiff's intention to settle fully and release all of the claims he now has against the Released Parties, whether known or unknown, suspected or unsuspected.  The Named Plaintiff Award shall be paid to Plaintiff specifically in exchange for the general release of the Released Parties from all claims, including those specified in this paragraph and a covenant not to sue the Released Parties.  Named Plaintiff further agrees never to apply for or accept employment with MSSB, although MSSB agrees that if Plaintiff is employed by a financial firm that MSSB later acquires, merges with or enters into a joint venture with,

Plaintiff will not be required to resign his employment as a result of this provision.  MSSB will comply with its reference policy with respect to Harvey.

       c.     **Class Counsel's Fees and Costs:**  Class Counsel will apply to the Court for its Fee and Cost Award which Defendant will not object to.  Should the Fee and Cost Award approved by the Court be less than the amount sought, the difference shall become part of the Net Cash Distribution.  A Form 1099 will be issued to each of the Class Counsel firms with respect to its share of the award of attorneys' fees and costs/expenses.  Payment of the Fee and Cost Award to Class Counsel shall constitute full satisfaction of any obligation to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses or costs in the Action incurred by any attorney on behalf of Plaintiff or the Class, and shall relieve Defendant and Defendant's Counsel of any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses and/or costs to which any of them may claim to be entitled on behalf of Plaintiff and/or the Class in relation to this Action.  Upon the Payment Obligation and Release Date, Class Counsel, Plaintiff, the LWDA, Aggrieved Employees, and the Class will be deemed to have released Defendant from any and all claims for fees and costs resulting from the Action.

       d.     **Expense Fund:**  In addition to the Cash Payment Amount, Defendant agrees to allocate One Million Seven Hundred and Thirty-Five Thousand Dollars ($1,735,000) in future payments of business expenses.  This Expense Fund shall be available separate and apart from the Alternative Flexible Grid ("AFG") Program.  The Expense Fund shall be made available to current California Financial Advisors for expenses that otherwise could have been submitted to AFG through Defendant's current policies, and for specific categories of expenses to be determined solely by Defendant.  Defendant agrees to make its best efforts to spend the Expense Fund in calendar year 2020, 2021 or within two years of the Payment Obligation and Release Date.  Examples of types of costs that may be covered under this provision include remote computing (including corporate iPhone or MobileIron access) and personalized web pages.

       e.     **Employer Payroll Taxes:**  The Maximum Settlement Amount does not include Employer Payroll Taxes, which shall be paid by Defendant separate and apart from the

Maximum Settlement Amount.  Employer Payroll Taxes will be computed by the Settlement

Administrator based on the amounts to be paid to the Settlement Class Members.  The Settlement

Administrator shall be responsible for making all necessary payments and government filings in

connection with such payments.

**E.      RELEASES BY THE CLASS, LWDA, AND AGGRIEVED EMPLOYEES**

62.      _Release by the Class_.  Upon the Payment Obligation and Release Date, the

Settlement Class Members, on behalf of themselves and each of their respective agents,

successors, heirs and assigns, will be deemed to have, and by operation of the Final Approval

Order and Judgment will have, fully, finally, and forever released, relinquished and discharged

the Released Parties from the Class Released Claims, except that those Settlement Class

Members who do not cash their Individual Class Settlement Payment shall not have released

claims under the FLSA.  The Settlement Class Members agree not to sue or otherwise make a

claim against any of the Released Parties for the Class Released Claims.  The Individual Class

Settlement Payments shall be paid to Settlement Class Members specifically in exchange for the

release of the Released Parties from the Class Released Claims and the covenant not to sue

concerning the Class Released Claims.  Consistent with the foregoing, Settlement Class

Members may not sue or otherwise make a claim against any of the Released Parties that is in

any way related to, arises out of, or is connected with any of the Class Released Claims.

63.      _Release by the Aggrieved Employees_.  Upon the Payment Obligation and Release

Date, Plaintiff, on behalf of himself and on behalf of all who claim by and through him, or in his

stead, including every Aggrieved Employee (which includes any legal heirs and/or successors-in-

interest of every Aggrieved Employee) and as proxy and representative of the State of California

LWDA, will fully release the Released Parties from the PAGA Released Claims for the PAGA

Period.  Plaintiff as the proxy and representative of the State of California LWDA and Aggrieved

Employees agree not to sue or otherwise make a claim against any of the Release Parties for the

PAGA Released Claims.  The seventy-five percent of each of the Tier 1 PAGA Payment and the

Tier 2 PAGA Payment (both of which are to be paid to the LWDA) and the Individual PAGA

Settlement Payments (which shall be paid to Aggrieved Employees) are made specifically in

exchange for the release of the Released Parties from the PAGA Released Claims and covenant not to sue for those claims.  The Final Approval Order and Judgment shall have the effect of binding all Aggrieved Employees and State of California labor law enforcement agencies pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).

**F.** **NOTICE PROCESS**

64.     In accordance with Labor Code section 2699(l)(2), Class Counsel shall submit a copy of this proposed Settlement to the LWDA on the same date on which it files the Preliminary Approval motion.

65.     Within ten (10) calendar days following the filing of the Motion for Preliminary Approval, MSSB, through the Settlement Administrator, shall serve notice of the proposed Settlement upon the required governmental officials pursuant to the Class Action Fairness Action of 2005, 28 U.S.C. § 1715 (with a copy to Class Counsel).

66.     The Parties agree to jointly utilize a third-party Settlement Administrator to give notice of and communicate with Class Members regarding the Settlement, and to distribute the Individual Class Settlement Payments, the Tier 1 PAGA Settlement Payment and Tier 2 PAGA Settlement Payment (including the payments to the LWDA), the Named Plaintiff Award, the Fee and Cost Award, and the Administration Costs.  The Settlement Administrator shall be responsible for creating and maintaining a website for Class Members and Aggrieved Employees that links to the Settlement Agreement, Notice, motions for approval and for attorneys' fees, and other important documents in the case including the ability for Class Members and Aggrieved employees to update their contact information and contact Class Counsel.  The Parties selected KCC Class Action Services LLC to administer the Settlement but may jointly select a different settlement administrator subject to the approval of the Court.  If the actual cost of settlement administration is less than the amount approved by the Court, the remaining amount shall be added to the Net Cash Distribution and distributed as set forth in this Agreement.  All costs associated with settlement administration as approved by the Court shall come out of the Cash Payment Amount.  The Settlement Administrator's actions shall be governed by the terms of this Agreement.

67.     The Parties agree that the QSF is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code and Treasury Regulation § 1.468B-1 (26 C.F.R. § 1.468B-1 *et seq.*) and will be administered by the Settlement Administrator as such. With respect to the QSF, the Settlement Administrator shall: 1) open and administer a settlement account in such a manner as to qualify and maintain the qualification of the QSF as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code and Treasury Regulation § 1.468B-1; (2) calculate, withhold, remit and report each Settlement Class Member's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes), and indemnify MSSB for any penalty arising out of any error or incorrect calculation and/or interest (if applicable) with respect to any late deposit of the same; (3) satisfy all federal, state and local income and other tax reporting, return, and filing requirements with respect to the QSF; and (4) satisfy out of the QSF all fees, expenses and costs incurred in connection with the opening and administration of the QSF and the performance of its duties and functions as described in this Agreement.  The aforementioned taxes, fees, expenses and costs shall be treated as and included in the costs of administering the QSF and as Administration Costs.  The Parties and the Settlement Administrator shall treat the QSF as coming into existence as a Qualified Settlement Fund on the earliest date permitted as set forth in 26 C.F.R. § 1.468B-1(j)(2)(i), and such election statement shall be attached to the appropriate returns as required by 26 C.F.R. § 1.468B-1(j)(2)(ii).  The Parties agree to cooperate with the Settlement Administrator and one another to the extent reasonably necessary to carry out the provisions of this section of the Agreement.

68.     Within thirty (30) calendar days after entry of the order granting Preliminary Approval, Defendant shall provide to the Settlement Administrator a list of all Class Members and Aggrieved Employees, including their last known address, telephone number, social security number, Individual Class Pay Periods, and Individual PAGA Pay Periods for the Tier 1 PAGA Payment and for the Tier 2 PAGA Payment.

69.     Within fourteen (14) calendar days after receiving the Class Member/Aggrieved Employee list from Defendant, the Settlement Administrator shall send the Notice via first class

mail to all Class Members and Aggrieved Employees.  Prior to the initial mailing, the Settlement

Administrator will check the addresses provided by Defendant through the National Change of

Address System.

70.     If an original mailed Notice is returned as undeliverable with a forwarding

address provided by the United States Postal Service, the Settlement Administrator will promptly

resend a Notice to that forwarding address along with a brief letter stating that the recipient of

the Notice has until the original deadline set forth on the Notice or fifteen (15) days after the re-

mailing of the Notice (whichever is later) to object or submit an Exclusion Request.  If an

original Notice is returned as undeliverable without a forwarding address, the Settlement

Administrator will make reasonable efforts to locate forwarding addresses, including a skip trace,

and if it obtains a more recent address, will resend a Notice along with a brief letter stating that

the recipient of the Notice has until the original deadline set forth on the Notice or fifteen (15)

days after the re-mailing of the Notice (whichever is later) to object or submit an Exclusion

Request.

71.     At least ten (10) calendar days prior to the Final Approval hearing, the Settlement

Administrator will provide a declaration of due diligence and proof of mailing with regard to the

mailing of the Notice to counsel for all Parties.

72.     To the extent a Class Member or Aggrieved Employee disputes the Individual

Class Pay Periods shown in his or her Notice, the Class Member or Aggrieved Employee may

produce evidence to the Settlement Administrator establishing the dates he or she contends to

have worked as an FA during the Class Period and/or PAGA Period.  Defendant's records will

be presumed determinative.  The Settlement Administrator shall notify counsel for the Parties of

any disputes.  Defendant shall review their records and provide further information to the

Settlement Administrator, as necessary.  The Settlement Administrator shall resolve any disputes

and notify counsel for the Parties of its decision.

