Jahan C. Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com
Email: rsun@outtengolden.com

Michael J. Scimone (*pro hac vice*)
Christopher M. McNerney (*pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
Email: mscimone@outtengolden.com
Email: cmcnerney@outtengolden.com

Laura Sullivan (Cal. Bar No. 220529)
LAW OFFICE OF LAURA SULLIVAN
423 South Estate Drive
Orange, CA 92869
Telephone: (714) 744-1522
Facsimile: (714) 744-1524
Email: laurasullivan@laurasullivanlaw.com

Mark Humenik (Cal. Bar No. 231917)
HABER POLK KABAT
423 South Estate Drive
Orange, CA 92869
Telephone: (949) 636-5754
Facsimile: (216) 241-0739
Email: mhumenik@haberpolk.com

Pooja Shethji (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW, Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
Email: pshethji@outtengolden.com

*Attorneys for Plaintiff-Intervenors, Proposed Class Members,
and on behalf of the Aggrieved Employees*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

BRANDON HARVEY, on behalf of himself and all others similarly situated,

        Plaintiff,

    v.

MORGAN STANLEY SMITH BARNEY LLC,

        Defendant.

Case No. 3:18-cv-02835-WHO

**BRIEF OF AMICI CURIAE TRACY CHEN AND MATTHEW LUCADANO IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL**

Judge: Hon. William H. Orrick
Date: June 12, 2019
Time: 2:00 p.m.
Room: Courtroom 2, 17th Floor

i

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

PROCEDURAL HISTORY ............................................................................................. 2

I.      From 2014-19, the Chen PAGA Lawsuit Was Litigated to the Eve of Trial .................... 2

II.     In 2018, Harvey Filed And Settled His Rule 23 And PAGA Lawsuit. ........................... 2

III.    Settlement Discussions ............................................................................................. 3

IV.     Intervention ............................................................................................................... 4

V.      The *Harvey* Settlement ............................................................................................. 4

ARGUMENT ................................................................................................................... 5

I.      This Is a Classic Reverse Auction. .......................................................................... 5

II.     Harvey Ignored the Procedural Guidance And the Court's Instruction. ...................... 5

III.    The Settlement Contains Incurable Defects And is Not Fair, Adequate, Or Reasonable .. 6

        A.      Careful Scrutiny Is Required at Preliminary Approval .......................................... 6

        B.      The Overbroad PAGA Release Is an Uncurable Defect. ...................................... 8

                i.      Harvey's PAGA Claim Has a One-Year Limitations Period, Only ........... 8

                ii.     Harvey Cannot Invoke Equitable Tolling or Relation Back. ..................... 9

                iii.    Harvey Cannot Waive Administrative Requirements ................................ 9

        C.      In Valuing the Settlement, Harvey Fails to Consider *Chen*'s Significance. ......... 10

                i.      Harvey Does Not Consider *Chen* or Its Strength. ................................... 11

                ii.     The *Chen* Plaintiffs Defeated Summary Adjudication. ........................... 12

                iii.    *Chen* Is Manageable, Even if *Harvey* Might Not Be. ............................. 13

                iv.     Class Certification Poses No Risk in *Chen*. ............................................ 14

        D.      Harvey's Settlement Amount Is Unreasonably Low. ......................................... 14

                i.      Total Exposure Is Significantly More than Harvey Estimates ................ 14

                ii.     Comparator Settlements Highlight That Harvey's Settlement Value Is Unreasonably Low. ................................................................................. 15

                iii.    The Expense Fund's Value Is Illusory And Distorting ............................ 17

                iv.     Harvey's Steep Discount Is Not Otherwise Justified ............................... 17

iii

E.    Harvey Allocates an Arbitrary Amount to Settle the PAGA Claim. .................. 18

    i.    The PAGA Allocation Is Arbitrary And Too Low. ............................... 18

    ii.    Harvey Has No Basis for a "Discretionary" Discount. ........................... 19

F.    Harvey's Settlement Is Seriously Flawed in Additional Ways. ........................... 19

IV.    The Settlement Class Cannot Be Certified. ....................................................... 21

A.    Harvey Fails to Provide Sufficient Information. ................................................. 21

B.    Harvey Is Not an Adequate Class Representative. .............................................. 22

C.    Harvey's Counsel Have Misrepresented Crucial Facts to the Court. ................. 23

D.    *This* Class Settlement Is Not a Superior Way to Resolve the Dispute. ............... 24

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Acosta v. Trans Union, LLC,*
   243 F.R.D. 377 (C.D. Cal. 2007) .................................................................23

*Aguilar v. Zep Inc.,*
   No. 3-cv-00563-WHO, 2014 WL 4245988 (N.D. Cal. Aug. 27, 2014) ..................................12

*Alberto v. GMRI, Inc.,*
   252 F.R.D. 652 (E.D. Cal. 2008) .................................................................21

*Amalgamated Transit Union v. Superior Court,*
   209 P.3d 937 (Cal. 2009) .................................................................9

*In re Bluetooth Headset Prods. Liab. Litig.,*
   654 F.3d 935 (9th Cir. 2011) .................................................................10, 24

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980).................................................................24

*Brecher v. Citigroup Glob. Mkts., Inc.,*
   No. 09-cv-1344 (S.D. Cal.).................................................................*passim*

*Brown v. Ralphs Grocery Co.,*
   239 Cal. Rptr. 3d 519 (Cal. Ct. App. 2018).................................................................8, 9

*Caliber Bodyworks, Inc. v. Superior Court,*
   36 Cal. Rptr. 3d 31 (Cal. Ct. App. 2005).................................................................8

*Chavez v. PVH Corp.,*
   No. 13-CV-01797-LHK, 2015 WL 581382 (N.D. Cal. Feb. 11, 2015).................................................21

*Christensen v. Hillyard, Inc.,*
   No. 13-CV-04389-NC, 2014 WL 3749523 (N.D. Cal. July 30, 2014).................................................7

*Collier v. City of Pasadena,*
   191 Cal. Rptr. 681 (Cal. Ct. App. 1983).................................................................9

*Cotter v. Lyft, Inc.,*
   176 F. Supp. 3d 930 (N.D. Cal. 2016).................................................................7, 15, 18, 19

*Davis v. Farmers Ins. Exchg.,*
   200 Cal. Rptr. 3d 315 (Cal Ct. App. 2016).................................................................11, 12

*Eddings v. DS Servs. of Am., Inc.,*
   No. 15-CV-02576-VC, 2016 WL 3390477 (N.D. Cal. May 20, 2016).................................................7

*Evans v. Jeff D.*,
    475 U.S. 717 (1986)................................................................................24

*Garett v. Morgan Stanley & Co.*,
    No. 04-cv-1858 (S.D. Cal.)....................................................................19

*Gonzalez v. CoreCivic of Tenn., LLC*,
    No. 16 Civ. 1891, 2018 WL 4388425 (E.D. Cal., Sept. 13, 2018)....................7, 18

*Goyal v. CSX Intermodal Terminals, Inc.*,
    No. 17-cv-06081-EMC, 2018 WL 4649829 (N.D. Cal. Sept. 25, 2018)...........11, 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ..........................................................21, 24

*In re Hewlett-Packard Co. S'holder Derivative Litig.*,
    No. 12-CV-06003-CRB, 2014 WL 7240144 (N.D. Cal. Dec. 19, 2014) ................7

*In re High-Tech Emp. Antitrust Litig.*,
    No. 11-CV-02509-LHK, 2014 WL 3917126 (N.D. Cal. Aug. 8, 2014)................7

*Hunt v. VEP Healthcare, Inc.*,
    No. 16-cv-04790-VC, 2017 WL 3608297 (N.D. Cal. Aug. 22, 2017) ...............6

*Iskanian v. CLS Transp. LA, LLC*,
    327 P.3d 129 (Cal. 2014) ...................................................................9

*Knisley v. Network Assocs., Inc.*,
    312 F.3d 1123 (9th Cir. 2002) .............................................................24

*Landers v. Quality Commc'ns, Inc.*,
    771 F.3d 638 (9th Cir. 2014) ...............................................................22

*Litty v. Merrill Lynch & Co.*,
    No. 14 Civ. 425, 2015 WL 4698475 (C.D. Cal. Apr. 27, 2015)..................15, 16, 21

*Maciel v. Bar 20 Dairy, LLC*,
    No. 17 Civ. 902, 2018 WL 5291969 (E.D. Cal., Oct. 23, 2018) ...................15

*McGuire v. Int'l Paper Co.*,
    No. 92 Civ. 593, 1994 WL 261360 (S.D. Miss. Feb. 18, 1994)....................25

*Noe v. Superior Court*,
    187 Cal. Rptr. 3d 836 (Cal. Ct. App. 2015) ..............................................8

*O'Connor v. Uber Techs., Inc.*,
    201 F. Supp. 3d 1110 (N.D. Cal. 2016) ...........................................7, 18, 19

*Pineda v. Bank of Am., N.A.*,
    241 P.3d 870 (Cal. 2010) ..............................................................8, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Pugel v. Morgan Stanley*,
   221 F. App'x 683 (9th Cir. 2007) ...................................................................................19

*Steinberg v. Morgan Stanley*,
   No. 06 Civ. 26288 (S.D. Cal.)...........................................................................................19

*Stoddart v. Express Servs., Inc.*,
   No. 12 Civ. 1054, 2019 WL 414489 (E.D. Cal. Feb. 1, 2019) ....................................8

