UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON HARVEY,<br><br>    Plaintiff,<br><br>    v.<br><br>MORGAN STANLEY SMITH BARNEY LLC,<br><br>    Defendant. | Case No. 18-cv-02835-WHO<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 48 |

This matter came before the Court on June 12, 2019, with Edward J. Wynne, Wynne Law Firm, James F. Clapp, Clapp & Lauinger, LLP, and Jeffrey K. Compton, Markun Zusman Freniere & Compton, LLP, respectively, appearing as counsel for Plaintiff Brandon Harvey, individually and on behalf of a putative class and aggrieved employees, Andrew R. Livingston, Jinnifer Pitcher, and Katie E. Briscoe for Orrick, Herrington & Sutcliffe LLP, appearing as counsel for Defendant Morgan Stanley Smith Barney LLC ("MSSB") (Harvey and MSSB are collectively the "Parties"), and Jahan C. Sagafi for Outten & Golden LLP, and Mark F. Huminek of Haber Polk Kabat LLP on behalf of proposed intervenors Tracy Chen and Matthew Lucadano (the "Proposed Intervenors"). The Court, having considered the briefs, arguments of counsel and all matters presented to the Court, and good cause appearing therefore, IT IS HEREBY ORDERED THAT:

1. This Court preliminarily approves the Settlement Agreement ("Settlement" or "Settlement Agreement") and finds that the Settlement is within the range of reasonableness as to both the Class Members and Defendant, and that it is the product of good faith, arm's length negotiations between the Parties.

2. This Order incorporates by reference the definitions in the Settlement Agreement, and all terms defined therein shall have the same meaning as set forth in the Settlement

1. Agreement.

**Adequacy and the Arguments of Proposed Intervenors**

3. It appears to the Court on a preliminary basis that: (a) the non-reversionary settlement amount is fair and reasonable to the Class Members when balanced against the probable outcome of further litigation relating to class certification, liability and damages issues and potential appeals; (b) significant investigation, research, formal and informal discovery, analysis, and litigation have been conducted such that counsel for the Parties at this time are able to reasonably evaluate their respective positions; (c) settlement at this time will avoid substantial costs, delay and risks that would be presented by the further prosecution of the litigation; and (d) the proposed Settlement has been reached as the result of intensive, serious and non-collusive negotiations between the Parties facilitated by an experienced mediators.

4. With regards to the argument by the Proposed Intervenors that the proposed settlement between the parties is a "reverse auction," I disagree. "A reverse auction is said to occur when 'the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant.' It has an air of mendacity about it." *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091, 1099–1100 (9th Cir. 2008) (quoting *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 282 (7th Cir. 2002)). That a defendant is simply discussing settlement with the plaintiffs in parallel proceedings is insufficient to establish that an impermissible "reverse auction" has occurred because it "would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction." *Id.* at 1099–1100 (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002)). Courts look for a showing of impropriety to find that a reverse auction is occurring. See *Smith v. CRST Van Expedited, Inc.*, 10–CV–1116–IEG WMC, 2012 WL 5873701, at *4 (S.D. Cal. Nov. 20, 2012) (rejecting "reverse

auction" argument where intervenor made no showing of impropriety and court found that intervenor "simply appear[ed] unhappy that his was not the class [defendant] chose to settle with").

5. The circumstances giving rise to this proposed settlement and the settlement amount do not show that a "reverse auction" occurred for at least the following reasons:

    a. Harvey's counsel cannot be classified as ineffectual class counsel. They have litigated many claims in this area of law. Clapp declares that since 1999, his practice has focused almost exclusively on plaintiffs' employment and consumer litigation and that he has served as class counsel in more than 80 certified class actions, with approximately 15 of them being against brokerage houses seeking recovery of business expenses and unpaid wages on behalf of financial advisors. Declaration of James F. Clapp in Support of Plaintiffs Motion for Preliminary Approval at ¶ 2 [Dkt. 48-1]. Wynn states that he has engaged in class action prosecution of wage and hour laws in both state and federal court for the past twenty-five years and that he has litigated similar cases against financial services firms on behalf of financial advisors, such as this one. Declaration of Edward J. Wynne in Support of Motion for Preliminary Approval of Class Action Settlement at ¶¶ 3, 10-11 [Dkt. No. 48-2].

