EDWARD J. WYNNE (165819)
ewynne@wynnelawfirm.com
WYNNE LAW FIRM
Wood Island
80 E. Sir Francis Drake Boulevard, Suite 3G
Larkspur, CA 94939
Telephone:    (415) 461-6400
Facsimile:    (415) 461-3900

DAVID S. MARKUN (108067)
dmarkun@mzclaw.com
JEFFREY K. COMPTON (142969)
jcompton@mzclaw.com
MARKUN ZUSMAN FRENIERE &
COMPTON LLP
17383 Sunset Boulevard, Suite A380
Pacific Palisades, CA 90272
Telephone:    (310) 454-5900
Facsimile:    (310) 454-5970

JAMES F. CLAPP (145814)
jclapp@clapplegal.com
MARITA MURPHY LAUINGER (199242)
mlauinger@clapplegal.com
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, California 92011
Telephone:    (760) 209-6565 ext. 101
Facsimile:    (760) 209-6565

Attorneys for Plaintiff
Brandon Harvey

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

BRANDON HARVEY, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

MORGAN STANLEY SMITH BARNEY
LLC,

Defendant.

Case No. 3:18-cv-02835 WHO

**PLAINTIFF'S NOTICE OF MOTION
AND MOTION FOR ATTORNEYS'
FEES AND COSTS AND CLASS
REPRESENTATIVE ENHANCEMENT
AWARD; MEMORANDUM OF
POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

Judge: Hon. William H. Orrick
Date:   February 5, 2020
Time:  2:00 p.m.
Courtroom:  Courtroom 2, 17th Floor

1

## **NOTICE OF MOTION AND MOTION**

2
TO THE COURT AND ALL INTERESTED PARTIES:

3
        PLEASE TAKE NOTICE THAT on February 5, 2020 at 2:00 p.m., or as soon thereafter

4
as counsel may be heard, in the courtroom of the Hon. William H. Orrick, United States District

5
Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco,

6
California, in Courtroom 2, 17th Floor, Plaintiff Brandon Harvey will and hereby does

7
respectfully move the court for an order to award class counsel attorneys' fees and

8
reimbursement for litigation expenses and to award payment to Plaintiff for his services as the

9
class representative. This motion is based on the following Memorandum of Points and

10
Authorities, the supporting Declaration of Edward J. Wynne, the supporting Declaration of

11
James F. Clapp, the supporting Declaration of Jeffrey K. Compton, the supporting Declaration

12
of Brandon Harvey, and all other pleadings and papers on file in this action, and such argument

13
as the Court may hear.

14

15
Dated: November 14, 2019                          WYNNE LAW FIRM

16

17
                                                    __/s/*Edward J. Wynne*__
                                                    Edward J. Wynne
18
                                                    Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND CLASS REPRESENTATIVE AWARD

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ...................................................................... i

I.      INTRODUCTION ....................................................................................... 1

II.     CLASS COUNSELS' ATTORNEYS' FEES SHOULD BE APPROVED ...................... 1

    A.   Plaintiff's Request for Attorneys' Fees is Evaluated Under a Deferential
         Standard............................................................................................ 1

    B.   Plaintiff's Request for Attorneys' Fees is Reasonable as a Percentage of
         the Common Fund............................................................................... 3

         1.   The Result Achieved ................................................................. 5

         2.   The Risk Involved in the Litigation .............................................. 7

         3.   The Skill Required and Quality of Work by Counsel ............................ 10

         4.   The Contingent Nature of the Fee ................................................ 11

         5.   Awards Made in Similar Cases .................................................... 12

         6.   No Objection from the Class and Support from the Plaintiff.................. 13

    C.   Plaintiff's Request For Attorneys' Fees Is Reasonable By A Lodestar
         Cross-Check ....................................................................................... 13

         1.   Class Counsel's Hourly Rates Have Previously Been Approved ............ 14

             a.   Edward J. Wynne ............................................................ 14

             b.   James F. Clapp ............................................................... 14

             c.   Jeffrey K. Compton and David Markun........................................ 14

         2.   Class Counsels' Lodestar ......................................................... 14

         3.   A Multiplier Is Appropriate ....................................................... 16

III.    CLASS COUNSEL'S COSTS SHOULD BE APPROVED ................................. 17

IV.     CLASS REPRESENTATIVE ENHANCEMENT AWARD ................................. 17

    A.   Plaintiff's Contributions and Burden Undertaken.................................... 18

    B.   Distribution of Payments and Range of Award Amounts to Class....................... 19

    C.   The Award is not Conditioned on the Settlement .................................... 21

V.      CONCLUSION ....................................................................................... 21

1

<b><u>TABLE OF AUTHORITIES</u></b>

2

<u>**Federal Cases**</u>

3

*Aguilar v. Zep,*
    2014 WL 4245988 (N.D. Cal. Aug. 27, 2014) ...................................................................8

4

*Alvarez v. Farmers Ins. Exch.,*
    No. 3:14-CV-00574-WHO, 2017 WL 2214585 (N.D. Cal. Jan. 18, 2017) .....................19

5

*Alyeska Pipeline Service Co. v. Wilderness Society,*
    421 U.S. 240 (1975) ...........................................................................................................3

6

7

*Barbosa v. Cargill Meat Solutions Corp.,*
    297 F.R.D. 431 (E.D. Cal. July 2, 2013) ...........................................................................4

8

*Bautista v. Harvest Mgmt. Sub LLC,*
    No. CV1210004-FMO-CWX, 2014 WL 12579822 (C.D. Cal. July 14, 2014) ... 12, 19, 20, 21

9

10

*Bernal v. Davita,*
    No. 5:12-cv-03255-PSG (N.D. Cal. Jan. 14, 2014) ...........................................................5

11

12

*Blandino v. MCM Constr.,*
    No. C 12-1729 WHO, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) ...............................4

13

*Boeing Company v. Van Gemert,*
    444 U.S. 472 (1980) ...........................................................................................................3

14

15

*Bogosian v. Gulf Oil Corp.,*
    621 F.Supp. 27 (E.D.Pa.1985) .........................................................................................20

16

*Brecher v. Citigroup Global Markets,*
    S.D. Cal. Case 09-cv-1344 ................................................................................................6

17

18

*Buchanan v. HomeServices Lending, LLC,*
    2013 WL 1788579 (S.D. Cal. Apr. 25, 2013) ...................................................................8

19

*Carter v. XPO Logistics,*
    No. 16-CV-01231-WHO, 2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) ..................19, 20

20

21

*Chambers v. Whirlpool Corp.,*
    214 F.Supp.3d 877 (C.D. Cal. 2016) ...............................................................................19

22

*Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.),*
    19 F.3d 1291 (9th Cir. 1994) .............................................................................................4

23

24

*Ching v. Siemens Industry,*
    2014 WL 2926210 (N.D. Cal., June 27, 2014) ...........................................................5, 13

25

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) .........................................................................................20

26

27

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ................................................................................................2

28

*Fulford v. Logitech,*
    2010 WL 807448 (N.D. Cal. 2010)................................................................20

