Jahan C. Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com
Email: rsun@outtengolden.com

Michael J. Scimone (*pro hac vice*)
Christopher M. McNerney (*pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
Email: mscimone@outtengolden.com
Email: cmcnerney@outtengolden.com

Laura Sullivan (Cal. Bar No. 220529)
LAW OFFICE OF LAURA SULLIVAN
423 South Estate Drive
Orange, CA 92869
Telephone: (714) 744-1522
Facsimile: (714) 744-1524
Email: laurasullivan@laurasullivanlaw.com

Mark Humenik (Cal. Bar No. 231917)
HABER POLK KABAT
423 South Estate Drive
Orange, CA 92869
Telephone: (949) 636-5754
Facsimile: (216) 241-0739
Email: mhumenik@haberpolk.com

Pooja Shethji (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW, Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
Email: pshethji@outtengolden.com

*Attorneys for Proposed Intervenors Tracy Chen and Matthew Lucadano*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| BRANDON HARVEY, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   v.<br><br>MORGAN STANLEY SMITH BARNEY LLC,<br><br>        Defendant. | Case No. 3:18-cv-02835-WHO<br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS; MEMORANDUM IN SUPPORT**<br><br>Judge: Hon. William H. Orrick<br>Date: February 5, 2020<br>Time: 2:00 p.m.<br>Room: Courtroom 2, 17th Floor |

1

**NOTICE OF MOTION AND MOTION**

2

To the Clerk of Court and all interested parties:

3

PLEASE TAKE NOTICE THAT on February 5, 2020, at 2:00 p.m., or as soon thereafter

4

as the Court and parties are available, Tracy Chen and Matthew Lucadano ("the *Chen* Plaintiffs")

5

and their counsel Outten & Golden LLP, Law Office of Laura Sullivan, and Haber Polk Kabat

6

("*Chen* counsel") (collectively, "Proposed Intervenors") will and hereby do move the Court an

7

award of attorneys' fees and reimbursement of actual costs of $186,603.25, and service awards

8

totaling $10,000.

9

As more fully discussed in the following memorandum in support, this motion is made on

10

the grounds that the work of the Proposed Intervenors has directly benefited the class members

11

and aggrieved employees by laying the groundwork for the settlement before the Court.  Under the

12

common fund doctrine and as counsel for successful parties, *Chen* counsel are entitled to fees and

13

costs for their years of advocacy and successful results in *Chen v. Morgan Stanley Smith Barney,*

14

*LLC*, No. 30-2014-00724866-CU-OE-CXC (Orange Cty. Super. Ct. filed May 27, 2014).  The

15

*Chen* Plaintiffs should similarly be compensated for the contributions they made as the named

16

plaintiffs who led the litigation for approximately the past five years.  *See* June 12, 2019 Prelim.

17

Approval Mot. Hr'g Tr. 5:1-6 ("[P]laintiffs' counsel in the Chen case . . . seem clearly to have

18

incentivized Morgan Stanley to come to the table in the Harvey case."); *see also* Feb. 28, 2019

19

Intervention Mot. Hr'g Tr. 4:14-21 (noting Court's "interest[]" in "what impact [the *Chen*] case

20

and the ground that's been plowed there has in the settlement of this [*Harvey*] case").

21

The motion is based on this notice of motion and motion; the memorandum in support of

22

the motion; and accompanying Declarations of Jahan C. Sagafi ("Sagafi Decl."), Laura Sullivan

23

("Sullivan Decl."), Mark Humenik ("Humenik Decl."), Tracy Chen ("Chen Decl."), and Matthew

24

Lucadano ("Lucadano Decl."); the Court's record of this action; all matters of which the Court

25

may take notice; and any oral and documentary evidence presented at the hearing on the motion.

26

27

1

28

Dated:  November 14, 2019

Respectfully submitted,

By:   */s/ Jahan C. Sagafi*
     Jahan C. Sagafi

Laura Sullivan (Cal. Bar No. 220529)
LAW OFFICE OF LAURA SULLIVAN
423 South Estate Drive
Orange, CA 92869
Telephone: (714) 744-1522
Facsimile: (714) 744-1524
Email: laurasullivan@laurasullivanlaw.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com
Email: rsun@outtengolden.com

Mark Humenik (Cal. Bar No. 231917)
HABER POLK KABAT
423 South Estate Drive
Orange, CA 92869
Telephone: (949) 636-5754
Facsimile: (216) 241-0739
Email: mhumenik@haberpolk.com

Michael J. Scimone (*pro hac vice*)
Christopher M. McNerney (*pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
Email: mscimone@outtengolden.com
Email: cmcnerney@outtengolden.com

Pooja Shethji (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW, Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
Email: pshethji@outtengolden.com

*Attorneys for Tracy Chen and Matthew Lucadano*

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.       INTRODUCTION................................................................................................................. 1

II.      FACTUAL BACKGROUND .............................................................................................. 1

         A.       *Chen* Counsel Laid the Groundwork for the *Harvey* Settlement. ............................ 2

         B.       The *Chen* Plaintiffs Contributed Significantly and Assumed Risk. .......................... 5

III.     ARGUMENT ....................................................................................................................... 6

         A.       *Chen* Counsel Merit Fees Because the Common Fund Doctrine and Ninth
                  Circuit Authority Require Payment to Attorneys Who Create a Benefit. ................. 7

         B.       *Chen* Counsel Merit Fees Because They Represented Prevailing and/or
                  Successful Parties. ................................................................................................... 10

                  1.       Two Aspects of the California Labor Code Provide for Fees to
                           Be Awarded to *Chen* Counsel. ................................................................. 10

                  2.       California's Private Attorney General Statute Law Provides a
                           Separate Basis for a Fee Award to *Chen* Counsel. ..................................... 13

         C.       *Chen* Plaintiffs' Contributions Warrant a Service Award. ....................................... 15

         D.       Intervention, if Necessary, Is Appropriate for the Limited Purpose of
                  Awarding Reasonable Fees, Costs, and Service Awards. ....................................... 16

IV.      CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*In re Abbott Labs.*,
    51 F.3d 524 (5th Cir. 1995).................................................................12

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
    421 U.S. 240 (1975) ........................................................................13

*Angoff v. Goldfine*,
    270 F.2d 185 (1st Cir. 1959) .............................................................8

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)..........................................................................8

*Chen v. Morgan Stanley Smith Barney, LLC*,
    No. 30-2014-00724866-CU-OE-CXC (Orange Cty. Super. Ct. filed May 27,
    2014)............................................................................................ *passim*

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
    19 F.3d 1306 (9th Cir. 1994).....................................................6, 8, 9

*Coates v. Farmers Grp., Inc.*,
    No. 15-CV-01913-LHK, 2016 WL 5791413 (N.D. Cal. Sept. 30, 2016)................................16

*Covenant Mutual Ins. Co. v. Young*,
    225 Cal. Rptr. 861 (Cal. Ct. App. 1986) ...........................................11

