Laura Sullivan (Cal. Bar No. 220529)
LAW OFFICE OF LAURA SULLIVAN
423 South Estate Drive
Orange, CA 92869
Telephone: (714) 744-1522
Facsimile: (714) 744-1524
Email:
laurasullivan@laurasullivanlaw.com

Mark Humenik (Cal. Bar No. 231917)
HABER POLK KABAT
423 South Estate Drive
Orange, CA 92869
Telephone: (949) 636-5754
Facsimile: (216) 241-0739
Email: mhumenik@haberpolk.com

Pooja Shethji (*pro hac vice*)
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW, Suite 200W
Washington, D.C. 20001
Telephone: (202) 847-4400
Facsimile: (202) 847-4410
Email: pshethji@outtengolden.com

Jahan C. Sagafi (Cal. Bar No. 224887)
Relic Sun (Cal. Bar No. 306701)
OUTTEN & GOLDEN LLP
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com
Email: rsun@outtengolden.com

Michael J. Scimone (*pro hac vice*)
Christopher M. McNerney (*pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
Email: mscimone@outtengolden.com
Email: cmcnerney@outtengolden.com

*Attorneys for Objector Tracy Chen*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

BRANDON HARVEY, on behalf of himself and all others similarly situated,

        Plaintiff,

        v.

MORGAN STANLEY SMITH BARNEY LLC,

        Defendant.

Case No. 3:18-cv-02835-WHO

**OBJECTIONS OF TRACY CHEN, IN HER REPRESENTATIVE PROXY CAPACITY ON BEHALF OF THE STATE OF CALIFORNIA, TO PAGA SETTLEMENT AND REQUEST FOR PERMISSION TO APPEAR AT FINAL APPROVAL HEARING; MEMORANDUM IN SUPPORT**

Judge: Hon. William H. Orrick
Date: February 5, 2020
Time: 2:00 p.m.
Room: Courtroom 2, 17th Floor

1

**<u>OBJECTIONS</u>**

2   Tracy Chen in her representative proxy capacity on behalf of real party-in-interest the

3   California Labor and Workforce Development Agency ("LWDA"), by and through her counsel,

4   submits the following objections and comments to the proposed settlement agreement between

5   Plaintiff Brandon Harvey and Defendant Morgan Stanley Smith Barney LLC ("Morgan Stanley").

6   Chen submits these objections because the settlement agreement purports to release civil penalty

7   claims arising under the Private Attorneys General Act ("PAGA"), Cal. Labor Code § 2699 *et.*

8   *seq.*, as alleged in Harvey's Second Amended Complaint ("SAC"), ECF No. 55.  Chen's specific

9   objections are:

10   1.   This Court lacks Article III jurisdiction over the fourth cause of action in the SAC

11   arising under PAGA, because Harvey did not properly allege jurisdiction over the PAGA claim.

12   The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), does not authorize jurisdiction

13   over Harvey's representative PAGA claim, and Harvey does not allege the existence of

14   supplemental jurisdiction, 28 U.S.C. § 1367(a), over the representative PAGA claim.

15   2.   Article III jurisdiction does not exist over Harvey's PAGA claim because it

16   improperly attempts to usurp a competing PAGA action pending in Orange County Superior

17   Court, *Chen v. Morgan Stanley Smith Barney, LLC*, No. 30-2014-00724866-CU-OE-CXC

18   (Orange Cty. Super. Ct. filed May 27, 2014).  Harvey's PAGA claim represents a case or

19   controversy that is separate from Harvey's individual claims arising under the California Labor

20   Code and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

21   Supplemental jurisdiction under 28 U.S.C. § 1367(a) therefore is not present over the expanded

22   PAGA claim in the SAC, which improperly attempts to extend Article III jurisdiction to a second

23   case or controversy pending in state court.

24   3.   Separately, the factors in this case require the Court to decline to exercise

25   supplemental jurisdiction.  First, Harvey's purported authority to release the civil penalty claims

26   being pursued in *Chen* is unprecedented and involves "novel or complex issue[s] of State law"

27   involving fundamental state policy.  28 U.S.C. § 1367(c)(1).  Second, the PAGA claim belongs to

28   the State of California, and adjudication of the State's civil penalty claims (covering all Labor

1  Code violations committed by Morgan Stanley since April 23, 2013) "substantially predominates"

2  over the aggregation of the individual damages claims of class members (i.e., those individual

3  claims that have accrued since May 9, 2014).  *Id.* § 1367(c)(2).  Third, there are "compelling

4  reasons for declining jurisdiction," including comity, fairness, judicial economy, and Harvey's

5  manipulation of the federal forum to swallow up *Chen*.  *Id.* § 1367(c)(4).

6        4.      The outcome of a pending appeal currently before the Ninth Circuit involving the

7  application of Fed. R. Civ. P. 23 to PAGA claims in federal court may preclude Harvey from

8  acting in a representative capacity on behalf of the State or absent aggrieved employees (including

9  Tracy Chen and other Tier 1 aggrieved employees as defined by the settlement agreement) due to

10  third-party prudential standing concerns.  *Canela v. Costco Wholesale Corp.*, No. 18-16592 (9th

11  Cir.); *see Canela v. Costco Wholesale Corp.*, No. 13-cv-03598-BLF, 2018 WL 3008532 (N.D.

12  Cal. June 15, 2018) (granting certification of interlocutory appeal).  *Canela* may preclude this

13  Court from being able to render a judgment on the PAGA claim that binds California or the absent

14  Tier 1 aggrieved employees.

15        5.      Harvey lacks statutory standing under PAGA to bring or release civil penalty

16  claims belonging to the State of California that extend outside of his applicable one-year penalty

17  limitations period (i.e., those pre-dating May 9, 2017) because he did not exhaust administrative

18  procedures under PAGA until May 9, 2018.  Thus, the definition of the "PAGA Period" in the

19  settlement agreement as "the period beginning April 23, 2013" is overbroad.  ECF No. 65-1, ¶ 34.

20        6.      Harvey cannot adopt Tracy Chen's April 23, 2014 PAGA notice to substitute for

21  his own failure to exhaust PAGA's administrative requirements.  Thus, paragraph 54 of the

22  settlement agreement is impermissible and renders the settlement void.  *Id.* ¶ 54.

23        7.      PAGA does not authorize "two PAGA periods" or separate PAGA periods for Tier

24  1 Aggrieved Employees and Tier 2 Aggrieved Employees.   Nor does PAGA sanction differing

25  treatment of civil penalty amounts for Labor Code violations accruing in different time periods.

26        8.      Harvey was not deputized to pursue or release civil penalty claims for Labor Code

27  violations that are not specifically identified in his May 9, 2018 notice to the LWDA, such as

28

2

1   claims under Labor Code sections 221 or 400-410.

2       9.      The definition of "PAGA Released Claims" is overbroad.  ECF No. 65-1, ¶ 35.

3   Harvey is deputized to pursue (or release) only the civil penalty claims that accrued "during the

4   applicable limitations period," within the four corners of the facts, theories, and enumerated Labor

5   Code violations identified in *his* PAGA Notice: (1) Labor Code section 2802 for failure to

6   reimburse business expenses, (2) Cal. Labor Code § 204 for untimely payment of commissions

7   during employment, (3) Cal. Labor Code § 558 and Cal. Labor Code § 1194 for failure to pay

8   overtime to financial advisors because the aggrieved employees were misclassified as exempt

9   employees, and (4) Cal. Labor Code § 512, Cal. Labor Code § 1198, Cal. Labor Code § 201, Cal.

10  Labor Code § 202, Cal. Labor Code § 203, and Cal. Labor Code § 226 to the extent those penalty

11  claims are based on Harvey's theory that Morgan Stanley's financial advisors were misclassified

12  as exempt.

13      10.     The settlement agreement's release provision for PAGA aggrieved employees is

14  overbroad, both in temporal and substantive scope.  *Id.* ¶ 63.  The release provision also includes

15  impermissible language that misstates Harvey's authority to serve as the LWDA's proxy and bind

16  the State and absent aggrieved employees to the *ultra vires* settlement.  *Id.*

17      11.     Harvey did not properly calculate or value Morgan Stanley's civil penalty exposure

18  for each of the civil penalty claims he purports to release in the settlement agreement.  Without an

19  accurate valuation of all civil penalty claims subject to the release, this Court (or any reviewing

20  court) cannot determine whether the PAGA portion of the settlement is fair, reasonable, and

21  adequate.

22      12.     At preliminary approval, Harvey improperly used only the default $100 penalty

23  rate under PAGA in calculating Morgan Stanley's penalty exposure and applied that default

24  penalty rate to a single Labor Code violation, Cal. Labor Code § 2802.  Harvey's penalty exposure

25  calculation totals only $15.44 million, which grossly understates and fails to account for the

26  heightened civil penalties authorized under PAGA by Cal. Labor Code § 225.5 (for the alleged

27  Cal. Labor Code § 221 violations for improper wage deductions), Cal. Labor Code § 210 (for the

28

1   alleged Cal. Labor Code § 204 violations for untimely pay during employment), or Cal. Labor

2   Code § 226 (for the alleged inaccurate wage statement violations).

3        13.    The amount of heightened civil penalties available under Labor Code § 225.5 (for

4   the alleged Labor Code section § 221 violations for improper wage deductions) and Labor Code §

5   210 (for the alleged Labor Code §204 violations for untimely pay during employment) include an

6   underpaid wage component totaling $200 for each subsequent violation (or any intentional or

7   willful violation), *plus* 25% of the amounts wrongfully withheld.  *ZB, NA v. Superior Court*, 8 Cal.

8   5th 175, 448 P.3d 239, 249 (Cal. 2019).  ███████████████████████████████████████

9   ████████████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████  Thus,

11  when the heightened $200 penalty rate *plus* the underpaid wage component of the particular

12  statutory civil penalty provision being violated are properly considered and applied to each

13  subsequent or intentional Labor Code violation, Morgan Stanley's penalty exposure increases by

14  approximately $75 million.

15       14.    Harvey improperly claims that Morgan Stanley's PAGA liability for inaccurate

16  wage statements, Labor Code § 226, is wholly derivative of its violations of Labor Code § 2802.

17  This is inaccurate because there are other systemic pay stub errors, including incorrect pay period

18  beginning and ending dates for incentive compensation payments and inaccurate final pay

19  calculations.  But, even if Morgan Stanley's wage statement violations are considered derivative

20  for civil penalty purposes, Morgan Stanley's liability for those wage statement violations carry a

21  higher $250 per pay period penalty rate under Labor Code section 226, not the $100 default

22  PAGA penalty rate under Labor Code section 2699.

23       15.    Harvey improperly used only a single monthly pay period in calculating Morgan

24  Stanley's civil penalty exposure under PAGA.  Yet, the class notice indicates that each class

25  member's and aggrieved employee's settlement payment will be based on the number of

26  *semimonthly* pay periods worked.  Thus, Harvey's penalty exposure estimate is understated by at

27  least a factor of two based on the number of pay periods alone.

28

16.     Using semimonthly pay periods (as set forth in the class notice) and the minimum $250 penalty rate for inaccurate wage statements, Morgan Stanley's PAGA exposure on the inaccurate wage statement violations alone is at least $79.29 million, an increase of a factor of five – even if considered a derivative violation.

17.     Harvey did not assign any penalty exposure value to the State's PAGA claim covering Labor Code violations for untimely pay at termination (Labor Code § 201, § 202, and § 203), untimely pay during employment (Labor Code § 204), illegal wage deductions (Labor Code § 221), inaccurate wage statements (Labor Code § 226), or employee bond law violations (Labor Code §§ 400 through 410).  Harvey should not be permitted to release civil penalty claims on behalf of the State that he valued at zero.

18.     The combined effect of Harvey's failure to consider or accurately value each of the civil penalty claims he purports to release (for each of the 11 Labor Code violations identified in the release) renders the settlement inadequate.

19.     The settlement agreement contains indicia of collusion and inadequacy because it releases penalty claims that Harvey either did not investigate, undervalued, or valued at zero and/or which he agreed to add to the release solely for the improper purpose of appeasing Morgan Stanley to undermine *Chen*.