73.     The Settlement Administrator's determination of eligibility for any Individual

Class Settlement Payment and Individual PAGA Settlement Payment under the terms of this

Settlement Agreement shall be conclusive, final and binding on all Parties, Aggrieved

Employees, and all Class Members, so long as the Settlement Administrator has first consulted with the Parties regarding any disputes or questions as to eligibility.

**G.      EXCLUSIONS AND OBJECTIONS**

74.      The Notice shall provide that Class Members who wish to exclude themselves from the non-PAGA portion of the Settlement must submit an Exclusion Request.  Any Class Member who properly requests exclusion using this procedure will not be entitled to any Individual Class Settlement Payment under the Settlement and will not be bound by the Class Released Claims under this Settlement Agreement or have any right to object, appeal or comment thereon; however, the excluding Class Member will remain bound by the PAGA portion of the Settlement, including the PAGA Released Claims, to the extent the Class Member also is an Aggrieved Employee.  Class Members who fail to submit a valid and timely Exclusion Request shall be bound by all terms of the Settlement Agreement and any judgment entered in the Action if the Settlement is approved by the Court.

75.      If three percent (3%) or more of the Class Members submit a timely and valid Exclusion Request, Defendant shall have the option of canceling the Settlement and all actions taken in its furtherance will be null and void, as set forth in paragraph 84.  Defendant must exercise this right within ten (10) calendar days after the Settlement Administrator notifies the Parties of the number of valid Exclusion Requests received, which the Settlement Administrator must do within seven (7) calendar days after the Objection/Exclusion Deadline, or within seven (7) calendar days after the fifteen (15) calendar days following a re-mailing of the Notice, whichever is later.

76.      In order to object to the Settlement, a Class Member must file his or her objection with the Court and serve it on all Parties no later than the Objection/Exclusion Deadline, or fifteen (15) calendar days after the re-mailing of the Notice to that Class Member, whichever is later.

77.      After the Court grants Final Approval of the Settlement, and the Payment Obligation and Release Date has passed, the Settlement Administrator shall prepare a final list of all Settlement Class Members.  For each Settlement Class Member on this list, the Settlement

Administrator will calculate the amounts of each Individual Class Settlement Payment as set forth herein (excluding any individuals who effectively and timely requested exclusion from the Settlement) and the Individual PAGA Settlement Payment, plus any owed Employer Payroll Taxes and provide that calculation to Class Counsel and Defendant's Counsel within (5) calendar days after the Payment  Obligation and Release Date.

78.     No later than ten (10) calendar days after the Court issues the Final Approval Order and Judgment, the Settlement Administrator shall provide a copy of the Final Approval Order and Judgment to the LWDA in accordance with Labor Code section 2699(*l*)(3).

## H.   <u>DISTRIBUTION OF FUNDS</u>

79.     No later than ten (10) business days after the date of the entry of Final Approval Order and Judgment has passed, Defendant will provide the Settlement Administrator with the Cash Payment Amount, plus any owed Employer Payroll Taxes as estimated by the Settlement Administrator.  MSSB will wire the funds into the QSF set up and controlled by the Settlement Administrator.  The QSF shall be held at a federally-insured banking institution and shall accrue interest payable by Defendant at the rate of 5% of the Cash Payment Amount from the date that any notice of appeal is filed until the Payment Obligation and Release Date.  This Accrued Interest earned shall inure to the benefit of the Class and Class Counsel.  If, for any reason, the Settlement does not become final, the QSF and all interest earned shall be promptly paid to Defendant.

The Settlement Administrator will mail or wire all required payments no later than seven (7) calendar days after the Payment Obligation and Release Date.  The Settlement Administrator will send settlement checks to all Settlement Class Members and Aggrieved Employees.  If a Settlement Class Member and/or Aggrieved Employee's check is returned to the Settlement Administrator, the Settlement Administrator will make all reasonable efforts to re-mail it to the Settlement Class Member and/or Aggrieved Employee at his or her correct address.  It is expressly understood and agreed that the checks for the Individual Class Settlement Payments and Individual PAGA Settlement Payments shall become void and no longer available if not cashed within one hundred eighty days (180) days after their initial mailing.  Ninety (90) days after the

initial mailing, the Settlement Administrator shall mail a reminder postcard to all Class Members and Aggrieved Employees who have not cashed their checks by that date that they must do so by the check stale date or the check will be void and no longer negotiable.  The funds associated with any Individual Class Settlement Payment and Individual PAGA Settlement Payment checks which are not timely negotiated will be paid to the following entities and in the following percentages pursuant to the *cy pres* doctrine within two hundred (200) calendar days from the date of mailing the Settlement Payment checks:  25% to the California Trial Court Improvement and Modernization Fund and 25% to the California Equal Access Fund; and 50% to Bay Area Legal Aid.  No later than two hundred ten (210) calendar days from the date of mailing of the Individual Class Settlement Payment and Individual PAGA Settlement Payment checks (or, if that date falls on a weekend or holiday, the next business day thereafter), the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a declaration as to the total amount of any uncashed settlement checks and the *cy pres* payments.

80.   No person shall have any claim against Defendant, Defendant's Counsel, Plaintiff, the Class, Class Counsel or the Settlement Administrator based on mailings, distributions and payments made in accordance with this Settlement Agreement.

**I.   <u>MOTION FOR FINAL APPROVAL</u>**

81.   Plaintiff shall timely file the motion for final approval and request entry of the Final Approval Order and Judgment.  Class Counsel shall provide a draft of the motion to Defendant's Counsel for review at least five (5) calendar days prior to filing the motion for final approval of the Settlement.  Within 21 days after the distribution of the settlement funds and payment of attorneys' fees, the Parties should file a Post-Distribution Accounting in accordance with the Northern District Procedural Guidance for Class Action Settlements.

**J.   <u>NO EFFECT ON EMPLOYEE BENEFITS</u>**

82.   The Individual Class Settlement Payments, Individual PAGA Settlement Payments, and the Named Plaintiff Award shall not have any effect on the eligibility for, or calculation of, any employee benefits (e.g., vacation, retirement plans, etc.) of Settlement Class

1  Members, Aggrieved Employees or Plaintiff.  No benefit, including but not limited to 401K

2  benefits, shall increase or accrue as a result of any payment made as a result of this Settlement.

3  **K.      PUBLICITY**

4          83.      Plaintiff and Class Counsel will not issue any press release, or engage in any

5  press.  Nothing in this paragraph shall preclude Plaintiff or Class Counsel from responding to

6  press inquiries or inquiries from Class Members or from posting publicly available documents on

7  their firm websites.

8  **L.      PRIVACY OF DOCUMENTS AND INFORMATION**

9          84.      Plaintiff and Class Counsel agree they will destroy all confidential documents and

10  information provided to them by Defendant in the Action within 30 days of the Payment

11  Obligation and Release Date, except for documents that must be saved for malpractice purposes.

12  Plaintiff and Class Counsel further agree that none of the documents and information provided to

13  them by Defendant shall be used for any purpose other than prosecution of this Action or the

14  defense or prosecution of a malpractice action.

15  **M.      VOIDING THE AGREEMENT**

16          85.      In the event of any of the following: (i) 3% or more of the Class Members submit

17  an Exclusion Request (i.e., opt-out of the Settlement); (ii) the Court does not approve the scope

18  of the Class Released Claims and/or PAGA Released Claims, or there is a Court-ordered change

19  to the scope of the Class Released Claims and/or PAGA Released Claims (including, but not

20  limited to, the release of PAGA claims for the period April 23, 2013 through May 14, 2014); (iii)

21  the Court finds the Maximum Settlement Amount is insufficient to warrant approval; or (iv)

22  there is a change to the structure of the Settlement (such as a denial of the Parties' stipulation to a

23  Second Amended Complaint), then the Parties will meet and confer in good faith, engaging the

24  Mediators if appropriate, for the purpose of determining whether the Settlement should be

25  amended and resubmitted to the Court.  If that meet and confer is unsuccessful, either Party may

26  elect to reject this Settlement and, in the event either party elects to reject this Settlement, the

27  Stipulation of Settlement shall be null and void *ab initio* and any order or judgment entered by

28  the Court in furtherance of this Settlement shall be treated as withdrawn or vacated by stipulation

of the Parties.  In such case, the Class Members and Defendant shall be returned to their respective statuses as of the date immediately prior to the execution of this Agreement.  The Party electing to withdraw from the Settlement pursuant to this paragraph shall be responsible for all of the Settlement Administrator's fees and costs incurred to date.  In the event an appeal is filed from the Final Approval Order and Judgment, or any other appellate review is sought prior to the Payment Obligation and Release Date, administration of the Settlement related to the disbursement of funds shall be stayed pending final resolution of the appeal or other appellate review; however, the Settlement Administrator shall continue to monitor and manage the QSF and respond to all Class Member inquiries until such time as the Settlement is final.

**N.     PARTIES' AUTHORITY**

86.     The signatories hereto represent that they are fully authorized to enter into this Agreement and bind the Parties to the terms and conditions hereof.

**O.     MUTUAL FULL COOPERATION**

87.     The Parties and their counsel agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement.  The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.  In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Agreement, the Parties shall seek the assistance of the Mediators to resolve such disagreement.

**P.     NO PRIOR ASSIGNMENTS**

88.     The Parties hereto represent, covenant and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights released and discharged by this Agreement.

**Q.     NO ADMISSION**

89.     Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any of the other Released Parties.  Each of the Parties hereto has entered into this Agreement with the intention of avoiding further disputes and litigation with the attendant risk, inconvenience and expenses.  This Agreement is a settlement document and shall, pursuant to California Evidence Code Section 1152 and/or Federal Rule of Evidence 408 and/or any other similar law, be inadmissible as evidence in any proceeding, except an action or proceeding to approve the settlement, and/or interpret or enforce this Agreement.