*True v. Am Honda Motor Co.*,
   749 F. Supp. 2d 1052 (C.D. Cal. 2010) .......................................................................23

*Tsyn v. Wells Fargo*,
   No. 14-cv-02552-LB (N.D. Cal.)..................................................................15, 16, 17

*Villacres v. ABM Indus., Inc.*,
   117 Cal. Rptr. 3d 398 (Cal. Ct. App. 2010) ................................................................10

*Zakaryan v. The Men's Wearhouse*,
   245 Cal. Rptr. 3d 333 (Cal. Ct. App. 2019) ...............................................................10

**STATUTES**

Cal. Civil Code § 1668................................................................................................................9

Cal. Civil Code § 3513................................................................................................................9

Cal. Code Civ. Proc. § 340 .........................................................................................................8

Cal. Lab. Code § 201 ..............................................................................................3, 15, 20, 22

Cal. Lab. Code § 202 ..............................................................................................3, 15, 20, 22

Cal. Lab. Code § 203 ..........................................................................................................14, 15

Cal. Lab. Code § 204 .................................................................................................................3

Cal. Lab. Code § 221 ....................................................................................11, 12, 13, 14

Cal. Lab. Code § 224 .............................................................................................................14

Cal. Lab. Code § 2699 .....................................................................................................10, 19

Cal. Lab. Code § 2802 ..............................................................................................13, 14, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12.......................................................................................................................21

Fed. R. Civ. P. 23...............................................................................................................*passim*

vii

Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of Class Action Settlements*, 1 J. Legal Analysis 167, 191 (2009) ...................................................................... 5

*Procedural Guidance for Class Action Settlements*, https://www.cand.uscourts.gov/ClassActionSettlementGuidance (last updated Dec. 5, 2018) .......................................................................................................... 1

BRIEF OF AMICI CURIAE IN OPPOSITION TO
HARVEY'S PRELIMINARY APPROVAL MOTION
CASE NO. 18-cv-02835-WHO

# INTRODUCTION

The Court should reject Plaintiff Brandon Harvey's inadequate showing of reasonableness for his proposed reverse auction settlement, which seeks to resolve the claims of approximately 2,847 Morgan Stanley Smith Barney, LLC ("Morgan Stanley") Financial Advisors ("FAs") well below an appropriately discounted value, with an overbroad release, under circumstances that raise a presumption of inadequacy.  Harvey's motion cannot be granted for three reasons.

First, the settlement provides inappropriately low value.  It constitutes a mere 1.5% to 2.2% of Morgan Stanley's $467.6 million to $695 million exposure (though Harvey mistakenly claims it is 6.6% of a $155 million exposure).  Even Harvey's inflated figure compares unfavorably with the many cases Harvey's counsel have settled in this area, which generally recovered 25% to 50% of exposure.

Second, the settlement seeks to give Morgan Stanley an unlawfully overbroad Private Attorneys General Act ("PAGA") release that stretches more than five years back from his PAGA letter – far beyond the one-year PAGA limitations period allowed by the State.

Third, Harvey's proposal fails to satisfy even the most basic procedural requirements for approval, the District's Procedural Guidance for Class Action Settlements ("Procedural Guidance"), https://www.cand.uscourts.gov/ClassActionSettlementGuidance (last updated Dec. 5, 2018), and this Court's explicit instructions at the intervention hearing.  He gives the most cursory description of Morgan Stanley's exposure for one of his several claims, without support, detail, or analysis.  In addition, he ignores the requirement that he value the remaining claims, essentially valuing them each at $0.  Particularly striking is the valuation of Harvey's and the *Chen* plaintiffs' PAGA claims at $0, given the fact that Morgan Stanley was one court day away from trial on those claims when Harvey finalized his settlement.

The procedural posture explains these fatal flaws:  Morgan Stanley sought to escape massive trial exposure by choosing to negotiate not with the plaintiffs who had progressed to the eve of trial after dozens of motions, twenty depositions, and a quarter million pages of discovery, but with the newcomer who still had all the hurdles to surmount (FINRA discipline,

1

1   counterclaims, arbitration agreements, class certification, summary judgment, decertification,

2   motions to compel, and then trial).  This is the essence of a reverse auction – to bid down to a

3   sub-market price with the weaker party.

4        Courts routinely deny or postpone preliminary approval for less significant deficiencies.

5   The Court should deny or defer ruling on Harvey's motion so that the *Chen* trial can proceed for

6   the class members' and aggrieved employees' benefit.

7   **PROCEDURAL HISTORY**

8   **I.**    **From 2014-19, the Chen PAGA Lawsuit Was Litigated to the Eve of Trial.**

9        On April 23, 2014, Tracy Chen served her PAGA notice, and on May 27, 2014, she (later

10   joined by Matthew Lucadano; collectively, "the *Chen* Plaintiffs") filed a PAGA representative

11   action to vindicate the rights of Morgan Stanley FAs.  Declaration of Mark Humenik ("Humenik

12   Decl.") ¶¶ 2-3.  The fifty-six hard-fought months of litigation – including eight substantive

13   motions, four motions to compel further discovery, writ proceedings and removal proceedings,

14   250,000 plus pages of discovery, seventeen fact depositions and three expert depositions, and

15   extensive written discovery – are summarized at ECF No. 28 ("Intervention Br."), at 4-8.  From

16   the start, *Chen* alleged that Morgan Stanley violates the Labor Code by: (1) shifting ordinary

17   business costs to employees; (2) failing to timely pay all wages owed to its employees; and (3)

18   providing inaccurate wage statements.  While Morgan Stanley's Automated (or Alternative)

19   Flexible Grid ("AFG") program is at the center of the *Chen* case, not all of the *Chen* plaintiffs'

20   claims are derivative of their AFG-related claims.  Declaration of Laura Sullivan ("Sullivan

21   Decl.") § IV.

22   **II.**    **In 2018, Harvey Filed And Settled His Rule 23 And PAGA Lawsuit.**

23        On May 14, 2018, Plaintiff Brandon Harvey filed his Rule 23 non-PAGA action, ECF No.

24   1, and on July 12, 2018, he amended his complaint to add PAGA claims (based on his May 9,

25   2018 PAGA notice, which created a PAGA period from May 9, 2017, forward), ECF No. 11

26   ("FAC") ¶ 43; Humenik Decl., Ex. 41 (Harvey PAGA Notice).  On April 26, 2019, the *Harvey*

27   parties filed a proposed stipulation for a second amended complaint ("SAC"), ECF No. 47

28   ("Stipulation"), which the Court subsequently endorsed, ECF No. 50.  The *Harvey* parties

2

entered "this stipulation for the purposes of settlement only[,]" which requires Harvey to

withdraw the SAC "[s]hould the Court not approve the settlement[.]"  Stipulation ¶ 5.  For

purposes of settlement only, then, the SAC cites Chen's PAGA letter as the basis for Harvey's

new PAGA limitations period expanding back through April 23, 2013, ECF No. 48-3 (SAC) ¶ 51,

and adds three new claims under Labor Code §§ 201, 202 and 204, which were among the Labor

Code violations already being pursued in *Chen*, but never before in *Harvey*, *id.* ¶¶ 28-44.

### III.    Settlement Discussions

Throughout the *Chen* litigation, Morgan Stanley chose to invest in serial procedural

attacks and discovery delays to avoid trial rather than engage in serious settlement discussions.

Sullivan Decl. § 1(A).  The *Chen* parties unsuccessfully mediated with Mark Rudy in May 2016.

*Id.* ¶¶ 5-6.  Morgan Stanley never made an offer close to $10 million.  *Id.* ¶¶ 6-10.  It appeared

that serious settlement talks would have to wait for Judge Claster's summary adjudication ruling,

then for the phase one trial result.  *Id.* ¶ 7.  In November 2018, Morgan Stanley offered Mr.

Lucadano an individual settlement of $40,000, which he rejected.  *Id.* ¶ 8.

With the *Chen* trial looming, Morgan Stanley sought a cut-rate deal via the fledgling

*Harvey* case.  On November 21, 2018, the *Harvey* parties settled the *Harvey* class claims plus a

four-year PAGA coverage (despite the one-year statute of limitations) for $8 million plus

$1,735,000 in future AFG payments facilitated by mediator Francis J. "Tripper" Ortman III.  *See*

ECF No. 37-1 (Wynne Intervention Opp. Decl.) ¶ 22; Sullivan Decl. ¶ 11.  On December 13,

2018, Harvey informed the *Chen* plaintiffs of the settlement.  Sullivan Decl. ¶ 11.  The parties

explored a global resolution at a mediation on January 17, 2019, but given Harvey's and Morgan

Stanley's commitment to the existing reverse auction settlement, there was little possibility of a

reasonable settlement.  *Id.* ¶ 12.

The next day, with trial set to begin the next business day, Morgan Stanley announced an

expanded settlement that stretched the one-year PAGA statute to almost six years to "cover[] all

claims in [*Chen*]."  ECF No. 29-2 (Intervention Br. Ex. B).  This expanded settlement added

$500,000 to the common fund and maintained the $1,735,000 in AFG funds.  Sullivan Decl.

¶ 12.  Judge Claster vacated the trial date out of deference to this Court.  *Id.* ¶ 13.

## IV.  Intervention

The *Chen* plaintiffs promptly moved to intervene to protect the aggrieved employees' and class members' rights.  *See* Intervention Br.  The Court allowed the *Chen* plaintiffs to file this amicus; posed detailed questions for Harvey to answer in his preliminary approval motion, "which the [*Harvey*] parties indicate should occur within the next two weeks"; and deferred ruling on the intervention motion.  ECF No. 41.  Eight weeks later, Harvey filed his motion.  In the interim, the *Chen* plaintiffs had brief, sporadic contact with Harvey, Morgan Stanley, and Mr. Ortman, resulting in no material developments.  Sullivan Decl. ¶ 14.