    b. The Parties engaged in meaningful discovery prior to settlement. Harvey states that MSSB has produced nearly 2,000 pages of documents related to: all versions of the Financial Advisor Compensation Plan, all versions of MSSB's AFG Program, all versions of MSSB's AFG Process, all versions of MSSB's Expense Policy, all policies and procedures related to Financial Advisor compensation and adjustments made to compensation, and the plaintiff's entire personnel and payroll file. MSSB also provided data on the number of Financial Advisors covered by the case, the total amount allocated to AFG broken down by category of expense and by year, and the number of Financial

|     |     |
| --- | --- |
| 1   | Advisors covered by arbitration agreements and whether they were current or |
| 2   | former Financial Advisors.  MSSB has produced data sets reflecting:  (1) the |
| 3   | total dollar amount that putative class members directed MSSB to allocate to |
| 4   | AFG; (2) the amount of expenses incurred from AFG, itemized by category of |
| 5   | expense; (3) information related to approval of expenses; and, (4) class wide |
| 6   | statistics for the putative class members, including employment status, |
| 7   | workweeks, and pay periods. |

    c. The Parties participated in arm's-length mediation.  They met with Tripper Ortman on November 8, 2018, November 19, 2018, and November 21, 2018.  On the third date, and before reaching an agreement to resolve the dispute, they approached counsel for the Proposed Intervenors who are litigating a similar case with PAGA-only claims in *Chen v. Morgan Stanley Smith Barney* (Orange County Superior Court Case No. 30-2014-00724866-CU-OE-CXC) in order to attempt to reach an agreement to provide a global resolution of this case and *Chen* with an additional payment for the portion of the *Chen* limitations period not previously covered by *Harvey* and to compensate Proposed Intervenors' counsel for the fees and costs of litigating *Chen*.  On January 18, 2019, the Parties and Proposed Intervenors attended a joint mediation with Ortman and Mark Rudy, the original mediator in *Chen*.  Although the joint mediation was unsuccessful, it cannot be said that the Parties negotiated in secret or attempted to cut out the Proposed Intervenors.

    d. The non-reversionary and non-claims-made $10,235,000 gross settlement fund consisting of $8,500,000 in cash, as well as $1,735,000 in future immediate payments of business expenses to pay categories of expenses for current California financial advisors that otherwise could have been submitted to the AFG program compares favorably to other recent settlements reached on behalf of financial advisors in California:

        i. In *Tsyn v. Wells Fargo*, 14-cv-02552-LB (N.D. Cal.) the court approved

a $9,500,000 settlement on November 1, 2018. There, in addition to claims for unreimbursed business expenses in a similar program to MSSB's AFG, the plaintiffs also alleged that they were misclassified as exempt and also were owed overtime. The settlement in *Tsyn* equated to approximately $72.72 per work month, while the proposed settlement here equates to $94.64 per work month. The proposed settlement represents 6.6% of MSSB's total exposure while the settlement in *Tsyn* was 5.75%.[1]

 ii. In *Brecher v. Citigroup Global Markets, Inc.*, 09- cv-1344 (S.D. Cal.) the plaintiffs brought claims for unlawful forfeiture of benefits and unreimbursed business expenses under California Labor Code § 2802 for payments made to support staff. A $3,700,000 non-reversionary settlement was approved on behalf of a 1,006 person class on February 2, 2015. 66% of the settlement was attributed to the expense reimbursement claim and participating class members received $3,171 on average.[2] Here, the average payment is expected to be $3,595.

 iii. In *Litty v. Merrill Lynch & Co.*, Case No. BC582127 (L.A. Sup. Ct.) on November 2, 2016, the court approved a $2,465,000 class action

---

[1] The Proposed Intervenors dispute the Parties' calculation of exposure in *Tsyn*. The settlement there allocated $38 million to Wells Fargo's version of AFG. Therefore, the Proposed Intervenors argue that the settlement there represented 25% of total exposure. Brief of Amici Curiae Tracy Chen and Matthew Lucadano in Opposition to Plaintiff's Motion for Preliminary Approval at 16 [Dkt. No. 52]. But according to Harvey, financial advisors at Wells Fargo paid sales assistants $127 million outside of its version of AFG that also are a part of Wells Fargo's total exposure.