*Glass v. UBS Fin. Serv.,*
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ...............................................12

*Greko v. Diesel, U.S.A.,*
    2013 WL 1789602 (N.D. Cal. April 26, 2013) ..............................................4

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)..................................................................1, 4

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983) ......................................................................................1

*Hibbs-Rines v. Seagate Techs., LLC,*
    2009 WL 513496 (N.D. Cal. Mar. 2, 2009)..................................................9

*Hughes v. Microsoft Corp.,*
    2001 U.S. Dist. LEXIS 5976 (W.D. Wash. 2001) ......................................20

*In Re Activision Sec. Litig.,*
    723 F. Supp. 1373 (ND. Cal. 1989) ...........................................................12

*In re Apple Computer, Inc. Derivative Litig.,*
    No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) .......2

*In re Atmel Corp. Derivative Litig.,*
    2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) ...........................2

*In re Bluetooth,*
    654 F.3d 935 (9th Cir. 2011)......................................................................13

*In re High-Tech Employee Antitrust Litig.,* No. 11-CV-02509-LHK,
    2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) .............................................20

*In re Immune Response Sec. Litig.,*
    497 F.Supp.2d 1166 (S.D. Cal. 2007) ........................................................13

*In re M.D.C. Holdings Sec. Litig.,*
    No. CV 89-0090, 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. Aug. 30, 1990)....................1

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000)........................................................................5

*In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.,*
    2013 WL 6255697 (D.N.J. Dec. 4, 2013) ....................................................7

*In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.,*
    2014 WL 2101904 (D.N.J. May 20, 2014) ...................................................7

*In re Omnivision Techs.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ........................................................4

3:18-cv-02835 WHO

*In re Pac. Enterprises Sec. Litig.,*
    47 F.3d 373 (9th Cir. 1995)................................................................5

*In re RBC Dain Rauscher Overtime Litig.,*
    703 F. Supp. 2d 910 (D. Minn. 2010) ................................................8

*In re Rite Aid Corp. Secs. Litig.,*
    396 F.3d 294 (3d Cir. 2005)..............................................................13

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.,*
    295 F.R.D. 438 (C.D. Cal. 2014).......................................................20

*In re Washington Pub.Power Supply Sys. Sec. Litig.,*
    19 F.3d 1291 (1994) .........................................................................13

*In Re Washington Public Power Supply System Sec. Litig.,*
    19 F.3d 1291 (9th Cir. 1994)..............................................................11

*In re Wells Fargo Loan Processor Overtime Pay Litigation,*
    2011 WL 3352460 (N.D. Cal., Aug. 2, 2011)....................................13

*Ladore v. Ecolab,*
    No. CV 11-9386 FMO (JCX), 2013 WL 12246339 (C.D. Cal. Nov. 12, 2013).........12, 20

*Laguna v. Coverall North America,*
    753 F.3d 918 (9th Cir. 2014)................................................................2

*Linney v. Cellular Alaska P'ship,*
    1997 WL 450064 (N.D. Cal. 1997)....................................................12

*McLeod v. Bank of America,*
    N.D. Cal. case number 16-cv-03294-EMC .......................................14

*Mills v. Auto-Lite Co.,*
    396 U.S. 375 (1970) ............................................................................3

*Morris v. Lifescan, Inc.,*
    54 F. App'x 663 (9th Cir.2003) ...........................................................5

*Novak v. The Boeing Company,*
    2011 WL 9160940 (C.D. Cal. Jul. 20, 2011) ......................................8

*Patel v. Trans Union, LLC,*
    No. 14-CV-00522-LB, 2018 WL 1258194, (N.D. Cal. Mar. 11, 2018) ...................12, 17

*Paul, Johnson, Alston & Hunt v.Graulty,*
    886 F.2d 268 (9th Cir. 1989)...........................................................3, 4

*Radcliffe v. Experian Info. Solutions,*
    715 F.3d 1157 (9th Cir. 2013)...........................................................17

*Singer v. Becton Dickinson & Co.,*
    2010 U.S. Dist. LEXIS 53416 (S.D. Cal. Jun. 1, 2010)......................4

- v -

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990)......................................................................................4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)......................................................................................2

*Steiner v. American Broad. Co.*,
    248 Fed.Appx. 780 (9th Cir. 2007) ...........................................................................17

*Stuart v. Radioshack Corp.*,
    2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010)............................................5

*Torres v. Wells Fargo*,
    2016 WL 7373856 (C.D. Cal. Oct. 12, 2016) .......................................................7, 19

*Tsyn v. Wells Fargo*,
    N.D. Cal. Case 14-cv-02552-LB .........................................................................passim

*Van Vranken v. Atlantic Richfield*,
    901 F.Supp. 294 (N.D. Cal 1995) .............................................................................17

*Vasquez v. Coast Valley Roofing*,
    266 F.R.D. 482 (E.D. Cal. 2010) ..........................................................................4, 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002)...........................................................................4, 5, 16

*Wannemacher v. Carrington Mortg. Servs., LLC*,
    No. SACV 122016 FMO (ANx), 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014)...........20

*Wellens v. Sankyo*,
    No. C 13-00581 WHO (DMR), 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) ..........4, 20

**State Cases**

*Brinkel v. Westamerica Bank*,
    (Marin County Sup. Ct. Case number CIV 1303112)....................................................14

*Chen v. Morgan Stanley Smith Barney*,
    (Orange County Superior Court Case No. 30-2014-00724866-CU-OE-CXE) .................3

*Duran v. U.S. Bank Nat'l Assn.*,
    19 Cal.App.5th 630 (2018)........................................................................................9

*Duran v. US Bank*,
    59 Cal.4th 1 (2014) ............................................................................................9, 10

*Enombang v. Target Corporation*,
    (Case No. RG17853948, Alameda County Superior Court)............................................14

*Garrett v. Bank of America*,
    (Case No. RG13699027, Alameda County Cour)t............................................................14

*Hall v. Rite Aid Corporation*,
    (Case No. 37-2009-00087938-CU-OE-CTL, San Diego County Superior Court).....14, 15

*In re Ret. Cases,*
    2003 WL 22506555 (Cal. Ct. App. Nov. 4, 2003)...........................................................17

*Koehl v. Verio,*
    142 Cal. App. 4th 1313 (2006)..................................................................................................7

*Litty v. Merrill Lynch & Co.,*
    L.A. Sup. Ct. Case No. BC582127 ..........................................................................................6

*Prachasaisoradej v. Ralphs Grocery Co.,*
    42 Cal. 4th 217 (2009) ..............................................................................................................7

*Reed v. CVS,*
    (Case No. 17855592, Alameda County Superior Court) ...............................................14

*Rope v. Auto–Chlor Sys. of Wash.,*
    220 Cal. App. 4th 635 (2013)...................................................................................................9

*Sav-On Drug Stores, Inc. v. Sup. Ct.,*
    34 Cal. 4th 319 (2004) ............................................................................................................10

*Schachter v. Citigroup,*
    47 Cal. 4th 610 (2009) ..............................................................................................................7

*Smiles v. Walgreens,*
    (Case No. RG 17862495, Alameda County Superior Court)........................................14

*Wershba v. Apple Computer,*
    91 Cal.App.4th 224 (2001)......................................................................................................17

**Federal Statutes**

26 U.S.C.,
    § 162 (a) .....................................................................................................................................7

**State Statutes**

Labor Code,
    § 2802.................................................................................................................................passim

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE AWARD

Plaintiff Brandon Harvey ("Plaintiff") hereby submits the following memorandum of points and authorities in support of Plaintiff's Counsels' request for attorneys' fees and costs and class representative award.