*Donner Mgmt. Co. v. Schaffer*,
    48 Cal. Rptr. 3d 534 (Cal. Ct. App. 2006) ........................................12

*Donovan v. CSEA Local Union 1000*,
    784 F.2d 98 (2d Cir. 1986)..................................................................8

*Drumm v. Morningstar, Inc.*,
    695 F. Supp. 2d 1014 (N.D. Cal. 2010) ............................................10

*Earley v. Superior Court*,
    95 Cal. Rptr. 2d 57 (Cal. Ct. App. 2000) ..........................................11

*Eicher v. Advanced Bus. Integrators, Inc.*,
    61 Cal. Rptr. 3d 114 (Cal. Ct. App. 2007) ........................................10

*Flannery v. Prentice*,
    28 P.3d 860 (Cal. 2001) .............................................................11, 16

*Gibson v. Chrysler Corp.*,
    261 F.3d 927 (9th Cir. 2001)...............................................................................13

*Gong-Chun v. Aetna Inc.*,
    No. 09 Civ. 1995, 2012 WL 2872788 (E.D. Cal. July 12, 2012)..............................13

*Graham v. DaimlerChrysler Corp.*,
    101 P.3d 140 (Cal. 2004) ...................................................................................14

*Heimlich v. Shivji*,
    441 P.3d 857 (Cal. 2019) .....................................................................................4

*In re Heritage Bond Litig.*,
    Nos. 02 Civ. 1475, 01 Civ. 5752, 02 Civ. 382, 02 Civ. 993, 02 Civ. 2745, 02
    Civ. 6484, 02 Civ. 6841, 02 Civ. 9221, 02 Civ. 6512, 2005 WL 1594403 (C.D.
    Cal. 2005) ............................................................................................................9

*Indep. Living Ctr. of S. Cal., Inc. v. Kent*,
    909 F.3d 272 (9th Cir. 2018)........................................................................6, 13

*Kanter v. Warner-Lambert Co.*,
    265 F.3d 853 (9th Cir. 2001)...............................................................................13

*Laffitte v. Robert Half Int'l Inc.*,
    376 P.3d 672 (Cal. 2016) ...................................................................................13

*Lindelli v. Town of San Anselmo*,
    43 Cal. Rptr. 3d 707 (Cal. Ct. App. 2006) ..........................................................16

*Maria P. v. Riles*,
    743 P.2d 932 (Cal. 1987) ...................................................................................14

*Monaghan v. Telecom Italia Sparkle of N. Am., Inc.*,
    647 F. App'x 763 (9th Cir. 2016)........................................................................11

*Olive v. Gen. Nutrition Ctrs., Inc.*,
    30 Cal. App. 5th 804 (Cal. Ct. App. 2018) .........................................................12

*Olson v. Michaels Stores, Inc.*,
    No. 17 Civ. 3403, 2017 WL 3317811 (C.D. Cal. Aug. 2, 2017) .......................11, 13

*In re Optical Disk Drive Prods. Antitrust Litig.*,
    No. 3:10-md-2143 RS, 2016 WL 7364803 (N.D. Cal. Dec. 19, 2016)......................5

*People v. Investco Mgmt. & Dev. LLC*,
    231 Cal. Rptr. 3d 595 (Cal. Ct. App. 2018) ....................................................14, 16

*Quevedo v. New Albertsons, Inc.*,
    No. 13 Civ. 1160, 2015 WL 10939716 (C.D. Cal. May 27, 2015)...........................12

iii

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012)............................................................................................7

*Santisas v. Goodin*,
   951 P.2d 399 (Cal. 1998) ...............................................................................................12

*Smith v. Rae-Venter Law Grp.*,
   58 P.3d 367 (Cal. 2002) .................................................................................................10

*In re Taco Bell Wage & Hour Actions*,
   222 F. Supp. 3d 813, 826 (E.D. Cal. 2016)...................................................................14

*Turner v. Ass'n of Am. Med. Colls.*,
   123 Cal. Rptr. 3d 395 (Cal. Ct. App. 2011) ..................................................................10

*US Airways, Inc. v. McCutchen*,
   569 U.S. 88 (2013) ...........................................................................................................7

*Van Vranken v. Atl. Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ................................................................................15

*Vedachalam v. Tata Consultancy Servs.*,
   No. C 06-0963 CW, 2013 WL 3929129 (N.D. Cal. July 18, 2013)...............................16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   779 F. Supp. 1063 (D. Ariz. 1990).................................................................................8

*Wellens v. Sankyo*,
   No. C 13-00581 WHO (DMR), 2016 WL 8115715 (N.D. Cal. Feb. 11, 2016)
   (Orrick, J.) ......................................................................................................................16

*Westside Cmty. for Indep. Living, Inc. v. Obledo*,
   657 P.2d 365 (Cal. 1983) ...............................................................................................14

*Conservatorship of Whitley v. Maldonado*,
   241 P.3d 840 (Cal. 2010) ...............................................................................................14

*Wininger v. SI Mgmt. L.P.*,
   301 F.3d 1115 (9th Cir. 2002).........................................................................................8

**STATUTES**

Cal. Civ. Proc. § 1021.5 ...............................................................................................13, 14, 15, 16

Cal. Lab. Code § 218.5(a) ...............................................................................................10, 11, 15

Cal. Lab. Code § 221 ..............................................................................................................2

Cal. Lab. Code § 226(e) .................................................................................................10, 11, 15

Cal. Lab. Code §1194..................................................................................................11

Cal. Lab. Code § 2802.........................................................................................2, 10, 11

Cal. Lab. Code § 2699(g)(1) ...........................................................................10, 11, 15

**OTHER AUTHORITIES**

5 William B. Rubenstein, Newberg on Class Actions (5th ed.).................................6, 7, 8

Fed. R. Civ. P. 1 .........................................................................................................17

Fed. R. Civ. P. 23 .......................................................................................................12

TRACY CHEN AND MATTHEW LUCADANO'S MOTION
FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
3:18-CV-02835-WHO

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3         The work of Tracy Chen and Matthew Lucadano ("the *Chen* Plaintiffs") and their counsel

4    Outten & Golden LLP, Law Office of Laura Sullivan, and Haber Polk Kabat ("*Chen* counsel")

5    (collectively, "Proposed Intervenors") laid the groundwork for the settlement before the Court,

6    which provides a $8,500,000 common fund settlement plus $1,735,000 future reimbursement

7    fund.  For five years, Proposed Intervenors pursued Private Attorneys General Act ("PAGA")

8    claims against Morgan Stanley Smith Barney, LLC ("Morgan Stanley") on behalf of the State of

9    California and the same aggrieved employees purportedly covered by the *Harvey* settlement.  *See*

10   *Chen v. Morgan Stanley Smith Barney, LLC*, No. 30-2014-00724866-CU-OE-CXC (Orange Cty.