20.     The settlement agreement contains several other objectionable terms that further indicate collusion and inadequacy: (1) a voiding provision that benefits only Morgan Stanley and allows the settlement to be terminated if the SAC is ineffective to eliminate the separate *Chen* case or controversy, ECF No. 65-1, ¶ 85; (2) an improper advisory opinion from the court regarding the potential *res judicata* or collateral estoppel impact that a judgment would have on the LWDA and Aggrieved Employees, *id.* ¶ 63; (3) "clear sailing" provisions for class counsel's fees and costs, *id.* ¶ 61(c), and an incentive award for Harvey, *id.* ¶ 61(b), that Morgan Stanley agreed not to object to nor challenge in a *quid pro quo* exchange from Harvey and his counsel not to submit written objections to the settlement, to request exclusion or to appeal from the Court's Final Approval Order and Judgment, *id.* ¶ 99; and (4) a stipulation to "personal and exclusive" federal court

1   jurisdiction on behalf of class members and absent aggrieved employees, *id.* ¶ 91.

2         21.    The PAGA settlement amount of $600,000 is too low and does not advance

3   PAGA's law enforcement objectives.

4         22.    The settlement agreement unfairly treats PAGA aggrieved employees who suffered

5   significant wage deductions through their usage of Morgan Stanley's AFG program during the

6   PAGA Period the same as many financial advisors who experienced no wage deductions at all,

7   whether because those allegedly aggrieved employees did not qualify for the AFG program or did

8   not use it.

9         23.    The settlement agreement favors current Morgan Stanley financial advisors at the

10   expense of former aggrieved employees who terminated employment during the PAGA period.

11   There is no indication in the record that Harvey investigated the State's civil penalty claims based

12   on untimely payment of wages at termination, Cal. Labor Code §§ 201-203.

13         24.    It is improper to justify the $600,000 PAGA settlement amount by comparisons

14   with settlements reached in other PAGA or Rule 23 cases.  Rather, the PAGA settlement amount

15   should be analyzed through the percentage ratio of the civil penalty compromise being considered,

16   i.e., the proposed PAGA settlement amount to Morgan Stanley's PAGA civil penalty exposure for

17   all Labor Code violations being released.

18         25.    The 0.28% civil penalty compromise agreed to by Harvey is not an effective

19   disincentive to Morgan Stanley to discontinue its unlawful and anticompetitive business practices,

20   but rather a small "cost of business" to continue its highly profitable Labor Code violations.

21         26.    The settlement's provision of a future expense fund does not benefit those

22   aggrieved employees who no longer work for Morgan Stanley.  Nor does the provision of a future

23   expense fund adequately serve PAGA's law enforcement objectives because it allows Morgan

24   Stanley to perpetuate its unlawful AFG program and illegal compensation practices moving

25   forward.

26

27

28

OBJECTIONS OF TRACY CHEN TO PAGA SETTLEMENT; MEMORANDUM IN SUPPORT
CASE NO. 18-cv-02835-WHO

27.     As the first-filed action and consistent with California's primary rights doctrine, only the *Chen* Plaintiffs can pursue the State's civil penalty claims for the particular Labor Code violations identified in or implicated by Chen's April 23, 2014 PAGA notice.

28.     Chen joins and incorporates the objections made by class member Matthew Lucadano in his individual capacity, as well as any additional objections made by any other class member, aggrieved employee, or the LWDA that are not inconsistent with those objections made or incorporated herein.  Chen also incorporates the objections and arguments that Proposed Intervenors Tracy Chen and Matthew Lucadano made in their *amicus curiae* brief in opposition to preliminary approval.

*  *  *

Chen's objections are more fully discussed in the attached memorandum in support and are based on the Supplemental Declaration of Mark Humenik ("Humenik Supp. Decl.") filed with the Objections of Class Member Matthew Lucadano, the Request for Judicial Notice of the Comments and Objections of Real Party-in-Interest State of California Labor and Workforce Development Agency ("LWDA") Regarding Renewed Motion to Approve Settlement in *Moniz v. Adecco, USA, Inc.*, No. 17 Civ. 1736 (San Mateo Cty. Super. Ct. Sept. 20, 2019) ("RJN"), the pleadings and papers on file in the above-captioned matter, and any further material and argument presented to the Court at the hearing. In addition, Chen requests permission to appear at the final approval hearing personally, through counsel, and/or through any representative of the state of California.

OBJECTIONS OF TRACY CHEN TO PAGA SETTLEMENT; MEMORANDUM IN SUPPORT
CASE NO. 18-cv-02835-WHO

1    Dated: December 5, 2019                    Respectfully submitted,

2                                               By:   _/s/ Mark F. Humenik_
                                                         Mark F. Humenik
3

4    Jahan C. Sagafi (Cal. Bar No. 224887)      Mark Humenik (Cal. Bar No. 231917)
     Relic Sun (Cal. Bar No. 306701)            HABER POLK KABAT
5    OUTTEN & GOLDEN LLP                        423 South Estate Drive
     One California Street, 12th Floor          Orange, CA 92869
6    San Francisco, CA 94111                    Telephone: (949) 636-5754
     Telephone: (415) 638-8800                  Facsimile: (216) 241-0739
7    Facsimile: (415) 638-8810                  Email: mhumenik@haberpolk.com
8    Email: jsagafi@outtengolden.com
     Email: rsun@outtengolden.com
9                                               Laura Sullivan (Cal. Bar No. 220529)
                                                LAW OFFICE OF LAURA SULLIVAN
10   Michael J. Scimone (*pro hac vice*)        423 South Estate Drive
     Christopher M. McNerney (*pro hac vice*)   Orange, CA 92869
11   OUTTEN & GOLDEN LLP                        Telephone: (714) 744-1522
     685 Third Avenue, 25th Floor               Facsimile: (714) 744-1524
12   New York, NY 10017                         Email: laurasullivan@laurasullivanlaw.com
     Telephone: (212) 245-1000
13   Facsimile: (646) 509-2060
     Email: mscimone@outtengolden.com           Pooja Shethji (*pro hac vice*)
14   Email: cmcnerney@outtengolden.com          OUTTEN & GOLDEN LLP
                                                601 Massachusetts Avenue NW, Suite 200W
15                                              Washington, D.C. 20001
                                                Telephone: (202) 847-4400
16                                              Facsimile: (202) 847-4410
                                                Email: pshethji@outtengolden.com
17
                                                *Attorneys for Objector Tracy Chen*
18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.      INTRODUCTION……………………………………………………………. 1

II.     PROCEDURAL HISTORY…………………………………………………. 3

        A.  Chen Is Deputized to Bring PAGA Claims in 2014……………………………… 3

        B.  Harvey Files a Copycat Suit Four Years After *Chen*………………………………… 3

        C.  Harvey's PAGA Notice……………………………………………………..…… 4

        D.  Harvey Sells Chen's Claims to Settle His Separate Case or Controversy……………. 4

        E.  The *Chen* Plaintiffs Promptly Move to Intervene to Challenge the Overbroad PAGA
            Release and Harvey's Authority to Settle the PAGA Claim…………………………. 5

        F.  The SAC Does Not Assert Any Basis for Jurisdiction over the PAGA Claim……….... 5

        G.  The Court Grants Preliminary Approval…………………………………………… 6

        H.  The Court Denies Intervention……………………………………………………. 7

III.    ARGUMENT………………………………………………………………. 7

        A.  This Court Should Consider the LWDA Proxy's Objections at Final Approval……… 9

        B.  Article III Jurisdiction Is Lacking Over the SAC's Expanded PAGA Claim…………. 9

            1.  Harvey's expanded PAGA claim covering "two PAGA periods" involves a
                separate case or controversy from Harvey's individual and class claims……….... 10

            2.  Given many issues of first impression, this Court should decline supplemental
                jurisdiction…………………………………………………………………..… 14

        C.  The Harvey Settlement Purports to Release Unnoticed Penalty Claims, Depriving
            Harvey of Statutory Standing to Settle Such Claims………………...…………… 16

            1.  *Harvey* Cannot Release Civil Penalty Claims That Accrued Outside of His
                Applicable One-Year PAGA Limitations Period………..…….……………… 16

            2.  Harvey Cannot Adopt Chen's April 2014 PAGA Notice to Substitute for His Own
                Failure to Timely Exhaust Administrative Remedies……………...………….. 18

        D.  The PAGA Portion of the Settlement Is Inadequate and Does Not Serve PAGA's Law
            Enforcement Objectives……………………………………………………… 20

i

1          1.   Harvey Significantly Undervalues Morgan Stanley's PAGA Exposure……20

2             a.   Harvey did not properly calculate Morgan Stanley's exposure for each of the

3               civil penalty claims being released……………………………….. ……….. 21

4             b.   Harvey improperly assigned zero penalty value to many of the Labor Code

5               violations being released…………………………………………...………… 22

6          2.   The *Harvey* Settlement Contains Fatal Flaws and Is Contrary to PAGA's Statutory

7              Law Enforcement Objectives…………………………………………...……… 24

8    IV.      CONCLUSION………………………………………………………...……… 26

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**Federal Cases**

*Abad v. Gen. Nutrition Ctrs., Inc.*, No. 09 Civ. 190, 2013 WL 4038617, at *5 (C.D.
   Cal. Mar. 7, 2013) ................................................................................................. 17

*Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 805-10 (N.D. Cal. 2015) .............................. 16

*Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ........................................ 14

Amalgamated Transit Union, Local 1756, AFL–CIO v. Superior Court, 46 Cal. 4th
   993, 1003, 95 Cal. Rptr. 3d 605 ......................................................................... 12, 19

*Arias v. Superior Court*, 209 P.3d 923, 933-34 (Cal. 2009) ........................................ 11, 12, 19, 26

*Barker v. US Bancorp*, No. 15 Civ. 1641, 2018 WL 340232, at *2 n.3 (S.D. Cal.
   Jan. 9, 2018) ................................................................................................ 15, 16

*Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1124 (9th Cir. 2014) ...................... 6, 10, 11

*Brown v. Dow Chemical Co.*, No. 18-cv-07098-MMC, 2019 WL 1438865 (N.D.
   Cal. Apr. 1, 2019) ............................................................................................. 17

*Bush v. Vaco Techn. Servs., LLC*, No. 17-cv-05605-BLF, 2018 WL 2047807, at
   *13-14 (N.D. Cal. May 2, 2018) ....................................................................... 19, 20

Cal. Labor Code § 2699 ..................................................................................... passim

*Canela v. Costco Wholesale Corp.*, No. 13-cv-03598-BLF, 2018 WL 3008532
   (N.D. Cal. June 15, 2018) ................................................................................. 2, 16

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ............................................. 14

*Chavez v. PVH Corp.*, No. 13-CV-01797-LHK, 2015 WL 581382, at *5 (N.D. Cal.
   Feb. 11, 2015) ................................................................................................... 25

*City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997) .............................. 14

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006) ................................................ 1

*Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008) .................................................... 10

*Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1202 (9th Cir. 2007) ...................................... 1

*Duran v. Sephora USA, Inc.*, No. 17-cv-01261-WHO, 2017 WL 4156168 (N.D.
   Cal. Sept. 18, 2017) ........................................................................................... 15

*Echevarria v. Aerotek, Inc.*, No. 16-cv-04041-BLF, 2019 WL 2503377, at *5-6
   (N.D. Cal. June 17, 2019) .................................................................................. 15

*Estate of Harrington v. Marten Transp.*, No. 15 Civ. 1419, 2017 WL 5513635, at
   *5-7 (C.D. Cal. Nov. 6, 2017) ......................................................................... 19, 20

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) ............................... 11

*Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp. 2d 1222, 1224-25 (S.D. Cal. 2017) .................................................................................................................................. 15

*Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) ........................................................................ 1

*Gagliardi v. Am. Home Prods. Corp.*, 29 F.Supp.2d 972, 974-75 (E.D. Wis. 1998) .................... 26

*Gonzalez v. CoreCivic of Tenn.*, No. 1:16-cv-01891-DAD-JLT, 2018 WL 4388425, at *7-9 (E.D. Cal. Sept. 13, 2018) ................................................................................ 24

*Halliwell v. A-T Sols.*, 983 F. Supp. 2d 1179, 1182-84 (S.D. Cal. 2013) ........................... 16

*Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 4 959, 967-68 (N.D.Cal. 2019) ........................................................................................................................... 23

Iskanian v. CLS Transp. L.A., LLC, 59 Cal.4th 348, 380 (Cal. 2014) ................................ 11

*Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 85 Cal. Rptr. 3d 20, 34 (Cal. Ct. App. 2008) .................................................................................... 20, 23

*Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) ................................... 1

*Liu v. Win Woo Trading, LLC*, No. 14-cv-02639-KAW, 2016 WL 3279466, at *6 (N.D. Cal. June 15, 2016) ..................................................................................... 17

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) .................................................. 10

*Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1072-73, 1109 (N.D. Cal. 2019) .......................................................................................................... 4, 22

*Mendoza v. Nordstrom, Inc.*, 865 F.3d 1261, 1265 (9th Cir. 2017) ............................. 19, 20

*Midway Motor Lodge v. Innkeepers' Telemanagement & Equip. Corp.*, 54 F.3d 406, 409 (7th Cir. 1995) ..................................................................................... 26

*Minasyan v. W. Union Fin. Servs., Inc.*, No. 19 Civ. 1516, 2019 WL 4688757 at *2 (C.D. Cal., Sept. 26, 2019) ................................................................................. 17

*Moniz v. Adecco, USA, Inc.*, No. 17 Civ. 1736 (San Mateo Cty. Super. Ct. Sept. 20, 2019) ................................................................................................... 7, 18, 19

*Moua v. Int'l Bus. Machines Corp.*, No. 5:10–cv–01070 EJD, 2012 WL 370570, at *7-8 (N.D. Cal. Jan. 31, 2012) .......................................................................... 16

*Murray v. Scelzi Enters., Inc.*, No. 18 Civ. 1492, 2019 WL 6045146, at *13 (E.D.Cal. Nov. 15, 2019) .................................................................................. 20

*Noe v. Superior Court*, 237 Cal. App. 4th, 187 Cal. Rptr. 3d 836, 846 (Cal. Ct. App. 2015) ............................................................................................................ 18

*O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133-34 (N.D. Cal. 2016) ................ 20, 24

*Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 241 P.3d 870 (Cal. 2010) ..................... 18

*Pugel v. Morgan Stanley*, 221 F. App'x 683, 687 (9th Cir. 2007)................................................ 24

*Raines v. Coastal Pac. Foods Distribs. Inc.*, 23 Cal. App. 5th 667, 234 Cal. Rptr. 3d
    1, 6 (Cal. Ct. App. 2018) ........................................................................................... 4, 22

*Rodriguez v. Emeritus Corp.*, No. 18 Civ. 341, 2018 WL 4214922 at *6 (E.D. Cal.
    Sept. 5, 2018) .................................................................................................................. 15

*Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015)....................... 9, 11, 12

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) .......................................... 1

*Slay v. CVS Caremark Corp.*, No. 14 Civ. 1416, 2015 WL 2081642, at *10 (E.D.
    Cal. 2015) ........................................................................................................................ 17

*Smith v. Bayer Corp.* 564 U.S. 299, 305 (2011) ........................................................................ 1, 26

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998)........................................ 1, 10, 14

*Stoddart v. Express Servs., Inc.*, No. 12 Civ. 1054, 2019 WL 414489, at *6-7 (E.D.
    Cal. Feb. 1, 2019)............................................................................................................ 20

*Taylor v. W. Marine Prods., Inc.*, No. 13–04916 WHA, 2014 WL 1248162, at *2
    (N.D. Cal. Mar. 26, 2014) ............................................................................................. 16

*Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1008-09 (N.D. Cal. 2007) ................... 17

*Tuan Vo v. LoanMe, Inc.*, No. 17 Civ. 72, 2018 WL 6137577 at *2 (C.D. Cal. Sept.
    24, 2018)........................................................................................................................... 17

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)............................... 11, 12, 14, 15

*Urbino v. Orkin Servs. of Cal.*, 726 F.3d 1118, 1123 (9th Cir. 2013)................................. 1, 12, 15

*Vt. Agency of Nat. Res. v. United States ex. Rel. Stevens*, 529 U.S. 765, 772-74
    (2000) .............................................................................................................................. 10

*Warth v. Seldin*, 422 U.S. 490, 499 (1975) ................................................................................ 10

*Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 954-58 (C.D. Cal. 2015) ...................... 16

*ZB, NA v. Superior Court*, 8 Cal. 5th 175, 448 P.3d 239, 249 (Cal. 2019) ................................ 4, 22

**State Cases**

28 U.S.C. § 1332 ........................................................................................................................ 1, 4

28 U.S.C. § 1367 ........................................................................................................................ passim

Cal. Bus. & Prof. Code § 17200........................................................................................... 1, 5

Cal. Code Civ. Proc. § 340 ...................................................................................................... 17

Cal. Lab. Code § 2699 ............................................................................................................. 12

Cal. Labor Code § 1194 ................................................................................................ 3

Cal. Labor Code § 1198 ................................................................................................ 3

Cal. Labor Code § 201 ........................................................................................... passim

Cal. Labor Code § 202 ................................................................................................ 3

Cal. Labor Code § 203 ................................................................................................ 3

Cal. Labor Code § 204 ................................................................................................ 3

Cal. Labor Code § 210 ................................................................................................ 3

Cal. Labor Code § 221 ................................................................................... 4, 21, 23

Cal. Labor Code § 225.5 .............................................................................................. 3

Cal. Labor Code § 226 .......................................................................................... passim

Cal. Labor Code § 2802 ........................................................................................... 3, 4

Cal. Labor Code § 512 ................................................................................................ 3

Cal. Labor Code § 558 ................................................................................................ 3

**<u>Cases</u>**

Procedural Guidelines for Class Action Settlements ................................................. 23

1       **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.       INTRODUCTION**

3       This "quintessential California dispute" [*Urbino v. Orkin Servs. of Cal.*, 726 F.3d 1118,

4  1123 (9th Cir. 2013)] involves the proper scope – and limits – of one PAGA plaintiff's authority

5  (Harvey) to bind another LWDA proxy (Chen) with stronger and pre-existing penalty claims,

6  other aggrieved employees, and the State of California to a settlement agreement releasing *their*

7  civil penalty claims. The *Harvey* settlement and proposed judgment violate comity principles and

8  this Court's limited Article III jurisdiction to adjudicate two separate and competing "cases" or

9  "controversies." This dispute belongs in state court, not federal court.  But if it remains here, final

10 approval should be denied. Harvey lacks authority to release claims he could not bring.

11      Federal courts "have an obligation to assure [themselves] of litigants' standing under

12 Article III." *Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019) (quoting *DaimlerChrysler Corp. v.*

13 *Cuno*, 547 U.S. 332, 340 (2006)). "That obligation extends to court approval of proposed class

14 action settlements." *Id.* "[A] plaintiff whose cause of action is perfectly viable in state court under

15 state law may nonetheless be foreclosed from litigating the same cause of action in federal court"

16 if he cannot satisfy standing requirements. *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th

17 Cir. 2001). Thus, whether in a Rule 23 class or a representative PAGA state law enforcement

18 action context, a court "is powerless to approve a proposed class settlement if it lacks jurisdiction

19 over the dispute, and federal courts lack jurisdiction if no named plaintiff has standing." *Frank*,

20 139 S. Ct. at 1046 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)).

21      The *Harvey* parties have ignored overarching jurisdictional issues: whether Harvey has

22 both Article III standing and statutory standing under PAGA to compromise civil penalty claims

23 *ultra vires* on behalf of the State dating back to April 2013.[1] By waiting until May 9, 2018 to

24 exhaust the administrative requirements necessary to deputize him as LWDA's proxy to redress

25

26 ───────────────
[1] This Court has an "obligation to satisfy itself. . . of its own jurisdiction. . .  even though the
27 parties are prepared to concede it." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998)
   (citations and internal quotations omitted). Challenges to subject matter jurisdiction may be raised
28 at any point. *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1202 (9th Cir. 2007).

1  Morgan Stanley's Labor Code violations (which already were the subject of long-running PAGA

2  litigation in state court), Harvey lacks statutory standing to bring (or waive) civil penalty claims in

3  a PAGA representative capacity that predate *his* applicable one-year PAGA limitations period

4  (i.e., those that accrued on or before May 9, 2017).

5          More fundamentally, this Court lacks jurisdiction over the expanded PAGA law

6  enforcement claim in the SAC. By injecting Chen's April 2014 PAGA letter into this federal

7  action to manufacture authority to settle Chen's claims, Harvey introduces a separate "case or

8  controversy" over which this Court lacks Article III jurisdiction to consider, or which it should

9  decline to consider on grounds of comity and fairness in this case of first impression. There also

10 are third-party prudential standing limitations that may preclude Harvey from litigating his

11 expanded PAGA law enforcement action in federal court absent compliance with Rule 23, an issue

12 that is currently before the Ninth Circuit in *Canela v. Costco Wholesale Corp.*, Ninth Circuit No.

13 18-16592. The resolution of *Canela* likely will impact all non-Rule 23 PAGA claims pending in

14 federal court, including this one.

15          These core jurisdictional and standing issues have not been addressed yet in the Court's

16 Orders: (i) granting leave for Plaintiff to file the SAC by stipulation [ECF No. 50]; (ii) granting

17 preliminary approval [ECF No. 76]; and (iii) denying intervention [ECF No. 77]. The *Chen*

18 Plaintiffs appealed the Order denying intervention on October 1. [ECF No. 78] Because their

19 appeal will not be heard before this Court considers final approval, Chen submits these objections

20 in her representative proxy capacity on behalf of the LWDA and aggrieved employees to aid the

21 Court in its consideration of final approval.[2]

22          These jurisdictional and PAGA standing defects taint the settlement agreement with an

23 indelible stain. To swallow up *Chen*, the settlement imposes a release of PAGA claims that is

24 startlingly overbroad in both temporal and substantive scope. The secretive manner in which the

25 initial settlement terms were reached, subsequent amendments made to settle *Chen* without her

26

27 [2] Lucadano, who is a Rule 23 class member, separately objects to the settlement in his individual
   capacity. Chen joins and incorporates Lucadano's objections here.

28
                                                     2

1  consent, low value, Harvey's willingness to compromise the State's penalty claims for less than a

2  penny on the dollar, and other employer-friendly terms are further evidence of a reverse auction

3  and the settlement's inadequacy. Final approval should be denied.

4  **II.   PROCEDURAL HISTORY**

5       **A.    Chen Is Deputized to Bring PAGA Claims in 2014.**

6       On April 23, 2014, Tracy Chen gave written notice to the LWDA, on behalf of herself and

7  other aggrieved employees, of Morgan Stanley's alleged Labor Code violations. [Humenik Decl.,

8  ¶2; Ex. 1] After waiting the statutory period, Chen (later joined by Lucadano) filed a PAGA-only

9  action in her proxy capacity and on behalf of all aggrieved Morgan Stanley employees in Orange

10  County Superior Court. [*Id.*, ¶3][3] Based on PAGA's notice requirements and one-year statute of

11  limitations, the civil penalty claims in *Chen* span from April 23, 2013 through the present and are

12  ongoing. [ECF No. 37-1 (Livingston Intervention Opp. Decl.), ¶14]

13       **B.    Harvey Files a Copycat Suit Four Years After *Chen*.**

14       Four years after the *Chen* "case" or "controversy" began, on May 14, 2018, Harvey

15  brought this class action in federal court. [ECF No. 1] Like *Chen*, Harvey challenged Morgan

16  Stanley's compensation policies and practices that required financial advisors (FAs) to pay

17  ordinary business expenses without reimbursement, causing (1) unlawful pay deductions, (2)

18  failure to reimburse reasonable and necessary business expenses, and (3) inaccurate wage

19  statements. The Complaint did not assert a PAGA claim; it alleged only individual California

20  Labor Code claims on behalf of Harvey and a class of Morgan Stanley FAs "who worked in

21  California … within the last four years of the filing of this action." [*Id.*, ¶¶2, 10]

22

23

24  [3] *Chen* challenges: (1) Morgan Stanley's policies and practices concerning its Automated (or

25  Alternative) Flexible Grid ("AFG") program, which pass onto financial advisors the costs of
various overhead business expenses (e.g., support staff compensation, IT infrastructure, marketing,

26  mileage, client meals and entertainment, etc.) through wage deductions, violating California law
(Labor Code §§ 221, 2802 and other statutes); (2) inaccurate wage statements violating Labor

27  Code § 226; and (3) Morgan Stanley's untimely salary and commission payments, both during
employment and upon termination, violating California law (Labor Code §§ 201, 202, 204).