**R.     CONSTRUCTION**

90.     The Parties hereto agree that the terms and conditions of this Agreement are the result of lengthy, intensive arm's-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any of the Parties by reason of the extent to which any Party or his or its counsel participated in the drafting of this Agreement.

**S.     JURISDICTION OF THE COURT**

91.     Except for those matters to be resolved by the Mediators or the Settlement Administrator as expressly stated, any dispute regarding the interpretation or validity of or otherwise arising out of this Agreement, or relating to the Action or the Class Released Claims, shall be subject to the exclusive jurisdiction of the Court, and the Plaintiff, Class Members, Aggrieved Employees and Defendant agree to submit to the personal and exclusive jurisdiction of the Court.  The Parties agree to first try and resolve such disputes with the Mediators.  The Court shall retain jurisdiction solely with respect to the interpretation, implementation and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

**T.     CALIFORNIA LAW GOVERNS**

92.     All terms of this Agreement and the exhibits hereto shall be governed by and interpreted according to the laws of the State of California, regardless of its conflict of laws.

**U.    INVALIDITY OF ANY PROVISION**

93.     The Parties request that before declaring any provision of this Agreement invalid, the Court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents.

**V.    HEADINGS**

94.     The headings contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend or describe the scope of this Agreement or any provision hereof.

**W.    EXHIBITS**

95.     All terms of this Agreement include the terms set forth herein and the attached Exhibits 1, 2 and 3, which are incorporated by this reference as though fully set forth herein. Any exhibits to this Agreement are an integral part of the Settlement.

**X.    AMENDMENT OR MODIFICATION**

96.     This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

**Y.    ENTIRE AGREEMENT**

97.     This Agreement including Exhibits 1-3 attached hereto, contains the entire agreement between Plaintiff and Defendant relating to the Settlement and transactions contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

**Z.    BINDING ON ASSIGNS**

98.     This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

**AA.   NO SOLICITATION RE: OBJECTIONS, EXCLUSIONS, OR APPEALS**

99.     The Parties agree to leave the choice of whether to participate in the Settlement up to the Class Members.  At no time shall any of the Parties or their counsel discourage Class Members from participating.  The Parties and their counsel shall not solicit or otherwise encourage Class Members to submit written objections to the Settlement, to request exclusion or to appeal from the Court's Final Approval Order and Judgment.

**BB.     <u>INTERIM STAY OF PROCEEDINGS</u>**

100.     The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, pending the final approval hearing to be conducted by the Court.

**CC.     <u>NO TAX REPRESENTATIONS</u>**

101.     The Parties agree that all tax obligations, if any, which may arise from the payments set forth above shall be the sole obligation of Plaintiff, the Class and Aggrieved Employees.  Defendants make no representations or warranties with respect to any tax consequences or characterization of the nature of any payment under this Settlement Agreement.

**DD.     <u>COUNTERPARTS</u>**

102.     This Agreement may be executed in counterparts, and when each of the Parties has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one fully-signed Stipulation of Settlement, which shall be binding upon and effective as to all Parties.

IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the foregoing terms and conditions by executing this Agreement as of the date indicated below.

**APPROVED AND AGREED:**

Dated:  April ___, 2019          _____
                                 Brandon Harvey, Plaintiff

Dated:  April___, 2019           MORGAN STANLEY SMITH BARNEY LLC


                                 _____
                                 By:
                                 Its:

**APPROVED AS TO FORM AND CONTENT:**

Dated: April___, 2019            EDWARD J. WYNNE
                                 Wynne Law Firm


                                 By: _____
                                            EDWARD J. WYNNE
                                          Attorneys for Plaintiff

Dated:  April ___, 2019          LYNNE C. HERMLE
                                 ANDREW R. LIVINGSTON
                                 Orrick, Herrington & Sutcliffe LLP


                                 By: _____
                                          ANDREW R. LIVINGSTON
                                         Attorneys for Defendant

1        IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the

2 foregoing terms and conditions by executing this Agreement as of the date indicated below.

3 **APPROVED AND AGREED:**

4

5 Dated:  April ___, 2019

                     _____

6                      Brandon Harvey, Plaintiff

7 Dated:  April **26** 2019        MORGAN STANLEY SMITH BARNEY LLC

8

9                      By:  Mark Greenfield, Managing Director

10                      Its:  In-House Counsel

11 **APPROVED AS TO FORM AND CONTENT:**

12 Dated: April___, 2019        EDWARD J. WYNNE

13                      Wynne Law Firm

14

15                      By: _____

16                           EDWARD J. WYNNE

                          Attorneys for Plaintiff

17

18 Dated: April _26_, 2019      LYNNE C. HERMLE

                     ANDREW R. LIVINGSTON

19                      Orrick, Herrington & Sutcliffe LLP

20

21                      By: _____

22                         ANDREW R. LIVINGSTON

                        Attorneys for Defendant

23

24

25

26

27

28

1    IN WITNESS WHEREOF, each of the undersigned has agreed to and accepted the

2 foregoing terms and conditions by executing this Agreement as of the date indicated below.

3 **APPROVED AND AGREED:**

4

5 Dated: April 26, 2019     _____

6             Brandon Harvey, Plaintiff

7 Dated: April___, 2019     MORGAN STANLEY SMITH BARNEY LLC

8

9             _____

10            By:
            Its:

11 **APPROVED AS TO FORM AND CONTENT:**

12 Dated: April 26, 2019

13          EDWARD J. WYNNE
          Wynne Law Firm

14

15          By: _____

16            EDWARD J. WYNNE
            Attorneys for Plaintiff

17

18 Dated: April ___, 2019     LYNNE C. HERMLE

19          ANDREW R. LIVINGSTON
          Orrick, Herrington & Sutcliffe LLP

20

21          By: _____

22            ANDREW R. LIVINGSTON
            Attorneys for Defendant

23

24

25

26

27

28

# EXHIBIT 1

<u>**IMPORTANT LEGAL NOTICE**</u>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON HARVEY, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>     v.<br><br>MORGAN STANLEY SMITH BARNEY LLC,<br><br>   Defendant. | **CASE NO.:** 3:18-cv-02835 WHO<br><br>**NOTICE OF (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) FINAL APPROVAL HEARING; AND (3) RIGHT TO OBJECT OR OPT OUT**<br><br>**THIS NOTICE AFFECTS YOUR RIGHTS. PLEASE READ IT CAREFULLY.** |

To:     All current or former employees of Morgan Stanley Smith Barney LLC who worked for MSSB within the State of California from May 14, 2014, through [date of preliminary approval] in the job title of Financial Advisor and/or Private Wealth Advisor ("Class Member")

<u>**Why You are Receiving This Notice**</u>

You are receiving this Notice because the U.S. District Court, the Northern District of California, has preliminarily approved a proposed class action settlement that may affect you.  The proposed Settlement will resolve all class claims in the lawsuit of *Harvey v. Morgan Stanley Smith Barney LLC* ("Lawsuit").  The purpose of this Notice is to inform you of the Settlement of this Lawsuit and your legal rights under the Settlement.

The Court has ordered that this Notice be sent to you because you may be a Class Member.  Records show that you were employed with Morgan Stanley Smith Barney LLC at some time from May 14, 2014, to [date of preliminary approval].

**The amount you will receive from the Settlement is listed on your Notice below.  You will be bound by the terms of the Settlement unless you exclude yourself from the Class, see instructions below.**  Please see below for a more complete explanation of your options under the Settlement.

<u>**SUMMARY OF CASE**</u>

On or about May 14, 2018, Plaintiff Brandon Harvey filed a putative class action on behalf of himself and other employees that Defendant Morgan Stanley Smith Barney LLC employed as Financial Advisors in California from May 14, 2014 through the present.  The operative complaint alleges that Defendant failed to pay wages, made unlawful wage deductions, violated the California Employee Bond Law, failed to provide accurate itemized wage statements, and failed to indemnify all reasonable and necessary business expenses, enumerating alleged violations of Labor Code §§ 201-204.2, 221-224, 226, 400-410, 1174, 1174.5, 1198, 2802 and

Cal. Code of Reg., tit. 8, § 11040(8).  Plaintiff also alleged derivative claims pursuant to the California Unfair Competition Law, California Business & Professions Code § 17200, et seq. ("UCL") and the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), Labor Code § 2698, *et seq*.  Plaintiff's claims are based on Defendant's Alternative Flexible Grid ("AFG") program.  Plaintiff alleges that the claims should be certified as a class action.  In Plaintiff's complaint, he seeks recovery of allegedly unpaid wages, expense reimbursements, penalties, interest, and attorneys' fees and costs.

After several months of formal litigation and the exchange of relevant information, the Parties agreed to participate in multiple private mediations to try and resolve the claims. The Parties thereafter reached the Settlement that is memorialized in the Settlement Agreement that is on file with the Court, and whose terms are generally summarized in this Notice.

## POSITIONS OF THE PARTIES AND REASONS FOR SETTLEMENT

Defendant contends that it compensates and reimburses employees in full compliance with the law. It denies each of the claims and contentions alleged by Plaintiff in the Lawsuit. Although Defendant has strong defenses to the Lawsuit, it has concluded that a lengthy and expensive lawsuit is not in the best interests of either side.  Defendant has, therefore, agreed to settle this Lawsuit in the manner and upon the terms set forth in the proposed Settlement to put to rest all claims that are or could have been asserted against it in the Lawsuit.  Nothing regarding the Settlement may be construed as, or may be used as, an admission, concession or indication by or against Defendant of any fault, wrongdoing or liability whatsoever.

Class Counsel recognize the expense and length of continued proceedings necessary to continue the Lawsuit against Defendant through certification, trial and any possible appeals, the uncertainty and the risk of the outcome of further litigation, including the risk that the class might not be certified, as well as the difficulties and delays generally inherent in such litigation, the burdens of proof necessary to establish liability for the claims, and of the difficulties in establishing damages for the Class Members. Class Counsel believes the proposed Settlement is fair, adequate and reasonable and in the best interests of the Class Members.