## V.  The *Harvey* Settlement

The *Harvey* Agreement, ECF No. 48-3, provides for a $8,500,000 common fund ("Cash Payment") and a temporary adjustment to Morgan Stanley's AFG program to allow FAs to get reimbursed for AFG expenses up to $1,735,000 in the coming years ("Expense Fund"), described as a "Maximum Settlement Amount" ("MSA") of $10,235,000.  *Id.* ¶ 61(d).  Harvey's lawyers may request fees of up to 30.1% of the common fund (framed as "25% of the MSA").  *Id.* ¶ 16.

Despite the Procedural Guidance and this Court's detailed instructions, Harvey provides little explanation for the value of the released claims, hamstringing the Court in its duty to assess the reasonableness of the settlement.  Harvey estimates Morgan Stanley's "total exposure" based solely on the unsupported (and incorrect) assumption that "FAs contributed approximately $155 million into AFG during the statutory period covered by *Harvey*."  ECF No. 48-2 (Declaration of Edward J. Wynne ("Wynne Decl.")) ¶ 43.  As explained in § III(D)(i) below, this figure significantly undervalues the claims because it ignores (a) the full time period and (b) the full array of claims being released.  Harvey notes that the MSA is 6.6% of $155 million, though the $8.5 million common fund is only 5.5% of $155 million, and it is only 1.5% to 2.2% of the true $467.6 million to $695 million in exposure (which is calculated in § III(D)(i) below).

1

## ARGUMENT

2

### I.     This Is a Classic Reverse Auction.

3       The intervention papers, Intervention Br. at 15-16; ECF No. 38 ("Intervention Reply

4  Br."), at 8-12, and the Declaration of Professor Andrew D. Bradt ("Bradt Decl."), explain how

5  Harvey's settlement has the indicia of a reverse auction – and why this matters.

6       Harvey's motion only confirms the *Chen* plaintiffs' concerns that Morgan Stanley, faced

7  with two partially overlapping representative actions, dodged an imminent trial in *Chen* by

8  settling on the cheap with the party in the weaker position and with a shorter limitations period.

9  For example, (1) the original settlement required that the *Harvey* parties attempt a "global

10 resolution of *Harvey* and *Chen*," Wynne Decl. ¶ 24; (2) when that failed, the *Harvey* parties

11 simply expanded the settlement to attempt to release all *Chen* claims; (3) the current *Harvey*

12 settlement allows Morgan Stanley to void the settlement if the Court rejects the release of PAGA

13 claims going back over five years to the beginning of *Chen* instead of the statutory one year,

14 *Harvey* Agreement ¶ 85; and (4) the SAC expanding Harvey's claims will be withdrawn if the

15 agreement is not approved and litigation resumes, Stipulation ¶ 5.  Both the "sudden expansion

16 of the scope of the settled case" to add claims that only *Chen* had alleged and the expansion of

17 the PAGA liability period to take credit for Chen's April 23, 2014 PAGA notice are strong "red

18 flags" of a reverse auction.  *See* Jonathan R. Macey & Geoffrey P. Miller, *Judicial Review of*

19 *Class Action Settlements*, 1 J. Legal Analysis 167, 191 (2009).

20

### II.     Harvey Ignored the Procedural Guidance And the Court's Instruction.

21      Harvey's motion fails to comply with the Procedural Guidance.  Harvey does not provide

22 an analysis of the exposure he would face if he had "fully prevailed on *each* of [his] claims" and

23 is glaringly silent as to "factors bearing on the amount of the compromise."  Procedural

24 Guidance ¶ 1(e) (emphasis added); Humenik Decl. ¶¶ 26-31.  In fact, while the Court, early in

25 the February 27, 2019 hearing, specifically instructed Harvey to "pay very close attention to the

26 [settlement] guidance that's on the [Court's] website," *see* Humenik Decl. Ex. 42 ("Intervention

27 Hr'g Tr."), at 3:25-4:1, Harvey does not address most of the critical aspects of the Procedural

28

5

1    Guidance in his brief, and only explicitly references the Procedural Guidance in the Agreement

2    with respect to post-distribution accounting.  *See* Harvey Br.; *Harvey* Agreement ¶ 81.

3           Harvey's motion also fails to respond to the Court's direction that he "explain" the

4    aspects of the settlement that "p[ique] [its] curiosity[.]"  Intervention Hr'g Tr. 4:6-7, 19-21; *see*

5    *also id.* 4:14-21 (requesting that Harvey address the impact of *Chen* "and the ground that's been

6    plowed there" on the settlement in this action "at the time of the preliminary approval");

7    Intervention Br. at 23 (questioning the basis for expanded PAGA limitations period).  And, after

8    Harvey's counsel testified that they had "successfully prosecuted approximately 20 class actions

9    seeking recovery of business expenses on behalf of financial advisors, including two prior cases

10   against Morgan Stanley," *see* ECF No. 36 ("Harvey Intervention Opp."), at 1, 5, the Court noted,

11   "I'm particularly interested in the results of the 20 similar cases that you mention in the financial

12   services industry and how they compare to the settlement and in Morgan Stanley settlements of

13   similar cases to the extent that that information is public."  Intervention Hr'g Tr. 4:1-5.  Because

14   Harvey's motion lists only three comparators, and none with Morgan Stanley, Harvey's

15   counsel's other cases are analyzed below on page 16.  The results show why Harvey disregarded

16   the Court's instruction, confirming the inadequacy of the proposed settlement.

17          For these reasons alone, the settlement should not be approved.[1]

18   **III.    The Settlement Contains Incurable Defects And is Not Fair, Adequate, Or**
        **Reasonable.**

19
            **A.    Careful Scrutiny Is Required at Preliminary Approval.**

20          "Scrutiny of a class settlement should be no less careful at preliminary approval than at

21   final approval, and the parties must provide enough information to allow the district court to

22   carefully evaluate the strength of the claims, the risks of litigating those claims all the way

23   through, and the value of the relief each class member will receive from the settlement."  *Hunt v.*

24   *VEP Healthcare, Inc.*, No. 16-cv-04790-VC, 2017 WL 3608297, at *1 (N.D. Cal. Aug. 22, 2017)

25

26

27   ───────────────

28   [1] To the extent points like these and others have been strategically omitted by the *Harvey* parties
     until reply, the *Chen* plaintiffs will respectfully request a surreply.

(citation and internal quotations omitted).[2]  Among the most important considerations for preliminary approval are "plaintiffs' expected recovery balanced against the value of the settlement offer" and "the relative strengths and weaknesses of [the] [p]laintiffs' case." *In Re: High-Tech Emp. Antitrust Litig.*, 2014 WL 3917126, at *3-4.

When PAGA and class claims are resolved together, courts must ensure that the PAGA claims are properly valued.  *See, e.g.*, *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134-35 (N.D. Cal. 2016) ("[T]he Court must evaluate the adequacy of compensation to the class *as well as* the adequacy of the settlement in view of the purposes and policies of PAGA."); *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 941 (N.D. Cal. 2016) (denying preliminary approval where value of PAGA and class claims was arbitrary and "shortchange[d] the State on its share of PAGA penalties").  Such scrutiny is necessary to ensure the vindication of the compensation and deterrence policies undergirding PAGA.  *O'Connor*, 201 F. Supp. 3d at 1134.

Signs of a reverse auction also call for heightened scrutiny.  In *O'Connor*, for example, the court recognized that it had to be "especially sensitive to the risk of collusion or a less than full adversarial process where claims pending in other lawsuits are released for minimal value, in order to induce the defendant to settle *this* case."  *Id.* at 1121; *Gonzalez v. CoreCivic of Tenn., LLC*, No. 16 Civ. 1891, 2018 WL 4388425, at *14 (E.D. Cal. Sept. 13, 2018) (denying preliminary approval of class settlement, including late-added PAGA claim that overlapped with another aggrieved employee's PAGA suit in state court, because "PAGA claims were only added

---

[2] Thus, in recent years, courts have been more likely to reject settlements, even for less serious reasons than present here, at preliminary approval.  *See, e.g.*, *Eddings v. DS Servs. of Am., Inc.*, No. 15-CV-02576-VC, 2016 WL 3390477, at *1 (N.D. Cal. May 20, 2016) (plaintiffs failed to "show their work by explaining the relative value of their claims in significant detail"); *In re Hewlett-Packard Co. S'holder Derivative Litig.*, No. 12-CV-06003-CRB, 2014 WL 7240144, at *5 (N.D. Cal. Dec. 19, 2014) (settlement "release[d] claims unrelated to the gravamen of this case"); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2014 WL 3917126, at *4, *17 (N.D. Cal. Aug. 8, 2014) (settlement provided that class members "recover[ed] less on a proportional basis from the instant settlement with Remaining Defendants than from the settlement with the Settled Defendants [in the same action] a year ago"); *Christensen v. Hillyard, Inc.*, No. 13-CV-04389-NC, 2014 WL 3749523, at *4 (N.D. Cal. July 30, 2014) (release "does not directly track the allegations in the complaint" (citation and internal quotation marks omitted)).

7

1   to this case after a mediation session . . . suggesting they may have been added as a bargaining

2   chip, rather than an earnestly litigated claim").