The Proposed Intervenors also argue that the proposed settlement should be extrapolated out to the date of preliminary approval. Harvey counters that even if this is true, the additional months of time change the exposure under the § 2802 claim to $193,000,000, resulting in a per work month recovery of $80.78, which is still superior to the $72.72 in *Tsyn*, and with the percent of exposure changing to 5.25% here compared to the 5.75% in *Tsyn*.

[2] The settlement in *Brecher* involved different settlement subclasses. 60% was paid to members of the business expense class who did not sign a release, 25% was paid to those who did sign a release. The proposed settlement would not pay different amounts to financial advisors who signed a release or arbitration agreement.

settlement reached on behalf of 2,501 person class. The *Litty* complaint alleged claims for unreimbursed business expenses under Labor Code § 2802 and derivative claims under the UCL and PAGA. The average settlement in *Litty* was $1,147 per class member. This is less than half the average amount in the proposed settlement.

e. The Proposed Intervenors cite a number of cases that settled for significantly higher amounts and at higher percentages of total exposure, but the cases listed above are better comparators. The Proposed Intervenors' cases had higher exposure for the defendants because they contained claims for unpaid overtime that are not alleged in *Harvey*. Moreover, they are older and predate changes in the legal landscape that made these types of lawsuits less lucrative. For example, a 2006 opinion letter from the U.S. Department of Labor held that financial advisers were administratively exempt from the FLSA, making overtime claims less valuable than before. Claims for unlawful wage deductions under Labor Code §§ 221-224 are also less valuable. In the past, financial services firms' compensation plans did not clearly specify when commissions became "earned," making the plans vulnerable to attack as creating unlawful wage deductions. Then courts affirmed that the earning of commission wages was dictated by the terms of the compensation plan. *See DeLeon v. Verizon Wireless, LLC*, 207 Cal. App. 4th 800, 808 (Cal. Ct. App. 2012) (right to commissions depends upon the terms of the contract for compensation); *Nein v. HostPro, Inc.*, 174 Cal. App. 4th 833, 853 (Cal. Ct. App. 2009) (same); *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1330 (Cal. Ct. App. 2006) (same); *Steinhebel v. Los Angeles Times Commc'ns*, LLC, 126 Cal. App. 4th 696, 704 (Cal. Ct. App. 2005) (charge-back of commission advances against their future advances on commission does not violate the law where plaintiffs executed acknowledgements indicated they read and understood the compensation plan). This allowed brokerage firms to restructure their

compensation plans to be less vulnerable to challenge by clarifying that expense reimbursement programs were now "voluntary" and funded through a reduction in the financial advisor's pay before commissions were earned, rather than deducted from commissions. The combined effect of firms claiming that their California financial advisors were primarily engaged in advising (rather than selling, so as to exempt them from overtime) and the restructuring of compensation plans has led to a lower amount of exposure for financial firms. These factors make the cases relied on by Proposed Intervenors less useful as comparators to this one.[3]

    f. The PAGA payment of $600,000 is also consistent with (or indeed higher than) the amounts awarded by other courts. For instance, in *Tsyn*, the court approved a $20,000 allocation to the LWDA. The case cited by the Proposed Intervenors at the hearing, *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058 (N.D. Cal. 2019) (Koh, J.), is distinguishable because of its procedural posture (an award after a bench trial) and the number of employees involved (between 51,824 and 75,791 aggrieved employees, depending on the violation). In tha case, the Hon. Lucy Koh awarded $53,901,700 in PAGA penalties.[4] The PAGA claim for meal break violations was valued at $1.35 per employee, the PAGA claim based on wage statements was valued at $86.08 per employee, and the PAGA claims based on overtime violations was valued at $633.97 per