## I.     INTRODUCTION

From the Gross Settlement Fund of $10,235,000, Class Counsel hereby requests an award of $2,047,000 (20% of the total settlement[1]) plus litigation expenses of $24,506.37.[2] Plaintiff also seeks an enhancement award of $10,000. Class Counsel submits that the fee request is fair and reasonable under the percentage of recovery method given the overall result; the benefit provided to the Class; the substantial risks of this litigation; and the complexity of this case and issues presented. Likewise, Class Counsel submits that using the lodestar method as a cross-check confirms the fairness and reasonableness of the fee request. As a result, Class Counsel requests that the fee, cost and enhancement award be approved.

## II.     CLASS COUNSELS' ATTORNEYS' FEES SHOULD BE APPROVED

### A.     Plaintiff's Request for Attorneys' Fees is Evaluated Under a Deferential Standard

Courts have encouraged litigants to resolve fee issues by agreement. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). This is consistent with the strong public policy of encouraging and approving non-collusive settlements, including those in class actions, and avoiding a "second major litigation" arising from a request for attorneys' fees after the matter has been resolved. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *see also, In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090, 1990 U.S. Dist. LEXIS 15488, at *12 (S.D. Cal. Aug. 30, 1990) ("Because this Court believes the parties should be encouraged to settle all their disputes as part of the settlement….

---

[1] Plaintiff's Counsel reserves the right to seek the full 25% of the gross settlement amount in attorney fees per the terms of the Settlement Agreement contingent upon the time, effort and expense involved in resolving the current and potential additional appeal filed by attempted intervenors Locadano and Chen. (Decl. of Wynne, ¶ 21.)

[2] Plaintiff's Counsels' current costs are less than the $35,000 cap per the terms of the Settlement Agreement. Should Counsels' costs increase before this case is finally resolved, Counsel reserves the right to seek reimbursement up to the cap amount. (Decl. of Wynne, ¶¶ 22, 32.)

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND CLASS REPRESENTATIVE AWARD

1  including the amount of the fee... if the agreed-to fee falls within a range of reasonableness, it

2  should be approved as part of the negotiated settlement.").

3      In considering unopposed fee applications, district courts must account for the fact that

4  "the parties are compromising to avoid litigation." *Laguna v. Coverall North America*, 753

5  F.3d 918, 922 (9th Cir. 2014). Accordingly, "the district court need not inquire into the

6  reasonableness of the fees even at the high end with precisely the same level of scrutiny as

7  when the fee amount is litigated." *Id.* (*quoting Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th

8  Cir. 2003)). Thus, while the court must conduct an independent inquiry into the reasonableness

9  of the fee request, it should give substantial weight to the parties' agreement as to the

10  reasonableness of the amount of attorneys' fees.

11      These considerations are particularly appropriate where, as here, the parties conducted

12  their negotiations at arm's-length through not just one, but two, well-respected mediators in

13  three different sessions. *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL),

14  2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs

15  considerably against any inference of a collusive settlement); *In re Atmel Corp. Derivative

16  Litig.*, 2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) (same); *D'Amato v. Deutsche

17  Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement

18  negotiations helps to ensure that the proceedings were free of collusion and undue pressure.").

19  At all times the settlement negotiations were adversarial and non-collusive, and the resulting

20  settlement of attorneys' fees, as a function of the overall settlement value, is likewise fair,

21  reasonable, and free of collusion.

22      Indeed, this Court has found that the settlement was reached "as a result of intensive,

23  serious and non-collusive negotiations between the Parties facilitated by experienced

24  mediators." (Dkt. 76, p. 2.) In addition, the Court rejected attempted intervenors' Tracy Chen

25  and Matthew Lucadano ("Attempted Intervenors") claims of collusion in their opposition to

26  preliminary approval of this settlement. This Court rejected that charge for "at least" the

27  following reasons: (1) Harvey's counsel is knowledgeable and experienced; (2) the parties

28  engaged in meaningful settlement prior to settlement; (3) the parties participated in arm's-

length negotiations through well-respected mediators Tripper Ortman and Mark Rudy in three separate mediation sessions; (4) the settlement compares favorably to other recent settlements on behalf of Financial Advisors seeking reimbursement for business expenses; (5) the settlements cited by Attempted Intervenors are not better comparators than the more recent settlements cited by Plaintiff; (6) the PAGA relief is consistent with, or higher than, amounts awarded by other courts; and, (7) the relief to the class and aggrieved employees would be faster and more certain than any potential relief in the Attempted Intervenors' case, *Chen v. Morgan Stanley Smith Barney* (Orange County Superior Court Case No. 30-2014-00724866-CU-OE-CXE). (Dkt. 76, Order Granting Preliminary Approval.)

Hence, this Court has already rejected any notion of collusion. Plaintiff submits that the resulting settlement of attorneys' fees, as a function of the overall settlement value, is likewise fair, reasonable, and free of collusion.

**B.     Plaintiff's Request for Attorneys' Fees is Reasonable as a Percentage of the Common Fund.**

The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to reasonable attorney's fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Auto-Lite Co.*, 396 U.S. 375, 392-93 (1970). The common fund doctrine is a well-recognized exception to the general American rule that a litigant must bear its own attorneys' fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257-58 (1975).

The common fund doctrine applies when: (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and, (3) the fee can be shifted with some exactitude to those benefitting. *Paul, Johnson, Alston & Hunt v.Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). These criteria are "easily met" where—as here—"each [class member] has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf.'" *Id.* at 271, *citing Van Gemert*, *supra*, 444 U.S. at 479.

District courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method or the percentage method proposed here. *Chem. Bank v. City of Seattle (In re Wash. Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1296 (9th Cir. 1994). Notwithstanding that discretion, use of the percentage method is the "dominant" approach in common fund cases. *See*, *e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007).

The Ninth Circuit has generally established 25% of a common fund as a "benchmark" award for attorney fees. *Vizcaino*, 290 F.3d at 1047. However, the "exact percentage [awarded] varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010) (emphasis added). Within the Ninth Circuit, it is generally recognized that "it is common practice to award attorney's fees at a higher percentage than the twenty-five percent (25%) benchmark in cases that involve a relatively small – i.e., under ten million dollar ($10 Million) – settlement fund. *Greko v. Diesel, U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. April 26, 2013).