11   Super. Ct. filed May 27, 2014).  Although Proposed Intervenors contend that the *Harvey*

12   settlement does not provide adequate compensation for the Settlement Class, aggrieved

13   employees, and the State of California, if the Court were to finally approve the settlement, it

14   would only be fair to award Proposed Intervenors fees, costs, and service payments for their work,

15   which paved the way for this settlement and will result in payments to the class members and

16   aggrieved employees.  *See* June 12, 2019 Prelim. Approval Mot. Hr'g Tr. 5:1-6 ("[P]laintiffs'

17   counsel in the Chen case . . . seem clearly to have incentivized Morgan Stanley to come to the

18   table in the Harvey case."); *see also* Feb. 28, 2019 Intervention Mot. Hr'g Tr. 4:14-21 (noting

19   Court's "interest[]" in "what impact [the *Chen*] case and the ground that's been plowed there has

20   in the settlement of this [*Harvey*] case").

21   **II.    FACTUAL BACKGROUND**[1]

22        *Chen* counsel conceived of, initiated, and prosecuted to the brink of trial a robust legal

23   challenge to Morgan Stanley's Automated (or Alternative) Flexible Grid program ("AFG").  *Chen*

24   counsel's deep expertise and substantial efforts put Morgan Stanley on the ropes, such that in

---

[1]      Because the *Chen* Plaintiffs provided a more detailed description of the claims in *Chen* and *Harvey* in their initial Motion to Intervene, ECF No. 28, they do not repeat that detail here.

1

TRACY CHEN AND MATTHEW LUCADANO'S MOTION
FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
3:18-CV-02835-WHO

order to escape the imminent trial, it chose to settle these valuable claims.  The fact that Morgan Stanley turned its back on *Chen* counsel and instead selected *Harvey* counsel to negotiate with does not strip *Chen* counsel of their right to be paid for the value they took the lead in creating.

### A. *Chen* Counsel Laid the Groundwork for the *Harvey* Settlement.

In 2013, Tracy Chen consulted Laura Sullivan concerning her termination from Morgan Stanley and concerns about its practices.  After extensive investigation, *Chen* counsel discovered Morgan Stanley's policy and practice of using financial advisors' ("FAs") wages to fund ordinary business expenses, untimely payment of wages, and inaccurate wage statements.  On April 23, 2014, *Chen* counsel filed Ms. Chen's PAGA letter with the Labor & Workforce Development Agency ("LWDA").  Decl. of Laura Sullivan ("Sullivan Decl.") ¶ 4.  Ms. Chen simultaneously arbitrated individual claims against Morgan Stanley before the Financial Industry Regulatory Authority ("FINRA"), pursuant to the arbitration clause in her employment agreement.  *Id.* ¶ 5.

On May 27, 2014, Ms. Chen filed her PAGA action (*Chen*) on behalf of herself, the State of California, and all other aggrieved Morgan Stanley employees, including FAs.  *Id.* ¶ 4.  In September 2014, in anticipation of the work required to successfully prosecute a representative action, Ms. Sullivan invited Jahan Sagafi of Outten & Golden LLP to join as co-counsel.  *Id.* ¶ 6.  In November 2017, to keep up with the enormous production of financial documents and data that was anticipated when the court expanded discovery to the entire PAGA group statewide, Mark Humenik of Haber Polk Kabat LLP, who has a background in finance and accounting, filed his notice of appearance for *Chen*.  *Id.* ¶ 7.  Also, on November 17, 2017, Ms. Chen amended her complaint to add Matthew Lucadano as an additional representative plaintiff.  *Id.* ¶ 8.

The *Chen* action has been intensely litigated from the start.  Morgan Stanley attempted unsuccessfully to remove the case to federal court and filed two motions to stay, three motions for judgment on the pleadings/motions to strike, one motion to bifurcate, one motion for summary adjudication, and unsuccessful writ proceedings in the court of appeal; the *Chen* Plaintiffs filed one motion for summary adjudication and four motions to compel, most of which were resolved in their favor.  *Id.* ¶ 10.

The *Chen* parties engaged in robust formal discovery, particularly after the Court rejected Morgan Stanley's repeated efforts to block statewide discovery.  The *Chen* Plaintiffs served 163 requests and supplemental requests for the production of documents, 86 interrogatories (85 special interrogatories and 1 form interrogatory), and 23 requests for admissions.  *Id.* ¶ 11.  Morgan Stanley's discovery production of over 33,200 documents, totaling over 250,000 pages, required hundreds of hours of review.  *Id.*  Ms. Chen responded to 64 requests for production of documents and 71 special interrogatories and supplemented her responses.  *Id.* ¶ 12.  Mr. Lucadano responded to 70 special interrogatories and 61 requests for production of documents.  *Id.* The parties together deposed 20 people:

- Three Persons Most Qualified ("PMQ," the California version of a Rule 30(b)(6) deposition): Jamie Kemp (Head, Morgan Stanley Office of Business Management) (two sessions), Marianne Giaccone (VP, Accounts Payable), and Kate Burns (Executive Director, Human Resources);
- Fourteen fact witnesses: Lauren Veisz (Head, FA Compensation Service & Operations), Robert Hampton (Western Division HR Manager), Michele Hanna (L.A. Complex Manager), Justin Frame (Brea Branch Manager), Glenn Wiessner (Brea Branch Manager), Camille Gaffney (Brea Business Services Manager), Mark Mooney (Brea FA), Nick Villasenor (Brea FA), Greg Maniaci (Brea FA), Mark Carroll (Brea FA), Bradley Dykes (Oxnard Branch Manager), William Yuen (Brea FA), Tracy Chen (two sessions), and Matthew Lucadano; and
- Three expert witnesses: Dwight Steward (Plaintiffs' expert) and Andrew Tasnady and Lloyd Aubry (Morgan Stanley's experts).

*Id.* ¶¶ 13, 14.  The lengthy discovery process entailed the negotiation of a comprehensive ESI protocol, approximately 21 in-person and telephonic meet and confer conferences, 8 status conferences, and 1 informal discovery conference with the court.  *See id.* ¶¶ 11, 12.

After the *Chen* Plaintiffs defeated Morgan Stanley's efforts to stay the case and restrict discovery to Ms. Chen's individual claims, the parties participated in settlement discussions in May 2016 with Mark Rudy, who is unsurpassed as a preeminent mediator of California employment disputes.  *See id.* ¶¶ 22-23.  Although the mediation did not result in settlement, *Chen* counsel continued to explore settlement through Mr. Rudy, checking in regularly to express interest in continuing settlement talks with Morgan Stanley.  *See id.* ¶¶ 23, 25.  Despite conveying their willingness to actively engage in settlement talks, the *Chen* Plaintiffs were unable to schedule

1   another mediation with Morgan Stanley, and never received an offer during the years leading up to

2   Morgan Stanley's decision to negotiate with *Harvey* counsel.  *See id.* ¶¶ 25, 28.  The only offers

3   Morgan Stanley made during *Chen* were its November 2018 Rule 998 offer of $40,000 to Mr.

4   Lucadano in exchange for a full release and its January 4, 2019 Rule 998 offer of $400,000 with

5   each party to bear their own attorneys' fees.[2]  *Id.* ¶¶ 26, 27.