28

Harvey filed a First Amended Complaint on July 12, 2018, adding a PAGA claim. [ECF No. 11] [4]   The sole basis for this Court's jurisdiction alleged in the FAC is the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA). [*Id.*, ¶8] The FAC references, but does not attach, Harvey's PAGA notice. [*Id.*, ¶43]

**C.   Harvey's PAGA Notice**

Harvey's May 9, 2018 PAGA notice informed the LWDA that he "intends to seek penalties on behalf of himself and all Morgan Stanley Financial Advisors who were employed in California **during the applicable limitations period**." [Humenik Decl. ¶¶6-7; Ex. 3] Harvey identified four discrete theories of PAGA liability: (1) failure to reimburse business expenses, a violation of Cal. Labor Code § 2802 only; (2) untimely payment of commissions during employment in violation of Labor Code § 204; (3) failure to pay overtime in violation of Labor Code §§ 510 and 1194, based on Morgan Stanley's alleged misclassification of its California-based FAs as exempt; and (4) derivative violations of Labor Code §§ 512, 1198, 201, 202, 203, and 226 based on his misclassification theory only. [*Id.*] Unlike Chen's PAGA notice, Harvey's PAGA notice did not allege any violations of Cal. Labor Code § 221 (wage deductions). [*Id.*]

Neither the FAC nor Harvey's PAGA notice mentions Chen's earlier-filed PAGA notice or the *Chen* case. Neither filing purports to seek civil penalties for Labor Code violations occurring before his limitations period (i.e., predating May 9, 2017). [Humenik Dec., ¶¶7, 9] Thus, in accordance with PAGA's one-year penalty limitations period, Harvey's PAGA period spans from May 9, 2017 (one year prior to his PAGA notice) through preliminary approval.

**D.   Harvey Sells Chen's Claims to Settle His Separate Case or Controversy.**

With the scheduled *Chen* trial looming on January 14, Harvey and Morgan Stanley engaged in secret settlement discussions spanning several months during 2018. [ECF No. 48-2 (Wynne PA Decl.), ¶20] The *Harvey* parties (to the exclusion of *Chen*) met with mediator Tripper

---

[4] Unlike *Chen*, the operative FAC did not allege that Morgan Stanley failed to pay compensation to FAs timely, whether during employment or at termination. And no claim was asserted in the FAC that Morgan Stanley's compensation practices violated Labor Code §§ 201, 202, or 204, which violations are being pursued in *Chen*.

1   Ortman on at least three occasions in November 2018. [*Id.*, ¶24] On November 21, the *Harvey*

2   parties settled the *Harvey* class claims plus a four-year PAGA release coverage (despite the one-

3   year statute of limitations) for $8 million plus $1,735,000 in future AFG payments. [*Id.*; and see

4   ECF 37-1 (Livingston Intervention Opp. Decl.), at ¶22] Notably, the parties agreed to delay

5   moving for preliminary approval until they could approach Chen with a proposal to resolve her

6   separate case/controversy. [ECF No. 48-2 (Wynne PA Decl.), ¶24]

7          On December 12, the *Harvey* parties executed a Memorandum of Understanding which

8   settled the claims raised in the "operative" FAC. [Humenik Decl., ¶12] According to Morgan

9   Stanley, that settlement "operates to extinguish any class claims *and effectively any PAGA*

10  *penalties for that period of May 2014* [consistent with the UCL Cal. Bus. & Prof. Code § 17200

11  class action's 4-year limitations period] through the present." [*Id.*, ¶ 15] But Morgan Stanley

12  conceded that "there is a tail period not presently covered by that case [*Harvey*]. It is April 2013,

13  which is the beginning of the PAGA period here [in *Chen*], through May of 2014." [*Id.*][5]

14         Given Morgan Stanley's insistence that Harvey's four-year UCL class period on his

15  *individual* claims allowed him to settle *the State's* civil penalty claims beyond PAGA's one-year

16  limitations period, global settlement prospects appeared dim. Nevertheless, the *Chen* plaintiffs

17  agreed to postpone trial to January 22 to facilitate a global mediation on January 17. [*Id.* ¶ 17-18]

18  This was the *first time* that the *Chen* plaintiffs were invited to participate in settlement talks with

19  the *Harvey* parties. The *Chen* plaintiffs were dismissed from the "global" mediation at 2:00 p.m.

20  [*Id.*] Determined to avoid the *Chen* trial, on January 18, Morgan Stanley notified the *Chen* court

21  that the *Harvey* parties had reached a "new" deal to release *all* the claims in *Chen* in exchange for

22  an additional $500,000. [*Id.* ¶19] The *Chen* court vacated the trial date and stayed the case. [*Id.*]

23      **E.      <u>The *Chen* Plaintiffs Promptly Move to Intervene to Challenge the Overbroad</u>**
            **<u>PAGA Release and Harvey's Authority to Settle the PAGA Claim.</u>**

24

25         The *Chen* plaintiffs moved to intervene in this suit just five days after learning of the new

26

27  _____

    [5] The *Chen* plaintiffs repeatedly challenged Harvey's authority to settle PAGA penalties beyond
    his one-year limitations period. [Humenik Decl., ¶13; Ex. 4]

28
                                              5

1    deal. [ECF No. 28] The Court initially deferred ruling on the motion but permitted the *Chen*

2    plaintiffs to file an *amicus* brief in opposition to preliminary approval. [Ex. 6]

3         **F.    The SAC Does Not Assert A Basis for Jurisdiction over the PAGA Claim.**

4         On April 26, Harvey filed his motion for preliminary approval and a stipulation for

5    permission to file the SAC "for purposes of settlement only." [ECF Nos. 47, 48] This Court

6    granted leave to file the SAC [ECF No. 50] which was filed on May 20. [ECF No. 55] CAFA is

7    the sole basis alleged for this Court's jurisdiction over Harvey's claims. [*Id.* ¶8] The SAC does not

8    allege any basis for this Court to exercise supplemental jurisdiction over Harvey's non-federal and

9    expanded PAGA claim, ignoring Ninth Circuit precedent that PAGA claims are not subject to

10   CAFA jurisdiction. *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1124 (9th Cir. 2014).

11        Besides the jurisdictional pleading deficiencies, the SAC is an undisguised manipulation

12   by the *Harvey* parties to swallow up the separate and competing *Chen* case or controversy, so it

13   includes new claims and factual allegations that Harvey does not have standing to litigate in this

14   forum. [Humenik Decl., ¶24] Indeed, the SAC does not allege that Harvey (as opposed to non-

15   party Chen) suffered an "injury-in-fact" that is both "concrete" and "particularized" or which can

16   be redressed via an award of civil penalties reaching back to April 2013 sufficient to give him

17   standing to pursue any of the SAC's newly-added Labor Code violations.[6] The SAC references

18   and incorporates Chen's April 2014 PAGA notice and her state court suit against Morgan Stanley,

19   but conspicuously omits her name as the aggrieved employee responsible for satisfying PAGA's

20   pre-suit exhaustion requirements. [ECF No. 55, ¶ 51]

21        G.    **The Court Grants Preliminary Approval.**

22        The *Chen* plaintiffs opposed preliminary approval of the *Harvey* settlement on the grounds

23   (among others) that (i) the temporal scope of the PAGA release far exceeds the one-year

24   limitations period applicable to Harvey's PAGA claim, ECF No. 52 at 8:3-9:23; and (ii) Harvey's

25

26   [6] As the *Chen* plaintiffs noted in their amicus brief, Harvey did not participate in Morgan Stanley's
     AFG program in 2013, 2014, 2015, and 2016. [Humenik Decl., ¶106] The SAC does not allege
27   otherwise. Harvey thus did not suffer an "injury-in-fact" sufficient to confer Article III standing on
     him to recover civil penalties based on Chen's earlier-filed PAGA notice.

28

1   lack of standing to litigate or settle the expanded PAGA claim due to his failure to exhaust

2   administrative remedies [ECF No. 52, at 8:7-8:15, 9:24-10:10; *see also* Humenik Decl., ¶¶ 28,

3   77].[7]   The *Chen* plaintiffs also objected to the parties' arbitrary allocation of $500,000 to settle

4   penalty claims covering the 13-month Tier 1 PAGA period (from April 23, 2013 to May 13,

5   2014), but only $100,000 for civil penalty claims covering the 62-month Tier 2 PAGA period

6   (from May 14, 2014 to preliminary approval). [*Id.* ¶¶ 76, 78]

7        On September 5, the Court preliminarily approved the *Harvey* settlement. [ECF No. 76]

8   The Court primarily addressed whether the settlement was the result of a reverse auction and

9   within the range of reasonableness and concluded that it warranted preliminary approval. [*Id.* at

10  2:3-9:12] While recognizing that the PAGA settlement payment "is split across two PAGA

11  periods" [*Id.* at 8:1], the Court did not address *amici's* objections to the defects and omissions in

12  Harvey's May 2018 PAGA notice, his unprecedented attempt to piggyback on Chen's April 2014

13  PAGA notice, or whether PAGA's pre-suit notification procedures and one-year limitations period

14  applied to Harvey's PAGA claim. [*Id.* at 8:1-5] The Court also did not address the settlement's

15  provision for "two PAGA periods" brought by a *single* representative, or its overbroad definition

16  of "Aggrieved Employees" to include all FAs since April 23, 2013. [*Id.* at 10:9-11] The order

17  granting preliminary approval did not address the Court's jurisdiction or Plaintiff's statutory

18  standing to bring the expanded PAGA claim. The Court observed that "PAGA aggrieved

19  employees have no ability to exclude themselves or object" to the settlement [*Id.* at 13:18-19] but

20  did not determine whether Harvey can bind absent aggrieved employees or the State for unnoticed,

21  unexhausted, and unlitigated civil penalty claims dating back to April 2013.

22       **H.    The Court Denies Intervention**

23       On the same date that it preliminarily approved the settlement, the Court denied

24  intervention to Chen and Lucadano. [ECF No. 77, at 5:10-23] The Court observed that "[i]t is my

---

25  [7] Besides challenging the propriety of the overall settlement agreement on various legal and
26  procedural grounds (i.e., overbroad PAGA release, lack of standing, failure to satisfy Rule 23,
    unfair allocation plan, failure to comply with this District's procedural guidance for class action
27  settlements, etc.), the *Chen* plaintiffs attacked the merits of the settlement as the result of a reverse
    auction that produced an unacceptably low value in relation to its overall verdict value, especially
28  given the strength of *Chen* and its impending trial.

1  job to consider the interest of the state at the final approval stage" [*Id.* at 5:18-19], and found that

2  intervention is "unnecessary to protect the interest of the Proposed Intervenors." [*Id.* at 5:20-21]

3  The Court did not explain why it denied intervention to Chen yet allowed Harvey to adopt her

4  PAGA notice solely so he can release her penalty claims in a bargain with Morgan Stanley to

5  thwart her state case. The *Chen* plaintiffs appealed the denial of intervention on October 1, 2019.

6  **III.    ARGUMENT**

7          No case law or statutory authority allows a PAGA plaintiff to release civil penalties on

8  behalf of the State and absent aggrieved employees for Labor Code violations that the PAGA

9  representative is not deputized to pursue. For good reason: PAGA does not give an aggrieved

10  employee *carte blanche* authority to act as the LWDA's proxy to prosecute (or waive) *all* Labor

11  Code violations against his employer. PAGA contains a strict statutory notice and exhaustion

12  scheme designed to bring alleged Labor Code violations to the LWDA's attention *before* a private

13  litigant is deputized to proceed as the State's representative. These requirements are especially

14  important here, where another authorized LWDA proxy (Chen) is pursuing similar penalty claims

15  on the State's behalf for over five years running. This Court should not be the first to judicially

16  overwrite PAGA's statutory scheme and give Harvey *ultra vires* license to settle Chen's claims

17  out from under her feet when he has not been deputized to bring them. This result was never

18  intended by the legislature, would render administrative exhaustion meaningless, and would

19  frustrate PAGA's law enforcement objectives.

20          Independent of the settlement's substantive defects, federal jurisdiction is lacking over the

21  expanded PAGA claim. There are five related and insurmountable jurisdictional problems: (i)

22  Harvey did not allege a proper basis for jurisdiction over the PAGA claim, (ii) the expanded

23  PAGA claim encompasses two separate and distinct "cases" or "controversies" for Article III

24  purposes, (iii) Harvey lacks Article III standing because he did not suffer an "injury-in-fact" that

25  can be redressed by an award of civil penalties reaching back to April 23, 2013, (iv) Harvey lacks

26  statutory standing under PAGA to bring civil penalty claims pre-dating his "applicable limitations

27  period," and (v) the LWDA never deputized Harvey to serve as its proxy on facts, theories, and

28

8

1   Labor Code violations different from those found in his (not Chen's) PAGA notice.

2          Even if supplemental jurisdiction exists over the expanded PAGA claim, this Court should

3   not exercise it. *Harvey* is a case of first impression. His purported authority to settle civil penalty

4   claims on behalf of the State covering "two PAGA periods" and reaching back to 2013 (which are

5   being pursued separately by *Chen*) is an unprecedented overreach which involves novel issues of

6   state law that are better suited for resolution in state court. Principles of comity, fairness, and

7   judicial economy dictate that jurisdiction be declined.