The Court has made no ruling on the merits of the Class Members' claims and has determined only that certification of the Class for settlement purposes is appropriate.

## SUMMARY OF SETTLEMENT TERMS

**Settlement Amount.** The Settlement Agreement provides that Defendant will pay $10,235,000 (the "Maximum Settlement Amount") to fully resolve the claims in the Lawsuit.  The Maximum Settlement Amount includes (a) a Cash Payment of $8,500,000 ("Cash Payment Amount") and (b) an Expense Fund of $1,735,000.

**(a) Cash Payment Amount.** The following deductions will be made from the Cash Payment Amount:

> **(i)** *Settlement Administration.* The Court has tentatively approved a payment of approximately $32,000 to the Settlement Administrator, KCC, Inc., for the costs incurred in notifying the Class of this Settlement and processing any claims.

**(ii)** *Attorneys' Fees and Costs*. The Court preliminarily appointed the following attorneys as Class Counsel to represent the Class in this Lawsuit: Edward J. Wynne, Wynne Law Firm, James F. Clapp, Clapp & Lauinger LLP, and David S. Markun, Markun Zusman Freniere & Compton LLP.

Edward J. Wynne
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd., Ste. 3-G
Larkspur, CA 94939
ewynne@wynnelawfirm.com
(415) 461-6400

James F. Clapp
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, CA 92011
jclapp@clapplegal.com
(760) 209-6565

David S. Markun
MARKUN ZUSMAN FRENIERE & COMPTON LLP
17383 Sunset Boulevard, Suite A380
Pacific Palisades, CA 90272
dmarkun@mzclaw.com
(310) 454-5900

Class Counsel will ask the Court to approve a Fee and Cost Award not to exceed twenty-five percent (25%) of the Maximum Settlement Amount as the Fee Award, in addition to reasonable actual expenses not to exceed $35,000, as the Cost Award. Class Counsel have been prosecuting the Lawsuit on behalf of the Class on a contingency fee basis (that is, without being paid to date) while advancing litigation costs and expenses. The Fee and Expense Award will constitute full compensation for all legal fees and litigation expenses of Class Counsel in the Lawsuit, including any work they do in the future. Class Members are not personally responsible for any fees or litigation expenses.

**(iii)** *Named Plaintiff Award*. Class Counsel will also ask the Court to approve a payment in the amount of $10,000 for Named Plaintiff Brandon Harvey for acting as the representative on behalf of the Class, spending time assisting with the lawsuit, signing a general release of all claims he might have against Defendant, agreeing to never apply for or accept employment with Morgan Stanley, which is not required of Class Members.

**(iv)** *PAGA Payment*. A total of $600,000 is allocated to pay all applicable civil penalties under California Labor Code's Private Attorneys General Act of 2004 ("PAGA"). $100,000 shall be allocated to settle PAGA claims for the portion of the PAGA Period extending from May 9, 2014 through the end of the PAGA Period ("Tier 1 PAGA Payment"). $500,000.00 shall be allocated to settle claims for civil penalties pursuant to PAGA for the portion of the PAGA Period extending from April 23, 2013 to May 9, 2014 ("Tier 2 PAGA Payment").

Seventy-five percent (75%) of the PAGA Payment shall be paid to the California Labor and Workforce Development Agency ("LWDA") as required by California law, and twenty-five percent (25%) shall be distributed to Aggrieved Employees based on the proportionate number of Individual PAGA Pay Periods worked.

The balance of the Cash Payment Amount after the deductions described above is called the Net Cash Distribution. Any portion of the Fee and Cost Award, Named Plaintiff Award, and/or Administration Costs not awarded shall also be distributed to Class Members.

Each Class Member's Individual Class Settlement Payment will be calculated by multiplying the Net Cash Distribution by each Settlement Class Member's Percentage Class Share. Each Class Member's Percentage Class Share is based on his/her number of semimonthly pay periods with Defendant as a Class Member, as reflected by Defendant's corporate and business records, exclusive of leaves of absence ("Individual Class Pay Periods"). Approximations and averages will be used to cover periods where data is missing or otherwise not available. Class Members may dispute the Individual Class Pay Periods that are attributed to him or her by producing evidence to the Settlement Administrator establishing the dates he or she contends to have worked during the Class Period.



> **Assuming you do not opt out of the settlement and the settlement is approved by the Court, your Individual Class Settlement Payment is $_____ based on _____ Individual Class Pay Periods.**

For tax purposes, the Individual Class Settlement Payments will be allocated as follows: 20% (one-fifth) to settlement of wage claims, which portion will be subject to required tax withholdings, and 80% (four-fifths) to settlement of claims for expenses, penalties and interest, which portion will be paid without withholding any amount. The portion allocated to wages shall be reported on an IRS Form W-2, and the portion allocated to expenses, interest and penalties shall be reported on an IRS Form 1099.  IRS Forms W-2 and 1099 (and the equivalent California forms) will be distributed to Class Members reflecting the payments they receive under the Settlement.  Class Members should consult with their tax advisors concerning the tax consequences of the payments they receive under the Settlement.

**(b) Expense Fund.** Morgan Stanley will also allocate $1,735,000 from the Maximum Settlement Amount to future payments of business expenses. This Expense Fund shall be available separate and apart from the AFG Program. The Expense Fund shall be made available to current California Financial Advisors for expenses that otherwise could have been submitted to AFG through Defendant's current policies, and for specific categories of expenses to be determined solely by Defendant. Defendant agrees that it will use its best efforts to spend the Expense Fund in calendar year 2020, 2021 or within two years of the Payment Obligation and Release Date. Examples of types of costs that may be covered under this provision include remote computing (including corporate iPhone or MobileIron access) and personalized web pages.

**Release of Claims.** If the Settlement is approved by the Court, it will bar any Class Member who does not timely opt out of the Settlement from bringing certain claims against Defendant, described below. The Settlement will fully release and discharge Defendant and its past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, attorneys, consultants, insurers and reinsurers, and their respective successors and predecessors in interest, assigns, subsidiaries, affiliates, and parents (the "Released Parties") from all claims, demands, rights, liabilities, obligations, penalties, attorneys' fees, and causes of action that were pled or could have been pled by Class Members in the operative complaint based on the facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions, or failures to act alleged in the operative complaint against

Defendant from May 14, 2014 through the date of Preliminary Approval, including but not limited to claims for alleged unlawful wage deductions, failure to pay wages, cash bond or violations of the California Employee Bond Law, untimely final or other pay, inaccurate itemized wage statements and records, unreimbursed business expenses and/or failure to indemnify all necessary business expenses, claims alleging violations of California Labor Code sections 201-204.2, 221-224, 226, 400-410, 1174, 1174.5, 1198, 2802 and 2804, derivative claims for unfair business practices under California Business & Professions Code section 17200 *et seq.*, derivative claims for penalties under the Private Attorney General's Act ("PAGA"), and California state common law claims based on the alleged conduct in the operative complaint.

These claims that Class Members are agreeing to release and discharge are referred to as "Class Released Claims," as that term is more fully defined in the Settlement Agreement. This is true whether the Class Released Claims are known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist. However, those Class Members who do not cash their Individual Class Settlement Payment shall not have released their claims under the Fair Labor Standards Act.

The Class Members agree not to sue or otherwise make a claim against any of the Released Parties for the Class Released Claims. The Individual Class Settlement Payments are paid to Class Members specifically in exchange for the release of the Released Parties from the Class Released Claims and for their agreement not to sue concerning the Class Released Claims.

## <u>YOUR OPTIONS UNDER THE SETTLEMENT</u>

### <u>Option 1</u> – *Do Nothing and Receive Your Individual Class Settlement Payment*

You do not have to do anything and you will receive money from the Settlement if the Court grants Final Approval of the Settlement.  If you choose this **Option 1**, and if the Court grants Final Approval of the Settlement, you will be deemed to have released the Class Released Claims against the Released Parties.

### <u>Option 2</u> – *Opt Out of the Settlement*

If you do not wish to participate in the Settlement, you can request to be excluded from the Settlement (except that you may not opt out of the portion of the Settlement resolving PAGA claims for civil penalties on behalf of the State of California). To do so, you must submit an Exclusion Request to the Settlement Administrator stating your name, address, telephone number and last four digits of your social security number, as well as the following statement, or something similar: "I request to be excluded from the class action proceedings taking place in the matter of *Harvey v. Morgan Stanley Smith Barney LLC*, Northern District of California Case No. 3:18-cv-02835 WHO."

You must sign, date, and mail the Exclusion Request by First Class U.S. Mail or equivalent no later than _____, to _____ [*Settlement Administrator address*].

If you choose this **Option 2**, you will no longer be a Class Member. You will not be deemed to have released the Class Released Claims, you will not receive an Individual Class Settlement Payment from the Settlement, and you will be barred from filing any objection to the Settlement.

**Option 3** – *File an Objection with the Court*

You can ask the Court to deny approval of the settlement by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing and filed with the Court.  All written objections and supporting papers must (a) clearly identify the case name and number (*Harvey v. Morgan Stanley Smith Barney LLC*, Case Number 3:18-cv-02835 WHO), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Ave, San Francisco, California 94102, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before _____.

If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for hiring and paying that attorney.  The Final Approval hearing on the Settlement is currently set for _____ at __:__ _.m. in Courtroom 2, 17th Floor of the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Ave, San Francisco, California 94102. The date and time of the hearing may change without notice. For updated information, please visit the settlement website or access the Court docket (details below).

Late objections may not be considered. If you file an objection, you are not excluding yourself from the Settlement. If the Court overrules your objection, you will be deemed to have released the Class Released Claims against the Released Parties. To exclude yourself from the Settlement, you must follow the directions described above in Option 2. Please note that you cannot both object to the Settlement and exclude yourself.  You must choose one option only.

If you choose this **Option 3**, you may still receive an Individual Settlement Payment.