3          **B.     The Overbroad PAGA Release Is an Uncurable Defect.**

4                 **i.     Harvey's PAGA Claim Has a One-Year Limitations Period, Only.**

5          The *Harvey* settlement suffers from an incurable threshold defect: the PAGA release is

6   overbroad because it improperly expands the one-year limitations period to over five years.  *See*

7   Cal. Code Civ. Proc. § 340(a).  "Proper notice [to LWDA] under section 2699.3 is a 'condition'

8   of a PAGA lawsuit."  *Brown v. Ralphs Grocery Co.*, 239 Cal. Rptr. 3d 519, 528 (Cal. Ct. App.

9   2018).  If the PAGA's exhaustion requirements are not satisfied, a court must dismiss (or strike

10  those portions of) a PAGA claim that a plaintiff is not authorized to pursue.  *Caliber Bodyworks,*

11  *Inc. v. Superior Court*, 36 Cal. Rptr. 3d 31, 43-45 (Cal. Ct. App. 2005).  Having properly

12  exhausted the notice requirements, a PAGA plaintiff is deputized to prosecute a claim for civil

13  penalties *only* for those particular Labor Code violations that were timely exhausted, going back

14  one year from the date that notice was given to LWDA.  *Brown*, 239 Cal. Rptr. 3d at 529-31, 534;

15  Intervention Br. at 23.[3]

16         Here, Harvey's PAGA notice date of May 9, 2018, FAC ¶ 43, sets his PAGA limitations

17  period to May 9, 2017 forward.  In his PAGA notice, Harvey stated that he "intends to seek

18  penalties on behalf of himself and all Morgan Stanley [FAs] who were employed in California

19  *during the applicable limitations period*," without mentioning Chen's letter or case.[4]  Humenik

20  Decl., Ex. 41 (emphasis added).  Accordingly, Harvey is barred from pursuing or waiving time-

21  barred PAGA penalties now.  *See Stoddart v. Express Servs., Inc.*, No. 12 Civ. 1054, 2019 WL

22  414489, at *6-7 (E.D. Cal. Feb. 1, 2019) (denying class/PAGA settlement approval because, *inter*

23  *alia*, PAGA exhaustion requirements were unmet).  Harvey may argue that Morgan Stanley can

24

25  _____

26  [3] Harvey also cannot avail himself of a four year Unfair Competition Law ("UCL") statute of
    limitations because "Labor Code penalties are generally not recoverable as a form of UCL

27  restitution."  *Noe v. Superior Court*, 187 Cal. Rptr. 3d 836, 846 (Cal. Ct. App. 2015) (citing
    *Pineda v. Bank of Am., N.A.*, 241 P.3d 870 (Cal. 2010)).

28  [4] Harvey was aware of *Chen*, having received a *Belaire* notice informing him of *Chen* in May
    2016.  Humenik Decl. ¶ 4.

1  waive a statute of limitations defense.  This misses the point:  Harvey is simply not deputized to

2  prosecute or waive those claims on behalf of the State.

3       Harvey's and Morgan Stanley's decision to expand the limitations period raises a

4  significant reverse auction red flag:  Morgan Stanley is selectively waiving the limitations

5  defense to sweep *Chen* into the ambit of *Harvey*, so it can pay less than what is due the State and

6  the aggrieved employees in *Chen*.  The parties cannot eviscerate PAGA's statutory scheme, or

7  frustrate its law enforcement purpose, via private agreement.  *Iskanian v. CLS Transp. LA, LLC*,

8  327 P.3d 129, 148-49 (Cal. 2014); Cal. Civil Code §§ 1668, 3513.

9       **ii.    Harvey Cannot Invoke Equitable Tolling or Relation Back.**

10      Harvey may argue that some form of tolling should apply, and seek to claim the benefit of

11  *Chen*'s PAGA letter.  But California courts have held that equitable tolling is unavailable under

12  PAGA.  *See Brown*, 239 Cal. Rptr. 3d at 531-32; *see also Amalgamated Transit Union v.*

13  *Superior Court*, 209 P.3d 937, 944 (Cal. 2009) ("[A]n aggrieved employee cannot assign a claim

14  for statutory penalties because the employee does not own an assignable interest.").  In addition,

15  equitable tolling requires "good faith and reasonable conduct by the plaintiff in filing the second

16  claim."  *Brown*, 239 Cal. Rptr. 3d at 532 (quoting *Collier v. City of Pasadena*, 191 Cal. Rptr. 681,

17  685 (Cal. Ct. App. 1983)).  It would be a perversion of the doctrine to allow a weaker-positioned

18  plaintiff to grab approximately four years of the liability period from the stronger-positioned

19  plaintiff under the guise of equitable tolling.  Harvey cannot, in the name of "equity," leverage

20  *Chen* for an easy pay-off, at the expense of the State and the aggrieved employees.

21      Similarly, the relation back doctrine does not apply here.  As *Brown* explained, "[t]he . . .

22  doctrine cannot be used to frustrate the intent of the Legislature to require compliance with

23  [PAGA's] administrative procedures as a condition to filing an action."  *Id.*

24      **iii.    Harvey Cannot Waive Administrative Requirements.**

25      Harvey might argue that (a) he stands in the LWDA's shoes for all litigation purposes as

26  one of its proxies, so (b) he can settle any PAGA claim against Morgan Stanley he chooses,

27  regardless of whether he was deputized to bring the particular penalty claim in the first place.

28  But only the principal (LWDA) can dictate the proxy's authority; Harvey cannot usurp it.  *See*

9

1    *Villacres v. ABM Indus., Inc.*, 117 Cal. Rptr. 3d 398, 422 (Cal. Ct. App. 2010) (rejecting the

2    argument that the State, "as a legal matter," is the actual plaintiff in a PAGA action).  Harvey's

3    *only* interest is in the civil penalties the State could have collected had it prosecuted the Labor

4    Code violations alleged in his PAGA notice.  To the extent only one party may represent the

5    LWDA (according to Harvey's argument), Chen has the stronger claim – including under a first-

6    filed analysis or the California primary rights doctrine.  *Cf.* Cal. Lab. Code § 2699(h); *Zakaryan*

7    *v. The Men's Wearhouse*, 245 Cal. Rptr. 3d 333, 340 (Cal. Ct. App. 2019).

8            To make his argument, Harvey must assume that Chen's first-filed claims are no bar to

9    his copycat claims, while simultaneously claiming that he *is* the LWDA and not Chen.  The

10   contradiction is untenable and would undermine PAGA's protections.

11           **C.       In Valuing the Settlement, Harvey Fails to Consider _Chen_'s Significance.**

12           Harvey's slim analysis suffers from another defect; it fails to acknowledge the merits and

13   procedural posture of *Chen*, even though *Chen* is the reason Morgan Stanley settled with Harvey.

14   This is the essence of the reverse auction problem: Morgan Stanley can achieve a cheaper

15   settlement with the less-developed *Harvey* case, because Harvey still faces obstacles and

16   information deficiencies that the *Chen* plaintiffs have already surmounted.  Bradt Decl. ¶¶ 3-4,

17   15-27.  Harvey's undervaluing of his and Chen's claims is no surprise, since his attorneys lack

18   the evidence and experience of Chen's counsel over five years of hard-fought litigation.  Harvey

19   has taken no depositions and does not state which documents and data Morgan Stanley

20   voluntarily produced.  The "nearly 2,000 pages" that Morgan Stanley chose to show Harvey are

21   merely 0.8% of the more than 250,000 pages of documents that Morgan Stanley produced (often

22   after being compelled) to Chen.  Humenik Decl. ¶ 127.  There is no evidence that Harvey has

23   seen Morgan Stanley's responses to contention interrogatories, hearing transcripts, deposition

24   transcripts, or the reams of documents showing policies and implementation thereof, which

25   undermine the defenses that Harvey credits as justifying such a steep discount of his and Chen's

26   claims.  *Compare* ECF No. 48 ("Harvey Br."), at 17-19, *with* Sullivan Decl. § II-III.

27           Given the lack of investigation, advocacy, and reverse auction flags, Harvey's attorneys'

28   opinions about settlement value and risk are entitled to no weight.  *In re Bluetooth Headset*

*Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (dispositive weight should not be given to the parties' self-serving remarks; courts should press the parties to substantiate their bald assertions with corroborating evidence).

### i.   **Harvey Does Not Consider *Chen* or Its Strength.**

Harvey discounts the case value as if it is just another case that has not been litigated. This ignores *Chen*'s unusually strong position after four years of litigation, on the eve of trial.[5] *Chen*'s claims merit a far lesser settlement discount than newly-filed claims.  On April 18, 2018, the *Chen* court signaled that it agreed with the plaintiffs' theory of liability on the AFG claims. The court had narrowly denied their motion for summary adjudication on liability, where the key issue was whether Morgan Stanley could lawfully pass onto its FAs the cost of support staff compensation.[6]  Sullivan Decl., Ex. 4 (Aug. 31, 2017 Order).  The court ruled that the *Chen* plaintiffs "met [their] initial burden of showing that compensation for supplemental support staff is a general operating cost to be borne by Morgan Stanley."  *Id.* at 6.[7]

Although the *Chen* court found a material factual issue based on the declarations of three FAs who did not consider their supplemental support staff compensation to be "necessary," *id.* at 6, this will not help Morgan Stanley at trial.  In subsequent proceedings, Judge Claster confirmed that the court would have granted the Chen plaintiffs' motion for summary adjudication, but for the FA declarations.  Sullivan Decl. ¶ 20 & Ex. 5 (April 18, 2018 status conference), at 25:25-

---

[5] Contrary to Morgan Stanley's argument that bifurcation reflects serious questions as to the aggrieved status of Chen and Lucadano, Judge Claster bifurcated trial at the plaintiffs' request because Morgan Stanley had resisted classwide discovery, and Morgan Stanley's delays had brought *Chen* perilously close to dismissal if trial did not start within the five-year statutory deadline.  Cal. Civ. Proc. § 583.310; Sullivan Decl., Ex. 5 (Apr. 18, 2018 transcript) at 47:10-18.