---

[3] The only recent settlement that compares less favorably than the three cases discussed above is *McLeod v. Bank of America*, 16-cv-3294 (N.D. Cal.). There, the parties settled for $11,000,000, representing roughly 50% of the total exposure on mileage reimbursement claims for mortgage loan officers use of their own personal vehicles. But the *McLeod* plaintiffs were in a much stronger position than the plaintiffs are here because their settlement followed class certification and after the Ninth Circuit rejected the defendants Rule 23(f) petition.

[4] The Proposed Intervenors make exceptionally high estimates for the value of the PAGA claims here, even in relation to *Magadia*. The award there was less than a quarter of the Proposed Intervenors lower estimate of the PAGA exposure here ($210,200,000) and roughly 8% of their higher estimate ($437,500,000), even though this case has a fraction of the employees. The Proposed Intervenors' estimates dwarf the amount of PAGA payments typically made by courts in this state.

employee. Here, the proposed settlement is split across two PAGA periods. $500,000 is allocated to the Tier 1 PAGA period between April 23, 2013 to May 9, 2014, representing a recovery of $18.02 per pay monthly pay period and roughly $228 per employee during that time.[5] $100,000 is allocated to the Tier 2 PAGA period spans from May 9, 2014 to the present. The recovery under Tier 2 is lower because the aggrieved employees in Tier 2 also fall within the class period and would recover from the larger cash payment amount in the Proposed Settlement. Courts routinely apply a "sliding scale" approach to PAGA penalties where there is a hybrid settlement that includes a Rule 23 claim and a PAGA claim, and "the purposes of PAGA may be concurrently fulfilled." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016) (Chen, J.). *Chen* is a PAGA only case; the aggrieved employees in Tier 2 here would recover under a hybrid settlement that includes both their Rule 23 claim and their PAGA claim.

g. Finally, relief to the class and aggrieved employees would be faster and more certain than what the Proposed Intervenors offer in their related state court case, *Chen v. Morgan Stanley Smith Barney* (Orange County Superior Court Case No. 30-2014-00724866-CU-OE-CXC) ("*Chen*"). *Chen* was filed over five years ago in May of 2014. Although the Proposed Intervenors argue that the *Chen* trial was set to begin on January 14, 2019 but has been stayed pending the resolution of the matters in this Court, the trial was for phase 1 of a two phase trial. Phase 1 would determine whether the Proposed Intervenors were aggrieved under PAGA.[6] If the Proposed Intervenors were successful at phase

---

[5] The Tier 1 PAGA period is 381 days long, corresponding to roughly 12.7 months. Recovery of $18.02 per monthly pay period equates to $228.85 per employee prior to payment to the LWDA.

[6] MSSB argues that the two Proposed Intervenors may well be dismissed at Phase 1 because they do not qualify as "aggrieved" under PAGA. On February 12, 2016, the Financial Industry Regulatory Authority ("FINRA") issued a decision finding that Proposed Intervenor Chen submitted false expense reports reeking reimbursement from MSSB for expenses she did not incur and barred her from working at any FINRA member firm. [Dkt. No. 37-2]. The FINRA decision

8

1, MSSB would be able to appeal the judgment up through the California Supreme Court. Assuming the phase 1 appeals were exhausted in the Proposed Intervenor's favor, phase 2 would commence as a representative action and, if successful, might also lead to two rounds of appeals. Then, assuming those appeals were resolved in the Proposed Intervenors' favor, the 1,800 financial advisors who have entered into arbitration agreements might have to initiate arbitration against MSSB; the parties dispute whether the arbitrators would give deference to the judgment in *Chen*. Further, the proposed settlement here would also provide relief to the 600 financial advisors who have already executed releases. In short, final approval of this settlement would provide members of the class and the aggrieved employees more certain and expeditious relief.