Plaintiff is requesting a fee of 20% at this time notwithstanding that the benchmark for attorney fee awards in common fund cases is 25%. *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998). Indeed, in wage and hour cases such as the one at bar, courts, including this Court, typically award fees above the benchmark. *See*, *e.g.*, *Wellens v. Sankyo*, No. C 13-00581 WHO (DMR), 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding 36% in wage and hour class action settlement); *Blandino v. MCM Constr., Inc.*, No. C 12-1729 WHO, 2014 WL 11369763, at *3 (N.D. Cal. Mar. 6, 2014) (awarding 30% in wage and hour class action settlement); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. July 2, 2013) (awarding one-third percent in wage and hour class action); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. Jun. 1, 2010) (noting that the amount of one-third of the common fund for a wage and hour class action settlement "falls within the

typical range" of fee awards); *Stuart v. Radioshack Corp.*, 2010 U.S. Dist. LEXIS 92067 (N.D. Cal. Aug. 9, 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Bernal v. Davita, Inc.*, No. 5:12-cv-03255-PSG, *1-2 (N.D. Cal. Jan. 14, 2014) (awarding one-third of the settlement fund in wage-and-hour class action). Such awards are likewise routinely upheld by the Ninth Circuit. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming one-third of a $12 million common fund); *Morris v. Lifescan, Inc.,* 54 F. App'x 663, 664 (9th Cir.2003) (affirming 33% fee award); *In re Pac. Enters. Secs. Litig.,* 47 F.3d 373, 379 (9th Cir.1995) (affirming fee award of 33% of the recovery).

The Court's determination of a fair and reasonable attorney fee must take into account all of the circumstances of the case, including: 1) the result achieved; 2) the risk involved in the litigation; 3) the skilled required and quality of work by counsel; 4) the contingent nature of the fee; and, 5) awards made in similar cases. *Ching v. Siemens Industry, Inc.*, 2014 WL 2926210, at *7 (N.D. Cal., June 27, 2014); *Vizcaino*, 290 F.3d at 1048-50.

### 1.    The Result Achieved

The overall result and benefit to the class from the litigation is generally the most critical factor in granting a fee award. *Ching*, 2014 WL 2926210, at *7. Here, the results achieved are excellent.

As found by this Court, this settlement compares very favorably to the most recent similar case, *Tsyn v. Wells Fargo,* N.D. Cal. Case 14-cv-02552-LB, which settled for $9,500,000 as approved by Magistrate Judge Beeler last year. In *Tsyn*, the plaintiffs alleged virtually identical claims for unreimbursed business expenses under Labor Code § 2802. Indeed, like Harvey, Tsyn was a Financial Advisor working for Financial Services firm defendant under a similar compensation plan, challenging a business expense program that was similar to Morgan Stanley's AFG program and which also involved supplemental support staff compensation. However, the *Tsyn* plaintiffs also alleged they were misclassified as exempt and

therefore owed overtime compensation in addition to other derivative claims. Thus, while *Tysn* involved nearly the same legal and factual issues, the *Tsyn* claims also were broader than the claims alleged here.

The *Tsyn* settlement equated to approximately $72.72 per work month, while the *Harvey* settlement equates to approximately $80.78 per work month – an increase of over 10%. In terms of total exposure, this settlement is consistent with *Tsyn*. This settlement represents 5.28% of MSSB's total exposure while the settlement in *Tsyn* represented 5.75% of Wells Fargo's total exposure.

This settlement also compares favorably to two other relatively recent cases brought on behalf of California Financial Advisors. In *Brecher v. Citigroup Global Markets, Inc.,* S.D. Cal. Case 09-cv-1344, plaintiffs alleged unlawful forfeiture of benefits and also unreimbursed business expenses under Labor Code § 2802 for payments made to support staff. The court granted final approval of a $3,700,000 non-reversionary settlement on behalf of a 1,006 person class. Sixty-percent of the settlement was attributed to the expense reimbursement claim. Participating class members received $3,171 on average – as compared to $3,595 that is the average on a headcount basis class members on average can expect to receive here. (Dkt. 76, p. 5.) In *Litty v. Merrill Lynch & Co.*, L.A. Sup. Ct. Case No. BC582127, the court approved a $2,465,000 class action settlement reached on behalf of 2,501 FAs employed by Merrill Lynch in California. The *Litty* complaint alleged claims for unreimbursed business expenses under Labor Code § 2802 and derivative claims under the UCL and PAGA.  The average settlement in *Litty* was $1,147 per class member.

Thus, the amount received by the Class Members and Aggrieved Employees is significant. Indeed, the amount will likely increase as a result of interest earned on the Settlement Fund in the event the Attempted Intervenors appeal the order granting final approval. (See, Dkt. 48-3, p. 4.) Plaintiff submits that these amounts paid today are fair, reasonable and adequate in light of the uncertainty of future litigation.

2.      **The Risk Involved in the Litigation**

The risks of litigation in this case were substantial. With respect to the AFG program, Plaintiff is not aware of any court (or administrative body) being asked to decide whether an employer's representation to the IRS that an expense is tax deductible ("ordinary and necessary" under 26 U.S.C. § 162 (a)) is a binding admission for purposes of the employee's request for reimbursement under Labor Code § 2802 (a). The lack of any prior rulings or decisions in Plaintiff's favor on this issue is an argument in support of MSSB's position that the two standards are not equivalent.

MSSB will point out that it successfully defended the AFG program in multi-district putative class action litigation, where a federal district court held under similar law that AFG does not create a deduction from wages, and therefore dismissed deductions claims under the laws of New York, New Jersey, and Connecticut. *See In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, 2013 WL 6255697 (D.N.J. Dec. 4, 2013), and *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, 2014 WL 2101904 (D.N.J. May 20, 2014).

MSSB will also argue that AFG does not create a wage deduction because existing case law permits it and FAs to prospectively agree on how the FAs' incentive compensation rate would be determined. *See Prachasaisoradej v. Ralphs Grocery Co., Inc.*, 42 Cal. 4th 217 (2009) (wage rights "derive exclusively from the [compensation] plan itself"); *Schachter v. Citigroup*, 47 Cal. 4th 610, 621 (2009) (the employment agreement determines when incentive compensation is earned); *Torres v. Wells Fargo,* 2016 WL 7373856, *4 (C.D. Cal. Oct. 12, 2016) (under agreement terms, "Plaintiffs could expect a commission that was subject to a final calculation which included adjustments….'[t]his final figure, and this figure only, once calculated, was the amount offered or promised as compensation for labor performed by eligible employees….'") (quoting *Ralphs*, 42 Cal. 4th at 229); *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1329-37 (2006) (commissions become earned when conditions precedent have been satisfied). Based on this, Morgan Stanley contends there is no unlawful deduction of any "wages" under AFG because, at the time FAs select their AFG Adjustment, Morgan Stanley

had not offered or promised Plaintiffs incentive compensation at a particular rate or amount, such that earned wages are not impacted.