6         In December 2018, Morgan Stanley announced that it had engaged in secret[3] settlement

7   talks with *Harvey* counsel the prior month using a new mediator (Francis J. "Tripper" Ortman III),

8   resulting in a signed memorandum of understanding ("MOU") with Mr. Harvey for a common

9   fund of $8,000,000 plus $1,735,000 in future reimbursements, in exchange for a release of the

10  *Harvey* claims as well as a large portion of the *Chen* claims.[4]  Decl. of Jahan C. Sagafi ("Sagafi

11  Decl.") ¶¶ 42-43.  In January 2019, *Chen* counsel, *Harvey* counsel, and Morgan Stanley attended a

12  global mediation that included both Mr. Rudy and Mr. Ortman, but because Morgan Stanley and

13  *Harvey* counsel were contractually bound by the preexisting MOU, no further progress was made.

14  Sullivan Decl. ¶¶ 28, 29.  Mr. Rudy and *Chen* counsel left the mediation, and then Morgan Stanley

15  and *Harvey* counsel expanded their settlement by adding $500,000 to the common fund and an

16  expanded release of claims, encompassing the entire *Chen* liability period, measured from the date

17  of Ms. Chen's 2014 PAGA letter (filed more than four years earlier than Mr. Harvey's PAGA letter).

18  *See id.* ¶ 29; ECF No. 36-4 (Declaration of Edward J. Wynne), ¶¶ 26, 29.  As this Court itself

19

20

---

21  [2]       These offers are not confidential and are admissible.  *See* Cal. Civ. Proc. § 998 (stating
    that, if a Rule 998 offer is accepted, "the offer with proof of acceptance shall be filed" and, if

22  rejected, the offer may be relevant for purposes of determining costs); *see also Heimlich v. Shivji*,

23  441 P.3d 857, 863 (Cal. 2019) ("[A]lthough a 998 offer is inadmissible to prove liability, it may be
    admissible to prove unrelated matters.").

24  [3]       These talks were "secret" in the sense that they were not disclosed to or concealed from
    nonparticipants (as is typically true of settlement talks).  Although *Chen* counsel and Morgan

25  Stanley were communicating virtually daily through November 2018, Morgan Stanley never
    informed Chen counsel of its interest in, plans for, or completion of the secret *Harvey* mediation.

26  [4]       During 2018, Morgan Stanley never informed *Chen* counsel of its interest in settlement
    talks, let alone a possible settlement with Harvey, even though Morgan Stanley and *Chen* counsel

27  plaintiffs were often in daily contact in their discovery and trial preparation.  Sagafi Decl. ¶ 38.

28                                                          4

acknowledged, the "ground [that was] plowed" for four and a half years in *Chen* directly impacted the settlement of this case.  Feb. 28, 2019 Intervention Mot. Hr'g Tr. 4:14-19.

From the beginning of their investigation of the *Chen/Harvey* claims to Morgan Stanley's December 2018 announcement of its initial November 2018 MOU, *Chen* counsel expended substantial effort to build value for the class members and aggrieved employees.  Specifically, *Chen* counsel spent 8,941.28 hours (which, based on counsel's customary hourly rates, equals a lodestar of $4,828,890) investigating and litigating their claims in *Chen*.  Sagafi Decl. ¶ 56.  This figure does not include additional time after the January 18, 2019 expanded settlement announcement during which *Chen* counsel performed work for the benefit of the class members and aggrieved employees (for example, to ensure that evidence unavailable to Harvey was presented to the Court for its consideration in evaluating the settlement more fully than it would have been able to absent Ms. Chen's and Mr. Lucadano's input).  *Id.* ¶ 57.

Moreover, *Chen* counsel took this matter on a pure contingency basis, expending effort and money without any guarantee of recovery.  *Id.* ¶ 52.  In pursuing these claims, *Chen* counsel gave up the opportunity to perform other fee-generating work.  *Id.*

*Chen* counsel also seek reimbursement of $186,603.25 that they incurred in costs.  *Id.* ¶ 56.  "Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary, and directly related to the prosecution of the action."  *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 7364803, at *10-11 (N.D. Cal. Dec. 19, 2016).  *Chen* counsel's costs include discovery costs, filing fees, payment to the mediator, photocopying, telephone conference calls, mailing expenses, travel, and other reasonable litigation-related costs.  Sagafi Decl. ¶ 54; Sullivan Decl. ¶ 33; Decl. of Mark Humenik ¶ 4.  All of these costs were necessary in connection with the prosecution of the *Chen* litigation.

## B.   The *Chen* Plaintiffs Contributed Significantly and Assumed Risk.

Ms. Chen and Mr. Lucadano have been integral to the litigation brought in their name. Sagafi Decl. ¶ 33.

1    Ms. Chen initiated the case in 2013, has been unusually active in the litigation throughout

2  that time, having (a) participated in countless discussions with her counsel in person, by phone,

3  and electronically to help them understand Morgan Stanley's policies and practices, identify

4  documents and information to seek in discovery, and determine legal strategy; (b) pursued her

5  rights in a FINRA arbitration in May 2014 through September 2015; (c) participated in discovery,

6  including responding to document requests, responding to interrogatories; (d) sat for two days of

7  depositions, and (e) participated in the May 2016 mediation and settlement strategy discussions

8  throughout the litigation.  *Id.* ¶ 34; Decl. of Tracy Chen ("Chen Decl.") ¶¶ 5-11.

9    Mr. Lucadano joined the case as an additional plaintiff in 2017, also participated actively

10  in helping craft litigation and settlement strategy, was active in affirmative discovery and

11  responding to Morgan Stanley's discovery requests, and sat for a deposition.  Sagafi Decl. ¶ 35;

12  Decl. of Matthew Lucadano ("Lucadano Decl.") ¶¶ 6-10.

13    Moreover, both plaintiffs faced potential retaliation and other negative consequences based

14  on being publicly associated with the case.  Sagafi Decl. ¶ 36.  In fact, a Google search for

15  "Matthew Lucadano" yields the litigation in multiple search results, and a Google search for

16  "Tracy Chen Morgan Stanley" does as well.  *Id.*

17  **III.    <u>ARGUMENT</u>**

18    *Chen* counsel are entitled to an award of reasonable attorneys' fees and costs as

19  compensation for their years of hard, effective work advancing these important claims to the verge

20  of trial and creating the circumstances that drove this settlement.  Their work conferred a benefit

21  on the *Harvey* Settlement Class and aggrieved employees, as the Court has already noted.  *See*

22  June 12, 2019 Prelim. Approval Mot. Hr'g Tr. 5:1-6; Feb. 28, 2019 Intervention Mot. Hr'g Tr.

23  4:14-21.  This work merits a fee award under two rationales.  First, under the common fund

24  doctrine and basic class action principles, *Chen* counsel's work merits compensation.  *Class*

25  *Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994); 5 Newberg on Class Actions

26  § 15:53.  Second, under state law principles governing fee and cost awards to prevailing parties,

27  *Chen* counsel are entitled to fees and costs.  *Indep. Living Ctr. of S. Cal., Inc. v. Kent,* 909 F.3d

28

272, 281 (9th Cir. 2018) (applying state law to determine fee award where claim was "properly characterized as a state-law cause of action" even though the forum was federal); *Rodriguez v. Disner*, 688 F.3d 645, 653 n.6 (9th Cir. 2012) ("If . . . we [are] exercising our diversity jurisdiction, state law . . . control[s] whether an attorney is entitled to fees and the method of calculating such fees.").