8          Besides jurisdictional and statutory standing defects, other fatal issues with the settlement

9   include its inappropriately low value, a failure to justify the steep settlement discount being

10  proposed *vis a vis* the enormous civil penalty exposure facing Morgan Stanley, an overbroad

11  release of penalty claims, and other red flags of collusion and inadequacy stemming from the

12  settlement's reverse auction origins.

13         **A.**     **This Court Should Consider the LWDA Proxy's Objections at Final Approval.**

14         The Court ruled that Chen as a non-class member cannot object at final approval because

15  "aggrieved employees do not have the right to opt out *or object* to a PAGA settlement." [ECF No.

16  77 at 3:23-24 (emphasis added)] But the Ninth Circuit has not ruled that aggrieved employees, let

17  alone a competing LWDA Proxy like Chen, have no right to *object* to a PAGA settlement; instead,

18  the Ninth Circuit merely noted in dicta that aggrieved employees have no right to *opt out* of a

19  PAGA settlement.[8] *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir. 2015). An

20  expansive reading of the dicta in *Sakkab* to preclude even objections by absent aggrieved

21  employees should not apply here, where Harvey is relying on the absent aggrieved employee's

22  PAGA letter (Chen) to establish and expand his own Article III and statutory standing. Chen

23  respectfully requests that her objections, which are more thorough than those presented at

24

---

25  [8] In the analogous context of Rule 23(b)(1) mandatory class actions, where class members have no right to opt out, they are permitted to object at final approval or challenge the settlement on appeal without having intervened. *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) ("We hold that nonnamed class members [in a mandatory Rule 23(b)(1) certified class action] like petitioner who have objected in a timely manner to approval of the settlement at the final fairness hearing have the power to bring an appeal without first intervening."); *Churchill Vill., LLC v. Gen. Elec.* 361 F.3d 566, 572-73 (9th Cir. 2004) (extending *Devlin* to Rule 23(b)(3) class actions).

26

27

28

1   preliminary approval and which challenge this Court's jurisdiction to determine the expanded

2   PAGA claim, be considered at the final fairness hearing.

3           **B.       Article III Jurisdiction Is Lacking Over the SAC's Expanded PAGA Claim.**

4           Before reaching the merits of final approval, the Court first must tackle whether it has

5   Article III jurisdiction over Harvey's expanded PAGA claim. It is Harvey's burden to establish

6   each of the three irreducible constitutional minimum elements of standing: injury in fact,

7   causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "[E]ven

8   when the plaintiff has alleged injury sufficient to meet Article III's 'case or controversy'

9   requirement, [the U.S. Supreme] Court has held that the plaintiff generally must assert his own

10  legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

11  parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Further, a plaintiff "must demonstrate

12  standing for each claim he seeks to press' and 'for each form of relief that is sought.'" *Davis v.*

13  *Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChryslerCorp*, 547 U.S. at 352).

14  These same jurisdictional and standing principles hold true whenever a plaintiff seeks an award of

15  civil penalties via a *qui tam* statute or a citizen-suit enforcement action. *See Steel Co. v. Citizens*

16  *for a Better Env't*, 523 U.S. at 107 (finding lack of Article III jurisdiction in a citizen-suit

17  enforcement action, primarily because "[r]elief [in the form of civil penalties] that does not

18  remedy the injury suffered cannot bootstrap a plaintiff into federal court"); *Vt. Agency of Nat. Res.*

19  *v. United States ex. Rel. Stevens*, 529 U.S. 765, 772-74 (2000) (finding that a *qui tam* relator

20  pursuing a False Claims Act suit had Article III standing only to the extent that the government

21  has partially assigned its damages claim to him).

22          1.      **Harvey's expanded PAGA claim covering "two PAGA periods"**
                    **involves a separate case or controversy from Harvey's individual and**
23                  **class claims.**

24          In *Baumann*, the Ninth Circuit held that federal courts do not have original jurisdiction

25  over PAGA claims under CAFA. 747 F.3d at 1119. The court left open the related question

26  whether a federal court can exercise supplemental jurisdiction over a PAGA claim if not certified

27  under Rule 23. *Id.* at 1124.

28

1   The SAC alleges only original federal jurisdiction under CAFA. [ECF No. 55, ¶ 8] Harvey

2   did not allege supplemental jurisdiction and did not request Rule 23 treatment of the PAGA claim.

3   *Id.* Since Harvey as the master of his complaint did not invoke supplemental jurisdiction and

4   failed to allege sufficient facts that *he* (not *Chen*) has standing to bring the expanded PAGA claim

5   in federal court, the Court must independently consider "whether it has a constitutional and

6   statutory basis for exercising supplemental jurisdiction over the other claims in the action." *Exxon*

7   *Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005).

8   For supplemental jurisdiction to be present under 28 U.S.C. § 1367(a), the state law claim

9   must be part of the same "case or controversy" as the claim(s) from which the supplemental

10   jurisdiction stems.[9] As the Supreme Court made clear long ago, the same "case or controversy"

11   test involves analysis of: (1) whether the pendant (supplemental) state law claim derives from a

12   "common nucleus of operative fact" as the claim(s) over which the federal court has original

13   jurisdiction, <u>and</u> (2) "such that [plaintiff] would be expected to try them all in one judicial

14   proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

15   Here, supplemental jurisdiction is absent on both constitutional and statutory grounds. For

16   Article III purposes, this Court only has original jurisdiction over Harvey's and the class

17   members' *individual* Labor Code claims pursuant to CAFA. The State is not a party to the

18   individual or class claims, and the State does not have a stake in the class action case or

19   controversy. "A PAGA action is at heart a civil enforcement action filed on behalf of and for the

20   benefit of the State, not a claim for class relief." *Baumann*, 747 F.3d at 1124; *accord Sakkab*, 803

21   F.3d at 436 (a PAGA claim is a statutory action for penalties "rather than a procedure for resolving

22   the claims of other employees"); *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal.4th 348, 380 (Cal.

23   2014); *Arias v. Superior Court*, 209 P.3d 923, 933-34 (Cal. 2009).

24   The differences between PAGA and Rule 23 show why a PAGA action is not part of the

25   same "case or controversy" as a Rule 23 class action for Article III purposes. As the Ninth Circuit

26

27   [9] Section 1367(a) provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to *claims in the action within such original jurisdiction* that they form part of the same case or controversy." 28 U.S.C. § 1367(a) (emphasis added).

28

1    explained in *Sakkab*:

2        [I]t is essential to examine the "fundamental[ ]" differences between PAGA
         actions and class actions… The class action is a procedural device for resolving
3        the claims of absent parties on a representative basis. By contrast, a PAGA action
         is a statutory action in which the penalties available are measured by the number
4        of Labor Code violations committed by the employer. An employee bringing a
         PAGA action does so "as the proxy or agent of the state's labor law enforcement
5        agencies," (citing *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 380,
         173 Cal. Rptr. 3d 289 (2014) and *Arias v. Superior Court*, 46 Cal. 4th 969, 986, 95
6        Cal. Rptr. 3d 588 (2009)) who are the real parties in interest. As the state's proxy,
         an employee-plaintiff may obtain civil penalties for violations committed against
7        absent employees, Cal. Lab. Code § 2699(g)(1), just as the state could if it
         brought an enforcement action directly. However, by obtaining such penalties, the
8        employee-plaintiff does not vindicate absent employees' claims, for the PAGA
         does not give absent employees any substantive right to bring their "own" PAGA
9        claims. (citing *Amalgamated Transit Union, Local 1756, AFL–CIO v. Superior
         Court*, 46 Cal. 4th 993, 1003, 95 Cal. Rptr. 3d 605 (2009) and *Iskanian*, 59 Cal. 4th
10       at 381 ["[t]he civil penalties recovered on behalf of the state under the PAGA are
         distinct from the statutory damages to which employees may be entitled in their
11       individual capacities"]).

12   803 F.3d at 435-36 (some internal citations omitted). Unlike Rule 23 actions, "PAGA actions do

13   not aggregate individual claims." *Id.* at 437; *see also Urbino*, 726 F.3d at 1122 (finding that

14   individual penalty claims of PAGA aggrieved employees cannot be aggregated to satisfy amount-

15   in-controversy requirement). Thus, a PAGA representative law enforcement action – filed on

16   behalf of and for the benefit of the State – is separate from Harvey's "own" claims and the

17   aggregation of the Rule 23 class's individual claims too.[10]

18        This is consistent with the *Gibbs* "case or controversy" requirement that Article III

19   jurisdiction only extends to pendant claims expected to be tried "all in one judicial proceeding"

20   and PAGA's statutory framework, which authorizes an aggrieved employee to pursue a

21   representative PAGA claim either concurrently or *separately* from any individual Labor Code

22   claim(s).  Cal. Lab. Code § 2699(g)(1). Because a PAGA action is not expected to be tried in the

23   _____

24   [10] The California Supreme Court recognized the separate "case or controversy" nature of a PAGA
     representative claim as distinct from an aggrieved employee's individual claims in *Arias*, holding
25   that a judgment in a PAGA representative action does not preclude aggrieved employees from later
     pursuing individual wage and hour claims founded on the same Labor Code violations. 46 Cal. 4th
26   969, at 986-987. The rationale for the rule is that the aggrieved employees' claims are individual in
     nature, deriving from the aggrieved employee' contractual relationship with the employer. The rule
27   in *Arias* could not hold if the individual claims of aggrieved employees (class members) were part
     and parcel of the same "case or controversy" as the State's PAGA claim, or else those aggrieved
28   employees (class members) would be bound in their individual capacities by a PAGA judgment.

1   same proceeding as an aggrieved employee's individual claims – and is expressly authorized to

2   proceed separately from them – necessarily a PAGA action is not part of the same "case or

3   controversy" as the individual employee's or the Rule 23 class members' individual claims under

4   state law. *Gibbs*, 383 U.S. at 725. Thus, supplemental jurisdiction cannot attach to the expanded

5   PAGA claim to extinguish the longer PAGA period in *Chen* because doing so involves a separate

6   case or controversy from the Rule 23 class action before the Court.

7           The procedural history of this case (and *Chen*) only highlights that the SAC seeks to

8   extend Article III jurisdiction to a separate case or controversy. *Chen* was the first-filed action,

9   pre-dating the initial complaint in this case by four years. The initial complaint here was not filed

10  until May 14, 2018. At that time, there was no "case or controversy" under PAGA for Article III

11  purposes between Harvey and Morgan Stanley because Harvey had not yet satisfied PAGA's pre-

12  suit exhaustion requirements and had not been deputized to serve as the State's proxy. Even after

13  the LWDA failed to respond to Harvey's May 2018 PAGA notice, Harvey only received statutory

14  authority to serve as the LWDA's proxy to prosecute the particular Labor Code violations

15  stemming from the facts and theories set forth in his own PAGA notice "during the applicable

16  limitations period." [Ex. 3, p. 2] The LWDA did not authorize Harvey to pursue Chen's pre-

17  existing violations. The FAC reflects this, omitting any reference to the separate "case or

18  controversy" in *Chen*.

19          After Harvey and Morgan Stanley initially agreed to a settlement covering the claims

20  raised in the FAC, but not releasing the civil penalty claims during the "tail period" (from the start

21  of the PAGA limitations period in *Chen* [April 23, 2013] through the start of the UCL class period

22  in *Harvey* [May 9, 2014]) and the *Chen* Plaintiffs marched onward to trial, Harvey and Morgan

23  Stanley joined forces to settle out the *Chen* case entirely under the *Harvey* umbrella. This

24  culminated in the parties' arrangement for Harvey to file a SAC to bring Chen's claims "for

25  purposes of settlement only." The parties' stipulation requiring Harvey to withdraw the SAC if

26  settlement is not approved [ECF No. 50, at 2:9-11], and the terms in the settlement allowing it to

27  be voided if the expansive PAGA period is disallowed [ECF No. 65-1, ¶ 85], are red flags of the

28

1    insurmountable jurisdictional defects present here.