## ADDITIONAL INFORMATION

This Notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www._____.com, or contact the Settlement Administrator at _____,

[settlement administrator name,

address,

phone number]

You can also access the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of

6

California, 450 Golden Gate Ave, San Francisco, California 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF THE CLAIMS OR DEFENSES BY EITHER SIDE IN THIS PROCEEDING.

PLEASE DO NOT TELEPHONE THE COURT, THE COURT CLERK'S OFFICE, DEFENDANT OR DEFENDANT'S ATTORNEYS TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

4149-4310-0954.7

## IMPORTANT LEGAL NOTICE

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON HARVEY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>MORGAN STANLEY SMITH BARNEY LLC,<br><br>   Defendant. | **CASE NO.:** 3:18-cv-02835 WHO<br><br>**NOTICE OF PAGA SETTLEMENT PAYMENTS** |

To:    All current or former employees of Morgan Stanley Smith Barney LLC who worked for MSSB within the State of California from April 23, 2013, through [date of preliminary approval] in the job title of Financial Advisor and/or Private Wealth Advisor ("FA" or "Aggrieved Employee")

### Why You are Receiving This Notice

You are receiving this Notice because the U.S. District Court, Northern District of California, has preliminarily approved a settlement of a claim under the California Labor Code Private Attorneys General Act ("PAGA"). The PAGA claim seeks civil penalties on behalf of the State of California and for which the State of California receives 75% of any civil penalties collected (with Aggrieved Employees receiving the remaining 25%).

You are receiving this notice because you may be an Aggrieved Employee. Defendant's records indicate that you were employed by Defendant as an FA in California at some time between April 23, 2013 to [date of preliminary approval]. The Court approved a settlement ("Settlement") of the lawsuit *Harvey v. Morgan Stanley Smith Barney LLC* ("Lawsuit") and ordered that a portion of the Settlement proceeds allocated to civil penalties under PAGA be distributed to Aggrieved Employees, including you, after certain portions of the penalties are paid to the State of California according to California law.

**The enclosed check represents your Individual Tier 1 PAGA Payment and/or Individual Tier 2 PAGA Payment, which represents your share of the Settlement funds that were allocated to settle claims for civil penalties pursuant to PAGA. Your Individual Tier 1 PAGA Payment and/or Individual Tier 2 PAGA Payment is based on the number of eligible pay periods that you worked between April 23, 2013 to [date of preliminary approval], as set forth in the Settlement. You may deposit or cash the check without any further obligation on your part and there is no need for you to contact the settlement administrator, the parties, or the Court. The Court-approved Settlement releases claims for civil penalties under PAGA, among other claims, as described in more detail in the section under the heading "Release of Claims" below.**

## Summary of Case

On or about May 14, 2018, Plaintiff Brandon Harvey filed a putative class action and PAGA representative action on behalf of himself and other employees that Defendant Morgan Stanley Smith Barney LLC employed as Financial Advisors in California at any time between May 14, 2014 through the present.  The Lawsuit alleges that Defendant failed to pay wages, made unlawful wage deductions, violated the California Employee Bond Law, failed to provide accurate itemized wage statements, and failed to indemnify all reasonable and necessary business expenses, enumerating alleged violations of Labor Code §§ 221-224, 226, 400-410, 1174, 1174.5, 1198, 2802 and Cal. Code of Reg., tit. 8, § 11040(8).  Based on these allegations, Plaintiff also alleged unfair competition and sought civil penalties pursuant to PAGA, Labor Code § 2698, *et seq*.  Plaintiff's claims are based on Defendant's Alternative Flexible Grid ("AFG") program.

Defendant denies all claims and allegations in the Lawsuit and asserts that no penalties are due to Plaintiff, the State of California, or any allegedly aggrieved employees. The court has made no determination on the merits of the Lawsuit, but the parties have decided to resolve the action through settlement, which the court has preliminarily approved.

## Release of Claims

The Settlement bars Aggrieved Employees from bringing certain claims against Defendant, described below. The Settlement will fully release and discharge Defendant and its past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, attorneys, consultants, insurers and reinsurers, and their respective successors and predecessors in interest, assigns, subsidiaries, affiliates, and parents (the "Released Parties") from all claims, demands, rights, liabilities, obligations, penalties, attorneys' fees, and causes of action that were pled or could have been pled by Aggrieved Employees in the operative complaint based on the facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions, or failures to act alleged in the operative complaint against Defendant from April 23, 2013 through the date of Preliminary Approval, including but not limited to all claims, demands, rights, liabilities, obligations, penalties, attorneys' fees, and causes of action based on any and all PAGA claims seeking civil penalties under California Labor Code sections 558 and/or 2698 et seq. predicated on any alleged Labor Code violations that are alleged in, or could have been alleged in, the operative Complaint by Aggrieved Employees based on the facts, events, policies, occurrences, acts alleged in the operative Complaint and/or based any alleged unlawful wage deductions, failure to pay wages, cash bond or violations of the California Employee Bond Law, untimely final or other pay, inaccurate itemized wage statements or records, failure to indemnify all necessary business expenses, or any California Labor Code violations alleged in the Complaint (which include Labor Code sections 201-204.2, 221-224, 226, 400-410, 1174, 1174.5, 1198, 2802, and 2804) during the PAGA Period.

These claims that Aggrieved Employees are agreeing to release and discharge are referred to as "PAGA Released Claims," as that term is more fully defined in the Settlement Agreement. This is true whether the PAGA Released Claims are known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist. However, those Aggrieved Employee who do not cash their Individual Settlement Payment shall not have released their claims under the Fair Labor Standards Act.

The Aggrieved Employees agree not to sue or otherwise make a claim against any of the Released Parties for the PAGA Released Claims. The PAGA Payments are paid to the LWDA and the Aggrieved Employees specifically in exchange for the release of the Released Parties from the PAGA Released Claims and for their agreement not to sue concerning the PAGA Released Claims.

Under the Settlement, Aggrieved Employees do not need to do anything in order to receive their portion of the PAGA payments.  Aggrieved Employees have no ability to object or opt out of this PAGA Settlement.

## Tax Information

For tax purposes, the Individual Settlement Payments will be allocated 100% to settlement of claims for expenses, penalties and interest, which will be paid without withholding any amount and shall be reported on an IRS Form 1099.  IRS Forms 1099 (and the equivalent California forms) will be distributed to reflecting the payments they receive under the Settlement. Aggrieved Employees should consult with their tax advisors concerning the tax consequences of the payments they receive under the Settlement.

## Privacy

Because you have a constitutional right of privacy to object to the disclosure of your personal contact information, your personal contact information has not been provided to Plaintiff's counsel, unless you previously received a notice that your personal contact information would be disclosed in connection with these actions and you did not object to that disclosure as set forth in the notice.  The Court has authorized a third-party administrator to send you this notice, and they have agreed to keep your contact information confidential.  Should you have any questions about this notice, you may contact the attorneys prosecuting this case on behalf of the State of California:

Edward J. Wynne
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd.,
Ste. 3-G
Larkspur, CA 94939
ewynne@wynnelawfirm.com
(415) 461-6400

James F. Clapp
CLAPP & LAUINGER LLP
701 Palomar Airport Road,
Suite 300
Carlsbad, CA 92011
jclapp@clapplegal.com
(760) 209-6565

David S. Markun
MARKUN ZUSMAN
FRENIERE & COMPTON
LLP
17383 Sunset Boulevard,
Suite A380
Pacific Palisades, CA 90272
dmarkun@mzclaw.com
(310) 454-5900

## Additional Information

Additionally, you may obtain information by going to the Settlement Administrator's website, please see www._____.com, or you may contact the Settlement Administrator at _____,

[settlement administrator name,

address,

phone number]

THIS NOTICE IS NOT AN EXPRESSION OF ANY OPINION BY THE COURT AS TO THE MERITS OF THE CLAIMS OR DEFENSES BY EITHER SIDE IN THIS PROCEEDING.

PLEASE DO NOT CONTACT THE COURT REGARDING THIS CASE, THE COURT CLERK'S OFFICE, DEFENDANT OR DEFENDANT'S ATTORNEYS TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.

# EXHIBIT 2

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10

11   BRANDON HARVEY, individually and on        Case No. 3:18-cv-02835 WHO
     behalf of all others similarly situated,
12                                              **[PROPOSED] ORDER GRANTING**
                     Plaintiff,                 **PLAINTIFF'S MOTION FOR**
13                                              **PRELIMINARY APPROVAL OF**
             v.                                 **CLASS ACTION SETTLEMENT**
14
     MORGAN STANLEY SMITH BARNEY
15   LLC,

16                   Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4125-7141-8906.3

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
3:18-CV-02835 WHO

1    This matter came before the Court on [DATE AND INFORMATION], with Edward J.

2    Wynne, Wynne Law Firm, James F. Clapp, Clapp & Lauinger, LLP, and David S. Markun,

3    Markun Zusman Freniere & Compton, respectively, appearing as counsel for Plaintiff Brandon

4    Harvey, individually and on behalf of a putative class and aggrieved employees, and Lynne

5    Hermle and Andrew Livingston for Orrick, Herrington & Sutcliffe LLP, appearing as counsel for

6    Defendant Morgan Stanley Smith Barney LLC.  The Court, having carefully considered the

7    briefs, arguments of counsel and all matters presented to the Court and good cause appearing

8    therefore,

9        **IT IS HEREBY ORDERED THAT:**

10       1.      This Court preliminarily approves the Settlement Agreement ("Settlement" or

11   "Settlement Agreement") and finds that the Settlement is within the range of reasonableness as to

12   both the Class Members and Defendant, and that it is the product of good faith, arm's length

13   negotiations between the Parties.