[6] It was undisputed that Morgan Stanley invites its FAs to reduce their commission rates to fund an AFG "pool" which is used to pay support staff (among other expenses).  AFG funds are used to pay the entire salaries of some support staff, partial salaries, bonuses, and a portion of support staff overhead.  Sullivan Decl. ¶ 17.

[7] The Court followed *Davis v. Farmers Insurance Exchange*, 200 Cal. Rptr. 3d 315 (Cal Ct. App. 2016), which recognizes that compensation to other staff is on its face a "standard business expense[], not chargeable to an employee, even a commissioned sales employee," *id.* at 343, and that wage deductions must be "for the benefit of the employee, not the employer," *Goyal v. CSX Intermodal Terminals, Inc.*, No. 17-cv-06081-EMC, 2018 WL 4649829, at *8 (N.D. Cal. Sept. 25, 2018) (recognizing *Farmers* is the "latest word from the California courts" concerning the scope of permissible wage deductions); *see also id.* at *9 (explaining "deductions of ordinary business expenses" are impermissible under § 221).

26:3, 32:23-33:15.  When those FAs were later deposed, they contradicted Morgan Stanley's theory of the case and testified that they use AFG funds to pay staff who perform Morgan Stanley business—strongly positioning the *Chen* plaintiffs for trial.  Sullivan Decl. ¶ 58.

### ii.    The *Chen* Plaintiffs Defeated Summary Adjudication.

The Chen plaintiffs survived Morgan Stanley's motion for summary adjudication, which Harvey fails to consider in evaluating risk.  Crucially, in denying that motion the *Chen* court rejected the *same* defenses that Harvey uses to justify settling the class claims for a fraction of their value.  *See* Harvey Br. at 17-18.

First, while Harvey identifies a risk that the AFG commission rate reduction will not be considered "a wage deduction[,]" *id.* at 17, the *Chen* court already rejected that argument, Sullivan Decl. ¶ 21 & Ex. 4 (rejecting Morgan Stanley's position that labeling commission payments as "advances" payable year-end means that any reduction in the commission rate to fund AFG expenses is not a wage deduction under Labor Code § 221).  Whereas an employer's conditions on the accrual of commissions "must relate to the sale and cannot merely serve as a basis to shift the employer's cost of doing business to the employee," *id.* Ex. 4, at 9 (Aug. 31, 2017 Order), the *Chen* court ruled that "Morgan Stanley's condition precedent to an Advisor 'earning' commissions (i.e., waiting until the end of the year to ascertain the FA's annual revenue to be used in calculating the actual commission rate) does not appear to bear any relation to the fact of the Advisor's sales[,]"[8] *id.*, at 9; *see also Aguilar v. Zep Inc.*, No. 3-cv-00563-WHO, 2014 WL 4245988, at *14-16 (N.D. Cal. Aug. 27, 2014) ("above-the-line" reductions of commissions to pay operating expenses violated Labor Code § 221; and finding a factual issue whether other expenses were directly "tied to the employee's sales" and therefore permissible, "rather than general business expenses" and therefore impermissible).[9]  In fact, at the hearing on the *Chen* plaintiffs' motion to compel on the eve of trial, Morgan Stanley finally admitted that it does not

---

[8] Because California's anti-waiver rules are unique, Morgan Stanley's successful defense of its AFG program under other state laws is irrelevant and was ignored by the *Chen* court.  *Id.* ¶ 23.
[9] Because Harvey does not account for the recent law favoring his claims, as covered in *Farmers, Goyal* and *Chen*, which confirm that employers cannot require their employers to agree to unlawful deductions, the Court should disregard his claim that claims for unlawful wage deductions under 221 are weaker than they were in the past.  *Cf.* Harvey Br. at 22.

1  contend AFG expenditures can be tied to a particular revenue-generation or client sales

2  transaction.  Sullivan Decl. ¶ 11 & Ex. 11.

3          Second, while Harvey also argues that Morgan Stanley could prevail on showing

4  "expenses submitted to the AFG program were optional[,]" Harvey Br. at 18, this is not a defense

5  to a claim for unlawful deductions under § 221, *see* n.9 above, and the *Chen* court also rejected

6  Morgan Stanley's theory that optional expenses are not covered by Labor Code § 2802, *see*

7  Sullivan Decl., Exs. 4 and 5 (concluding that expenses must be reimbursed if they are

8  reasonable, and finding that the *Chen* plaintiffs have evidence that Morgan Stanley has a rigorous

9  expense approval process to ensure that every expense funded through AFG is known to the firm,

10 reasonable, and connected to Morgan Stanley business).  Unlike Harvey, the *Chen* plaintiffs

11 possess scores of communications from management at the branch, complex, and regional levels

12 showing the firm's emphatic expectation that the FAs invest in AFG to pay for their business

13 expenses and the firm pressured the FAs to make AFG credit rate reductions to fund those

14 expenses.[10]  Sullivan Decl. ¶ 60 & Exs. 30, 31, 32.

15               **iii.      *Chen* Is Manageable, Even if *Harvey* Might Not Be.**

16         Further, while Harvey states he also discounted his settlement based on manageability

17 concerns, Harvey Br. at 19, that risk is minimal in *Chen*, where – as of the eve of trial – Morgan

18 Stanley has never succeeded in limiting the case on manageability grounds.  Sullivan Decl.

19 § II(E).

20         In fact, the *Chen* plaintiffs are well-positioned to prove their case in chief without running

21 afoul of individualized issues.  *See id.* ¶¶ 33-40 (Morgan Stanley treats its AFG program as an

22 accountable expense reimbursement plan for tax purposes and takes tax deductions on AFG-

23 funded expenses, which establishes they are incurred for the firm's benefit rather than the FAs'

24

---

25 [10] Regarding support staff compensation in particular, the *Chen* plaintiffs' evidence shows that
   management was involved in the hires of employees who are paid with AFG funds (as Chen's
26 staff was), and ensured that such employees were necessary to the business before approving
   their hire.  Sullivan Decl. ¶ 61.  Additionally, while Harvey accepts Morgan Stanley's contention
27 that it pays market salaries for the FAs' assistants, Harvey Br. at 7, the *Chen* plaintiffs have
   evidence that the FAs are expected to – and do – contribute to support staff compensation
28 because the base salary paid by Morgan Stanley is below market, Sullivan Decl. ¶ 56.

1  personal benefit under Labor Code §§ 221 and 224; and all AFG expenditures are reviewed and

2  approved to verify their reasonableness and business purpose relevant to §2802). As one striking

3  example, Morgan Stanley has been unable to meaningfully support its legal argument that many

4  AFG expenses were not expected to benefit the firm or contribute to the maintenance or growth

5  of Morgan Stanley's client base. In response to discovery requests asking Morgan Stanley to

6  identify such "personal" AFG expenses, Morgan Stanley identified only three non-party FAs

7  who supposedly incurred AFG expenses that were not expected to benefit the firm or contribute

8  to the maintenance or growth of Morgan Stanley's client base, despite a "massive" investigation

9  for additional "examples." *Id.* ¶ 38. Further illustrating the results of the *Chen* plaintiffs'

10  discovery efforts through four plus years of litigation, Morgan Stanley no longer contends that

11  (a) FAs incurred AFG-funded expenses for their personal, rather than the firm's, benefit; (b)

12  AFG-funded expenses were made for a purpose other than to increase Morgan Stanley's revenue;

13  or (c) the firm approved AFG-funded expenses that it understood were not reasonable business

14  expenses. *Id.* ¶ 37.

### iv. Class Certification Poses No Risk in *Chen*.

16  While Harvey also states he discounted settlement because of risks at class certification,

17  Harvey Br. at 18-19, those risks are not present in the *Chen* PAGA-only action.

### D. Harvey's Settlement Amount Is Unreasonably Low.

19  The proposed settlement significantly undervalues these claims, as is evident from

20  analyses of Morgan Stanley's actual exposure, the strength of the claims, and comparator cases.

### i. Total Exposure Is Significantly More than Harvey Estimates.

22  Below is a summary of the exposure as calculated by the *Chen* plaintiffs and Harvey:

| Claim | Morgan Stanley's Exposure for This Claim | |
|---|---|---|
| | ***Chen* Plaintiffs' Analysis[A]** | **Harvey's Analysis** |
| §§ 2802 & 221[B]<br>10% interest | $193.5 million<br>$39.2 million | $155 million<br>$0 |
| § 203 (waiting time penalties) | $13.3 million | $0 |
| § 226 (wage statements) | $11.4 million | $0 |
| PAGA | $210.2 - $437.5 million | $0 |
| **Total** | **$467.6 - 695 million** | **$155 million** |

28  NOTE A: These calculations are described at Humenik Decl. ¶¶ 45-55, 60, 66, 71, 84-85.

14

NOTE B:  §§ 2802 and 221 provide two alternative paths to proving a violation, but with the same potential recovery to the class.