**CLASS CERTIFICATION REQUIREMENTS**

6. The Court hereby conditionally certifies the proposed Class contained in the Settlement Agreement and conditionally finds that, solely for the purposes of approving this Settlement and for no other purpose and with no other effect on this litigation, the proposed Settlement Class meets the requirements for certification under Federal Rules of Civil Procedure, Rules 23(a) and 23(b), including that: (a) the proposed class is ascertainable and so numerous that joinder of all members of the class is impractical; (b) there are predominant questions of law or fact common to the proposed class, and there is a well-defined community of interest among the members of the proposed class with respect to the subject matter of the litigation; (c) the claims of Representative Plaintiff Brandon Harvey are typical of the claims of the Class Members; (d)

---

states that Chen would order client gifts from a business such as Nordstrom, obtain a receipt, submit the receipt for reimbursement, and then cancel the order so that her personal credit card was not charged. Proposed Intervenor Lucadano has not submitted a PAGA letter to the LWDA and is relying on Chen's PAGA letter to pursue PAGA claims. Declaration of Andrew Livingston in Support of Defendant's Opposition to Motion to Intervene at ¶ 15 [Dkt. No. 37-1]. Additionally, prior to Lucadano's termination, he only utilized $809.27 in AFG funds during the applicable PAGA period.

Representative Plaintiff Brandon Harvey and Class Counsel will fairly and adequately protect the interests of the Class Members; (e) a class action is superior to other available methods for an efficient method of adjudication of this controversy; and (f) Class Counsel is qualified to act as counsel for the Representative Plaintiff in his individual and representative capacities.

7. For the purposes of this Settlement, the Class Members are defined as follows: all individuals employed by MSSB within the State of California from May 14, 2014, through the date of Preliminary Approval who worked as Financial Advisors and/or Private Wealth Advisors. Aggrieved Employees are defined as all current and former Financial Advisors who were employed by Defendant within the State of California at any time during April 23, 2013 through the date of Preliminary Approval.

8. "Cash Payment Amount" is Eight Million Five Hundred Thousand Dollars

9. The Court provisionally finds, solely for the purposes of approving this Settlement and for no other purpose and with no other effect on this litigation, Edward J. Wynne, Wynne Law Firm, James F. Clapp, Clapp & Lauinger, LLP, and David S. Markun, Markun Zusman Freniere & Compton, respectively, for purposes of this Settlement to be sufficiently experienced and proficient in class action proceedings that they may act as Class Counsel.

10. The Court provisionally appoints, solely for the purposes of approving this Settlement and for no other purpose and with no other effect on this litigation, Representative Plaintiff Brandon Harvey as Class Representative.

**SETTLEMENT ADMINISTRATOR**

11. The Court provisionally appoints KCC, Inc. as Settlement Administrator to carry out the Administration duties as set forth in the Settlement.

12. This includes, but is not limited to, the duty to build and maintain a website which shall provide all pertinent information relating to this class settlement, including, without limitations, the following: (i) the name of the lawsuit; (ii) the name of the Court; (iii) Settlement Administrator's name and contact information; and (iv) Class Counsel's

names and contact information. Also, available on the website will be the following documents in PDF-format for download: The Settlement, the Second Amended Complaint, the Notice, and the Preliminary Approval Order.

**NOTICE**

13. Except as noted below, the Court finds that the proposed "Notice of Pendency of Class Action" ("Notice") attached to the Settlement Agreement as Exhibit 1, fairly, plainly and adequately advises Class Members of (i) the terms of the Settlement; (ii) the automatic distribution of the Individual Settlement Payment to Settlement Class Members; (iii) the amount of the Individual Settlement Payment expected to be paid; (iv) how to dispute the number of workweeks upon which their Individual Settlement Payments will be based; (v) the Released Claims; (vi) the conditional certification of the class; (vii) the Preliminary Approval of the Settlement; (viii) the procedures for submitting a valid Exclusion Request to opt out of the Class; (ix) the procedures for objecting to the Settlement and appearing at the Final Approval Hearing; and (x) the date set for the Final Approval Hearing. The Court further finds that the Notice clearly comports with all constitutional requirements, including those of due process. However, the form of proposed Notice of the Class Action Settlement shall be edited to inform class members that objections should (not must) be in writing, should (not must) identify information, and strike the following language: "If you file a timely written objection" and "Late objections may not be considered."