Defendant also will argue that the expenses submitted to the AFG program were optional and therefore not "reasonable and necessary." Some courts have found that optional business expenses are not reimbursable. For instance, in *Novak v. The Boeing Company*, 2011 WL 9160940 (C.D. Cal. Jul. 20, 2011), the employee sought reimbursement for expenses that certainly were reasonable and job related – the cost of telephone and internet used to perform his job duties from his home office. The court held, however, that the employer was not required to reimburse because the entire "work at home" program was optional, and the employee could instead have come into the office to perform his job duties to avoid expenses. *See also, Aguilar v. Zep, Inc.,* 2014 WL 4245988 (N.D. Cal. Aug. 27, 2014) (partially granting defendant's motion for summary judgment on plaintiff's Section 2802 claims finding that some of the business expenses plaintiffs incurred were not required and thus optional).

In addition to the strength of Plaintiff's case, there is also the question of class certification. Some courts have denied certification of Section 2802 claims especially when it has been found that the expenses were optional. *See, e.g., Buchanan v. HomeServices Lending, LLC*, 2013 WL 1788579 (S.D. Cal. Apr. 25, 2013) (class certification denied for optional marketing programs); *see also, Morgan v. Wet Seal*, 210 Cal.App.4th 1341, 1356-57 (2012) (class certification denied on Section 2802 claim where individualized issue predominated on whether employees reasonably believed they had to participate in programs to do their jobs); *Drake v. Morgan Stanley & Co.*, 2010 WL 2175819, at *1, 7 (C.D. Cal. Apr. 30, 2010) (denying class certification of claims concerning MSSB's expense reimbursement practices, including AFG, because "under California law, questions as to whether Defendants were required to reimburse employees' claimed business expenses involves an individualized factual determination of whether each employee (1) incurred an expense (2) that was necessary (3) and reasonable (4) as a direct consequence of the discharge of his or her duties."). In *In re RBC Dain Rauscher Overtime Litig.*, 703 F. Supp. 2d 910 (D. Minn. 2010), the court denied certification of a similar claim under California law against another brokerage firm, holding

that "[t]o determine whether RBC violated § 2802 of the California Labor Code for failure to reimburse employees for necessary expenses, the Court must examine each employee's alleged expenses and must determine whether they were 'reasonable.'" *Id.* at 969.

Furthermore, certification at the trial court level is no guarantee of success. As set forth in Plaintiff's Motion for Preliminary Approval, Class Counsel's personal experience in *Duran v. US Bank*, 59 Cal.4th 1 (2014) perhaps best exemplifies the risk inherent in complex litigation. In sum, after getting the case certified and prevailing at trial, the judgment was reversed by the Court of Appeal, affirmed by the Supreme Court, and plaintiffs' second effort at certification in the Superior Court was denied (and affirmed by the Court of Appeal) after 17 years of hard-fought litigation. *Duran v. U.S. Bank Nat'l Assn.,* 19 Cal.App.5th 630 (2018).

Plaintiff also expects that MSSB would challenge manageability of the PAGA claims. While Plaintiff believes the claims are manageable, MSSB contends they are unmanageable for the same reasons it would assert regarding class certification. MSSB argues that manageability poses an even greater challenge than class certification because, to recover penalties, a PAGA plaintiff must prove each and every predicate Labor Code violation as to each aggrieved employee for each pay period for which the plaintiff seeks penalties. *See Rope v. Auto–Chlor Sys. of Wash., Inc*., 220 Cal. App. 4th 635, 651 n.7 (2013) ("PAGA requires that the representative plaintiff establish that the employer have committed the Labor Code violations for which recovery is sought against the aggrieved employees."); *Hibbs-Rines v. Seagate Techs., LLC*, 2009 WL 513496, at *4 (N.D. Cal. Mar. 2, 2009) ("Plaintiff will have to prove Labor Code violations with respect to each and every individual on whose behalf plaintiff seeks to recover civil penalties under PAGA."). While Plaintiff disagrees with this position, MSSB's nevertheless presents a risk to Plaintiff's case.

In addition to the risks outline above, there is also the fact that fully 600 FAs out of the approximate 2,800 covered by this settlement have executed releases. Under the proposed settlement, these 600 FAs will receive some compensation today for the amounts they have diverted into AFG. Absent this settlement, they would receive nothing. By way of comparison, in *Tsyn* there was no evidence that class members had executed any releases.

Moreover, fully 1,800 FAs have entered into arbitration agreements. For the reasons set forth in the Motion for Preliminary Approval with respect to whether FAs would pursue their individual claims in arbitration, that means that fully 65% of the potential class has no realistic expectation of recovering anything for their legal claims. Again, in *Tsyn* there was no evidence that the class members there had entered into individual arbitration agreements.

**3.     The Skill Required and Quality of Work by Counsel**

This Court has noted that Class Counsel has significant experience litigating class actions alleging wage and hour violations on behalf of employees in the financial services industry and rejected Attempted Intervenors' claims that Counsel are somehow "ineffectual." (Dkt. 76, p. 3.)

Effective management of this case required – and will continue to require – a high level of skill and superior work-product. As evidenced by the declarations filed by Class Counsel, it is respectfully submitted that Class Counsel has unique skills and qualifications in the area of wage and hour class action litigation and Class Counsel have tried multiple wage and hour class action cases which is extremely rare. (Decl. of Wynne, ¶¶ 4-5; Decl. of Clapp, ¶¶ 3-7; Decl. of Compton, ¶¶ 2-7.) Indeed, the first line of the *Duran* opinion confirms this fact, "*We encounter here an exceedingly rare beast: a wage and hour class action that proceeded through trial to verdict.*" *Duran*, 59 Cal. 4th at 1. While *Duran* is unquestionably a significant case in the areas of class certification, trial management, and wage and hour law, another equally significant case, *Sav-On Drug Stores, Inc. v. Sup. Ct.*, 34 Cal. 4th 319 (2004), is also another case prosecuted by Class Counsel herein further highlighting Class Counsel's skill and experience. (Decl. of Wynne, ¶ 6.)

Effective litigation of this case called for significant skill in the area of wage and hour law. The Attempted Intervenors' case was languishing before Harvey's counsel filed their action. As this Court recognized at the Motion to Intervene: "[B]ut you've had this case for four and a half years. You didn't settle it." (Dkt. 58-1, Ex. 1, Rptr. Trans., p. 8:10-11.) The Attempted Intervenors had one mediation in 2016 and did not do so again until Harvey's counsel insisted as a condition of settlement that Morgan Stanley exercise its best efforts to

reach a compromise with Chen's counsel. The Attempted Intervenors never re-evaluated their position and open a dialogue with Morgan Stanley for the benefit of the class. Instead, they decided to expend significant time and energy pursuing tangential and dubious claims. This approach contrasts sharply with the approach Harvey's counsel took, which was to quickly identify the disputed issues, obtain the necessary information to evaluate Morgan Stanley's exposure, and move promptly to reach a reasonable settlement. Nevertheless, this case did not settle after one mediation. It took three sessions with two well-respected mediators. In fact, it was only after Harvey got involved did Chen participate in another mediation and begin a dialogue with Tripper Ortman after the hearing on intervention. While ultimately unsuccessful in their attempts to reach a global resolution, the important take-away from this is that Harvey positioned the case to keep Morgan Stanley engaged in settlement negotiations in order to maximize the recovery for the class today. Based on Harvey's counsel's experience, qualifications and skill, Harvey's counsel is extremely confident that this settlement is the best settlement class members could ever receive today.