For similar reasons, service awards for the *Chen* Plaintiffs are appropriate in recognition of their service to the class members and aggrieved employees.  *See infra* Argument, § C.

A.   **_Chen_ Counsel Merit Fees Because the Common Fund Doctrine and Ninth Circuit Authority Require Payment to Attorneys Who Create a Benefit.**

The common fund doctrine supports an award of fees and costs to counsel for the *Chen* Plaintiffs – the attorneys who first demonstrated to Morgan Stanley the enormous exposure that it faced at trial on their PAGA claims.  The doctrine generally provides that an "attorney who confers a benefit on the class is entitled to fees." *Rodriguez*, 688 F.3d at 660 n.11; *see US Airways, Inc. v. McCutchen*, 569 U.S. 88, 96 (2013).  The key treatises ground this equitable rule in principles of quantum meruit and unjust enrichment.  5 Newberg on Class Actions § 15:53 ("[E]quity addressed [the free-rider] problem through principles of unjust enrichment and *quantum meruit*."); Manual for Complex Litigation (Fourth) § 14.121 ("The common-fund exception to the American Rule is grounded in the equitable powers of the courts under the doctrines of quantum meruit and unjust enrichment.").  These principles broadly provide the authority for attorneys' fee awards in class actions and other representative actions, where absent class members have no direct contractual relationship with the attorneys, yet obvious public policy considerations support a reasonable fee award to ensure that civil rights and workers' rights claims are adequately incentivized.

Here, the wrinkle is that two sets of plaintiffs' counsel are requesting a portion of the fee.  Luckily, the general principles governing class action fee awards set forth above are sufficiently broad that they apply here, so that a fair fee award can be entered.  And commentators, the Ninth

TRACY CHEN AND MATTHEW LUCADANO'S MOTION
FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
3:18-CV-02835-WHO

Circuit, and other courts have addressed situations like this one, applying those principles to award fees to counsel from parallel litigation.[5]

The common fund doctrine focuses on whether the work of the attorneys, regardless of whom they represent, sufficiently benefited the class. Courts are not limited to awarding fees to the attorneys appointed as class counsel. Newberg on Class Actions, the leading commentator, confirms that "[i]f there are multiple lawsuits (including, for example, competing class actions) with one crossing the finish line first and generating a common fund, *counsel from the other lawsuits* may seek a fee from the fund for their work in the collateral litigation." 5 Newberg on Class Actions § 15:60 (emphasis supplied). The Ninth Circuit has squarely endorsed this majority view. In *Class Plaintiffs*, for example, where a federal settlement resolved claims being pursued in state court and the state court plaintiffs' counsel requested fees and costs in the district court, the Ninth Circuit framed the analysis as whether the work done in the parallel state court action was "sufficiently related" to the resolved federal case. 19 F.3d at 1309 (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 779 F. Supp. 1063 (D. Ariz. 1990)).

Applying these principles, courts routinely award fees to counsel from parallel cases "for hours spent working on something other than the present litigation" that nonetheless "was calculated to—and in fact did—bring about the common fund" before it. *Wininger*, 301 F.3d at 1121 n.3; *see, e.g., id.* at 1121 (fee award for opposition to a company's liquidation plan, over which there was no litigation, where the district court "traced the benefits flowing" from that work to the settlement fund); *Donovan v. CSEA Local Union 1000*, 784 F.2d 98, 103-04 (2d Cir. 1986) (fee award for work that preceded the initiation of a Department of Labor action that assisted in the vindication of union members' rights); *Angoff v. Goldfine*, 270 F.2d 185, 190 (1st Cir. 1959) (lower court erred in refusing fees for a state court proceeding that "produced a benefit to the

---

[5] As an initial matter, the Court has the authority to do so to the extent it exercises jurisdiction over the fund created by the *Harvey* settlement. *See Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1120 (9th Cir. 2002) ("Jurisdiction over the fund involved in the litigation allows a court to . . . assess[] attorney's fees against the entire fund . . . ." (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980))).

TRACY CHEN AND MATTHEW LUCADANO'S MOTION
FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
3:18-CV-02835-WHO

1   corporation on behalf of which the main action was brought"); *cf. In re Heritage Bond Litig.*, Nos.

2   02 Civ. 1475, 01 Civ. 5752, 02 Civ. 382, 02 Civ. 993, 02 Civ. 2745, 02 Civ. 6484, 02 Civ. 6841,

3   02 Civ. 9221, 02 Civ. 6512, 2005 WL 1594403, at *24 n.21, *25 (C.D. Cal. 2005) (recognizing

4   that "it ha[d] the jurisdiction and authority to award fees and costs in connection with . . . state

5   court proceedings" but holding that the work was not "sufficient to merit compensation").

6         Here, the Court should award fees to *Chen* counsel because they paved the way for the

7   *Harvey* settlement.  Importantly, unlike in *Class Plaintiffs* and *In re Heritage Bond Litigation*,

8   *Chen* counsel directly benefited the *Harvey* class members and aggrieved employees; their years

9   of advocacy to the eve of trial catalyzed Morgan Stanley's willingness to settle, as this was

10  Morgan Stanley's only way out of the impending *Chen* trial.[6]  This Court acknowledged the value

11  of *Chen* by stating that Proposed Intervenors had "plowed" the ground in which the *Harvey*

12  settlement was planted, Feb. 28, 2019 Intervention Mot. Hr'g Tr. 4:14-21, and "incentivized

13  Morgan Stanley to come to the table in the Harvey case," June 12, 2019 Prelim. Approval Mot.

14  Hr'g Tr. 5:1-6.  As set forth in Proposed Intervenors' prior filings, even though Morgan Stanley

15  shook hands with Harvey, it was the specter of liability and further intense litigation in *Chen* that

16  created the pressure to settle these claims.

17        Accordingly, it is no surprise that the *Harvey* settlement itself acknowledges the

18  importance of defeating the *Chen* claims in three separate ways.  <u>First</u>, the *Harvey* settlement

19  liability period is measured to precisely match *Chen*'s – not a day longer, and not a day shorter.