2        Although the purpose of the SAC is to extinguish *Chen*, it obscures Harvey's separate

3    "case or controversy" jurisdictional problem by failing to identify Chen as the employee who first

4    notified the LWDA of Morgan Stanley's unlawful pay practices in April 2014 (on which Harvey

5    now relies to support his "own" broadened proxy authority). [ECF No. 55, ¶ 51] Likewise, the

6    SAC does not identify Chen as the "proxy standing in the shoes of the LWDA" who first brought

7    an action in state court in May 2014. [*Id.*] Meanwhile, in a sleight of hand pleading tactic, the

8    SAC claims (erroneously) that the LWDA authorized Harvey's expanded standing through *Chen*:

9    "The LWDA, through Plaintiff Harvey as its proxy, seeks to pursue those Labor Code violations

10   [at issue in *Chen*] in this action as well." *Id.*  But Article III does not permit Chen's injury to

11   "bootstrap [Harvey] into federal court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. at 107.

12       2.    **Given many issues of first impression, this Court should decline supplemental jurisdiction.**

13

14       To the extent the expanded PAGA claim, which incorporates Chen's April 2014 PAGA

15   notice and her May 2014 state court lawsuit, is part of the same case or controversy as Harvey's

16   class claims for supplemental jurisdiction purposes, this Court should decline to exercise it.

17   Supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right." *City of Chicago v.*

     *Int'l College of Surgeons*, 522 U.S. 156, 172 (1997) (quoting *Gibbs*, 383 U.S. 715, 726 (1966)).

18   District courts may decline to exercise supplemental jurisdiction over a pendant state law claim if:

19   (1) it raises a novel or complex issue of state law; (2) it substantially predominates over the

20   claim(s) over which the court has original jurisdiction; (3) the court has dismissed all claims over

21   which it has original jurisdiction; or (4) there are other compelling reasons for declining

22   jurisdiction. 28 U.S.C. § 1367(c).

23       The Supreme Court has identified additional factors for determining whether the exercise

24   of supplemental jurisdiction is proper, including consideration "at every stage of the litigation, the

25   values of judicial economy, convenience, fairness, and comity.'" *Int'l Coll. of Surgeons*, 522 U.S.

26   at 173 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also Acri v.*

27   *Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc). Principles of comity are

28

1    especially important in cases involving unsettled issues of state law. *Gibbs*, 383 U.S. at 726-27.

2           Compelling reasons militate against the exercise of supplemental jurisdiction here. First,

3    the expanded PAGA claim "with two PAGA periods" raises unprecedented and "novel or complex

4    issues of State law," including determining which of the two competing PAGA plaintiffs has

5    authority to bring a PAGA claim (or bind the State and absent aggrieved employees to a release of

6    civil penalty claims) for the time period spanning April 23, 2013 and May 9, 2017. 28 U.S.C. §

7    1367(c)(1). The challenged legality of Morgan Stanley's AFG program (at the heart of both cases)

8    also involves novel issues. Even *Harvey* concedes his "theory of recovery is novel, has not been

9    tested on appeal, and there is only one other similar case." [ECF No. 58, at 15:11-12] In such

10   circumstances, district courts routinely refuse to exercise supplemental jurisdiction over pendant

11   state law claims that implicate novel issues of state law, including under PAGA.[11]

12          Second, the expanded PAGA claim (seeking to release all of Morgan Stanley's Labor

13   Code violations since April 2013 involving 11 different statutory provisions) "substantially

14   predominates" over the more limited class claims under CAFA spanning a shorter time period. 28

15   U.S.C. § 1367(c)(2).

16          Third, federal jurisdiction is tenuous at best because Plaintiff lacks Article III standing in

17   this "quintessential California dispute." *Urbino*, 726 F.3d at 1124. Article III standing is deficient

18   because: (i) Harvey did not participate in AFG until 2017, (ii) did not receive an assignment of the

---

19   [11] *See Echevarria v. Aerotek, Inc.*, No. 16-cv-04041-BLF, 2019 WL 2503377, at *5-6 (N.D. Cal.
20   June 17, 2019) (declining supplemental jurisdiction over PAGA claim in part because "PAGA is
     purely a state law creature and primary responsibility for developing and applying state law rests
21   with California courts"), *certificate of appealability and stay granted by* 2019 WL 3207812 (N.D.
     Cal. July 16, 2019); *Rodriguez v. Emeritus Corp.*, No. 18 Civ. 341, 2018 WL 4214922 at *6 (E.D.
22   Cal. Sept. 5, 2018) (declining supplemental jurisdiction over PAGA claim); *Barker v. US Bancorp*,
     No. 15 Civ. 1641, 2018 WL 340232, at *2 n.3 (S.D. Cal. Jan. 9, 2018) (declining supplemental
23   jurisdiction because it is "questionable whether [PAGA plaintiff] has Article III standing to assert
     PAGA claims outside of the Rule 23 class action context. In declining to exercise supplemental
24   jurisdiction, the Court need not address this standing issue." (citations omitted)); *Duran v. Sephora
     USA, Inc.*, No. 17-cv-01261-WHO, 2017 WL 4156168 (N.D. Cal. Sept. 18, 2017) (in a FLSA
25   action, this Court declined supplemental jurisdiction over state law claims, including a PAGA
     claim, where three overlapping state court class actions involving similar claims were pending in
26   state court); *Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp. 2d 1222, 1224-25 (S.D. Cal.
     2017) (declining supplemental jurisdiction in a civil rights action involving interplay between
27   ADA and Unruh Civil Rights Act because "the novelty and complexity of state law issues weighs
     in favor of dismissing them to allow California state courts to resolve the issue").

28
                                                        15
                      OBJECTIONS OF TRACY CHEN TO PAGA SETTLEMENT; MEMORANDUM IN SUPPORT
                      CASE NO. 18-cv-02835-WHO

1   State's (or Chen's) PAGA claim reaching back to April 2013, and (iii) did not exhaust

2   administrative remedies under PAGA concerning many of the violations he now seeks to release.

3        Fourth, considerations of judicial economy, convenience, and the attendant risk of further

4   delay also favor declining supplemental jurisdiction.  Because Harvey elected to pursue his PAGA

5   claim independent of Rule 23, there is a substantial risk that his PAGA claim is subject to future

6   dismissal. District courts are divided over whether a PAGA representative claim can survive in

7   federal court absent certification under Rule 23.[12] The Ninth Circuit likely will resolve this split of

8   authority in *Canela*.[13] Depending on the outcome, this Court may be required to dismiss Harvey's

9   PAGA claim if the Ninth Circuit holds that PAGA actions must comply with Rule 23 in order to

10  proceed in federal court. Or, at a minimum, intervention, preliminary approval, and final approval

11  will need to be revisited.

12       Last, it would be patently unfair to allow Harvey to manipulate this federal forum to

13  eliminate the competing *Chen* case or controversy. The more prudent, fair, and judicially

14  economic course of action would be to decline supplemental jurisdiction over the expanded and

15  unprecedented PAGA claim. *Barker*, 2018 WL 340232, at *2 n.3.

16       **C.    The Harvey Settlement Purports to Release Unnoticed Penalty Claims,**

17            **Depriving Harvey of Statutory Standing to Settle Such Claims.**

18       The settlement agreement is fatally defective on statutory grounds under PAGA.

19  _____

20  [12] *Compare Taylor v. W. Marine Prods., Inc.*, No. 13–04916 WHA, 2014 WL 1248162, at *2
    (N.D. Cal. Mar. 26, 2014) (finding PAGA claims must satisfy Rule 23), and *Halliwell v. A-T Sols.*,

21  983 F. Supp. 2d 1179, 1182-84 (S.D. Cal. 2013) (same), *with Zackaria v. Wal-Mart Stores, Inc.*,
    142 F. Supp. 3d 949, 954-58 (C.D. Cal. 2015) (declining to apply Rule 23), *Achal v. Gate*

22  *Gourmet, Inc.*, 114 F. Supp. 3d 781, 805-10 (N.D. Cal. 2015) (same), and *Moua v. Int'l Bus.*
    *Machines Corp.*, No. 5:10–cv–01070 EJD, 2012 WL 370570, at *7-8 (N.D. Cal. Jan. 31, 2012)

23  (same).

    [13] In *Canela*, the plaintiff sued Costco for failing to provide suitable seats. *Canela v. Costco*
24  *Wholesale Corp.*, No. 13-cv-03598-BLF, 2018 WL 2331877, at *1 (N.D. Cal. May 23, 2018). Her
    complaint alleged only a PAGA claim and disclaimed any intent to proceed under Rule 23. The

25  district court denied Costco's motion for summary judgment, concluding that Canela had standing
    to bring her PAGA claim and need not satisfy Rule 23.  *Id.* at *4-10. The district court certified its

26  decision for interlocutory review, *Canela v. Costco Wholesale Corp.*, No. 13-cv-03598-BLF, 2018
    WL 3008532, at *1-4 (N.D. Cal. June 15, 2018), and the Ninth Circuit accepted the appeal.  The

27  matter is fully briefed and scheduled for oral argument in January 2020.

28

1

2

**1.** *Harvey* **Cannot Release Civil Penalty Claims That Accrued Outside of His Applicable One-Year PAGA Limitations Period.**

3

4

The *Harvey* settlement suffers from an incurable threshold defect: the PAGA release is

overbroad because it improperly expands the one-year limitations period to over five years. *See*

5

Cal. Code Civ. Proc. § 340(a). Numerous courts have rejected representative PAGA claims that

6

sought to pursue violations that accrued more than one year before the PAGA notice.[14] Thus,

7

Harvey lacks statutory standing to pursue (or release) a PAGA representative claim pre-dating

8

May 9, 2017.

9

"Proper notice [to LWDA] under section 2699.3 is a 'condition' of a PAGA lawsuit."

10

*Brown v. Ralphs Grocery Co.*, 28 Cal. App. 5th 824, 835, 239 Cal. Rptr. 3d 519, 528 (Cal. Ct. App.

11

2018). If PAGA's exhaustion requirements are not satisfied, a court must dismiss (or strike

12

portions of) a PAGA claim that a plaintiff is not authorized to pursue due to lack of statutory

13

standing. *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 381-383, 36 Cal. Rptr.

14

3d 31, 43-45 (Cal. Ct. App. 2005), *overruled in part on other grounds, ZB, N.A. v. Superior Court*,

15

8 Cal. 5th 175 (Cal. 2019). After having properly exhausted the notice requirements, a PAGA

16

plaintiff is deputized to prosecute a claim for civil penalties *only* for those particular violations that

17

18

19

20

21

22

23

24

25

26

27

[14] *See, e.g.*, *Minasyan v. W. Union Fin. Servs., Inc.*, No. 19 Civ. 1516, 2019 WL 4688757 at *2 (C.D. Cal., Sept. 26, 2019) ("The statute of limitations for recovery of PAGA penalties is one year from the date that Minasyan submitted her intent letter to the [LWDA]."); *Brown v. Dow Chemical Co.*, No. 18-cv-07098-MMC, 2019 WL 1438865 (N.D. Cal. Apr. 1, 2019) ("a plaintiff whose PAGA claim is time-barred cannot serve as a representative of other employees."); *Tuan Vo v. LoanMe, Inc.*, No. 17 Civ. 72, 2018 WL 6137577 at *2 (C.D. Cal. Sept. 24, 2018) ("a PAGA plaintiff must start administrative proceedings with the LWDA within one year of the alleged violation."); *Liu v. Win Woo Trading, LLC*, No. 14-cv-02639-KAW, 2016 WL 3279466, at *6 (N.D. Cal. June 15, 2016) (a "plaintiff is unable to pursue a PAGA claim in a representative capacity if his own claim is time-barred"); *Slay v. CVS Caremark Corp.*, No. 14 Civ. 1416, 2015 WL 2081642, at *10 (E.D. Cal. 2015) (same); *Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1008-09 (N.D. Cal. 2007) (same); *Abad v. Gen. Nutrition Ctrs., Inc.*, No. 09 Civ. 190, 2013 WL 4038617, at *5 (C.D. Cal. Mar. 7, 2013) ("Plaintiffs sent the required notice to the California Labor and Workforce Development Agency ('LWDA') on October 31, 2008," so "the PAGA claims only cover violations occurring on or after October 31, 2007.").

28

were timely exhausted, going back one year from the date that notice was given to LWDA. *Brown*, 239 Cal. Rptr. 3d at 529-31, 534.[15]

Here, Harvey's PAGA notice date of May 9, 2018 sets his PAGA limitations period to May 9, 2017 forward. In his PAGA notice, Harvey stated that he "intends to seek penalties on behalf of himself and all Morgan Stanley [FAs] who were employed in California *during the applicable limitations period*," without mentioning Chen's letter or case. [ Ex. 3, p. 2 (emphasis added)] Accordingly, Harvey is barred from pursuing or waiving time-barred PAGA penalties now - in his representative capacity - that extend back to April 2013.