14       2.      This Order incorporates by reference the definitions in the Settlement Agreement,

15   and all terms defined therein shall have the same meaning as set forth in the Settlement

16   Agreement.

17       3.      It appears to the Court on a preliminary basis that: (a) the non-reversionary

18   settlement amount is fair and reasonable to the Class Members when balanced against the

19   probable outcome of further litigation relating to class certification, liability and damages issues

20   and potential appeals; (b) significant investigation, research, formal and informal discovery,

21   analysis, and litigation have been conducted such that counsel for the Parties at this time are able

22   to reasonably evaluate their respective positions; (c) settlement at this time will avoid substantial

23   costs, delay and risks that would be presented by the further prosecution of the litigation; and (d)

24   the proposed Settlement has been reached as the result of intensive, serious and non-collusive

25   negotiations between the Parties facilitated by an experienced mediators.

26       **CLASS CERTIFICATION REQUIREMENTS**

27       4.      The Court hereby conditionally certifies the proposed Class contained in the

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4125-7141-8906.3

- 2 -

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
3:18-cv-02835 WHO

Settlement Agreement and conditionally finds that, solely for the purposes of approving this

Settlement and for no other purpose and with no other effect on this litigation, the proposed

Settlement Class meets the requirements for certification under Federal Rules of Civil Procedure,

Rules 23(a) and 23(b), including that: (a) the proposed class is ascertainable and so numerous that

joinder of all members of the class is impractical; (b) there are predominant questions of law or

fact common to the proposed class, and there is a well-defined community of interest among the

members of the proposed class with respect to the subject matter of the litigation; (c) the claims of

Representative Plaintiff Brandon Harvey are typical of the claims of the Class Members; (d)

Representative Plaintiff Brandon Harvey and Class Counsel will fairly and adequately protect the

interests of the Class Members; (e) a class action is superior to other available methods for an

efficient method of adjudication of this controversy; and (f) Class Counsel is qualified to act as

counsel for the Representative Plaintiff in his individual and representative capacities.

5.      For the purposes of this Settlement, the Class Members are defined as follows:  all

individuals employed by MSSB within the State of California from May 14, 2014, through the

date of Preliminary Approval who worked as Financial Advisors and/or Private Wealth Advisors.

Aggrieved Employees are defined as all current and former Financial Advisors who were

employed by Defendant within the State of California at any time during April 23, 2013 through

the date of Preliminary Approval.

6.      "Cash Payment Amount" is Eight Million Five Hundred Thousand Dollars

7.      The Court provisionally finds, solely for the purposes of approving this Settlement

and for no other purpose and with no other effect on this litigation, Edward J. Wynne, Wynne

Law Firm, James F. Clapp, Clapp & Lauinger, LLP, and David S. Markun,  Markun Zusman

Freniere & Compton, respectively, for purposes of this Settlement to be sufficiently experienced

and proficient in class action proceedings that they may act as Class Counsel.

8.      The Court provisionally appoints, solely for the purposes of approving this

Settlement and for no other purpose and with no other effect on this litigation, Representative

Plaintiff Brandon Harvey as Class Representative.

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4125-7141-8906.3

- 3 -

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
3:18-CV-02835 WHO

**SETTLEMENT ADMINISTRATOR**

9.      The Court provisionally appoints KCC, Inc. as Settlement Administrator to carry out the Administration duties as set forth in the Settlement.

10.     This includes, but is not limited to, the duty to build and maintain a website which shall provide all pertinent information relating to this class settlement, including, without limitations, the following: (i) the name of the lawsuit; (ii) the name of the Court; (iii) Settlement Administrator's name and contact information; and (iv) Class Counsel's names and contact information. Also, available on the website will be the following documents in PDF-format for download: The Settlement, the Second Amended Complaint, the Notice, and the Preliminary Approval Order.

**NOTICE**

11.     The Court finds that the proposed "Notice of Pendency of Class Action" ("Notice") attached to the Settlement Agreement as Exhibit 1, fairly, plainly and adequately advises Class Members of  (i)  the terms of the Settlement; (ii) the automatic distribution of the Individual Settlement Payment to Settlement Class Members; (iii) the amount of the Individual Settlement Payment expected to be paid; (iv) how to dispute the number of workweeks upon which their Individual Settlement Payments will be based; (v) the Released Claims; (vi) the conditional certification of the class; (vii) the Preliminary Approval of the Settlement; (viii) the procedures for submitting a valid Exclusion Request to opt out of the Class; (ix) the procedures for objecting to the Settlement and appearing at the Final Approval Hearing; and (x) the date set for the Final Approval Hearing.  The Court further finds that the Notice clearly comports with all constitutional requirements, including those of due process.

12.     The Court hereby APPROVES the Notice.

13.     Notice shall be provided to the Class Members as set forth in the Settlement. Defendant will provide the Settlement Administrator with each Class Member's full name; last known mailing address and telephone number; Individual Class Pay Periods and Individual PAGA Periods that each individual worked as a Financial Advisor (the "Class List") within 30

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4125-7141-8906.3

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
3:18-cv-02835 WHO

1   days after Preliminary Approval.

2      14.   The Settlement Administrator shall mail a copy of the Notice within 14 calendar

3   days after receiving the Class List spreadsheet.

4      15.   The Court further finds that the mailing of the Notice to Class Members at their

5   last known home addresses as specifically described within the Agreement, with measures taken

6   for verification of home addresses and skip tracing set forth therein, constitutes an effective

7   method of notifying Class Members of their rights with respect to the class action, the Settlement,

8   their right to request exclusion from the Class.

9      **EXCLUSIONS/OPT-OUTS**

10      16.   The Court hereby APPROVES the proposed procedure for exclusion or opting out

11   of the Class.  Each Class Member will have 45 days after the date on which the Settlement

12   Administrator first mails the Notice to opt out by submitting an Exclusion Request as set forth in

13   the Settlement.

14      17.   Class Members, with the exception of the Class Representative, may opt out of the

15   Settlement.  Class Members who wish to exercise this option must timely submit a request for

16   exclusion to the Settlement Administrator postmarked by the Objection/Exclusion Deadline or 15

17   calendar days after a Notice is re-mailed in the case of an undelivered Notice, whichever is later.

18   The request for exclusion must include the Class Member's name, signature, date, last 4 digits of

19   Social Security Number, and the following statement, or something similar to, "I request to be

20   excluded from the class action proceedings in the matter of *Brandon Harvey v. Morgan Stanley*

21   *Smith Barney LLC*, Case No. 18-cv-02835."  The date of the postmark on the return-mailing

22   envelope shall be the exclusive means used to determine whether a request for exclusion has been

23   timely submitted.

24      18.   No request for exclusion may be made on behalf of a group of members of the

25   Class.

26      19.   By submitting such a request for exclusion, a Class Member shall be deemed to

27   have exercised his or her option to opt out of the class action lawsuit.  Any member of the Class

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4125-7141-8906.3

- 5 -

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
3:18-CV-02835 WHO

1   who requests exclusion from the Settlement will not be entitled to any share of the Settlement,

2   will not be bound by the Settlement, and will not have any right to object, appeal or comment

3   thereon.  Members of the Class who fail to submit a valid and timely request for exclusion shall

4   be bound by all terms of the Settlement and the Final Judgment entered in this Action, regardless

5   of whether they otherwise have requested exclusion from the Settlement.  However, Class

6   Members must cash their Individual Class Settlement Payment checks in order to release their

7   Fair Labor Standards Act claims.

8          20.     Any person who wishes to object to the Settlement shall notify the Court, with

9   service to Class Counsel, and defense counsel, in writing of his or her intent to object to the

10  Settlement by following the procedures set forth in the Notice.  Any objection to the proposed

11  settlement must be in writing, clearly identify the case name and number, and comply with

12  Federal Rule of Civil Procedure 23(e)(5).  To be considered timely, the objection must be filed

13  with the Court, pursuant to the Court's procedures for filing, no later than the Objection/Exclusion

14  Deadline or 15 calendar days after the re-mailing of the Notice in the case of an undelivered

15  Notice, whichever is later.

16         21.     No later than 14 calendar days before the Final Approval and Fairness Hearing, the

17  Settlement Administrator shall file a declaration under penalty of perjury advising the Court with

18  a complete list of all members of the Class who have timely requested exclusion from the

19  Settlement.

20      **PAGA**

21         22.     Pursuant to applicable case law, PAGA aggrieved employees have no ability to

22  exclude themselves or object to the Settlement.  *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d

23  425, 436 (9th Cir. 2015) ("Unlike Rule 23(c)(2), PAGA has no notice requirements for unnamed

24  aggrieved employees, nor may such employees opt out of a PAGA action."); *Ochoa-Hernandez v.*

25  *Cjaders Foods*, No. 08-2073, 2010 WL 1340777, at *5 (N.D. Cal. Apr. 2, 2010) ("Unnamed

26  employees need not be given notice of the PAGA claim, nor do they have the ability to opt-out of

27  the representative PAGA claim. There is no indication that the unnamed plaintiffs can contest a

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4125-7141-8906.3

- 6 -

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
3:18-CV-02835 WHO

settlement, if any, reached between the parties.").  Therefore, the exclusion and objection procedures above do not apply to any PAGA Aggrieved Employee unless they are also a Class Member, and then only to their participation in the Class.

## FINAL APPROVAL

23.     Pursuant to the Northern District of California Local Rules, no later than 35 days before the Final Approval Hearing, Plaintiff will file a Motion in Support of Final Approval of the Settlement.  As part of the Motion for Final Approval, in addition to approval of the Settlement generally, Class Counsel will seek approval of their Fees and Expenses, the Named Plaintiff Award, and the Administration Costs, estimated to be $2,593,750, $10,000, and $32,000, respectively.

24.     The Final Approval hearing shall be held on _____, 2019 at _____ _.m. in Courtroom____, to determine whether the proposed Settlement is fair, adequate, reasonable, and should be approved, and to determine the Fee and Cost Awards.

25.     Should the proposed Settlement be approved, following the Final Approval Hearing, the Court shall enter judgment in accordance with the Settlement that will adjudicate the rights of all Settlement Class Members and Aggrieved Employees, including the named Plaintiff.