The corrected figure for Morgan Stanley's exposure is $467.6 million to $695 million for the class and PAGA claims (far more than the $155 million Harvey represents).[11]  Humenik Decl. ¶ 84.  Thus, the $8.5 million common fund is 1.2% to 1.8% of the true total exposure, and the $10.235 million MSA is 1.5% to 2.2% of exposure (not 6.6% as Harvey states).  *Id.* ¶ 85.  Harvey grossly undercounts exposure (1) due to math and extrapolation errors and (2) by ignoring whole claims.

First, Harvey's § 2802 calculation is premised on a math error, because it ignores the last nine months of the liability period.  *Id.* ¶ 35; *see Cotter*, 176 F. Supp. 3d at 940 (rejecting settlement for failure to include 7.5 months of liability in exposure analysis).

Second, Harvey's $155 million exposure estimate appears to be based only on his § 2802 claim, ignoring all other claims (*i.e.*, assigning them $0 value).  This alone precludes approval of the settlement.  *See, e.g.*, *Maciel v. Bar 20 Dairy, LLC*, No. 17 Civ. 902, 2018 WL 5291969, at *6 (E.D. Cal., Oct. 23, 2018) (rejecting class settlement, including PAGA claim, when claims were released for no consideration).

Third, the *Harvey* settlement also fails to account for the interests of former FAs who were not timely paid all wages due at termination.  Cal. Lab. Code §§ 201, 202.  Under Labor Code § 203, those class members are entitled to statutory waiting time penalties of up to 30 days' wages, with a three-year limitations period.  *Pineda*, 241 P.3d at 872.  No portion of the settlement value is attributed to these claims, which are worth approximately $13.3 million.  *See* Humenik Decl. ¶ 84.

**ii.**   **Comparator Settlements Highlight that Harvey's Settlement Value Is Unreasonably Low.**

After claiming to have prosecuted "20" FA settlements recovering business expenses, Harvey's counsel cites only two of his own cases (*Tsyn* and *Brecher*) plus one more (*Litty*).

---

** Yesterday, Harvey's counsel conceded that they calculated exposure based on 108,045 of the 154,441 total work months.  Their undercounting appears to be due to (1) failure to extrapolate data to account for all months in the liability period and (2) failure to include any months worked by Tier 1 aggrieved employees.  Humenik Decl. ¶ 35 & Ex. 50.

Harvey Br. at 20-22.  As shown in the table below, *Brecher* actually supports the *Chen* plaintiffs, since it settled at 25-30% of total exposure, yielding a monthly payout per class member 178% higher than Harvey's settlement.  The other two cases were settled after much less litigation. *Tsyn*, like *Harvey*, involved negligible litigation of expense claims.  Humenik Decl. ¶ 91.  There, the parties litigated the *overtime* claims intensively; once Wells Fargo had largely prevailed, Tsyn turned to the expense claims.  *Id.* ¶ 92.  *Litty* was a salvage job, settling the expense reimbursement claims after a busted reverse auction of overtime claims.  *Id.* ¶ 104.  Regardless, Harvey's settlement is worse than those three.  *Id.* ¶¶ 40, 88, 102-03.

So where are "the 20 similar cases that you mention in the financial services industry" and "Morgan Stanley settlements of similar cases"?  Intervention Hr'g Tr. at 4:1-5; *see also* Harvey Intervention Opp. at 1 ("Harvey's counsel . . . have successfully prosecuted approximately 20 [FA expense reimbursement] class actions"); *id.* at 5 ("approximately 20 class actions").  Harvey's counsel relied on them at intervention to establish their experience and justify their valuation of the claims yet ignore them when the Court asks for information.  The table below reveals why:  this settlement compares *un*favorably to Harvey's counsel's other cases involving California FAs (and *Litty*).  *See* Humenik Decl. ¶¶ 88-104 & Ex. 48.

| Case | Settlement Amount | % of Total Exposure | Net Cash / Class Member / Month |
|---|---|---|---|
| *Thill v. Edward Jones* | $21,000,000 | 40% | $430 |
| *Bahramipour v. Citigroup* | $48,000,000 | 25-28% | $386 |
| *Bowman v. UBS* | $44,000,000 | 45% | $375 |
| *Takacs v. AG Edwards* | $20,000,000 | 33% | $275 |
| *McLeod v. Bank of Am.* | $11,000,000 | 49.6% | $178 |
| *Garett v. Morgan Stanley* | $42,500,000 | Not specified | $164 |
| *Brecher v. Citigroup* | $3,700,000 | 25-30% | $136 |
| *In re Wachovia* | $39,000,000 | Not specified | $134[A] |
| *Steinberg v. Morgan Stanley* | $50,000,000 | 10-25% | $64[B] |
| *Tsyn v. Wells Fargo* | $9,500,000 | 25% | $47[C] |
| *Harvey v. Morgan Stanley* | $8,500,000 cash + $1,735,000 fund | 1.5-2.2%, or 6.6% (Harvey) | Tier 2:  $42 Tier 1:  $5 |
| *Litty v. Merrill Lynch* | $2,465,000 | Not specified | Not specified |

NOTE A:  *Wachovia* figure is for California class members only.

NOTE B:  *Steinberg* figure is for California assistant branch managers only.
NOTE C:  Harvey's counsel testified to Judge Beeler that Tsyn achieved 25% of total
exposure.  *See* Humenik Decl., Ex. 52 (E. Wynne *Tysn* PA brief); 51 (E. Wynne *Tysn* PA
decl.).[12]

This chart illustrates the weakness of Harvey's settlement and reveals why Harvey

ignored the Court's instruction to list his "20" comparator cases.  Most comparator cases settled

for 25% to 49% of exposure, yielding approximately 200% to 800% more money per class

member per month than Harvey's settlement.  For example, *Brecher* is a useful comparator (25%

to 30% of exposure; 178% higher monthly payout than Harvey).  *Garett* is instructive too (236%

higher payout), notwithstanding Harvey's counsel's opinion that it is "not a useful benchmark[.]"

Harvey Br. at 22.

These comparators show that Harvey's proposed settlement of 1.5% to 2.2% of total

exposure is significantly below a reasonable amount.

### iii.   The Expense Fund's Value Is Illusory And Distorting.

Additionally, the Expense Fund, which accounts for approximately 16.9% of the MSA's

total value, provides little benefit to class members.  The Expense Fund remains entirely within

Morgan Stanley's control, to dole out on a timeframe of its choosing and only for expenses it

approves.  *See* Background, above.  Even if the Expense Fund provided *some* benefit to future

FAs, Harvey still improperly included it when estimating class member recoveries as $94.72 per

monthly pay period and $3,595 per person – based on the MSA of $10,235,000 – since the

$1,735,000 allocated to the Expense Fund will never be paid out to class members as part of their

cash payments.[13]  *See* Harvey Br. at 20; Wynne Decl. ¶ 43; *cf.* Wynne Decl. ¶ 37.

### iv.   Harvey's Steep Discount Is Not Otherwise Justified.

Harvey also argues that settlement here is better than the uncertainty and delay of trial –

in part justifying his heavy discount (and without mentioning *Chen*).  *See* Wynne Decl. ¶¶ 49-50.

---

[12] The court approved the settlement in reliance on Harvey's counsel's representation that
recovery was 25% of exposure.  *See id.*, Ex. 53 (preliminary approval order) at 14 (relying on
calculating $9.5/$38 to find that the "the gross settlement amount" was "25%" of "total
exposure").  Harvey's counsel's revised 5.75% figure, Harvey Br. at 21, should not be credited.

[13] These calculations also do not comply with the spirit of the Procedural Guidance because they
do not build out estimated class and PAGA Tier 1 and Tier 2 recoveries.

17

1    But as explained by Professor Bradt, FAs will be in a far stronger position if approval is denied

2    or deferred, clearing the way for the *Chen* plaintiffs to try their claims at no risk to the class if

3    they lose, but much potential benefit if they prevail.  *See* Bradt Decl. ¶¶ 37-42; *see also id.* ¶¶ 28-

4    36.  Further still, even if the settlement were preliminarily approved, risk and delay would

5    remain through final approval and any appeal by the *Chen* plaintiffs or others – potentially

6    delaying recovery longer here than a trial in *Chen*.  Because Harvey disregards *Chen*'s

7    procedural posture, he overlooks that the *Chen* plaintiffs already survived most of the hurdles

8    and endured the delay raised by Harvey, which largely reduces the appropriate settlement

9    discount of the claims.

10            **E.**    **Harvey Allocates an Arbitrary Amount to Settle the PAGA Claim.**

11                   **i.**    **The PAGA Allocation Is Arbitrary And Too Low.**

12           While PAGA penalties do not inure entirely to the benefit of the class, the full amount of

13    the awardable penalties must be considered in establishing the fairness of the settlement.  *See*

14    *Cotter*, 176 F. Supp. 3d at 942; *O'Connor*, 201 F. Supp. 3d at 1133-34.

15           Here, Morgan Stanley's PAGA penalty exposure is $210.2 million to $437.5 million

16    (depending on methodology applied).  Humenik Decl. ¶¶ 71, 84.  The $600,000 PAGA amount is

17    only 0.1% to 0.2% of that exposure.  It should not be approved.

18           Harvey again provides no analysis supporting this valuation.  Instead of analyzing the

19    particular PAGA claims, Harvey merely states that 5.8% of the total settlement is comparable to

20    other PAGA settlements.  But the percentage of the total is not what is relevant; rather, the

21    question is how much these particular PAGA claims are worth.  As the LWDA emphasizes, "it

22    should not be material to the court's determination how the penalty amounts compare to amounts

23    awarded in other cases with dissimilar facts."  Humenik Decl. ¶ 75 & Ex. 47 (LWDA amicus).