14. The Court hereby APPROVES the Notice, as modified.

15. Notice shall be provided to the Class Members as set forth in the Settlement. Defendant will provide the Settlement Administrator with each Class Member's full name; last known mailing address and telephone number; Individual Class Pay Periods and Individual PAGA Periods that each individual worked as a Financial Advisor (the "Class List") within 30 days after Preliminary Approval.

16. The Settlement Administrator shall mail a copy of the Notice within 14 calendar days after receiving the Class List spreadsheet.

11

17. The Court further finds that the mailing of the Notice to Class Members at their last known home addresses as specifically described within the Agreement, with measures taken for verification of home addresses and skip tracing set forth therein, constitutes an effective method of notifying Class Members of their rights with respect to the class action, the Settlement, their right to request exclusion from the Class.

**EXCLUSIONS/OPT-OUTS**

18. The Court hereby APPROVES the proposed procedure for exclusion or opting out of the Class. Each Class Member will have 45 days after the date on which the Settlement Administrator first mails the Notice to opt out by submitting an Exclusion Request as set forth in the Settlement.

19. Class Members, with the exception of the Class Representative, may opt out of the Settlement. Class Members who wish to exercise this option must timely submit a request for exclusion to the Settlement Administrator postmarked by the Objection/Exclusion Deadline or 15 calendar days after a Notice is re-mailed in the case of an undelivered Notice, whichever is later. The request for exclusion must include the Class Member's name, signature, date, last 4 digits of Social Security Number, and the following statement, or something similar to, "I request to be excluded from the class action proceedings in the matter of *Brandon Harvey v. Morgan Stanley Smith Barney LLC*, Case No. 18-cv-02835." The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.

20. No request for exclusion may be made on behalf of a group of members of the Class.

21. By submitting such a request for exclusion, a Class Member shall be deemed to have exercised his or her option to opt out of the class action lawsuit. Any member of the Class who requests exclusion from the Settlement will not be entitled to any share of the Settlement, will not be bound by the Settlement, and will not have any right to object, appeal or comment thereon. Members of the Class who fail to submit a valid and timely request for exclusion shall be bound by all terms of the Settlement and the

1 Final Judgment entered in this Action, regardless of whether they otherwise have
2 requested exclusion from the Settlement. However, Class Members must cash their
3 Individual Class Settlement Payment checks in order to release their Fair Labor
4 Standards Act claims.

22. Any person who wishes to object to the Settlement should notify the Court, with service to Class Counsel, and defense counsel, in writing of his or her intent to object to the Settlement by following the procedures set forth in the Notice. Objections to the proposed settlement should be in writing, clearly identify the case name and number, and comply with Federal Rule of Civil Procedure 23(e)(5). The objections should be filed with the Court, pursuant to the Court's procedures for filing, by the Objection/Exclusion Deadline or 15 calendar days after the re-mailing of the Notice in the case of an undelivered Notice, whichever is later.

23. No later than 14 calendar days before the Final Approval and Fairness Hearing, the Settlement Administrator shall file a declaration under penalty of perjury advising the Court with a complete list of all members of the Class who have timely requested exclusion from the Settlement.

**PAGA**

24. Pursuant to applicable case law, PAGA aggrieved employees have no ability to exclude themselves or object to the Settlement. *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015) ("Unlike Rule 23(c)(2), PAGA has no notice requirements for unnamed aggrieved employees, nor may such employees opt out of a PAGA action."); *Ochoa-Hernandez v. Cjaders Foods*, No. 08-2073, 2010 WL 1340777, at *5 (N.D. Cal. Apr. 2, 2010) ("Unnamed employees need not be given notice of the PAGA claim, nor do they have the ability to opt-out of the representative PAGA claim. There is no indication that the unnamed plaintiffs can contest a settlement, if any, reached between the parties."). Therefore, the exclusion and objection procedures above do not apply to any PAGA Aggrieved Employee unless they are also a Class Member, and then only to their participation in the Class.