### 4.      The Contingent Nature of the Fee

Counsel took this case on a contingency fee basis. Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work. *In Re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994).

The Plaintiff does not have the financial means to pay Counsel on an hourly basis to prosecute this case. Thus, without the willingness of Counsel to take this case on a contingency fee basis, this case would not have been prosecuted and the Class would not have received anything.

This lawsuit has been pending for a year and one-half and will likely to take a number of years to finally resolve after the Attempted Intervenors' appeal(s). So far, Counsels' offices have put in over 970 hours on behalf of the class without any form of payment. Counsel reasonably expect to invest at least another 300 hours before this matter is finally resolved and

1   Counsel will not be compensated during that time either. (Decl. of Wynne, ¶ 30.) Counsel have

2   had to forego other cases and financial opportunities in order to prosecute this case on behalf of

3   the Class Members and are likely to forego other opportunities in the future. (Decl. of Wynne,

4   ¶ 29.) Class Counsel's efforts to-date and in the future have been, and will be, without

5   compensation of any kind, and the fee has been wholly contingent upon the result achieved.

6   (Decl. of Wynne, ¶ 29.)

7       Class Counsel respectfully submit that given the risk of non-payment; the forfeiture of

8   other business opportunities; and the lack of compensation combined with the complexity of

9   this case, the requested fee in this case is fair and reasonable.

10      **5.      Awards Made in Similar Cases**

11      Counsel submit that the request for attorney fees in the amount of 20% of the common

12  fund at this time is extremely reasonable as it is below the benchmark of 25% notwithstanding

13  the complexity, the excellent results obtained, the risks undertaken, and the skill of the

14  prosecution. The requested fee falls below the range acceptable attorney fees in the Ninth

15  Circuit for similar wage and hour class action. *Bautista v. Harvest Mgmt. Sub LLC*, No.

16  CV1210004-FMO-CWX, 2014 WL 12579822, at *13 (C.D. Cal. July 14, 2014) (approving

17  30% fee is pre-certification wage & hour class action settlement); *Ladore v. Ecolab, Inc.,* No.

18  CV 11-9386 FMO (JCX), 2013 WL 12246339, at *11 (C.D. Cal. Nov. 12, 2013) (approving

19  requested 28% fee in wage and hour class action); *Patel v. Trans Union, LLC*, No. 14-CV-

20  00522-LB, 2018 WL 1258194, at *7 (N.D. Cal. Mar. 11, 2018) (approving 33% fee); *Glass v.

21  UBS Fin. Serv., Inc.*, 2007 WL 221862 at *4 (N.D. Cal. Jan. 26, 2007) (finding settlement of a

22  wage and hour class actions up to 35% of the claimed damages to be reasonable in light of the

23  uncertainties involved in the litigation); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482,

24  491 (E.D. Cal. 2010) (noting that a 33% is within the typical range of acceptable attorney fees

25  in the 9th Circuit); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064 at *6-7 (N.D. Cal.

26  1997) (approving a fee of 33% of fund); *In Re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375

27  (ND. Cal. 1989) (32.8% of fund).

28

**6.     No Objection from the Class and Support from the Plaintiff**

Per the terms of the Settlement Agreement, Class Members and Aggrieved employees were given notice of this settlement and informed that Counsel may seek a fee of up to 25% of the gross settlement fund. As of this writing, there have been no objections from any Class Member to the potentially requested fee of 25%. (Decl. of Wynne, ¶ 27.)

While Counsel expects an objection from the Attempted Intervenors, Counsel submits that the lack of objection from anyone else further demonstrates the reasonableness and fairness of Class Counsel's fee request especially in light of the fact that Counsel is seeking less at this time than what was publicized in the notice. *See, In re Wells Fargo Loan Processor Overtime Pay Litigation*, 2011 WL 3352460, at *10 (N.D. Cal., Aug. 2, 2011). In *Ching, supra,* the court commented that "the lack of objection from the class after notice further demonstrates the reasonableness and fairness of Class Counsel's fee request. *Id.* at *8. Finally, as evidenced by his declaration, the Plaintiff strongly supports Class Counsel's Fee Request. (Decl. of Harvey, ¶¶ 18-19.)

**C.     Plaintiff's Request For Attorneys' Fees Is Reasonable By A Lodestar Cross-Check**

Plaintiff's fee request is also reasonable based on the lodestar analysis as a final "cross-check on the percentage method." *In re Washington Pub.Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296-98 (1994). Where the lodestar method is used as a cross-check, it can be performed with a less exhaustive cataloguing and review of counsel's hours. *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.*, 497 F.Supp.2d 1166 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check."). The lodestar method is calculated by multiplying "the number of hours reasonably expended on the litigation … by a reasonable hourly rate." *In re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011).

1.    **Class Counsel's Hourly Rates Have Previously Been Approved**

In terms of the hourly rates requested, Counsel have been approved in both federal and state courts for the hourly rates requested herein.

a.    **Edward J. Wynne:** Edward J. Wynne is requesting an hourly rate of $820. In *McLeod v. Bank of America*, N.D. Cal. case number 16-cv-03294-EMC, on March 19, 2019, Judge Chen approved Counsel's hourly rate of $820 which was supported with an expert declaration. (Dkt. 79, N.D. Cal. case 16-cv-03294-EMC.) In *Brinkel v. Westamerica Bank*, Marin County Sup. Ct. Case number CIV 1303112, on March 22, 2019, Judge Chernus likewise approved Counsel's hourly rate of $820. (Decl. of Wynne, ¶ 28.)

b.    **James F. Clapp:** James F. Clapp is requesting an hourly rate of $850. Mr. Clapp has been approved at $850 an hour in the following matters: *Tsyn v. Wells Fargo Advisors*, Case. No. 14-cv-2552-LB, Judge Laurel Beeler; *Smiles v. Walgreens*, Case No. RG 17862495, Alameda, Judge Brad Seligman; *Enombang v. Target Corporation*, Case No. RG17853948, Alameda, Judge Brad Seligman; *Garrett v. Bank of America*, Case No. RG13699027, Alameda, Judge Winifred Smith; *Hall v. Rite Aid Corporation*, Case No. 37-2009-00087938-CU-OE-CTL, San Diego, Judge Joan M. Lewis; and *Reed v. CVS*, Case No. 17855592, Alameda, Judge Winifred Smith. (Decl. of Clapp, ¶ 9.)

c.    **Jeffrey K. Compton and David Markun:** Jeffrey K. Compton and David S. Markun are requesting an hourly rate of $750.  They have been approved at $750 an hour each in *Tsyn v. Wells Fargo Advisors*, Case. No. 14-cv-2552-LB by Judge Laurel Beeler.

2.    **Class Counsels' Lodestar**

Class Counsel have worked on this case for a year and one-half. During this time, Counsels' offices have invested over 970 hours in prosecuting this case on behalf of the Class. Class Counsels' aggregate lodestar is $743,207.50 as set forth in more detail below.