20  Rather than reaching back one year from the Harvey PAGA letter as is routinely done in PAGA

21

22  ───────────────
    [6]    Morgan Stanley's other way to avoid the trial would have been to settle with Proposed

23  Intervenors, but it did not attempt to do so until after its secret negotiations with Harvey had
    resulted in a partial settlement, which cemented Harvey's and Morgan Stanley's positions in a deal

24  that excluded Proposed Intervenors.  Leading up to trial, Proposed Intervenors continued to check
    with mediator Mark Rudy to confirm their willingness to engage in settlement talks.  Morgan

25  Stanley's lack of response may have been due to the fact that it had turned its back on Mark Rudy
    and silently chosen a new mediator, Tripper Ortman, to broker a deal with Harvey in secret.

26  Proposed Intervenors nonetheless anticipated that the result of the phase one trial would provide
    an opportunity for further settlement talks because the additional information provided by the

27  court in the form of a ruling or judgment could serve as an impetus to renew negotiations.

28
───────────────

settlements, Harvey's PAGA period is precisely tailored to reach back five years and sixteen days

from his May 9, 2018 PAGA letter, hitting the beginning of the Chen liability period (April 23,

2013 – one year back from Ms. Chen's April 23, 2014 PAGA letter) on the nose.  *See* ECF No.

48-3, ¶¶ 51-52.  Second, the Harvey settlement agreement includes the unusual provision that if

any *Chen* claims are not released, either party has the option to void the settlement if a subsequent

meet and confer is unsuccessful.  *See* Settlement Agreement § M.85, ECF No. 65-1, at 23.  Third,

the *Harvey* settlement increased by $500,000 between December 2018 and January 2019 to secure

Harvey's agreement to release all *Chen* claims.  ECF No. 36-4 (Declaration of Edward J. Wynne),

¶¶ 26, 29.

> **B.**    ***Chen* Counsel Merit Fees Because They Represented Prevailing and/or Successful Parties.**
>
> > **1.    Two Aspects of the California Labor Code Provide for Fees to Be Awarded to *Chen* Counsel.**

Attorneys' fees for the *Chen* Plaintiffs' counsel are additionally warranted under the

applicable unilateral, mandatory fee-shifting statutes in the California Labor Code, given their

status as prevailing and/or successful parties.  *See* Cal. Lab. Code §§ 218.5(a), 226(e), 2802,

2699(g)(1); *Smith v. Rae-Venter Law Grp.*, 58 P.3d 367, 375 (Cal. 2002), *superseded on other*

*grounds as stated in Eicher v. Advanced Bus. Integrators, Inc.*, 61 Cal. Rptr. 3d 114 (Cal. Ct. App.

2007); *Drumm v. Morningstar, Inc.*, 695 F. Supp. 2d 1014, 1024 (N.D. Cal. 2010) (attorneys' fees

in unpaid wage actions are "mandatory").

These laws ensure that attorneys are properly compensated after they have performed

unpaid contingency fee work that benefits Californians.  *See Turner v. Ass'n of Am. Med. Colls.*,

123 Cal. Rptr. 3d 395, 402 (Cal. Ct. App. 2011) (unilateral fee-shifting provisions are designed to

advance public purposes, usually by encouraging more effective enforcement of some public

policies).  This structure is intended to incentivize private attorneys to enforce important remedial

statutes, which otherwise would be left largely unenforced given extremely limited government

resources.  *Id.* ("[S]uch provisions reflect the Legislature's intent 'to encourage injured parties to

seek redress—and thus simultaneously enforce public policy—in situations where they otherwise would not find it economical to sue.'" (quoting *Covenant Mutual Ins. Co. v. Young*, 225 Cal. Rptr. 861, 865 (Cal. Ct. App. 1986))); *accord Earley v. Superior Court*, 95 Cal. Rptr. 2d 57, 64 (Cal. Ct. App. 2000) (quoting *Covenant Mutual Ins.*, 225 Cal. Rptr. at 865 for same in the context of the one-way attorneys' fees clause under California Labor Code §1194).  As the California Supreme Court elaborated in *Flannery v. Prentice*, 28 P.3d 860, 867 (Cal. 2001), "[a]ttorneys considering whether to undertake cases that vindicate fundamental public policies may require statutory assurance that, if they obtain a favorable result for their client, they will actually receive the reasonable attorney fees provided for by the Legislature."

        <u>First</u>, California Labor Code §§ 218.5(a), 226(e)(1), and 2802(c) mandate payment of attorneys' fees.  Labor Code § 218.5(a) specifically provides that "[i]n any action brought for the nonpayment of wages . . . the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action."  Labor Code § 226(e) also states that an "employee suffering injury as a result of a knowing and intentional" pay stub violation "is entitled to an award of costs and reasonable attorney's fees."  And, Labor Code § 2802(c) includes "attorney's fees incurred by the employee enforcing" a claim for indemnification of all necessary expenditures among the reasonable costs for which the employee must be reimbursed.

        <u>Second</u>, under PAGA's attorneys' fee provision, "[a]ny employee who prevails in any action *shall* be entitled to an award of reasonable attorney's fees and costs."  Cal. Labor Code § 2699(g)(1) (emphasis added).  The plain language of the provision, with its use of "[a]ny employee" and "any action," is broad.[7]  *See Olson v. Michaels Stores, Inc.*, No. 17 Civ. 3403, 2017 WL 3317811, at *5 (C.D. Cal. Aug. 2, 2017) ("Tellingly, here the Labor Code does not refer to 'representative plaintiffs,' and thus does not 'clearly ma[k]e fees available to the named

---

[7]     Even if section 2699(g) applies only to individuals who prevail in representative PAGA actions as opposed to individuals alleging claims brought in an individual capacity, *see Monaghan v. Telecom Italia Sparkle of N. Am., Inc.*, 647 F. App'x 763, 771 (9th Cir. 2016), that poses no hurdle here because the *Chen* Plaintiffs only brought representative claims under PAGA.

1   plaintiffs only.'" (alterations in original) (quoting *In re Abbott Labs.*, 51 F.3d 524, 526 (5th Cir.

2   1995))).

3          When considering prevailing party status under any of the above California Labor Code

4   provisions, "a rigid definition of prevailing party should not be used." *Donner Mgmt. Co. v.*

5   *Schaffer*, 48 Cal. Rptr. 3d 534, 542 (Cal. Ct. App. 2006).  Instead, a court should examine the

6   question based on a pragmatic assessment of which party succeeded "on a practical level."  *Olive*

7   *v. Gen. Nutrition Ctrs., Inc.*, 30 Cal. App. 5th 804, 824 (Cal. Ct. App. 2018).  This evaluation

8   requires consideration "of the extent to which each party has realized its litigation objectives,

9   whether by judgment, settlement, or otherwise."  *Santisas v. Goodin*, 951 P.2d 399, 414 (Cal.