**2.**   **Harvey Cannot Adopt Chen's April 2014 PAGA Notice to Substitute for His Own Failure to Timely Exhaust Administrative Remedies.**

Harvey's PAGA notice establishes the scope of his authority to act as the State's agent, including his ability to release claims in a private settlement agreement that may bind the State and absent aggrieved employees. But Harvey did not satisfy PAGA's notice requirements until May 9, 2018, thereby allowing him to pursue a PAGA action only from *that point forward* based on the facts, theories, and Labor Code violations specifically enumerated in his PAGA notice. He cannot now reach back further in time to release different Labor Code violations, which he did not raise earlier or never raised at all. Nor can Harvey hijack Chen's PAGA notice to extend his own PAGA limitations period beyond one year to use as a bargaining chip to settle his own claims.

Shortly after this Court granted preliminary approval, the LWDA objected to a PAGA settlement as a real party in interest in a state court PAGA action, *Moniz v. Adecco*, San Mateo Superior Court No. 17CIV01736 (2019). [Humenik Decl., ¶154; Ex.17] The LWDA objected that the PAGA release was overbroad because it "purports to release 'unnoticed' and unpleaded claims for which Plaintiff Moniz has failed to comply with the [PAGA's] notice requirements, *depriving Plaintiff of the ability to settle such claims and depriving the Court of jurisdiction to dispose of*

---

[15] Harvey also cannot avail himself of a four-year UCL statute of limitations because "Labor Code penalties are generally not recoverable as a form of UCL restitution." *Noe v. Superior Court*, 237 Cal. App. 4th, 187 Cal. Rptr. 3d 836, 846 (Cal. Ct. App. 2015) (citing *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 241 P.3d 870 (Cal. 2010)).

1   *such claims.*" [*Id.*, Ex. 17 at 2:3-6 (emphasis added)]. Because "[t]he content of the PAGA notice

2   establishes the scope of a plaintiff's authority to act as the State's agent[,] [i]t is axiomatic that a

3   PAGA claimant does not have authority to proceed on civil penalty claims that were not part of his

4   or her notice to the LWDA." [Ex. 17, at 7:1-10 (citations omitted)].

5          The LWDA's position in *Moniz* – and the LWDA Proxy's objections here – are consistent

6   with PAGA's statutory scheme and precedent from the Ninth Circuit and California Supreme

7   Court. It is well-settled that an aggrieved employee must comply with Labor Code § 2699.3

8   [PAGA's notice and exhaustion requirements] *before* bringing a PAGA representative action for

9   penalties. *Arias*, 209 P.3d at 930. It is also settled that PAGA does not create assignable interests

10  that can be transferred. *Amalgamated Transit Union, Local 1756, AFL–CIO v. Superior Court*, 46

11  Cal. 4th 993, 1003, 95 Cal. Rptr. 3d 605 (Cal. 2009).  For the same reasons, the Ninth Circuit has

12  held that a PAGA plaintiff cannot rely on another aggrieved employee's PAGA notice to cure

13  defects in his own PAGA notice letter, to expand his own statutory standing, or otherwise assert

14  PAGA claims predating the PAGA period applicable to *his* suit. *Mendoza v. Nordstrom, Inc.*, 865

15  F.3d 1261, 1265 (9th Cir. 2017) (refusing to allow two PAGA representative plaintiffs, who failed

16  to prove they were aggrieved employees, to locate a substitute aggrieved employee as a

17  representative plaintiff because "[e]ven if such employees do exist, under the requirements of

18  Labor Code section 2699.3, they would have to exhaust their claims administratively before

19  bringing a PAGA action of their own."); *Estate of Harrington v. Marten Transp.*, No. 15 Civ.

20  1419, 2017 WL 5513635, at *5-7 (C.D. Cal. Nov. 6, 2017) (dismissing PAGA claim after PAGA

21  plaintiff's death and refusing to allow the substitution of new representative plaintiffs "to pick up

22  the [PAGA] torch" because doing so "would render the administrative exhaustion requirements

23  meaningless. . . . Consistent with [the *qui tam* nature of a PAGA claim], the SAC Plaintiffs cannot

24  pursue civil penalties on the State's behalf by maintaining Harrington's PAGA claim because they

25  themselves have not been deputized to do so."); *Bush v. Vaco Tech. Servs., LLC*, No. 17-cv-

26  05605-BLF, 2018 WL 2047807, at *13-14 (N.D. Cal. May 2, 2018) (rejecting argument that one

27  PAGA representative's claim tolled a PAGA plaintiff's limitations period in a separate case, and

28

1    stating that "Bush's unsupported argument that the statute of limitations should be tolled by the

2    timely filing of [another PAGA plaintiff's] claims in [another] action cannot be squared with the

3    clear legal principles underlying PAGA . . . [employer's settlement with the other PAGA plaintiff]

4    does not obviate the requirement that a representative plaintiff must timely comply with PAGA's

5    administrative requirements").

6        The analyses and holdings in *Estate of Harrington*, *Bush*, and *Mendoza* together teach that

7    PAGA's statutory framework does not permit one aggrieved employee to hijack a PAGA claim

8    initiated by another aggrieved employee or to swap PAGA representatives mid-stream. But that is

9    precisely what Harvey is attempting to do here. Allowing Harvey to piggyback on Chen's April

10   2014 PAGA notice to expand the temporal scope of his purported PAGA authority, resulting in

11   the unprecedented approval of "two PAGA periods" and simultaneously relieving him of his

12   statutory duty to exhaust PAGA remedies timely, contravenes Labor Code § 2699.3 (and Article

13   III standing). *See Stoddart v. Express Servs., Inc.*, No. 12 Civ. 1054, 2019 WL 414489, at *6-7

14   (E.D. Cal. Feb. 1, 2019) (denying class/PAGA settlement approval because, *inter alia*, PAGA

15   exhaustion requirements were unmet).

16       D.    <u>The PAGA Portion of the Settlement Is Inadequate and Does Not Serve</u>

17             <u>PAGA's Law Enforcement Objectives</u>

18       While PAGA penalties do not inure entirely to the benefit of the class, the full amount of

19   the awardable penalties must be considered to establish the fairness of the settlement to the State.

20   *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133-34 (N.D. Cal. 2016). But without an

21   accurate valuation of all civil penalty claims purportedly being released, the Court cannot

22   discharge its duty to determine whether the PAGA portion is fair, reasonable, or adequate. *See*

23   *Kullar v. Foot Locker Retail, Inc.*, 168 Cal. App. 4th 116, 85 Cal. Rptr. 3d 20, 34 (Cal. Ct. App.

24   2008); *Murray v. Scelzi Enters., Inc.*, No. 18 Civ. 1492, 2019 WL 6045146, at *13 (E.D.Cal. Nov.

25   15, 2019) (adopting *O'Connor* factors in evaluating PAGA settlement according to whether the

26   settlement terms "(1) meet the statutory requirements set forth by PAGA and (2) are fundamentally

27   fair, reasonable, and adequate in view of PAGA's public policy goals" and concluding: "The

28

OBJECTIONS OF TRACY CHEN TO PAGA SETTLEMENT; MEMORANDUM IN SUPPORT
CASE NO. 18-cv-02835-WHO

1   failure to explain why the PAGA penalties were not considered in the calculation of the total value

2   of the suit and the overly-excessive discounts on those penalties prevents the undersigned from

3   any 'real evaluation of the reasonableness of this settlement.'") (quoting *Gonzalez v. Corecivic of*

4   *Tenn, LLC*, No. 16 Civ. 1891, 2018 WL 4388425, at *9 (E.D. Cal. Sep. 13, 2018))

5          **1.      Harvey Significantly Undervalues Morgan Stanley's PAGA Exposure**

6          In his preliminary approval motion, Harvey suggested that the settlement value assumed

7   the PAGA claims to be worthless. Specifically, in his motion, he valued total exposure at $155

8   million based only on non-PAGA damages, without any analysis of PAGA claim value. When

9   Chen pointed this out in her opposition amicus, [ECF No. 52 at 18-19], Harvey replied with a

10  grossly depressed PAGA exposure total of only $15.44 million, such that the $600,000 PAGA

11  portion of the settlement "is 3.8% of Morgan Stanley's PAGA exposure." [ECF No. 58, at 13:13-

12  16] There are several flaws and omissions in Harvey's penalty estimate. Morgan Stanley's PAGA

13  penalty exposure is $216.5 million to $344.3 million (depending on methodology applied).

14  [Humenik Decl. ¶¶ 71, 84] The $600,000 PAGA settlement is only 0.1% to 0.2% of that exposure,

15  an "an overly-aggressive discounting" which is fatal to the deal. *Murray*, at *13 (maximum PAGA

16  penalties made up 30% of the verdict value of the case, "[y]et Plaintiff proposes settling the PAGA

17  claim for ***1.1 percent*** of its estimated full worth.") (emphasis by the court).

18          **a.      Harvey did not properly calculate Morgan Stanley's exposure**

19                  **for each of the civil penalty claims being released.**

20         Harvey's penalty calculation is grossly understated. Besides basing his entire penalty

21  exposure calculation on just 1 of the 11 Labor Code violations at issue and only applying PAGA's

22  default $100 penalty rate to that single violation, he inexplicably fails to account for the

23  heightened civil penalties authorized under PAGA pursuant to Labor Code § 225.5 (for the Labor

24  Code § 221 violations for improper wage deductions), § 210 (for the Labor Code § 204 violations

25  for untimely pay during employment), or § 226 (for the inaccurate wage statement violations).

26         The civil penalties available under Labor Code § 225.5 (for the alleged § 221 violations for

27  improper wage deductions) and Labor Code § 210 (for the alleged § 204 violations for untimely

28

1    pay during employment) include a substantial underpaid wage component, totaling $200 for each

2    subsequent violation (or any intentional or willful one) *plus* 25% of the amounts wrongfully

3    withheld. *ZB, NA, Inc. v. Superior Court*, 448 P.3d 239, 249 (Cal. 2019). During the expanded

4    PAGA period, the total amount of AFG contributions made by FAs conservatively totaled at least

5    ███████, with 25% of the wrongfully withheld amounts totaling approximately ███████.

6    [Humenik Decl. ¶ 50] Thus, when the heightened $200 penalty rate *plus* the underpaid wage

7    penalty component are properly considered and applied, Morgan Stanley's penalty exposure

8    increases by $75 million, a five-fold increase.[16]

9        Harvey also improperly claims that Morgan Stanley's PAGA liability for inaccurate wage

10   statements, Labor Code section 226, is wholly derivative of its violations of section 2802.  This is

11   inaccurate because there are other errors with Morgan Stanley's wage statements.  Sullivan Decl.

12   ¶48. But even if Morgan Stanley's wage statement violations are considered derivative, Morgan

13   Stanley's liability for those wage statement violations trigger a $250 per pay period penalty rate

14   under Labor Code section 226, not the $100 default PAGA penalty rate under Labor Code section

15   2699.  *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1072-73, 1109 (N.D. Cal. 2019)

16   (applying $250 penalty rate for wage statement violations in a PAGA case); *Raines v. Coastal*

17   *Pac. Foods Distribs. Inc.*, 23 Cal. App. 5th 667, 234 Cal. Rptr. 3d 1, 6 (Cal. Ct. App. 2018) (same).

18       Compounding his mistake, Harvey used only a single monthly pay period in calculating

19   Morgan Stanley's civil penalty exposure under PAGA. Yet, the class notice indicates that each

20   class member's and aggrieved employee's settlement payment will be based on the number of

21   *semimonthly* pay periods worked.  Thus, Harvey's penalty exposure estimate is understated by at

22   least a factor of two based on the number of pay periods alone. Using semimonthly pay periods (as

23   set forth in the class notice) and the minimum $250 penalty rate for inaccurate wage statements,

24

[16] Because Harvey did not engage in meaningful discovery before settling these penalty claims, his
25   after-the-fact justification for discounting them because they supposedly "have no value because
an award requires a finding of willfulness" or "[a] good faith dispute will preclude a finding of
26   willfulness" is entitled to no weight. [ECF No. 58, 9:8-11] This is especially so on the late final
payment claims, given the *Chen* plaintiffs discovery of smoking gun evidence that Morgan
27   Stanley's HR Department was fully aware of the firm's illegal payment practices under California
law and continued them nonetheless. ECF No. 52-1, Sullivan Decl. ¶¶ 44, 46; Ex. 14.
28

1   Morgan Stanley's PAGA exposure for the inaccurate wage statement violations alone is at least

2   $79.29 million, another five-fold increase in exposure.