## CHRONOLOGY

26.     Unless otherwise modified by the Court, the dates for performance are as follows:

| Date/Triggering Event: | Event: |
| --- | --- |
| Order Granting Preliminary Approval | Court orders preliminary approval of Settlement and conditional certification of Class |
| 30 calendar days after Preliminary Approval | Deadline for Defendant to provide the Class List to Settlement Administrator, Settlement ¶ 67 |

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4125-7141-8906.3

- 7 -

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
3:18-CV-02835 WHO

| 14 calendar days after receipt of Class List | Deadline for Settlement Administrator to mail Notice, Settlement ¶ 68 |
|---|---|
| 45 days after Notice mailed | Last day for any Class Member to object to the Settlement or request exclusion from the Class, Settlement ¶ 32. |
| 7 calendar days after the Exclusion Deadline | Last Day for Settlement Administrator to provide Parties with list of all valid exclusion requests, Settlement ¶ 74 |
| 10 calendar days or more before Final Approval Hearing | Last Day for Settlement Administrator to provide declaration of due diligence and proof of mailing for Notice to counsel, Settlement ¶ 70 |
| 35 days before Final Approval Hearing | Last Day for Class Counsel to file Motion for Final Approval. |

## NO ADMISSION OF LIABILITY, RETURN TO PRIOR STATUS, AND STAY OF PROCEEDINGS

27.     Neither the Settlement nor this Preliminary Approval Order is an admission of liability, fault, or wrongdoing by Defendant, or any of the Releasees, nor a finding of the validity of any claims in the Action or any violation of law. Neither this Preliminary Approval Order, the Settlement, nor any document referred to herein, nor any action taken to carry out the Settlement is, may be construed as, or may be used as, an admission or concession by or against Defendant, or any of the Releasees, of any fault, wrongdoing, or liability whatsoever.  Neither this Preliminary Approval Order, any term or provision of the Settlement, nor any of the negotiations

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4125-7141-8906.3

- 8 -

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
3:18-CV-02835 WHO

or proceedings connected with it, shall be offered or received in evidence in any pending or future

civil, criminal or administrative action or proceeding, other than such proceedings that may be

necessary to consummate or enforce the Settlement; however, Defendant or any Releasee may

use the Settlement and/or any related document, in any action that may be brought against them in

order to support a defense or counterclaim based on principles of res judicata, collateral estoppel,

release, good faith settlement, judgment bar or reduction, accord and satisfaction, or any other

theory of claim preclusion or issue preclusion or similar defense or counterclaim.

28.     IT IS FURTHER ORDERED that if for any reason the Court does not execute and

file an Order Granting Final Approval, or the Payment Obligation and Release Date, as defined in

the Settlement, does not occur for any reason whatsoever, the Settlement that is the subject of this

Order, and all evidence and proceedings had in connection therewith, shall be without prejudice

to the status quo ante rights of the Parties to the litigation, as more specifically set forth in the

Settlement, and this Order shall be rendered null and void and shall be vacated.

29.     IT IS FURTHER ORDERED that pending further order of this Court, all

proceedings in this matter except those contemplated herein and in the Settlement are stayed.

**IT IS SO ORDERED**.

Dated: ___          , 2019

_____

HON. WILLIAM H. ORRICK
U.S. District Judge

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4125-7141-8906.3

- 9 -

[PROPOSED] ORDER GRANTING
PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT
3:18-CV-02835 WHO

# EXHIBIT 3

1
Edward J. Wynne (165819)
ewynne@wynnelawfirm.com
2
WYNNE LAW FIRM
Wood Island
3
80 E. Sir Francis Drake Blvd., Ste. 3-G
Larkspur, CA 94939
4
Telephone: (415) 461-6400
Facsimile: (415) 461-3900
5

6

James F. Clapp (145814)
7
jclapp@clapplegal.com
CLAPP & LAUINGER LLP
8
701 Palomar Airport Road, Suite 300
Carlsbad, CA 92011
9
Telephone: (760) 209-6565
Facsimile: (760) 209-6565
10

Attorneys for Plaintiff BRANDON HARVEY,
11
individually and on behalf of all others
similarly situated
12

David S. Markun (108067)
dmarkun@mzclaw.com
Jeffrey K. Compton (142969)
jcompton@mzclaw.com MARKUN
ZUSMAN FRENIERE &
COMPTON LLP
17383 Sunset Boulevard, Suite
A380 Pacific Palisades, CA 90272
Telephone: (310) 454-5900
Facsimile: (310) 454-5970

13

**UNITED STATES DISTRICT COURT**

14

**NORTHERN DISTRICT OF CALIFORNIA**

15

16
BRANDON HARVEY, individually and on
behalf of all others similarly situated,

17
                              Plaintiff,

18
v.

19
MORGAN STANLEY SMITH BARNEY
LLC,
20

21
                              Defendant.

22

23

24

**Case No. 3:18-cv-02835-WHO**

**SECOND AMENDED CLASS ACTION
COMPLAINT FOR:**

1. **California Bus. & Prof. Code § 17200**
2. **California Labor Code §§ 201-204,
   204.2, 221, 223, 400-410, 2802, 2804
   and Cal. Code Reg. tit. 8, § 11040(8)**
3. **California Labor Code §§ 226, 1174,
   1174.5**
4. **PAGA (Labor Code § 2699)**

**JURY TRIAL DEMANDED**

25

26

27

28

**INTRODUCTION**

1.      Plaintiff Brandon Harvey ("Plaintiff"), by and through his attorneys, make the following allegations upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters.

2.      Plaintiff brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of current and former employees of Defendant Morgan Stanley Smith Barney LLC ("Morgan Stanley" or "Defendant") employed as Financial Advisors, or the functional equivalent, however titled, (which position includes the titles "Financial Consultant," "Securities Broker," "Stockbroker," "Investment Advisor," and/or "Investment Representative") (collectively referred to as "Financial Advisor") who worked in California at any time within the last four years of the filing of this action and who suffered damages as a result of Defendant's violations of California labor laws, including: (1) unlawful pay deductions; (2) failure to reimburse reasonable and necessary business expenses; (3) failure to provide timely wages; (4) failure to provide accurate itemized wage statements.  Additionally, Plaintiff, in his capacity as an aggrieved employee on behalf of the State of California Labor and Workforce Development Agency, brings a claim for civil penalties under the Private Attorneys General Act of 2004 ("PAGA"), Labor Code section 2699 et seq.

**PARTIES**

3.      Plaintiff Harvey is a citizen of the State of California. Harvey is a former Morgan Stanley Financial Advisor who worked in San Francisco, California within the three years preceding the filing of this action.

4.      During the relevant period covered by this action, Defendant Morgan Stanley was and is a Delaware corporation with its principal place of business in New York. Morgan Stanley transacts business in this judicial district.

5.      The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

6.      All of Plaintiff's claims stated herein are asserted against Defendant and any of its owners, predecessors, successors, subsidiaries, and/or assigns.

## **VENUE AND JURISDICTION**

7.      Venue is proper in this Court because Plaintiff was employed in this judicial district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

8.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because this is a class action, there is diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $5,000,000, exclusive of interest and costs. Furthermore, none of the exceptions in 28 U.S.C. § 1332(d) applies.

## **CLASS ALLEGATIONS**

9.      Plaintiff brings this action on behalf of himself and on behalf of the class pursuant to Federal Rule of Civil Procedure 23.

10.     Plaintiff Harvey seeks certification of the following class:

> All individuals employed by Defendant as a Financial Advisor or the functional equivalent however titled in California at any time from four years prior to the filing of this complaint to the time the case is certified as a class action.

11.     As a result of Defendant's violation of California law, Plaintiff and the other members of the class were unlawfully under-compensated for their work and damaged thereby.

12.     <u>Numerosity</u>. Plaintiff is informed and believes and thereon alleges that the members of the class are so numerous that joinder is impractical.

13.     <u>Typicality and Adequacy</u>. There are questions of law and fact common to Plaintiff and the other members of the proposed class he represents, and therefore, Plaintiff is similarly situated to the other members of the proposed class he represents and is an adequate representative of the class. Plaintiff's claims are typical of the claims of the other members of the class he represents. Plaintiff suffered similar injuries as those suffered by the other members of the class as a result of Defendant's common policies and practices regarding the reimbursement of business expenses. In addition, Plaintiff will fairly and adequately protect the interests of the members of

the class. Plaintiff has no interest that is adverse to the interests of the other class members. Plaintiff has retained attorneys who are competent and experienced in the prosecution of wage and hour class action litigation.

14.     Ascertainability. The class is ascertainable in that its members can be identified and located using information contained in Defendant's payroll and personnel records.

15.     Commonality. There are common questions of law and fact that predominate over questions which may affect only individual members of the class, including, but not limited to, the following:

a.     whether Defendant's policies and procedures for deducting from commissions or other wages is unlawful;

b.     whether class members incurred business related expenses that were reasonably necessary and whether Defendant had a policy and practice of not reimbursing class members for such expenses; and,

c.     whether Defendant's wage statements complied with California law.

16.     Superiority. A class action is superior to other available means for the fair and efficient adjudication of this controversy since individual joinder of all members of the proposed class is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the proposed class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them while an important public interest will be served by addressing the manner as a class action. The cost to the court system of adjudication of such individualized litigation would be substantial. Individualized litigation would also present the potential for inconsistent or contradictory judgments.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

17.     Defendant sold and sells securities and other financial products with offices nationwide and in this judicial district.

18.     Plaintiff and other Financial Advisors were primarily engaged in sales of investments and financial products to individuals.

19.     Plaintiff and all Financial Advisors were covered by Defendant's Compensation Plan. The Compensation Plan sets forth Defendant's compensation policies and procedures applicable to all Financial Advisors.  Defendant's policies and/or procedures result in Financial Advisors not timely receiving their wages during employment and at termination.