24    Harvey's failure to provide a foundational showing regarding *each* of the penalty claims being

25    released defeats approval.  *See* Procedural Guidelines ¶ 1(e); *Gonzalez*, 2018 WL 4388425, at

26    *7-9.

27           Perhaps Harvey failed to investigate Morgan Stanley's penalty exposure for the entirety

28    of the PAGA period before settling them, or if he did, perhaps he concluded his calculations do

18

1    not support settlement of the PAGA claim.  Either falls short.  Courts in this District routinely

2    reject settlements for similar arbitrariness or lack of transparency.  As Judge Chen noted in

3    *O'Connor*, any review of settled PAGA claims must entail determining whether "the relief

4    provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose

5    of the statute to benefit the public."  *O'Connor*, 201 F. Supp. 3d at 1133; *see also Cotter*, 176 F.

6    Supp. 3d at 936.  Here, the PAGA allocation does not withstand such scrutiny.

7                    **ii.    Harvey Has No Basis for a "Discretionary" Discount.**

8            Harvey may argue that Morgan Stanley's penalty exposure should be significantly

9    discounted because PAGA grants discretion to courts to adjust a penalty award where imposing

10   the maximum civil PAGA penalty would be "unjust, arbitrary and oppressive, or confiscatory."

11   Cal. Lab. Code § 2699(e)(2).  However, courts must exercise discretion consistent with PAGA's

12   underlying worker protection purposes.  Morgan Stanley has long been on notice that its expense

13   reimbursement policies, and AFG program in particular, violate California law (*see Garett*,

14   *Steinberg*, and *Brecher*) and that its "business as usual" payments of final commissions are likely

15   unlawful, *see Pugel v. Morgan Stanley*, 221 F. App'x 683, 687 (9th Cir. 2007).

16           Here, Morgan Stanley has benefited significantly in cost savings and tax benefits in

17   passing its business expenses onto the aggrieved employees – nearly $230 million since the *Chen*

18   plaintiffs' claims accrued and counting (twenty-three times more than the proposed settlement).

19   This is especially relevant because a court must consider deterrence when reviewing the fairness

20   of a PAGA settlement.  *See O'Connor*, 201 F. Supp. 3d at 1134-35.  Here, where the monetary

21   settlement is a fraction of the verdict value and a fraction of Morgan Stanley's benefit in

22   perpetuating its policies, and the settlement does nothing to clarify the lawfulness of Morgan

23   Stanley's expense reimbursement policies, the settlement does not substantially vindicate PAGA.

24   It serves no public purpose at all.

25           **F.    Harvey's Settlement Is Seriously Flawed in Additional Ways.**

26           Harvey's settlement is severely flawed in other ways as well.

27           First, Harvey's allocation plan, which is based on pay periods and not AFG usage,

28   *Harvey* Agreement ¶ 61(a)(i), undercompensates class members who actually paid Morgan

                                            19

1   Stanley's business expenses (i.e., the persons impacted by Morgan Stanley's illegal policies and

2   practices).  Harvey offers no justification for a tenure-based allocation formula here, other than

3   noting that it has "been adopted in other broker reimbursement cases."  Harvey Br. at 9.  But in

4   *Harvey* counsel's *Brecher* settlement, payments were allocated according to each advisor's

5   relative contribution to the AFG.  Humenik Decl. ¶ 112.  Harvey does not explain why a similar

6   allocation plan is not warranted here – especially given that each class member's cumulative

7   AFG contributions and damages can be calculated precisely and easily, as the *Chen* plaintiffs

8   already have done.

9         Second, the *Harvey* Agreement broadly releases Chen's bootstrapped claims to include

10  all claims "based on any alleged unlawful wage deductions, failure to pay wages, cash bond or

11  violations of the California Employee Bond Law, untimely final or other pay, inaccurate itemized

12  wage statements or records, failure to reimburse or indemnify all necessary business expenses

13  . . . during the PAGA Period."  *Harvey* Agreement ¶ 35.

14        These terms would waive PAGA claims that are factually unrelated to Harvey's specific

15  allegations in the operative FAC and SAC.  While Harvey appears to treat the *Chen* claims under

16  California Labor Code §§ 201 and 202 (newly added in the SAC) as completely derivative of the

17  AFG-related claims, as if Morgan Stanley fails to pay final wages timely only to the extent it

18  withholds AFG deductions, this is incorrect.  The *Chen* plaintiffs' discovery reveals that Morgan

19  Stanley systemically failed to pay final wages irrespective of AFG.  For example, Chen, received

20  her final salary three days after she was fired, her deferred compensation nine days later, and her

21  final commissions two months later.  Sullivan Decl. ¶ 30; *see also id.* ¶ 44 & Ex. 14.

22        Similarly, Harvey appears to treat Morgan Stanley's pay stub violations as entirely

23  derivative of the AFG-related claims and seems not to have valued the § 226 claim either.  Had

24  Harvey investigated this claim, he would have discovered that Morgan Stanley's pay stub

25  violations are numerous and systemic, only partially derivative of the AFG violations, and

26  support enormous penalties.  *Id.* ¶ 49.  This is problematic because, while Harvey's claims under

27  §§ 201, 202 and 226 appear to be wholly derivative of his claims under §§ 221 and 2802, the

28  *Chen* plaintiffs' claims are not so limited.  *See id.* § III.

20

1    When the settlement "release[s] claims based on different facts than those alleged in the

2    litigation at issue[,]" it should not be approved.  *Chavez v. PVH Corp.*, No. 13-CV-01797-LHK,

3    2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015) (collecting cases).

4    **IV.    The Settlement Class Cannot Be Certified.**

5    "Where, as here, the parties have reached a settlement agreement prior to class

6    certification, 'the court "must pay undiluted, even heightened, attention"'" to whether the settling

7    plaintiff meets the requirements of Rule 23.  *Litty v. Merrill Lynch & Co.*, No. 14 Civ. 425, 2015

8    WL 4698475, at *2 (C.D. Cal. Apr. 27, 2015) (quoting *Alberto v. GMRI, Inc.,* 252 F.R.D. 652,

9    658 (E.D. Cal. 2008)); *accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

10    **A.    Harvey Fails to Provide Sufficient Information.**

11    Harvey has failed to provide sufficient information for the Court to review, evaluate or

12    certify the class in question, and the limited information provided has been both inaccurate and

13    misleading.  *See* Harvey Br. at 11-15; § III(D)-(E) above.

14    Harvey does not even explain the differences in how FAs are defined in the Agreement

15    and Complaint.  *Compare Harvey* Agreement ¶ 17 (defining "Financial Advisors" as "Financial

16    Advisors and/or Private Wealth Advisors"), *with* SAC ¶ 2 (defining FAs as including "Financial

17    Advisors, or the functional equivalent, however titled" and listing "'Financial Consultant,'

18    'Securities Broker,' 'Stockbroker,' 'Investment Advisor,' and/or 'Investment Representative'").[14]

19    Harvey's motion and SAC (and Harvey' previous complaints) also omit any information

20    about Harvey's work at Morgan Stanley, including, even, when he was employed.[15]  Without

21    such information, the Court cannot determine whether Harvey meets the requirements of Rule 23

22    ─────────────
[14] Harvey does not explain how these positions are *functionally* equivalent, why Private Wealth
23    Advisors are added, or even which position(s) Harvey worked within the FA umbrella.  Perhaps,
Harvey added Private Wealth Advisors at the last minute after learning from Chen's complaint
24    that Morgan Stanley also required them to fund Morgan Stanley's routine business expenses.
*See* ECF No. 29-10 (Chen Compl. in Intervention) ¶¶ 37, 39.  Even so, Private Wealth Advisors
25    are a separate position.  *See id.*; *Private Wealth Advisor Associate Program*, Morgan Stanley,
https://www.morganstanley.com/people/financial-advisors/private-wealth-advisor-associate (last
26    visited May 16, 2019).
[15] While the SAC does include general allegations that Harvey and all other FAs were impacted
27    by the policies in question, this is arguably insufficient to survive a Rule 12(b)(6) motion, *see
Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014), *as amended* (Jan. 26,
28    2015) (dismissing overtime claim when plaintiff failed to "allege at least one workweek when he
worked in excess of forty hours"), let alone meet Harvey's burden to certify a settlement class.

21

– including whether his experience is typical of the class, whether he is an adequate class representative, and whether his facts support the three new claims pled in *Chen*, never before raised by Harvey, and which all will be withdrawn if the settlement is not approved.[16]

The paucity of information is all the more troubling given that Harvey's attorneys testified that they engaged in what they considered a robust information exchange with Morgan Stanley.  *See* Wynne Decl. ¶¶ 21-23.

**B.      Harvey Is Not an Adequate Class Representative.**

The settlement also exhibits multiple signs that Harvey is not an adequate representative of the class under Rule 23(a)(4).

Very Weak Bargaining Position.  Harvey was in a very weak bargaining position, with Morgan Stanley appearing to condition settlement on the release of *Chen* claims as well, forcing Harvey to roll in those claims without properly valuing them.  Additionally, Morgan Stanley has significant counterclaims against Harvey and has initiated a FINRA arbitration against him, *see* ECF No. 26 (Joint Case Management Statement), at 3:16-17; *see also* ECF No. 23 (Answer), at 5 (raising unclean hands as affirmative defense based on "Plaintiff's breach of fiduciary duty, theft of trade secrets, and unfair competition").  This exposure provided real incentive for Harvey to settle now to eliminate further risk.[17]  This point was raised by the *Chen* plaintiffs, *see* Intervention Br. at 8, but Harvey failed to address it at all in his brief.

Arbitrary PAGA Allocations.  Harvey allocates $600,000 for the PAGA claims ($500,000 for April 23, 2013 to May 9, 2014 ("Tier 1") and $100,000 for May 9, 2014 through Preliminary Approval ("Tier 2").  *Harvey* Agreement ¶¶ 34, 48, 49.  Harvey's only justification for allocating approximately 24 times as much value to the Tier 1 period ($38,461 per month vs. $1,613 per

---

[16] Significantly, Harvey opted out of the AFG program in 2017, and thus likely did not participate in 2018, when he quit working at Morgan Stanley.  *See* Humenik Decl. ¶¶ 107-08. Because of this, he may not even have certain claims that the *Chen* plaintiffs possess, and that he now seeks to assert in the SAC, like for example the requirement under Labor Code §§ 201 and 202 that wages be paid promptly upon discharge of employment.  *See* SAC ¶ 31.

[17] While Morgan Stanley employed the same tactics to try to defeat Chen's claims, the *Chen* court already ruled that Chen's FINRA arbitration had no collateral estoppel effect because unclean hands is no defense to a PAGA action, *see* ECF No. 39-2 (Sagafi Suppl. Intervention Decl. Ex. L), at 2, 4-5.

month) is that the Tier 2 period is coincident with the Rule 23 period (which is really no explanation at all).  Harvey Br. at 8-9.  Harvey does not even value the PAGA claims, stating only conclusorily that "the potential exposure for [the Rule 23 claims] is substantially higher than the PAGA claims."  *Id.*  Harvey has not adequately explained why PAGA allocations for Tiers 1 and 2 are vastly different.  *See True v. Am Honda Motor Co.*, 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010) (allocation is "patently unfair" when it "draws an arbitrary distinction among class members with identical legal claims and injuries").  Further, Harvey has not explained how he can release six years of PAGA claims, when regardless of how much Morgan Stanley paid he has no authority to do so and it is against public policy.

Agreement to withdraw the SAC.  Harvey's willingness to drop claims of class members[18] if the settlement is not approved raises additional serious questions as to his adequacy.  *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 385–86 (C.D. Cal. 2007) (willingness to drop claims "calls into question the named plaintiffs' commitment to the interests of those plaintiffs residing outside of California" (citation omitted)).

**C.      Harvey's Counsel Have Misrepresented Crucial Facts to the Court.**

Harvey's counsel have mischaracterized the $10,253,000 MSA as a "non-reversionary . . . gross settlement fund," Harvey Br. at 8; Wynne Decl ¶ 28, when it is in fact a $8,500,000 Cash Payout, out of which all attorneys' fees and costs, settlement expenses, and Harvey's service award will be deducted, and class and PAGA payments will be made, and a $1,735,000 Expense Fund that remains within Morgan Stanley's control and is not paid out as part of any class member award.

Harvey's mischaracterization of the MSA is troubling in two ways, raising serious questions about their adequacy.  *See* Fed. R. Civ. P. 23(g), (e)(2)(A).[19]  First, as discussed above, Harvey's counsel used this characterization to mislead the Court about potential gross FA

---

[18] While there will be individuals, like Chen, who *only* have a Tier 2 PAGA Payment claim and are not class members, there also will be class members who are eligible for a Tier 1 recovery and whose interests Harvey was obligated to consider under Rule 23(a)(4).

[19] The fact that Harvey's counsel settled his (and other plaintiffs') claims in November and did not file for preliminary approval for six months does not speak well of their adequacy.

23

1    recoveries and dramatically underreported the number of work months covered by the

2    settlement.  *See* § III(D(i)-(iii); Humenik Decl. ¶ 39.  Second, Harvey's counsel used this

3    mischaracterization to seek 25% of a supposed common fund, the MSA, when many class

4    members have no "right to share the harvest of" the Expense Fund.  *Boeing Co. v. Van Gemert*,

5    444 U.S. 472, 480 (1980).

6         As the Ninth Circuit has explained, "[c]ourts have long recognized that 'settlement class

7    actions present unique due process concerns for absent class members.'"  *In re Bluetooth*

8    *Headset Prods. Liab. Litig.*, 654 F.3d at 946 (quoting *Hanlon*, 150 F.3d at 1026).  "One inherent

9    risk is that class counsel may collude with the defendants, 'tacitly reducing the overall settlement

10   in return for a higher attorney's fee.'"  *Id.* (quoting *Knisley v. Network Assocs., Inc.*, 312 F.3d

11   1123, 1125 (9th Cir. 2002)); *see Evans v. Jeff D.*, 475 U.S. 717, 733 (1986) (acknowledging that

12   "the possibility of a tradeoff between merits relief and attorneys' fees" exists in class action

13   settlement negotiations)).  Here, Harvey's counsel's fee request suffers from precisely that

14   problem, in that fees, costs, and service awards can only be paid in cash (i.e., from the common

15   fund), but he attempts to justify them by reference to the MSA, which includes future AFG

16   payments (effectively coupons).  His request for 30.1% of the common fund, which he frames as

17   25% of the MSA, underscores the reverse auction flaws of the settlement.

18       **D.**       ***This* Class Settlement Is Not a Superior Way to Resolve the Dispute.**

19       *This* class settlement is not a superior means of resolving the parties' dispute.[20]  In

20   evaluating superiority, courts consider factors including "the class members' interests in

21   individually controlling the prosecution or defense of separate actions" and "the extent and

22   nature of any litigation concerning the controversy already begun by or against class

23   members[.]"  Fed. R. Civ. P. 23(b)(3)(A)-(B).  Those interests "may be so strong as to call for

24   denial of a class action."  Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment.

25       The *Chen* plaintiffs' interest in maintaining the integrity of their own case warrants the

26   denial of the proposed settlement class in *Harvey*.  *Chen* has been litigated for four years, was on

27

28   _____
     [20] Harvey's motion forgoes any analysis of superiority.

1   the eve of trial, and there is no doubt that the *Chen* plaintiffs can properly represent the aggrieved

2   employees covered by their action.  *See McGuire v. Int'l Paper Co.*, No. 92 Civ. 593, 1994 WL

3   261360, at *8 (S.D. Miss. Feb. 18, 1994) ("The Court finds, however, that the existing state court

4   litigation is extensive and superior to the proposed class action.").  *Harvey* was not litigated at

5   all, settled quickly, and its ability to extend back to erase *Chen* is without legal support.

6   Especially given the nominal PAGA exposure attributed by Harvey, when compared with the

7   *Chen* plaintiffs, *Chen* is the best chance for aggrieved employees to achieve a real PAGA

8   recovery.  While Harvey's settlement class would erase *Chen*, denying or deferring preliminary

9   approval would simply allow both cases to proceed.  *See* Bradt Decl. ¶¶ 37-42; *see also id.* ¶¶ 28-

10  36.  Given this, the *Chen* plaintiffs should be allowed to proceed with their litigation.

11                                    **<u>CONCLUSION</u>**

12          Because of the settlement's substantive and procedural defects, Intervenors respectfully

13  request that the Court deny or defer ruling on Harvey's motion, to allow Intervenors to proceed

14  to trial.

15   Dated: May 16, 2019                          Respectfully submitted,

16                                                By:  */s/ Jahan C. Sagafi*
                                                       Jahan C. Sagafi
17

18                                                Jahan C. Sagafi (Cal. Bar No. 224887)
     Laura Sullivan (Cal. Bar No. 220529)         Relic Sun (Cal. Bar No. 306701)
19   LAW OFFICE OF LAURA SULLIVAN                  OUTTEN & GOLDEN LLP
     423 South Estate Drive                       One California Street, 12th Floor
20   Orange, CA 92869                              San Francisco, CA 94111
     Telephone: (714) 744-1522                     Telephone: (415) 638-8800
21   Facsimile: (714) 744-1524                     Facsimile: (415) 638-8810
     Email: laurasullivan@laurasullivanlaw.com     Email: jsagafi@outtengolden.com
22                                                 Email: rsun@outtengolden.com

23   Mark Humenik (Cal. Bar No. 231917)           Michael J. Scimone (*pro hac vice*)
     HABER POLK KABAT                              Christopher M. McNerney (*pro hac vice*)
24   423 South Estate Drive                        OUTTEN & GOLDEN LLP
     Orange, CA 92869                              685 Third Avenue, 25th Floor
25   Telephone: (949) 636-5754                     New York, NY 10017
     Facsimile: (216) 241-0739                     Telephone: (212) 245-1000
26   Email: mhumenik@haberpolk.com                 Facsimile: (646) 509-2060
                                                   Email: mscimone@outtengolden.com
27                                                 Email: cmcnerney@outtengolden.com

28
                                         25
                                                   BRIEF OF AMICI CURIAE IN OPPOSITION TO
                                                   HARVEY'S PRELIMINARY APPROVAL MOTION
                                                   CASE NO. 18-cv-02835-WHO

Pooja Shethji (*pro hac vice*)*
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW, Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
Email: pshethji@outtengolden.com

* Admitted in New York; not yet a member of the D.C. Bar; supervised by a member of the D.C. Bar

*Attorneys for Plaintiff-Intervenors, Proposed Class Members, and on behalf of the Aggrieved Employees*