**FINAL APPROVAL**

25. Pursuant to the Northern District of California Local Rules, no later than 35 days before the Final Approval Hearing, Plaintiff will file a Motion in Support of Final Approval of the Settlement.  Class Counsel shall file their motion for approval of their Fees and Expenses, the Named Plaintiff Award, and the Administration Costs, estimated to be $2,593,750, $10,000, and $32,000, respectively, no later than 21 days before the Objection/Exclusion Deadline.

26. The Final Approval hearing shall be held on February 5, 2020 at 2 p.m. in Courtroom 2, to determine whether the proposed Settlement is fair, adequate, reasonable, and should be approved, and to determine the Fee and Cost Awards.

27. Should the proposed Settlement be approved, following the Final Approval Hearing, the Court shall enter judgment in accordance with the Settlement that will adjudicate the rights of all Settlement Class Members and Aggrieved Employees, including the named Plaintiff.

**CHRONOLOGY**

28. Unless otherwise modified by the Court, the dates for performance are as follows:

| Date/Triggering Event: | Event: |
| --- | --- |
| Order Granting Preliminary Approval | Court orders preliminary approval of Settlement and conditional certification of Class |
| 30 calendar days after Preliminary Approval | Deadline for Defendant to provide the Class List to Settlement Administrator, Settlement ¶ 67 |
| 14 calendar days after receipt of Class List | Deadline for Settlement Administrator to mail Notice, Settlement ¶ 68 |
| 45 days after Notice mailed | Last day for any Class Member to object to the Settlement or request exclusion from the Class, Settlement ¶ 32.  (The motion for |

| | attorneys' fees shall be filed 21 days prior to the deadline for objections/opt outs.) |
|---|---|
| 7 calendar days after the Exclusion Deadline | Last Day for Settlement Administrator to provide Parties with list of all valid exclusion requests, Settlement ¶ 74 |
| 10 calendar days or more before Final Approval Hearing | Last Day for Settlement Administrator to provide declaration of due diligence and proof of mailing for Notice to counsel, Settlement ¶ 70 |
| 35 days before Final Approval Hearing | Last Day for Class Counsel to file Motion for Final Approval. |

**NO ADMISSION OF LIABILITY, RETURN TO PRIOR STATUS, AND STAY OF PROCEEDINGS**

29. Neither the Settlement nor this Preliminary Approval Order is an admission of liability, fault, or wrongdoing by Defendant, or any of the Releasees, nor a finding of the validity of any claims in the Action or any violation of law. Neither this Preliminary Approval Order, the Settlement, nor any document referred to herein, nor any action taken to carry out the Settlement is, may be construed as, or may be used as, an admission or concession by or against Defendant, or any of the Releasees, of any fault, wrongdoing, or liability whatsoever. Neither this Preliminary Approval Order, any term or provision of the Settlement, nor any of the negotiations or proceedings connected with it, shall be offered or received in evidence in any pending or future civil, criminal or administrative action or proceeding, other than such proceedings that may be necessary to consummate or enforce the Settlement; however, Defendant or any Releasee may use the Settlement and/or any related document, in any action that may be brought against them in order to support a defense or counterclaim based on

principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, accord and satisfaction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

30. IT IS FURTHER ORDERED that if for any reason the Court does not execute and file an Order Granting Final Approval, or the Payment Obligation and Release Date, as defined in the Settlement, does not occur for any reason whatsoever, the Settlement that is the subject of this Order, and all evidence and proceedings had in connection therewith, shall be without prejudice to the status quo ante rights of the Parties to the litigation, as more specifically set forth in the Settlement, and this Order shall be rendered null and void and shall be vacated.

31. IT IS FURTHER ORDERED that pending further order of this Court, all proceedings in this matter except those contemplated herein and in the Settlement are stayed.

**IT IS SO ORDERED.**

Dated: September 5, 2019



William H. Orrick
United States District Judge