Class Counsel reasonably expects that all of their offices will need to incur an additional 300 hours in order to carry out all the terms of the settlement. (Decl. of Wynne, ¶ 30.) Class Counsels' offices will be spending this time on such activities as: preparing the motion for final approval including legal research; preparing for and attending the hearing on

final approval; responding to Attempted Intervenors' potential objection to the settlement; opposing Attempted Intervenors' appeal of the order denying intervention; opposing Attempted Intervenors' potential appeal of the order granting final approval and attorney fees; preparing for and arguing the appeal(s); conferring with the Settlement Administrator and reviewing its reports; communicating with the Plaintiff; communicating with Class Members prior to and after final approval on a variety of issues including, but not limited to, the status of the settlement, status of their claim, explaining the settlement, handling lost checks, and address updates; communicating with defense counsel; resolving disputes; and, generally carrying out the terms and conditions of the settlement and performing all other related and ancillary tasks that will be required to get this case through appeal and to final judgment. (Decl. of Wynne, ¶ 30.)

The time spent and the fees incurred so far were reasonable and necessary for the successful prosecution of this case. (Decl. of Wynne, ¶ 30.) Counsels' detailed time records were kept contemporaneously. (*Id*.) Due to the length of time this case has been pending and the amount and type of activities that were needed to be performed, not all time was captured in Counsel's time records. (*Id*.) Class Counsel estimates that up to 5% of his office's time was not recorded. (*Id*.) A summary of hours and lodestar is set forth below:

| WYNNE LAW FIRM LODESTAR SUMMARY | | | |
|---|---|---|---|
| | **Hourly Rate** | **Total Hours** | **Total Fees** |
| Edward J. Wynne | $820.00 | 377.7 | $309,714.00 |
| George R. Nemiroff | $525.00 | 29.7 | $15,592.50 |
| Heidi Hall (Paralegal) | $250.00 | 7.25 | $1,812.50 |
| Lesley Amberger (Paralegal) | $250.00 | 14.9 | $3,725.00 |
| Janice Berry (Legal Asst.) | $150.00 | 1.1 | $165.00 |
| **Total** | | **430.65** | **$331,009.00** |

| CLAPP & LAUINGER LLP LODESTAR SUMMARY | | | |
|---|---|---|---|
| | **Hourly Rate** | **Total Hours** | **Total** |
| James F. Clapp | $875.00 | 191.7 | $167,737.50 |
| Teri Zaayer (Paralegal) | $250.00 | 19.1 | $4,775.00 |
| **TOTAL:** | | **210.8** | **$172,512.50** |

| MARKUN ZUSMAN FRENIERE & COMPTON LLP LODESTAR SUMMARY | | | |
|---|---|---|---|
| | **Hourly Rate** | **Total Hours** | **Total** |
| Jeffrey Compton | $750.00 | 155.2 | $116,400.00 |
| David Markun | $750.00 | 112.8 | $84,600.00 |
| Daria Carlson | $680.00 | 5.1 | $3,468.00 |
| Kevin Eng | $680.00 | 27.6 | $18,768.00 |
| Nathan Smith | $500.00 | 24.7 | $12,350.00 |
| Betty Huynh | $500.00 | 8.2 | $4,100.00 |
| **TOTAL:** | | **333.6** | **$239,686.00** |

Should the Court require review of Class Counsel's detailed and contemporaneous billing records, Class Counsel will provide such records for the Court's review *in camera.*

### 3.     A Multiplier Is Appropriate

In common fund cases, courts frequently apply multipliers to the lodestar to reflect the risks involved, the complexity of the litigation, and other relevant factors. *See Vizcaino*, 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases"). Such an enhancement "mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Id.*

Here, Class Counsel bore a particularly high contingent risk. Based on this risk, as well as the other relevant factors, the resulting multiplier of 2.75 on the lodestar cross-check is well-below the range of multipliers that courts, including this Court, regularly approve as fair and

reasonable. In *Vizcaino*, the Ninth Circuit affirmed a lodestar multiplier of 3.65, after analyzing a table of the most commonly applied multipliers. *Vizcaino*, 290 F.3d at 1051. *Van Vranken v. Atlantic Richfield*, 901 F.Supp. 294, 298 (N.D. Cal 1995) (noting that "3-4 range [of] common" multipliers for sophisticated class actions); *see also, Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001) (multipliers can range from 2 to 4 or even higher); *In re Ret. Cases,* 2003 WL 22506555, at *8 (Cal. Ct. App. Nov. 4, 2003) (affirming 4.0 multiplier in determining statutory fees); *Steiner v. American Broad. Co.*, 248 Fed.Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the lodestar multiplier was 3.65); *Patel v. Trans Union, LLC,* No. 14-CV-00522-LB, 2018 WL 1258194, at *7 (N.D. Cal. Mar. 11, 2018) (approving 2.09 multiplier).

Here, the application of a multiplier of 2.75 is warranted given the significant results achieved for the Class and the substantial risks and complexity of the litigation. Thus, the lodestar cross-check demonstrates that the $2,047,000 fee is fair and reasonable.

### III.    CLASS COUNSEL'S COSTS SHOULD BE APPROVED

Class Counsel request that the Court grant final approval to Class Counsel's request for reimbursement of actual costs incurred in prosecuting this action. Class Counsels' aggregate out-of-pocket expenses total $24,506.37. Counsels' costs are less than the cap of $35,000 per the terms of the Settlement Agreement. Should Counsels' costs increase before this case is finally resolved, Counsel reserve the right to seek reimbursement up to the cap amount. (Decl. of Wynne, ¶ 32.) A summary of costs by type is contained in Counsels' declarations in support of this motion. (*Id*.) The requested costs were reasonably incurred and no Class Member has objected to the requested costs. (*Id*.)

### IV.    CLASS REPRESENTATIVE ENHANCEMENT AWARD

"Although [the Ninth Circuit] ha[s] approved incentive awards for class representatives in some cases, [it instructed] district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). Citing *Radcliffe*, the Court has identified three factors it weighs in considering class representative enhancement awards: (1) declarations

1  from the proposed class representative regarding the time, risk, and burden carried by him in

2  this action; (2) the distribution of payments and the range of award amounts to class members;

3  and (3) whether the incentive payment is conditional on approval to the settlement. (Dkt. 43.)

4  **A.      Plaintiff's Contributions and Burden Undertaken**

5        As set forth in the declaration of plaintiff Brandon Harvey, Plaintiff made significant

6  contributions to the prosecution of this action, including, but not limited to, the following: (1)

7  being the plaintiff to initiate this action against MSSB; (2) prior to the initiation of litigation, I

8  researched my files, provided documents to my counsel, and reviewed the files with counsel;

9  (3) having in-person meetings and discussions via telephone and email with my counsel about

10  facts relevant to the case; (4) responding to written discovery demands; (5) appearing at and

11  participating in a mediation session and being available via telephone and email for the other

12  two mediation sessions; (6) talking to other FAs about the case and encouraging them to speak

13  with my counsel; and (7) staying in contact with counsel in order to get case updates and other

14  relevant information. (Harvey Decl., ¶ 8.) Plaintiff estimates that he expended at least 20 hours

15  in assisting counsel with prosecution of this action. (Harvey Decl., ¶ 9.)

16        Plaintiff has also undertaken significant burdens and given up substantive rights that

17  class members are not similarly asked to forego. For instance, Plaintiff is executing a general

18  release of claims and has agreed to forego future employment at MSSB. (Dkt., 48-3, p. 12;

19  Harvey Decl., ¶ 14.) These are significant rights and opportunities Plaintiff is foregoing for the

20  benefit of the class that absent class members are not similarly being asked to sacrifice.

21        Plaintiff has suffered reputational harm as a result of prosecuting this case on behalf of

22  the class. Plaintiff has been publically embarrassed and ridiculed by other Advisors in a public

23  setting and in front of other Advisors. (Harvey Decl., ¶ 11.) He has been contacted by MSSB

24  Advisors who expressed their dissatisfaction with the news of the lawsuit because they thought

25  it might adversely affect MSSB stock price. (Harvey Decl., ¶ 12.) He has lost an employment

26  opportunity to join a larger team at his current employer which he believes is for no other

27  reason than this lawsuit. (Harvey Decl., ¶ 13.)

28

1   Furthermore, Plaintiff also faced significant exposure as the named plaintiff. Should

2   Plaintiff not have prevailed at trial, he may have been personally responsible for Defendant's

3   costs of suit which could have been significant. (Harvey Decl., ¶ 10.) Plaintiff shouldered this

4   risk for the benefit of the class. No absent class member assumed such responsibility and risk.

5   **B.     Distribution of Payments and Range of Award Amounts to Class**

6   As set forth in the Motion for Preliminary Approval, on a simple head-count basis, the

7   average net recovery per class member is approximately $3,595. (Dkt. 76, p. 5.) Viewed from

8   the perspective of a work month basis, the net recovery amounts to $80.78 per work month or

9   over $5,150 for a class member who was employed as an FA during the statutory coverage of

10   the action. (*Id.*) These are *minimum* amounts because the gross settlement fund will earn

11   interest at 5% per annum should the Attempted Intervenors appeal the final judgment.

12   Plaintiff is asking the Court to award $10,000 as an enhancement award. Plaintiff's

13   request is less than two times greater that estimated maximum award of $5,150 and is less than

14   one-tenth of one percent of the total settlement value (.0009%). This Court and other courts

15   have approved enhancements many multiples greater than what is being asked here. See, e.g.,

16   *Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2214585, at *1 (N.D. Cal.

17   Jan. 18, 2017) (approving enhancement of $10,000 to each named plaintiff representing 2.3

18   times maximum award and representing two-tenths of one percent of total settlement value

19   (.002%)); *Carter v. XPO Logistics, Inc.,* No. 16-CV-01231-WHO, 2019 WL 5295125, at *4

20   (N.D. Cal. Oct. 18, 2019) (approving enhancement of $20,000 to each named plaintiff

21   representing 1.3 times average payout and representing one-tenth of one percent of total

22   settlement value (.001%)); *Bautista v. Harvest Mgmt. Sub LLC*, No. CV1210004-FMO-CWX,

23   2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013) (preliminarily approving award that was

24   37 to 94 times greater than average recovery); *Torres v. Pick-A-Part Auto Wrecking*, No. 116-

25   CV-01915 DAD (BAM), 2018 WL 306287, at *5 (E.D. Cal. Jan. 5, 2018) (approving

26   enhancement that is "16 times the maximum amount that a class member could expect to

27   receive in this litigation."); *Chambers v. Whirlpool Corp.*, 214 F.Supp.3d 877, 905 (C.D. Cal.

28   2016), *judgment entered,* No. SACV 111733 FMO (MLGx), 2016 WL 5921765 (C.D. Cal.

Oct. 11, 2016) (granting final approval and awarding enhancement approximately 20 to 13.33 times greater than average class member monetary recovery of $200-$300); *Wannemacher v. Carrington Mortg. Servs., LLC*, No. SACV 122016 FMO (ANx), 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) (granting final approval and awarding enhancement 7.7 times greater than average class member recovery of $259); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (final approval granted and awarding enhancements 166 to 1,000 times greater than value of $5, $15, and $30 vouchers); *Bautista v. Harvest Mgmt. Sub LLC*, No. CV 1210004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013) (granting preliminary approval and preliminarily finding requested award reasonable between estimated 9.2 and 18.5 times greater than recovery of majority of class estimated to be between $270 and $539).

Also, as an absolute figure, the requested award is in line with awards in other cases including those before this Court. *Wellens v. Sankyo*, No. C 13-00581 WHO (DMR), 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (approving $25,000 award); *Carter v. XPO Logistics, Inc.,* No. 16-CV-01231-WHO, 2019 WL 5295125, at *4 (N.D. Cal. Oct. 18, 2019) (approving enhancement of $20,000); *Ladore v. Ecolab, Inc.*, No. CV 11-9386 FMO (JCX), 2013 WL 12246339, at *8 (C.D. Cal. Nov. 12, 2013) (approving awards of $25,000 and $15,000 in wage and hour class action); *see also, Hughes v. Microsoft Corp.,* 2001 U.S. Dist. LEXIS 5976, at *36-38 (W.D. Wash. 2001) (approving incentive awards of $7,500, $20,000, and $40,000); *Bogosian v. Gulf Oil Corp.,* 621 F.Supp. 27, 32 (E.D.Pa.1985) (stating "the propriety of allowing modest compensation to class representatives seems obvious," and awarding $20,000 to two named class representatives); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (approving $25,000 service award); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *17-*18 (N.D. Cal. Sept. 2, 2015) (granting service awards ranging from $80,000-$120,000 after previously being granted $20,000 each in service awards and noting awards are 14 to 21 greater than average class member recovery); *Fulford v. Logitech, Inc.,* 2010 WL 807448, *3 n. 1 (N.D. Cal. 2010) (collecting cases awarding incentive payments ranging from $5,000 to $40,000).

PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE AWARD

1

2

3   **C.      The Award is not Conditioned on the Settlement**

4           The incentive award is not conditioned on the Plaintiff's support of the Settlement.

5   (Decl. of Harvey, ¶15.) No provision of the Settlement Agreement gives the Plaintiff the ability

6   to withdraw from the Settlement if the Court reduces or denies the award. See, *Bautista*, 2013

7   WL 12125768, at *16 ("the Settlement Agreement does not explicitly or implicitly condition

8   the incentive awards on the class representatives' support for the settlement.").

9                                    **V.      CONCLUSION**

10          In light of the forgoing, Plaintiff respectfully request that the Court award the requested

11  attorney fees in the amount of $2,047,000 (20% of the total settlement) plus litigation expenses

12  of $24,506.37. Plaintiff also respectfully requests that the Court award an enhancement award

13  of $10,000.

14

15  Dated:  November 14, 2019                    WYNNE LAW FIRM

16

17                                              /s/ *Edward J. Wynne*
                                                Edward J. Wynne
18                                              Class Counsel

19

20

21

22

23

24

25

26

27

28