10  1998).

11         Here, Proposed Intervenors have prevailed as reflected by the settlement before the Court.

12  They incentivized Morgan Stanley to settle with Harvey, and Ms. Chen's April 2014 submission

13  to the LWDA set the marker for the *Harvey* settlement liability period – everyone in her liability

14  period will receive money under the settlement, and no one outside her liability period will receive

15  money.  Without *Chen*, there would be no settlement though April 2014.  Further, the fact of the

16  PAGA payment to the LWDA – a penalty payment that can only be collected by the government

17  in case of a violation – suggests an admission of liability.  Proposed Intervenors also succeeded in

18  defeating Morgan Stanley's summary adjudication motion, and they succeeded in amassing

19  substantial evidence to prove liability at trial.  The *Harvey* settlement, albeit substantively

20  inadequate, resulted from their successes.  *Quevedo v. New Albertsons, Inc.*, No. 13 Civ. 1160,

21  2015 WL 10939716, at *3 (C.D. Cal. May 27, 2015) (under California law, a plaintiff is a

22  prevailing party if he or she recovers the types of relief sought, even if the amount awarded is less

23  than plaintiff's demand).

24         Thus, the California Labor Code – both with respect to the Rule 23 Labor Code claims and

25  the PAGA claims – requires the Court to award attorneys' fees and costs to the prevailing

26  employees, including Proposed Intervenors.

27

28
___

**2.** **California's Private Attorney General Statute Law Provides a Separate Basis for a Fee Award to *Chen* Counsel.**

Furthermore, California's private attorney general fees provision, California Code of Civil Procedure section 1021.5, permits an attorneys' fee award "to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest."  Cal. Civ. Proc. Code § 1021.5; *see Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 682 (Cal. 2016) (describing section 1021.5 as "codifying the private attorney general doctrine").[8]  And, courts have recognized that it plays the same role as the PAGA "prevail[ing] . . . employee" language.  *Olson*, 2017 WL 3317811, at *5 ("[PAGA's] 'any employee who prevails' is not markedly different than the language 'a successful party' or 'a prevailing plaintiff' under [§ 1021.5].");  *cf. Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 858 (9th Cir. 2001) (holding that § 1021.5's "successful party" language is "not materially different" from the "prevailing plaintiff" language in California's Consumer Legal Remedies Act, Cal. Civ. Code § 1780).  Similarly, courts have awarded fees under § 1021.5 in PAGA settlements.  *See, e.g., Gong-Chun v. Aetna Inc.*, No. 09 Civ. 1995, 2012 WL 2872788, at *19 (E.D. Cal. July 12, 2012) (holding that the plaintiffs alleging California Labor Code violations and PAGA claims were entitled to attorneys' fees under section 1021.5, among other sections).

Section 1021.5 provides for fees if:  "(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."  Cal. Civ. Proc. Code § 1021.5.  Fees under § 1021.5 are not limited to either the named plaintiffs in a class action, *Gibson v. Chrysler Corp.*, 261 F.3d 927, 942 (9th Cir. 2001)

---

[8]     Although this law is found in the California Code of Civil Procedure, it is substantive.  *See Indep. Living Ctr. of S. Cal., Inc.*, 909 F.3d at 283 ("As the Supreme Court has noted, nothing in *Erie* requires a departure from the principle that 'a state statute requiring an award of attorneys' fees should be applied in a case removed from the state courts to the federal courts.'" (quoting *Alyeska Pipeline*, 421 U.S. at 259 n.31)).

1   (distinguishing between a "successful party" and a representative party), or cases where there is a

2   "favorable final judgment," *Graham v. DaimlerChrysler Corp.*, 101 P.3d 140, 147 (Cal. 2004)

3   (quoting *Westside Cmty. for Indep. Living, Inc. v. Obledo*, 657 P.2d 365, 367 (Cal. 1983)).  Rather,

4   the California Supreme Court has "taken a broad, pragmatic view of what constitutes a 'successful

5   party,'" focusing on the "impact of the [party's] action." *Id.*

6          Proposed Intervenors' contributions meet all the § 1021.5 requirements.

7          First, they are successful parties because their efforts helped secure relief for the class

8   members and aggrieved employees, as explained above.  Not only did Ms. Chen's April 2014

9   submission to the LWDA allow everyone in her liability period to receive a settlement payment,

10  but Proposed Intervenors also exerted litigation pressure on Morgan Stanley by succeeding in

11  defeating its summary adjudication motion and amassing substantial evidence to prove liability,

12  which caused the company to settle with Harvey to avoid going to trial.  *See People v. Investco*

13  *Mgmt. & Dev. LLC*, 231 Cal. Rptr. 3d 595, 609 (Cal. Ct. App. 2018) (defining a successful party

14  as one that "succeed[s] on any significant issue in litigation which achieves some of the benefit the

15  parties sought in bringing suit" (alteration in original) (quoting *Maria P. v. Riles*, 743 P.2d 932,

16  938 (Cal. 1987))).  While the *Harvey* settlement amount is steeply discounted from Morgan

17  Stanley's full exposure, the inadequate settlement nevertheless resulted from Proposed

18  Intervenors' work.

19         Second, private enforcement was necessary because the LWDA did not pursue the claims,

20  *see In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 826 (E.D. Cal. 2016), and *Chen*

21  counsel undertook a significant financial burden to litigate these claims on a contingency basis

22  over many years.  Because *Chen* counsel's lodestar and costs dwarf the *Chen* Plaintiffs' individual

23  potential recoveries, it would not have been feasible or sensible for the *Chen* Plaintiffs to retain

24  counsel on an hourly basis.  *See Conservatorship of Whitley v. Maldonado*, 241 P.3d 840, 843

25  (Cal. 2010) ("[T]he purpose of section 1021.5 is . . . to compensate with attorney fees . . . all

26  litigants and attorneys who step forward to engage in public interest litigation when there are

27  insufficient financial incentives to justify the litigation in economic terms.").

28

14

1   **Third**, Proposed Intervenors are *not* seeking compensation in excess of what Harvey seeks

2   as fees and costs, but rather are simply seeking their fair share of the attorneys' fees and costs

3   approved by the Court.

4   Accordingly, whether under the California Labor Code §§ 218.5(a), 226(e)(1), 2802(c),

5   2699, or under California Code of Civil Procedure § 1021.5, a fee award for *Chen* counsel's work

6   is appropriate.

7   **C.**   ***Chen* Plaintiffs' Contributions Warrant a Service Award.**

8   Despite not being appointed class representatives in this action, the *Chen* Plaintiffs satisfy

9   the requirements for receiving a service award more than anyone else in this case.  Both have

10  invested many hours and years of their lives, helping craft discovery strategy, responding to

11  Morgan Stanley's extensive discovery requests, sitting for deposition, and generally staying

12  involved in the litigation for years.  These contributions are far greater than Harvey's.

13  When evaluating the reasonableness of a service award, courts may consider factors such

14  as: "1) the risk . . . in commencing suit, both financial and otherwise; 2) the notoriety and

15  personal difficulties encountered . . . ; 3) the amount of time and effort spent . . . ; 4) the duration

16  of the litigation and; 5) the personal benefit (or lack thereof) enjoyed . . . as a result of the

17  litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).  These

18  factors weigh strongly in favor of service awards for Proposed Intervenors.

19  Section II.B above summarizes Ms. Chen's and Mr. Lucadano's significant dedication to

20  the litigation over the past half-decade, as they were deposed over three days in aggregate, each

21  responded to discovery requests, participated in settlement talks, reviewed drafts of pleadings and

22  other documents, identified potential witnesses, and remained in close touch with counsel to assist

23  with case strategy.  Sagafi Decl. ¶¶ 33-35.  In the process of doing so, Morgan Stanley consistently

24  impugned Ms. Chen's character, and the matter attracted press, such that Google searches of

25  "Tracy Chen Morgan Stanley" and "Matthew Lucadano" (alone) yield stories about this litigation,

26  which may impair their chances of securing future employment.  *Id.* ¶ 36.

27

28

15

Service awards may be awarded to non-class representatives.  *See, e.g.*, *Vedachalam v. Tata Consultancy Servs.*, No. C 06-0963 CW, 2013 WL 3929129, at *2 (N.D. Cal. July 18, 2013) ($1,000 to "each Testifying Declarant"); *Coates v. Farmers Grp., Inc.*, No. 15-CV-01913-LHK, 2016 WL 5791413, at *2 (N.D. Cal. Sept. 30, 2016) ($5,000 each to two opt-in class members who participated in the litigation); *Wellens v. Sankyo*, No. C 13-00581 WHO (DMR), 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (Orrick, J.) ($1,000 to $6,000 for opt-in witness class members who provided declarations or were deposed).

### D.   Intervention, if Necessary, Is Appropriate for the Limited Purpose of Awarding Reasonable Fees, Costs, and Service Awards.

As set forth in Proposed Intervenors' contemporaneously filed intervention motion, both the *Chen* Plaintiffs and *Chen* counsel are proper parties for the limited purpose of the fee, cost, and service awards requested above.  Under state law, attorneys' fees "belong to the attorneys," absent an enforceable agreement to the contrary.  *Lindelli v. Town of San Anselmo*, 43 Cal. Rptr. 3d 707, 713-16 (Cal. Ct. App. 2006) (considering fee award under the California Code of Civil Procedure section 1021.5); *Flannery*, 28 P.3d at 863 (considering fee award under the California Fair Employment and Housing Act).[9]

Here, the settlement agreement and class notice provide for a maximum fee of $2,558,750 (i.e., 25% of the common fund plus future payment fund), maximum costs of $35,000, and a service award of $10,000.  Proposed Intervenors respectfully request that the Court award *Chen* counsel $2,593,750 (i.e., $2,407,146.75 in fees based on their lodestar of $4,828,890, plus their actual costs of $186,603.25).[10]  This fee request amounts to a "negative" lodestar multiplier of 0.50x.  While plaintiffs' firms working in tandem typically share fees on a lodestar basis (i.e.,

---

[9]     *Chen* Plaintiffs also move to intervene out of an abundance of caution, although arguably intervention is not required here.  *See Investco Mgmt. & Dev. LLC*, 231 Cal. Rptr. 3d at 610-11 (explaining that "clearly interested parties" are not required to formally move to intervene to obtain attorneys' fees under section 1021.5, and declining to require formal intervention where the attorneys' "successes were related to the objective of" the action).

[10]    As described above, these amounts are from inception of the case in 2013 to Morgan Stanley's announcement of the expanded settlement in January 2019.

proportionately based on each firm's lodestar), and the Court could opt to award the fee on that basis here (e.g., 25% to *Harvey* counsel and 75% to *Chen* counsel if their ratio of lodestars is 1:4), the Court also would have discretion to award *Chen* counsel 100% of the fee.  That would be appropriate here, in recognition of the wasted judicial resources occasioned by *Harvey* counsel's decision to engage in the secret November 2018 settlement negotiations without notifying *Chen* counsel and resolve a chunk of claims only asserted in *Chen*, not *Harvey*.  Had *Harvey* counsel operated above board, *Chen* counsel and *Harvey* counsel could have worked together at that first mediation to maximize value for the class members and aggrieved employees.  The resulting settlement might have been greater than the amount reached by *Harvey* counsel without the benefit of the evidence *Chen* counsel had amassed and a united plaintiffs' front being presented to Morgan Stanley.  But because of *Harvey* counsel's choice to negotiate in secret and expand their case to wipe out *Chen*, we will never know what could have been achieved had they been willing to collaborate.

Awarding the fee to *Chen* counsel, while far from compensating them for their time, would also reinforce the values embodied in Rule 1 of the Federal Rules of Civil Procedure (requiring "parties" to "employ" the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding"), and the District's Guidelines for Professional Conduct No. 1 (exhorting attorneys to "always be mindful that the law is a learned profession and that among its goals are devotion to public service [and] improvement of the administration of justice") and No. 13(d) ("A lawyer involved in an alternative dispute resolution process should participate in good faith, and should not use the process for . . . improper purposes.").

In addition, Proposed Intervenors request that the $10,000 service award set aside under the settlement be awarded to the *Chen* Plaintiffs to share with Mr. Harvey in proportion to the value each of the three individuals created for the class members' and aggrieved employees' benefit.

IV.    **CONCLUSION**

For the foregoing reasons, Proposed Intervenors respectfully request that the Court award (1) attorneys' fees in proportion to the value that they created, (2) actual costs of $186,603.25, and (3) service awards totaling $10,000 to be shared by Ms. Chen, Mr. Lucadano, and Mr. Harvey.

Dated:  November 14, 2019

Respectfully submitted,

By:  /s/ Jahan C. Sagafi
        Jahan C. Sagafi

Laura Sullivan (Cal. Bar No. 220529)
LAW OFFICE OF LAURA SULLIVAN
423 South Estate Drive
Orange, CA 92869
Telephone: (714) 744-1522
Facsimile: (714) 744-1524
Email: laurasullivan@laurasullivanlaw.com

Mark Humenik (Cal. Bar No. 231917)
HABER POLK KABAT
423 South Estate Drive
Orange, CA 92869
Telephone: (949) 636-5754
Facsimile: (216) 241-0739
Email: mhumenik@haberpolk.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com
Email: rsun@outtengolden.com

Michael J. Scimone (*pro hac vice*)
Christopher M. McNerney (*pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
Email: mscimone@outtengolden.com
Email: cmcnerney@outtengolden.com

Pooja Shethji (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW, Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
Email: pshethji@outtengolden.com

*Attorneys for Tracy Chen and Matthew Lucadano*