3                    b.        **Harvey improperly assigned zero penalty value to many of the**

4                              **Labor Code violations being released.**

5            Harvey did not assign any penalty exposure value to the State's PAGA claim covering

6   Labor Code violations for untimely pay at termination (Cal. Labor Code § 201, § 202, and §

7   203),[17] untimely pay during employment (Labor Code § 204), illegal wage deductions (Labor

8   Code § 221), inaccurate wage statements (Cal. Labor Code § 226),[18] or employee bond law

9   violations (Labor Code §§ 400 through 410). But if these Labor Code violations did not present

10  any penalty exposure at all and/or Harvey did not intent to litigate them, they are not properly

11  included in the PAGA release. Harvey's failure to provide a foundational showing regarding *each*

12  of the penalty claims being released defeats approval. *See* Procedural Guidelines for Class Action

13  Settlements, ¶ 1(e); *Kullar*, 85 Cal. Rptr. 3d at 34; cf. *Haralson v. U.S. Aviation Servs. Corp.*, 383

14  F. Supp. 3d 959, 967-68 (N.D.Cal. 2019) (noting that "a number of district courts within this

15  circuit have rejected attempts by plaintiffs moving for approval of a Rule 23 settlement to amend

16  their complaints to add previously un-litigated FLSA claims," noting the "red flag" of plaintiff's

17  apparent agreement to settle a claim he never intended to litigate, and insisting that the plaintiff

18  "explain why those cases are wrongly decided or distinguishable." (denying motion for

19  preliminary approval of class action settlement).

20

21  [17] While Harvey appears to treat the *Chen* claims under California Labor Code sections 201 and
    202 (newly added in the SAC) as completely derivative of the AFG-related claims, as if Morgan
22  Stanley fails to pay final wages timely only to the extent it withholds AFG deductions, this is
    incorrect. The *Chen* plaintiffs' discovery reveals that Morgan Stanley systemically failed to pay
23  final wages irrespective of AFG. Chen received her final salary three days after she was fired, her
    deferred compensation nine days later, and her final commissions two months later.  Sullivan Decl.
24  ¶ 30; *see also id.* ¶ 44 & Ex. 14.

25  [18] Harvey now appears to treat Morgan Stanley's pay stub violations as entirely derivative of the
    AFG-related claims. Yet, his PAGA notice indicates the pay stub penalty claims are derivative of
26  his abandoned misclassification theory penalty claim. Regardless, had Harvey investigated this
    claim, he would have discovered that Morgan Stanley's pay stub violations are numerous and
27  systemic, only partially derivative of the AFG violations, and support enormous penalties. Sullivan
    Decl. ¶ 49.

28

23

1       Moreover, the gross amount of the PAGA settlement is not what matters; rather, the

2  question is how much these particular PAGA claims are worth. As the LWDA emphasizes, "it

3  should not be material to the court's determination how the penalty amounts compare to amounts

4  awarded in other cases with dissimilar facts." [Humenik Decl. ¶ 75 & Ex. 47 (LWDA amicus)]

5  Harvey should not be permitted to release civil penalty claims on the State's behalf that he valued

6  at zero or never investigated, especially when the true value of the penalty claims totals at least

7  $216 million.  Courts routinely reject settlements for similar arbitrariness or lack of transparency.

8  *See O'Connor*, 201 F. Supp. 3d at 1133; *Cotter v. Lyft, Inc.* 176 F. Supp. 3d 930, 936 (N.D. Cal.

9  2016); *Gonzalez v. CoreCivic of Tenn.*, No. 1:16-cv-01891-DAD-JLT, 2018 WL 4388425, at *7-9

10  (E.D. Cal. Sept. 13, 2018); *Murray v. Scelzi Enters., Inc.*, No. 18 Civ. 1492, 2019 WL 6045146, at

11  *13 (E.D.Cal. Nov. 15, 2019). Here, the PAGA allocation does not withstand scrutiny.

12       Harvey claims that Morgan Stanley's penalty exposure should be significantly discounted

13  because Cal. Lab. Code § 2699(e)(2) grants courts discretion to adjust a penalty award where

14  imposing the maximum civil PAGA penalty would be "unjust, arbitrary and oppressive, or

15  confiscatory." [ECF No. 58-2, at 15:6-14] However, courts must exercise discretion consistent

16  with PAGA's underlying worker protection purposes. Morgan Stanley has long been on notice that

17  its expense reimbursement policies, and AFG program in particular, violate California law (*see*

18  *Garett*, *Steinberg*, and *Brecher*) and that its "business as usual" payments of final commissions are

19  likely unlawful, *see Pugel v. Morgan Stanley*, 221 F. App'x 683, 687 (9th Cir. 2007).

20       Morgan Stanley has benefited significantly in cost savings and tax benefits in passing its

21  business expenses onto the aggrieved employees – nearly $240 million since the *Chen* plaintiffs'

22  claims accrued and counting (nearly thirty times more than the cash portion of the proposed

23  settlement). This is especially relevant because a court must consider deterrence when reviewing

24  the fairness of a PAGA settlement. *See O'Connor*, 201 F. Supp. 3d at 1134-35. Here, where the

25  monetary settlement is a fraction of the verdict value and a fraction of Morgan Stanley's benefit in

26  perpetuating its policies, and the settlement does nothing to clarify the lawfulness of Morgan

27

28

1    Stanley's expense reimbursement policies, the settlement does not achieve PAGA's policies and

2    purposes. It serves no public purpose at all.

3         **2.    The _Harvey_ Settlement Contains Fatal Flaws and Is Contrary to**

4              **PAGA's Statutory Law Enforcement Objectives.**

5         Harvey's settlement is severely flawed in other ways as well. First, the agreement broadly

6    releases Chen's bootstrapped claims to include all claims "based on any alleged _unlawful wage_

7    _deductions_, failure to pay wages, _cash bond or violations of the California Employee Bond Law_,

8    untimely final or other pay, inaccurate itemized wage statements or records, failure to reimburse or

9    indemnify all necessary business expenses . . . _during the PAGA Period_." [_Harvey_ Agreement ¶

10   35] The italicized terms would waive PAGA claims that Harvey never exhausted, were not

11   identified in his May 2018 PAGA notice and which extend beyond his one-year limitations period.

12        Second, in order to sweep up certain portions of _Chen_ that Harvey was not litigating

13   (untimely final pay at termination under Labor Code sections 201, 202, and 203, as well as

14   untimely pay during employment, Labor Code section 204) or which he had not exhausted

15   (improper wage deductions, Labor Code section 221), Harvey agreed to file a SAC to encompass

16   those allegations and Labor Code violations. [_Id._ ¶ 60] When the settlement "release[s] claims

17   based on different facts than those alleged in the litigation at issue," it should not be approved.

18   _Chavez v. PVH Corp._, No. 13-CV-01797-LHK, 2015 WL 581382, at *5 (N.D. Cal. Feb. 11, 2015)

19   (collecting cases).

20        Third, the settlement improperly includes a release from the LWDA and absent aggrieved

21   employees. [_Harvey_ Agreement ¶ 63] It intentionally misstates the scope of Harvey's authority to

22   serve as the LWDA's proxy and purports to bind the LWDA and Aggrieved Employees to the _ultra_

23   _vires_ settlement and judgment. [_Id._]

24        Fourth, Harvey (at Morgan Stanley's insistence) even seeks the Court's blessing of their

25   agreement to undermine the _Chen_ case, calling for an improper advisory opinion regarding the

26   settlement's potential _res judicata_ impact: "The Final Approval Order and Judgment _shall have the_

27   _effect of binding all Aggrieved Employees and State of California labor law enforcement agencies_

28

1   pursuant to *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009)." [*Id.* (emphasis added)] An

2   advisory opinion would be ineffective – the law is settled that the court entering a litigated

3   judgment in a class action does not determine the preclusive effects of that judgment.[19] But the

4   parties' agreement to ask for one raises another red flag of collusion.

5           Fifth, the settlement attempts to prevent the LWDA and Aggrieved Employees, including

6   Chen, from challenging its terms in state court via an exclusive jurisdiction provision.  *Id.* ¶ 91.

7           Sixth, in tacit recognition of the unprecedented scope of the "PAGA Period" claimed by

8   *Harvey*, the settlement agreement contains an escape "voiding" hatch, **solely for Morgan**

9   **Stanley's benefit**, if "the scope of the PAGA Released Claims is either narrowed or not approved

10  at final approval." *Id.* ¶ 85(1).

11          Seventh, harking back to the settlement's suspicious reverse auction origins, the Harvey

12  parties agreed to bilateral "clear sailing" provisions. Harvey agreed not to "submit written

13  objections to the Settlement, to request exclusion or *to appeal* from the Court's Final Approval

14  Order and Judgment." [*Id.* ¶ 99]  In exchange, Morgan Stanley agreed not to challenge any fee

15  award to Harvey's counsel or any incentive award for Harvey.[20]

16  **IV.    CONCLUSION**

17          Final approval should be denied to protect the rights of absent aggrieved employees, the

18  State's interest in civil penalties, and the public policy underlying PAGA's role in augmenting the

19  State's law enforcement capacity in this case of first impression.

20

21  [19] *See, e.g.*, *Smith v. Bayer Corp.* 564 U.S. 299, 305 (2011) ("[D]eciding whether and how prior
    litigation has preclusive effect is usually the bailiwick of the *second* court…."); *Midway Motor*
22  *Lodge v. Innkeepers' Telemanagement & Equip. Corp.*, 54 F.3d 406, 409 (7th Cir. 1995) ("In the
    law of preclusion . . . the court rendering the first judgment does not get to determine that
23  judgment's effect; the second court is entitled to make its own decision."); *Gagliardi v. Am. Home*
    *Prods. Corp.*, 29 F.Supp.2d 972, 974-75 (E.D. Wis. 1998) (federal court issuing judgment lacks
24  jurisdiction to determine preclusive effect in second proceeding because it would constitute an
    impermissible advisory opinion).
25
    [20] An open question remains whether Morgan Stanley also agreed to drop its FINRA arbitration
26  against Harvey. At final approval, Harvey and Morgan Stanley should be required to divulge the
    status of Morgan Stanley's FINRA's claim against Harvey, including whether Morgan Stanley
27  agreed to waive or dismiss its claims in FINRA arbitration surrounding Harvey's departure from
    the firm.
28
                                                        26

1    Dated: December 5, 2019                          Respectfully submitted,

2                                                      By:   _/s/ Mark F. Humenik_
                                                            Mark F. Humenik
3

4    Jahan C. Sagafi (Cal. Bar No. 224887)            Mark Humenik (Cal. Bar No. 231917)
     Relic Sun (Cal. Bar No. 306701)                  HABER POLK KABAT
5    OUTTEN & GOLDEN LLP                               423 South Estate Drive
     One California Street, 12th Floor                 Orange, CA 92869
6    San Francisco, CA 94111                           Telephone: (949) 636-5754
     Telephone: (415) 638-8800                         Facsimile: (216) 241-0739
7    Facsimile: (415) 638-8810                         Email: mhumenik@haberpolk.com
8    Email: jsagafi@outtengolden.com
     Email: rsun@outtengolden.com
9                                                      Laura Sullivan (Cal. Bar No. 220529)
                                                       LAW OFFICE OF LAURA SULLIVAN
10   Michael J. Scimone (*pro hac vice*)               423 South Estate Drive
     Christopher M. McNerney (*pro hac vice*)          Orange, CA 92869
11   OUTTEN & GOLDEN LLP                               Telephone: (714) 744-1522
     685 Third Avenue, 25th Floor                      Facsimile: (714) 744-1524
12   New York, NY 10017                                Email: laurasullivan@laurasullivanlaw.com
     Telephone: (212) 245-1000
13   Facsimile: (646) 509-2060
     Email: mscimone@outtengolden.com                 Pooja Shethji (*pro hac vice*)
14   Email: cmcnerney@outtengolden.com                OUTTEN & GOLDEN LLP
                                                       601 Massachusetts Avenue NW, Suite 200W
15                                                     Washington, D.C. 20001
                                                       Telephone: (202) 847-4400
16                                                     Facsimile: (202) 847-4410
                                                       Email: pshethji@outtengolden.com
17
                                                       *Attorneys for Objector Tracy Chen*
18

19

20

21

22

23

24

25

26

27

28
                                            27