20.     Defendant willfully, intentionally and knowingly did not provide Plaintiff and other Financial Advisors with accurate itemized statements showing all of the information required pursuant to Labor Code §§ 226 and 1174 and Plaintiff and other Financial Advisors were injured thereby.

21.     Defendant has maintained company-wide policies and/or practices that require Financial Advisors to pay the ordinary business expenses of Defendant without reimbursement. Defendant's policy and practice of having class members pay for Defendant's ordinary business expenses causes class members to forfeit their wages to Defendant during employment and at termination.

## FIRST CAUSE OF ACTION

### Bus. & Prof. Code § 17200 *et seq.*

22.     Plaintiff incorporates the allegations contained in the foregoing paragraphs as though repeated here.

23.     California Labor Code §§ 221, 223, 400-410, 2802, and Title 8 of the California Code of Regulations, § 11040(8) generally state that an employer may not deduct from or reduce an employee's wages for the purpose of shifting the employer's ordinary cost of doing business to the employee.

24.     Plaintiff and all Morgan Stanley Financial Advisors in California routinely incur reasonable and necessary business expenses without reimbursement by Morgan Stanley. For example, Plaintiff and other California Financial Advisors incur travel, parking, mileage,

- 5 -

education, client and prospect entertainment, and marketing expenses, as well as ticket charges, equipment costs, licensing fees, subscriptions, losses due to trading errors, and wages paid to support staff, without reimbursement by Morgan Stanley. Many of these expenses are paid through deductions from the Financial Advisors' wages. Section 2802(a) requires a California employer to indemnify an employee for "all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties...." In addition, Labor Code sections 221-224, 400-410 and 1198 (which incorporates Wage Order 4-2001, section 8) prevent an employer from taking unauthorized or improper deductions from wages. Morgan Stanley's conduct violates these Labor Code sections.

25.     Defendant has committed an act of unfair competition by failing to reimburse these amounts to Plaintiff and the members of the class, deducting these amounts from the compensation of Plaintiff and the class, and failing to pay these amounts to Plaintiff and class members during employment at termination.

26.     Defendant has committed an act of unfair competition by failing to timely pay Financial Advisors' wages during their employment and/or at termination.

27.     Pursuant to Business & Professions Code § 17203, Plaintiff requests an order requiring Defendant to make restitution of all unreimbursed business expenses due to him and the class in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

**Labor Code §§ 201-204, 204.2, 221, 223, 400-410, 2802, 2804, and Cal. Code Reg. tit. 8, § 11040(8)**

28.     Plaintiff incorporates the allegations contained in the foregoing paragraphs as though repeated here.

29.     Labor Code § 201 provides, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately. . . ."

30.     Labor Code § 202 provides, "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or

- 6 -

her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. . . ."

31.     Labor Code § 203 provides, "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

32.     Labor Code § 204 provides, "All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. . . ."

33.     Labor Code § 204.2 provides that salaries for certain exempt employees "as set forth pursuant to Section 13(a)(1) of the Fair Labor Standards Act of 1938, as amended through March 1, 1969, (Title 29, Section 213(a)(1), United States Code) in Part 541 of Title 29 of the Code of Federal Regulations, as that part now reads, earned for labor performed in excess of 40 hours in a calendar week are due and payable on or before the 26th day of the calendar month immediately following the month in which such labor was performed."

34.     Labor Code § 221 provides, "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

35.     Labor Code § 223 provides, "Where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

36.     Labor Code §§ 400-410 ("Employee Bond Law") provide the limited circumstances under which an employer can exact a cash bond from its employees. These provisions are designed to protect employees against the very real danger of an employer taking or misappropriating employee funds held by the employer in trust.

37.     Labor Code § 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."

38.     Labor Code § 2804 provides "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State."

39.     Title 8 of the California Code of Regulations, § 11040(8), states, "No employer shall make any deduction from the wage or require any reimbursement from an employee for any cash shortage, breakage, or loss of equipment, unless it can be shown that the shortage, breakage, or loss is caused by a dishonest or willful act, or by the gross negligence of the employee."

40.     These and related statutes are designed to prevent employers from using secret deductions or other accounting practices to drive down the wage scale or pay employees less than the stated wage. They also reflect California's fundamental and substantial public policy protecting employee wages.

41.     Plaintiff and the class were subject to deductions from their compensation by Defendant which were not the result of dishonest, willful, or grossly negligent acts by those employees, but instead were the ordinary costs of doing business. Defendant was obligated to indemnify Plaintiff and the other members of the class for such expenses as the cost of travel, parking, mileage, education, client and prospect entertainment, and marketing expenses, as well as ticket charges, equipment costs, licensing fees, subscriptions, losses due to trading errors, and wages paid to support staff. These expenses were reasonable and necessarily incurred by Plaintiff and the class. Defendant's policy and practice of having class members pay for Defendant's ordinary business expenses caused class members to forfeit their wages to Defendant.

42.     Additionally, Plaintiff and the class were subject to Morgan Stanley's compensation policies and procedures which resulted in untimely receipt of wages at termination and/or during their employment.  Defendant unlawfully and willfully failed to timely pay wages in violation of Labor Code §§ 201, 202, 203, 204 and 204.2.

- 8 -

43.     Defendant unlawfully charged and failed to reimburse its Financial Advisors in violation of Labor Code §§ 221, 223, 400-410, 2802, 2804 and Cal. Code Reg. Tit. 8, § 11040(8) and Plaintiff and similarly situated members of the class are entitled to reimbursement for, and repayment of, these deductions, plus interest and attorneys' fees and costs.

44.     As a result of Defendant's violations of Labor Code § 2802, Defendant is also liable for attorneys' fees and costs under Labor Code § 2802(c).

**THIRD CAUSE OF ACTION**

**Labor Code §§ 226, 1174, and 1174.5**

45.     Plaintiff incorporates the allegations contained in the foregoing paragraphs as though repeated here.

46.     Defendant, as a matter of corporate policy did not maintain or provide accurate itemized pay statements in violation of Labor Code §§ 226 and 1174.

47.     For instance, Defendant did not state or did not accurately state, *inter alia*, all deductions in Plaintiff's and other Financial Advisors' pay statements. Defendant's failure to maintain accurate itemized statements was willful, knowing, intentional, and the result of Defendant's custom, habit, pattern and practice. Defendant's failure to maintain accurate itemized statements was not the result of isolated, sporadic or unintentional behavior. Due to Defendant's failure to comply with the requirements of Labor Code §§ 226 and 1174, Plaintiff and other Financial Advisors were injured thereby.

48.     Such a pattern and practice as alleged herein is unlawful and creates an entitlement to recovery by Plaintiff and the members of the Class for all damages and penalties pursuant to Labor Code §§ 226 and 1174.5, including interest thereon, penalties, attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**

**(Labor Code § 2699 et seq.)**

49.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

50.     As alleged above, Defendant failed to comply with the California Labor Code. As such, Plaintiff is an "aggrieved employee" as defined in Labor Code § 2699(a). Pursuant to Labor Code § 2699, the Labor Code Private Attorneys General Act of 2004, Plaintiff brings this action on behalf of himself and other current and former Financial Advisors against Morgan Stanley Smith Barney LLC and seeks recovery of applicable civil penalties as follows:

a.     where civil penalties are specifically provided in the Labor Code for each of the violations alleged herein, Plaintiff seeks recovery of such penalties;

b.     where civil penalties are not established in the Labor Code for each of the violations alleged herein, Plaintiff seeks recovery of the penalties established in § 2699(e) of the Labor Code Private Attorneys General Act of 2004, and in accordance with § 200.5 of the Labor Code.

51.     On April 23, 2014, written notice of Defendant's Labor Code violations was given by an aggrieved employee to the Labor and Workforce Development Agency ("LWDA") and to Defendant via certified mail on behalf of all current and former California employees of Morgan Stanley Smith Barney, LLC, including Plaintiff Harvey.  The LWDA did not respond to the notice within the time provided by Labor Code § 2699.3.  Thereafter, on May 27, 2014, a proxy standing in the shoes of the LWDA commenced a civil action concerning Defendant's Labor Code violations.  The LWDA, through Plaintiff Harvey as its proxy, seeks to pursue those Labor Code violations in this action, as well.

52.     On May 9, 2018, Plaintiff caused to be served written notice via electronic submission to the Labor and Workforce Development Agency and via certified mail to Defendant Morgan Stanley Smith Barney LLC of Plaintiff's intent to amend the complaint in this instant action to add a cause of action pursuant to Labor Code § 2699 *et seq*.

53.     The LWDA did not respond to the notice within the time provided by Labor Code § 2699.3.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:

1.    For an order certifying the proposed Class and designating this action as a class action pursuant to Fed.R.Civ.P. 23;

2.    For an order appointing Plaintiff and his counsel to represent the proposed subclasses, as defined herein;

3.    For compensatory damages according to proof;

4.    For an Order requiring Defendant to make restitution of all unreimbursed business related expenses that Plaintiff and the class were required to incur for Defendant's benefit;

5.    For an order requiring Defendant to provide an accounting of all sums unlawfully charged back and withheld from compensation due to Plaintiff and the other members of the class;

6.    For interest according to proof;

7.    For penalties and liquidated damages alleged herein;

8.    For reasonable attorneys' fees and costs; and,

9.    For such other relief the Court deems just and proper.

DATED: _____          WYNNE LAW FIRM
MARKUN ZUSMAN FRENIERE &
COMPTON LLP
CLAPP & LAUINGER LLP

*/s/Edward J. Wynne*
By: Edward J. Wynne

Attorneys for Plaintiff BRANDON HARVEY individually and on behalf of all others similarly situated

## DEAMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial.

DATED: _____          WYNNE LAW FIRM
MARKUN ZUSMAN FRENIERE &
COMPTON LLP
CLAPP & LAUINGER LLP

- 11 -

1

  /s/ Edward J. Wynne_____

2

By: Edward J. Wynne

3

Attorneys for Plaintiff BRANDON HARVEY

4

individually and on behalf of all others similarly
situated

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT