EDWARD J. WYNNE (165819)
ewynne@wynnelawfirm.com
WYNNE LAW FIRM
Wood Island
80 E. Sir Francis Drake Boulevard, Suite 3G
Larkspur, CA 94939
Telephone:    (415) 461-6400
Facsimile:    (415) 461-3900

DAVID S. MARKUN (108067)
dmarkun@mzclaw.com
JEFFREY K. COMPTON (142969)
jcompton@mzclaw.com
MARKUN ZUSMAN FRENIERE &
COMPTON LLP
17383 Sunset Boulevard, Suite A380
Pacific Palisades, CA 90272
Telephone:    (310) 454-5900
Facsimile:    (310) 454-5970

JAMES F. CLAPP (145814)
jclapp@clapplegal.com
MARITA MURPHY LAUINGER (199242)
mlauinger@clapplegal.com
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, California 92011
Telephone:    (760) 209-6565 ext. 101
Facsimile:    (760) 209-6565

Class Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| BRANDON HARVEY, individually and on behalf of all others similarly situated,<br>Plaintiff,<br><br>v.<br><br>MORGAN STANLEY SMITH BARNEY LLC,<br>Defendant. | Case No. 3:18-cv-02835 WHO<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:  Hon. William H. Orrick<br>Date:    February 5, 2020<br>Time:   2:00 p.m.<br>Courtroom:  Courtroom 2, 17th Floor |

## <u>NOTICE OF MOTION AND MOTION</u>

TO THE COURT AND ALL INTERESTED PARTIES:

PLEASE TAKE NOTICE THAT on February 5, 2020 at 2:00 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Hon. William H. Orrick, United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California, in Courtroom 2, 17th Floor, Plaintiff Brandon Harvey will and hereby does respectfully move the court for final approval of the proposed class action and PAGA settlement. Specifically, Plaintiff respectfully requests that the Court (1) grant final approval for the proposed Rule 23 class action and PAGA settlement adjudging the terms of the settlement to be fair reasonable and adequate and directing that its terms and provisions be carried out; (2) approve the payment of a service enhancement to the named plaintiff; (3) approve payment of class counsels' fees and costs; and, (4) approve the settlement administrator's payment.

Plaintiff makes this motion on the grounds that the proposed settlement is fair reasonable and adequate. This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Edward J. Wynne, the Declaration of Zachery Cooley for the Settlement Administrator KCC, Inc., oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

Dated: December 31, 2019                                    WYNNE LAW FIRM


                                                            */s/Edward J. Wynne*
                                                            Edward J. Wynne
                                                            Class Counsel

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ............................................................................................ i

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................... 1

INTRODUCTION ........................................................................................................................... 1

PROCEDURAL STATEMENT ....................................................................................................... 2

    A.    Litigation Through Preliminary Approval ................................................... 2

    B.    Settlement Administration ............................................................................ 5

SUMMARY OF SETTLEMENT TERMS ...................................................................................... 8

    A.    Settlement Fund ........................................................................................... 8

    B.    Class Definition and Aggrieved Employees ............................................... 9

    C.    Class Representatives and Class Counsel .................................................... 9

    D.    Plan of Allocation ...................................................................................... 10

        1.    Payments to Class Members: .......................................................... 10

        2.    Named Plaintiff Award: .................................................................. 10

        3.    Class Counsels' Fees and Costs: ..................................................... 10

        4.    LWDA Payment .............................................................................. 10

        5.    Settlement Administrator: ............................................................... 10

STANDARDS FOR FINAL APPROVAL ..................................................................................... 11

    A.    The Settlement is Entitled to a Presumption of Fairness ......................... 11

        1.    The Settlement was Reached Through Arm's-Length Negotiations ........ 11

        2.    Substantial Investigation has Been Completed ......................................... 11

        3.    Class Counsel is Experienced and Endorses the Settlement .................... 12

        4.    There Are No Objections to the Settlement Other Than Lucadano ......... 12

    B.    The Risk and Expense of Further Litigation ............................................. 13

    C.    The Amount Offered in Settlement ........................................................... 16

CONCLUSION ............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Federal Cases**

*Aguilar v. Zep,*
      2014 WL 4245988 (N.D. Cal. Aug. 27, 2014)................................................................14

*Alvarez v. Farmers Ins. Exch.,*
      No. 3:14-CV-00574-WHO, 2017 WL 2672710 (N.D. Cal. Jan. 17, 2017) ....................19

*Bautista v. Harvest Mgmt. Sub LLC,*
      No. CV1210004FMOCWX, 2014 WL 12579822 (C.D. Cal. July 14, 2014)..................19

*Blandino v. MCM Constr.,*
       No. C 12-1729 WHO, 2014 WL 11369763 (N.D. Cal. Mar. 6, 2014) ...........................19

*Boyd v. Bechtel Corp.,*
      485 F.Supp. 610 (N.D. Cal. 1979) .....................................................................11, 12, 16

*Brecher v. Citigroup Global Markets,*
      S.D. Cal. Case 09-cv-1344 ................................................................................................18

*Buchanan v. HomeServices Lending, LLC,*
      2013 WL 1788579 (S.D. Cal. Apr. 25, 2013) ..................................................................15

*Class Plaintiffs v. Seattle,*
      955 F.2d 1268 (9th Cir. 1992)...........................................................................................11

*Drake v. Morgan Stanley & Co.,*
      2010 WL 2175819 (C.D. Cal. Apr. 30, 2010) ..................................................................15

*Ellis v. Naval Air Rework Facility,*
      87 F.R.D. 15, 18 (N.D. Cal. 1980) aff'd., 661 F. 2d 939 (9th Cir. 1981) .................11, 12

*Fisher Bros. v. Cambridge-Lee Industries,*
      630 F.Supp. 482 (E.D. Pa. 1985) ......................................................................................12

*Garett v. Morgan Stanley & Co.,*
      S.D. Cal. Case No. 04-cv-1858 .........................................................................................18

*Hanlon v. Chrysler Corp.,*
      150 F.3d 1011 (9th Cir. 1998).............................................................................................11

*Hein v. PNC Fin. Servs. Group,*
       511 F.Supp.2d 563 (E.D. Pa. 2007) ..................................................................................18

*Hibbs-Rines v. Seagate Techs., LLC,*
      2009 WL 513496 (N.D. Cal. Mar. 2, 2009)......................................................................16

*Hopson v. Hanesbrands,*
      CV 08-0844 EDL, 2008 WL 3385452 (S.D. Cal. Apr. 13, 2009) ...................................19

*In re General Motors Corp.,*
      55 F.3d 768 (3rd Cir.1995) ...............................................................................................16

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*In re Heritage Bond Litigation*,
 2005 WL 1594403 ...................................................................................................... 11

*In re M.L. Stern Overtime Litig.*,
 No. CV 07-0118 BTM (JMAx), 2009 WL 995864 (S.D. Cal. Apr. 13, 2009) ................ 19

*In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*,
 2014 WL 2101904 (D.N.J. May 20, 2014) ................................................................... 14

*In re RBC Dain Rauscher Overtime Litig.*,
 703 F.Supp.2d 910 (D. Minn. 2010) ............................................................................ 15

*In re Warner Communications Sec. Litig.*,
 618 F. Supp. 735, 741 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986) .................... 11

*Joel A. v. Giuliani*,
 218 F.3d 132 (2d Cir. 2000) ........................................................................................ 11

*Novak v. The Boeing Company*,
 2011 WL 9160940 (C.D. Cal. Jul. 20, 2011) ............................................................... 14

*Officers for Justice v. Civil Service Com.*,
 688 F.2d 615, 625 (9th Cir. 1982) .......................................................................... 11, 13

*Torres v. Wells Fargo*,
 2016 WL 7373856 (C.D. Cal. Oct. 12, 2016) ............................................................... 14

*Tsyn v. Wells Fargo*,
 N.D. Cal. Case 14-cv-02552-LB ....................................................................... 17, 18, 19

U.S. Dept. of Labor, Wage & Hour Div.,
 Opinion Letter FLSA2006-43, 2006 WL 3832994 (Nov. 26, 2006) .............................. 18

*Villalobos v. Calandri Sonrise Farm LP*,
 No. CV 2122615 PSG (JEMx), 2015 WL 12777959, (C.D. Cal. Dec. 4, 2015 .............. 19

**State Cases**

*Dunk v. Ford Motor Company*,
 48 Cal.App.4th 1794 (1996 ...................................................................................... 11, 13

*Duran v. U.S. Bank N.A.*,
 59 Cal.4th 1 (2014), ................................................................................................... 16

*Koehl v. Verio*,
 142 Cal.App.4th 1313 (2006) ................................................................................... 14, 18

*Litty v. Merrill Lynch & Co.*,
 L.A. Sup. Ct. Case No. BC582127 .............................................................................. 18

*Nordstrom Comm'n Cases*,
 186 Cal.App.4th 576, 589 (2010) ................................................................................ 20

*Prachasaisoradej v. Ralphs Grocery Co.*,
 42 Cal.4th 217 (2009) ................................................................................................. 14

*Rope v. Auto–Chlor Sys. of Wash.,*
   220 Cal. App. 4th 635 (2013)......................................................................................15

*Schachter v. Citigroup,*
   47 Cal.4th 610 (2009) ................................................................................................14

**Statutes, Rules & Regulations**

26 U.S.C.,
   § 162 (a) ....................................................................................................................13

28 U.S.C.,
   § 1715.........................................................................................................................5

Federal Rules of Civil Procedure,
   Rule 23 ..............................................................................................................passim

Federal Rules of Civil Procedure,
   Rule 26(f) ...................................................................................................................2

Labor Code,
   § 221-224 ............................................................................................................18, 19

Labor Code,
   § 2698........................................................................................................................2

Labor Code,
   § 2699...................................................................................................................9, 10

Labor Code,
   § 2802..................................................................................................13, 15, 17, 18

3:18-cv-02835 WHO

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiff Brandon Harvey ("Plaintiff") seeks final approval of this $10,235,000 non-reversionary settlement between Plaintiff and Defendant Morgan Stanley Smith Barney, LCC ("Defendant" or "MSSB"). The proposed settlement before this Court will dispose of this case.

On September 6, 2019, the Court granted preliminary approval of this settlement. (Dkt. 76.) The Preliminary Approval Order appointed KCC, Inc. ("KCC" or "Settlement Administrator") as the Settlement Administrator and approved the Class Notice. Plaintiff hereby reports that the Notice was mailed by the Settlement Administrator to all 3,297 members of both the certified class and aggrieved employees. The Settlement Administrator also created a website for class members and aggrieved employees to read a description of the case, see the Notice, download important documents, see important dates, make address changes, and contact Plaintiff's counsel.

Class members had until December 5, 2019 to object, opt-out, or challenge their award. Aside from the expected objections from Tracy Chen and Matthew Lucadano ("Attempted Intervenors"), as of this writing, no one has objected to the settlement and just seven (7) class members, representing just .002% of the class, have opted out.[1] (Declaration of Settlement Administrator Zachary Cooley of KCC re Notice Procedures ¶¶ 10-11.) After deductions for the future payment of business expenses, attorneys' fees and costs, named plaintiff award, payment to the LWDA, and costs of administration, Rule 23 class members can expect to receive on average $1,940.47 with the smallest recovery being $22.42 and the highest recovery being $2,892.61. (Cooley Decl., ¶ 12.) These amounts do not include the additional Tier 1 or Tier 2 PAGA payments for aggrieved employees. (*Id*.) Plaintiff will submit a supplemental report from the Settlement Administrator prior to the Final Approval hearing to the extent there

---

[1] Chen is not a Rule 23 class member but is an aggrieved employee covered by the PAGA settlement. Per this Court's order, aggrieved employees covered by the PAGA settlement are not permitted to either object or opt-out of the settlement. (Dkt. 76.) Notwithstanding the Court's order, Chen filed an improper objection to the PAGA settlement. (Dkt. 93.) Along with this motion, Plaintiff has filed a motion to strike Chen's objection. (Dkt. 104.)

1   are any updates to the Administrator's report filed with this Motion.

2   Plaintiff respectfully submits that the favorable reaction of Class Members to the

3   Settlement supports a finding that the settlement is fair, reasonable and adequate.[2] As

4   discussed more fully below, the proposed Settlement provides substantial economic benefits

5   and is in the best interests of the class and aggrieved employees. Plaintiff requests that the

6   Court should grant final approval to the Settlement and authorize the parties to proceed with

7   payment to the class members and aggrieved employees.

8   **PROCEDURAL STATEMENT**

9   **A.     Litigation Through Preliminary Approval**

10   On May 14, 2018, Plaintiff Brandon Harvey filed this action in the Northern District of

11   California alleging various wage-related claims against MSSB. Plaintiff filed his First

12   Amended Complaint on July 12, 2018. The lawsuit was styled as a class action on behalf of

13   California Financial Advisors under Fed.R.Civ.P. 23 and a representative action under the

14   Labor Code Private Attorneys General Act of 2004 ("PAGA"), Labor Code § 2698, *et seq*.

15   MSSB answered the First Amended Complaint on August 30, 2018.

16   Soon after the initial filing, Plaintiff engaged in extensive informal discovery. As a

17   result of Plaintiff's informal discovery efforts, Plaintiff was able to gather evidence in order to

18   prosecute the action. In total, Plaintiff's counsel interviewed more than twenty Financial

19   Advisors ("FAs") about their potential claims. (Declaration of Edward J. Wynne in Support of

20   Motion for Final Approval, ¶ 13.)

21   As required by Rule 26(f) and this Court's May 25, 2018 Case Management

22   Conference Order (Dkt. 10), on August 3, 2018, the parties met and conferred in preparation

23   for the upcoming Initial Case Management Conference. On August 28, 2018, the parties filed

24   an ADR stipulation selecting private mediation, which the Court approved and ordered on

25   August 30. (Dkt. Nos. 20 and 22.) Following the Initial Case Management Conference on

26   September 18, 2018 (Dkt. 26), the parties exchanged substantial amounts of information,

27
28   ---
[2] Plaintiff will be addressing Attempted Intervenors' objections in a subsequent separate
pleading.

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

including thousands of pages of documents, data, and information. On September 7, 2018, MSSB served its initial disclosures. On September 17, 2018, Plaintiff served his initial disclosures, along with a production of documents. On September 20, 2018, Plaintiff propounded his first set of interrogatories and requests for production of documents on MSSB. Plaintiff continued to conduct discovery focused on MSSB's policies and practices related to business expenses, compensation, and payroll and deductions. MSSB produced nearly 2,000 pages of documents between October and November 2018.  (Decl. of Wynne, ¶ 19.)

In preparation for the mediation and in response to discovery that Plaintiff had served on MSSB, MSSB produced a number of documents necessary to evaluate Plaintiff's claims and MSSB's defenses such as: all versions of the Financial Advisor Compensation Plan, all versions of MSSB's Alternative Flexible Grid ("AFG") Program, all versions of MSSB's AFG Process, all versions of MSSB's Expense Policy, all policies and procedures related to Financial Advisor compensation and adjustments made to compensation, and the Plaintiff's entire personnel and payroll file. In addition, MSSB provided critical data on the number of Financial Advisors covered by Plaintiff's case, the total amount allocated to AFG broken down by category of expense and by year, and the number of Financial Advisors covered by arbitration agreements and whether they were current versus former. (Decl. of Wynne, ¶ 21.)

The parties also engaged in informal discovery to assist the mediation process. In preparation for the mediations, MSSB provided data relevant to Plaintiff's claims, specifically:

- Estimated number of putative class members, for both active and former FAs
- Estimated number of workweeks for both active and former FAs
- Estimated number of workweeks for both active and former FAs
- Estimated number of pay periods, for both active and former FAs
- Estimated gross number of expenses allocated by FAs
- Gross expenses allocated to AFG by category (including travel and entertainment, registration, promotion marketing, website services, remote access, research and supplemental support staff compensation)
- Gross expenses allocated to the Business Development Allowance ("BDA" – an

award by MSSB for marketing expenses) by category

- Estimated unspent AFG at termination
- Estimated unspent AFG at year-end
- Estimated PAGA pay periods
- Estimated claimed amount of expenses by FAs
- Estimated amount of expenses not approved but requested by FAs
- Estimated FAs with grid-rate reductions and gross amounts of reduction (Decl. of Wynne, ¶ 23.)

The parties participated in an arm's-length mediation with Tripper Ortman on November 8, 2018. The parties were unable to reach an agreement but met again on November 19, 2018, at which point they still were unable to reach resolution. On November 21, 2018, the parties orally reached an agreement to resolve the claims asserted in *Harvey*. In doing so, the parties agreed that before they submitted any request for preliminary approval to this Court, the parties would approach plaintiff's counsel in *Chen v. Morgan Stanley Smith Barney* (Orange County Superior Court Case No. 30-2014-00724866-CU-OE-CXC) and attempt to reach an agreement with Chen's counsel that would provide a global resolution of *Harvey* and *Chen*. (Decl. of Wynne, ¶ 24.)

On January 18, 2019, in an attempt to reach a global settlement with the *Chen* Plaintiffs, Plaintiff Harvey, MSSB, and the *Chen* Plaintiffs attended a joint mediation with both Mark Rudy, the original mediator in *Chen*, and Mr. Ortman, who mediated the settlement in this case. Unfortunately, that mediation was unsuccessful. (Decl. of Wynne, ¶ 25.)

On January 23, 2019, the *Chen* plaintiffs filed a motion to intervene in this action. (Dkt. 28.) Plaintiff and Defendant opposed the motion. (Dkt. Nos. 36 and 37.) The Court heard the motion on February 27, 2019. The Court allowed the *Chen* plaintiffs to file an amicus brief in response to Plaintiff's motion for preliminary approval and deferred ruling on the motion to intervene until such time as preliminary approval was determined. (Dkt. 41.)

After the hearing, Plaintiff, Defendant and the *Chen* plaintiffs engaged in further global settlement discussions through mediator Tripper Ortman. Those discussions spanned several

1   weeks but ultimately were not successful. (Decl. of Wynne, ¶ 26.)

2       Plaintiff's Motion for Preliminary Approval was heard on June 12, 2019. The motion

3   was contested by Attempted Intervenors. (Dkt. 66.) Pursuant to Court order, Class Counsel

4   filed a supplemental declaration setting forth Counsels' lodestar, history of engagements with

5   the proposed settlement administrator, and relationship, if any, with any *cy pres* beneficiary.

6   (Dkt. 69.)

7       On June 20, 2019, Attempted Intervenors filed an administrative motion seeking to

8   amend the class notice. (Dkt. 72.) On June 24, 2019, Plaintiff and Defendant both opposed the

9   motion. (Dkt. Nos. 73 and 74.)

10      On September 5, 2019, the Court issued its order granting preliminary approval. (Dkt.

11  76.) Also on September 5, 2019, the Court issued its order denying Attempted Intervenors'

12  administrative motion, granting motion to seal, and denying intervention. (Dkt. 77.)

13      On October 1, 2019, Attempted Intervenors filed a notice of appeal of the Court's order

14  denying intervention. (Dkt. 78.)

15      On November 14, 2019, Class Counsel filed their motion for attorneys' fees and costs

16  and class representative enhancement award. (Dkt. 84). Also on November 14, 2014,

17  Attempted Intervenors filed a renewed motion to intervene as well as their own motion for

18  attorneys' fees, costs, and service awards. (Dkt. Nos. 85 and 86, respectively.)

19      On December 5, 2019, Lucadano filed an objection to the proposed settlement. (Dkt.

20  92.) The same date, Chen filed an improper and unauthorized objection to the PAGA

21  settlement. (Dkt. 93.)

22      On December 18, 2019, Class Counsel filed their opposition to Attempted Intervenors'

23  motion for attorney fees and motion to intervene. (Dkt. Nos. 99 and 100.) MSSB also opposed

24  Attempted Intervenors' motion for attorneys' fees and motion for intervention. (Dkt. 103.)

25  **B.    Settlement Administration**

26      In compliance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. Section 1715,

27  KCC compiled a CD-ROM containing the following documents: *Class Action Complaint;*

28  *First Amended Class Action Complaint; Second Amended Class Action Complaint; Answer to*

*First Amended Class Action Complaint; Settlement Agreement; Plaintiff's Motion For Preliminary Approval; Declaration Of James F. Clapp In Support Of Plaintiff's Motion For Preliminary Approval; Declaration Of Edward J. Wynne In Support Of Motion For Preliminary Approval Of Class Action Settlement*, and a cover letter. The CAFA Notice Packets were mailed on June 11, 2019. (Cooley Decl., ¶¶ 2-3.) KCC has received no responses to the CAFA Notice Packets. (Cooley Decl., ¶ 4.)

On October 7, 2019, KCC received from Defendant a list of 3,297 persons covered by this settlement. The list provided contact information and breakdown of semi-monthly pay periods in the Rule 23 class period as well as the semi-monthly pay periods related to both Tier 1 and Tier 2 PAGA aggrieved employees. The list provided that the Rule 23 class has 2,989 Class Members, the PAGA Tier 1 has 2,421 aggrieved employees and the PAGA Tier 2 has 2,989 aggrieved employees. The Rule 23 class has a total of 258,828 semi-monthly pay periods which equates to 129,414 work months during the class period. The Tier 1 PAGA Period aggrieved employees have a total of 54,981 semi-monthly pay periods which equates to 27,490.5 months worked in the Tier 1 PAGA Period. The Tier 2 PAGA Period aggrieved employees have a total of 258,828 semi-monthly pay periods which equates to 129,414 months worked in the Tier 2 PAGA Period. The total semi-monthly pay periods for the PAGA aggrieved employees is 313,809 which equates to 156,904.5 months worked during both PAGA Periods. KCC formatted the list for mailing purposes, consolidated duplicate records, and processed the names and addresses through the National Change of Address Database ("NCOA") to update any addresses on file with the United States Postal Service ("USPS"). (Cooley Decl., ¶ 5.)

On October 21, 2019, KCC mailed the Notice Packet to all class members and aggrieved employees. (Cooley Decl., ¶ 6.) The Settlement Administrator received 80 returned Notice Packets and was able to locate 54 new addresses and re-mailed the Notice Packet to those individuals. (Cooley Decl., ¶ 7.)

On November 14, 2019, Plaintiff filed his Motion for Attorney Fees and Costs and Request for Representative Enhancement Award. (Dkt. 84.) The motion has been uploaded to

1   the Settlement Administrator's site for review by all individuals covered by this Settlement.
2   (Decl. of Wynne, ¶ 32.)

3       On or about October 21, 2019, KCC established a website www.MSSBSettlement.com
4   dedicated to this matter to provide information to the class members and aggrieved employees
5   and to answer frequently asked questions. The website contains important documents for class
6   members and aggrieved employees to view and download including the Plaintiff's Motion for
7   Attorneys' Fees, Costs and Class Representative Enhancement Award.  The website URL was
8   set forth in the Notice. To date, the website received 396 page views. (Cooley Decl., ¶ 8.)

9       On or before October 21, 2019, KCC established a toll-free telephone number dedicated
10  to answering telephone inquiries from class members and aggrieved employees. To date, KCC
11  has received 1,058 call inquiries to the case help line. (Cooley Decl., ¶ 9.)

12      As of this date, no class member has submitted an objection aside from Matthew
13  Lucadano. (Cooley Decl., ¶ 11.) Just seven (7) FAs of the 2,989 member class, representing
14  just .002% of the class, have opted-out. (Cooley Decl., ¶ 10.)

15      KCC has preliminarily calculated the 2,982 Rule 23 class members and the 3,297
16  aggrieved employees settlement awards. These calculations are based on the assumptions that
17  the gross settlement amount is $10,235,000.00, and from that amount, deductions are made for:
18  (a) future immediate payment fund ($1,735,000.00) (b) attorneys' fees ($2,047,000.00); (c)
19  attorneys' costs ($24,506.37); (d) named plaintiff award ($10,000.00); (e) payment to the
20  California Labor & Workforce Development Agency ($450,000.00, i.e., 75% of the $600,000
21  total PAGA allocation); and (f) administration costs ($32,000.00). The remaining amount
22  ($5,936,493.63, the "Net Settlement Fund") will be allocated pursuant to the terms of the
23  settlement to those class members and aggrieved employees preliminarily approved for
24  payment. The Net Settlement Fund is further divided into: the Rule 23 class member fund, the
25  Tier 1 PAGA aggrieved employee fund and the Tier 2 PAGA aggrieved employee fund which
26  amount to $5,786,493.63, $125,000.00 and $25,000.00, respectively. The minimum, maximum
27  and average recovery for the Rule 23 class is $22.42, $2,892.61 and $1,940.47, respectively.
28  The minimum, maximum and average recovery for the Tier 1 PAGA aggrieved employees is

$2.28, \$59.11 and \$51.63, respectively. The minimum, maximum and average recovery for the Tier 2 PAGA aggrieved employee is \$0.11, \$12.46 and \$8.36, respectively.  Should the Court-awarded fees or costs differ than those shown above, or if the list of class members or aggrieved employees approved for payment and/or their class data changes, the estimated award allocation calculations will change accordingly. (Cooley Decl., ¶ 12.)

## SUMMARY OF SETTLEMENT TERMS

The details of the settlement are set forth in the fully-executed Class Action Settlement Agreement and Release. (Dkt. 48-3, Ex. 1, Class Action Settlement Agreement and Release, Decl. of Wynne, as amended, Dkt. 65-1.) A summary is set forth below:

**A.     Settlement Fund**

In return for a release of all claims that were asserted in the action, MSSB has agreed to create a non-reversionary \$10,235,000 gross settlement fund consisting of \$8,500,000 in cash, as well as \$1,735,000 in future immediate payments of business expenses to pay categories of expenses for current California FAs that otherwise could have been submitted to the AFG program. Because this is not a claims-made settlement, Rule 23 class members were not required to make a submission to participate in the settlement. (Decl. of Wynne, ¶ 27.)

Of the \$10,235,000 gross settlement fund, \$600,000 is attributed to the PAGA claims broken down into two tiers ("Tier 1 PAGA Pay Period" and "Tier 2 PAGA Pay Period"). The Tier 1 PAGA Pay Period covers the period from April 23, 2013 to May 9, 2014. This period of time is covered by Plaintiff's Second Amended Complaint. (Dkt. 55.) \$500,000 is attributed to the Tier 1 PAGA Pay Period. The Tier 2 PAGA Pay Period covers the period from May 9, 2014 through September 5, 2019, i.e., the date preliminary approval was granted, which is also covered by Plaintiff's class claims, and \$100,000 has been attributed for this second period. (Decl. of Wynne, ¶ 28.) The allocation between the PAGA tiers reflects that aggrieved employees receiving Tier 2 PAGA payments also are Rule 23 class members who, unless they opt out, will receive additional, valuable settlement payments in connection with the class claims, the potential exposure for which is substantially higher than the PAGA claims. Of the Tier 1 and Tier 2 PAGA payments, 75% or \$450,000, is allocated to the State of California as

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    is required by PAGA. Labor Code § 2699(i).

2          After certain deductions identified below, all class members who do not opt out and all

3    aggrieved employees will be paid on a pro rata basis based on the number of semi-monthly pay

4    periods they worked for MSSB as an FA in California during the settlement period, which

5    extends from May 14, 2014 to September 5, 2019 for the class claims and from April 23, 2013,

6    to September 5, 2019 for the PAGA claims. This allocation formula—i.e., calculating

7    settlement payments based on the number of work months—has been adopted in other broker

8    reimbursement cases that have settled in this District.  (Decl. of Wynne, ¶ 29.)

9          MSSB will pay for the employer's share of payroll taxes on the wage portion of each

10   Rule 23 class member's recovery separate and apart from the Maximum Settlement Amount.

11   Employer payroll taxes will be computed by the Settlement Administrator based on the

12   amounts to be paid to each Rule 23 class member.  (Decl. of Wynne, ¶ 30.)

13   **B.     Class Definition and Aggrieved Employees**

14         The Court has approved, for settlement purposes only, a Rule 23class defined as

15   individuals employed by MSSB within the State of California from May 14, 2014, through

16   September 5, 2019 who worked as Financial Advisors and/or Private Wealth Advisors

17   (collectively, "FAs"). The Court also defined the group of aggrieved employees covered by the

18   PAGA settlement – broken down into two tiers – of FAs who worked for MSSB in California

19   between April 23, 2013 and September 5, 2019. (Dkt. 76.) There are a total of 3,297 employees

20   covered by this settlement. There are 2,989 Rule 23 Class Members and PAGA Tier 2

21   aggrieved employees and there are 2,421 PAGA Tier 1 aggrieved employees. Approximately

22   87% of the PAGA Tier 1 aggrieved employees are also in both the Rule 23 class and in the

23   PAGA Tier 2 group. (Decl. of Wynne, ¶ 31.)

24   **C.     Class Representatives and Class Counsel**

25         The Court has appointed Brandon Harvey as the class and PAGA representative. The

26   Court has appointed Edward J. Wynne, Wynne Law Firm; James F. Clapp, Clapp & Lauinger

27   LLP; David S. Markun, Markun, Zusman, Freniere & Compton LLP as class counsel. (Dkt.

28   76.)

- 9 -

3:18-cv-02835 WHO

**D.      Plan of Allocation**

     **1.      Payments to Class Members:**

     From the cash portion of the settlement fund, payments to individual class members will be calculated and apportioned based on the number of semi-monthly pay periods during the settlement class period after deductions for the future business expense fund, attorneys' fees and costs, the Named Plaintiff Award, the cost of settlement administration, and payment to the LWDA.

     **2.      Named Plaintiff Award:**

     Plaintiff has requested a Named Plaintiff Award of $10,000 for Brandon Harvey for his services as the class representative and PAGA representative. (Dkt. 84.)

     **3.      Class Counsels' Fees and Costs:**

     On November 14, 2019, Class Counsel filed their Motion for Attorneys' Fees, Costs and Class Representative Enhancement Award. (Dkt. 84.) It is worth noting that Class Counsel limited their request to 20% of the Gross Settlement Fund, or $2,047,000, rather than the Ninth Circuit's benchmark of 25%. Because this is a non-reversionary, common fund settlement, the approximate $500,000 that Class Counsel is not requesting will be distributed to the class members. Likewise, Class Counsel are seeking $24,506.37 in costs which is approximately $10,000 less than the amount set aside for costs in the Settlement Agreement, i.e., $35,000. As such, that difference will similarly be distributed to class members. (Decl. of Wynne, ¶ 33.)

     **4.      LWDA Payment:**

     The parties have agreed to pay the LWDA $450,000 (or 75% of the $600,000 attributed to the PAGA claim) per Labor Code § 2699 (i) to settle this claim, and Plaintiff has submitted this settlement to the California Labor Workforces Development Agency ("LWDA") per California Labor Code section 2699(l)(2). Class Counsel is not aware of any objection to this payment by the LWDA. (Decl. of Wynne, ¶ 34.)

     **5.      Settlement Administrator:**

     The Settlement Administrator, KCC, has agreed to a cap for its services in the amount of $32,000. (Cooley Decl., ¶ 13.)

1

## STANDARDS FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403, citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### A.   The Settlement is Entitled to a Presumption of Fairness

A class action settlement is entitled to a presumption of fairness when:   (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and, (4) the percentage of objectors is small.  *Dunk v. Ford Motor Company,* 48 Cal.App.4th 1794, 1802 (1996) quoting *Officers for Justice v. Civil Service Com.,* 688 F.2d 615, 625 (9th Cir. 1982).

#### 1.   The Settlement was Reached Through Arm's-Length Negotiations

As this Court has found, this settlement was the result of arm's-length negotiations overseen by experienced mediators Tripper Ortman and Mark Rudy. (Dkt. 76.)

#### 2.   Substantial Investigation has Been Completed

The stage of the proceedings and the amount of investigation completed is an important factor that the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *In re Warner Communications Sec. Litig.,* 618 F. Supp. 735, 741 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) aff'd., 661 F. 2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 616-17 (N.D. Cal. 1979). This Court has found that, "the Parties engaged in meaningful discovery prior to settlement." (Dkt. 76, p. 3.) Such discovery included, but is not limited to, thousands of pages of documents related to MSSB's compensation plan relevant to FAs, AFG

policies and procedures, MSSB's expense policies and procedures, and policies and procedures related to FA compensation and adjustments to compensation. MSSB produced extensive data on class member compensation, dates of employment, expenses incurred by FAs broken down by category and year, the headcount of FAs who had entered into arbitration agreements and whether they were current employees versus former. MSSB also produced extensive data on the AFG program including the dollar amount attributed by FAs, the amount incurred by FAs by category of expense, and the amounts approved and declined by category of expense. (*Id.*)

### 3.   Class Counsel is Experienced and Endorses the Settlement

As detailed in the Motion for Preliminary Approval, experienced counsel operating at arm's-length has weighed all of the risk factors and endorses the proposed settlement. The view of the attorneys actively conducting the litigation is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F.Supp. 482, 488 (E.D. Pa. 1985); see also, *Ellis*, 87 F.R.D. at 18; *Boyd*, 485 F. Supp. at 616-17. Class Counsel has extensive wage and hour class action experience and, specifically, in prosecuting cases in the financial services industry. (Dkt. 84-1, Decl. of Wynne; Dkt. 84-2, Decl. of Clapp; Dkt. 84-3, Decl. of Compton.) This Court concurs and has rejected Attempted Intervenors' attacks on Counsels' adequacy. (Dkt. 76, p. 3.) Thus, Class Counsel is experienced and qualified to evaluate the class claims and viability of the defenses. Class Counsel is satisfied that the recovery for each class member and aggrieved employee is fair and reasonable taking into consideration the potential recovery as compared to the actual recovery, the stage of the litigation when the settlement was reached, the risks inherent in any litigation and the specific risks in this case, and the reasonable tailoring of each class member's and aggrieved employee's claim to the amounts received. This settlement is fair, adequate and reasonable and in the best interests of the class and aggrieved employees.

### 4.   There Are No Objections to the Settlement Other Than Lucadano

Perhaps the most significant endorsement for the proposed settlement in this case is the fact that not a single Rule 23 class member has objected to any aspect of the proposed settlement aside from the expected objection from Lucadano. Rule 23 class members were

specifically provided with the option of objecting to the terms of the settlement no one, aside from Lucadano, has objected. The final factor in *Dunk* is that the percentage of objectors is small. Here, there is just one objector representing .0003% of the class. In addition, just 7 people out of 2,989 decided to opt-out representing just .002% of the class. This Court should properly construe the lack of any expressed opposition to the settlement from anyone other than the Attempted Intervenors as a strong indicator that the class members – with one exception – view the settlement as fair, reasonable, and adequate.

**B.      The Risk and Expense of Further Litigation**

At the final approval hearing the Court may consider other relevant factors, such as the strength of the plaintiff's case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant and the reaction of the Class Members to the proposed settlement. *Officers for Justice,* 688 F.2d at 624. "This list is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, 48 Cal.App.4th at 1801.

The risks, complexity, and expenses of this action and the expected duration of this litigation all weigh in favor of final approval. With respect to the AFG program, Plaintiff is not aware of any court (or administrative body) being asked to decide whether an employer's representation to the IRS that an expense is tax deductible ("ordinary and necessary" under 26 U.S.C. § 162 (a)) is a binding admission for purposes of the employee's request for reimbursement under Labor Code § 2802 (a). The lack of any prior rulings or decisions in Plaintiff's favor on this issue is an argument in support of MSSB's position that the two standards are not equivalent.

MSSB will point out that it successfully defended the AFG program in multi-district putative class action litigation, where a federal district court held under similar law that AFG does not create a deduction from wages, and therefore dismissed deductions claims under the laws of New York, New Jersey, and Connecticut. *See In re Morgan Stanley Smith Barney LLC*

*Wage & Hour Litig.*, 2013 WL 6255697 (D.N.J. Dec. 4, 2013), and *In re Morgan Stanley Smith Barney LLC Wage & Hour Litig.*, 2014 WL 2101904 (D.N.J. May 20, 2014).

MSSB will also argue that AFG does not create a wage deduction because existing case law permits it and FAs to prospectively agree on how the FAs' incentive compensation rate would be determined. *See Prachasaisoradej v. Ralphs Grocery Co., Inc.*, 42 Cal.4th 217 (2009) (wage rights "derive exclusively from the [compensation] plan itself"); *Schachter v. Citigroup*, 47 Cal.4th 610, 621 (2009) (the employment agreement determines when incentive compensation is earned); *Torres v. Wells Fargo,* 2016 WL 7373856, *4 (C.D. Cal. Oct. 12, 2016) (under agreement terms, "Plaintiffs could expect a commission that was subject to a final calculation which included adjustments….'[t]his final figure, and this figure only, once calculated, was the amount offered or promised as compensation for labor performed by eligible employees….'") (quoting *Ralphs,* 42 Cal.4th at 229); *Koehl v. Verio, Inc.*, 142 Cal.App.4th 1313, 1329-37 (2006) (commissions become earned when conditions precedent have been satisfied). Based on this, Morgan Stanley contends there is no unlawful deduction of any "wages" under AFG because, at the time FAs select their AFG Adjustment, Morgan Stanley had not offered or promised Plaintiffs incentive compensation at a particular rate or amount, such that earned wages are not impacted.

Defendant also will argue that the expenses submitted to the AFG program were optional and therefore not "reasonable and necessary." Some courts have found that optional business expenses are not reimbursable. For instance, in *Novak v. The Boeing Company*, 2011 WL 9160940 (C.D. Cal. Jul. 20, 2011), the employee sought reimbursement for expenses that certainly were reasonable and job related – the cost of telephone and internet used to perform his job duties from his home office. The court held, however, that the employer was not required to reimburse because the entire "work at home" program was optional, and the employee could instead have come into the office to perform his job duties to avoid expenses. *See also, Aguilar v. Zep, Inc.,* 2014 WL 4245988 (N.D. Cal. Aug. 27, 2014) (partially granting defendant's motion for summary judgment on plaintiff's Section 2802 claims finding that some of the business expenses plaintiffs incurred were not required and thus optional).

In addition to the strength of Plaintiff's case, there is also the question of class certification. In Counsels' decades of experience litigating class actions, including those in the financial services industry, class certification is never a foregone conclusion and defendants typically mount vigorous challenges. Some courts have denied certification of Labor Code § 2802 claims especially when it has been found that the expenses were optional. *See, e.g., Buchanan v. HomeServices Lending, LLC*, 2013 WL 1788579 (S.D. Cal. Apr. 25, 2013) (class certification denied for optional marketing programs); *see also, Morgan v. Wet Seal*, 210 Cal.App.4th 1341, 1356-57 (2012) (class certification denied on Section 2802 claim where individualized issue predominated on whether employees reasonably believed they had to participate in programs to do their jobs); *Drake v. Morgan Stanley & Co.*, 2010 WL 2175819, at *1, 7 (C.D. Cal. Apr. 30, 2010) (denying class certification of claims concerning MSSB's expense reimbursement practices, including AFG, because "under California law, questions as to whether Defendants were required to reimburse employees' claimed business expenses involves an individualized factual determination of whether each employee (1) incurred an expense (2) that was necessary (3) and reasonable (4) as a direct consequence of the discharge of his or her duties."). In *In re RBC Dain Rauscher Overtime Litig.*, 703 F.Supp.2d 910 (D. Minn. 2010), the court denied certification of a similar claim under California law against another brokerage firm, holding that "[t]o determine whether RBC violated § 2802 of the California Labor Code for failure to reimburse employees for necessary expenses, the Court must examine each employee's alleged expenses and must determine whether they were 'reasonable.'" *Id.* at 969.

Plaintiff also expects that MSSB would challenge manageability of the PAGA claims. While Plaintiff believes the claims are manageable, MSSB contends they are unmanageable for the same reasons it asserts regarding class certification. MSSB argues that manageability poses an even greater challenge than class certification because, to recover penalties, a PAGA plaintiff must prove each and every predicate Labor Code violation as to each aggrieved employee for each pay period for which the plaintiff seeks penalties. *See Rope v. Auto–Chlor Sys. of Wash., Inc.*, 220 Cal. App. 4th 635, 651 n.7 (2013) ("PAGA requires that the

representative plaintiff establish that the employer have committed the Labor Code violations for which recovery is sought against the aggrieved employees."); *Hibbs-Rines v. Seagate Techs., LLC*, 2009 WL 513496, at *4 (N.D. Cal. Mar. 2, 2009) ("Plaintiff will have to prove Labor Code violations with respect to each and every individual on whose behalf plaintiff seeks to recover civil penalties under PAGA."). While Plaintiff disagrees with this position, MSSB's nevertheless presents a risk to Plaintiff's case.

With respect to the PAGA claims, while Plaintiff believes they have real value, MSSB would likely contend that PAGA penalties awards have historically been relatively low and that penalties are subject to dramatic reduction by courts.

This counsel's experience in *Duran v. U.S. Bank N.A.*, 59 Cal.4th 1 (2014), perhaps best exemplifies the risk, expense, complexity and duration of further litigation. In sum, after getting the case certified and prevailing at trial, the judgment was reversed by the Court of Appeal, affirmed by the Supreme Court, and plaintiffs' second effort at certification in the Superior Court was denied (and affirmed by the Court of Appeal) after 17 years of hard-fought litigation. Thus, even prevailing at certification and trial is no guarantee of recovery especially against a large corporate defendant like MSSB. In essence, the risk in continued litigation is extremely high and class members and aggrieved employees could ultimately end up with nothing. *See, In re General Motors Corp.,* 55 F.3d 768, 806 (3rd Cir.1995) ("The present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement."); *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 616-17 (N.D. Cal.1979). It is Counsels' informed opinion that benefits of this settlement substantially outweigh the risk and that settlement at this juncture is in the best interests of the class, aggrieved employees, and the State of California.

**C.   The Amount Offered in Settlement**

MSSB will pay $10,235,000 consisting of $8,500,000 in cash (of which $600,000 will be designated as PAGA penalties) plus $1,735,000 in future payments of business expenses for California FAs. There are 129,414 monthly pay periods and 2,898 Rule 23 Class Members

covered by this settlement.[3] Extrapolating out MSSB's exposure to the date of the order granting preliminary approval, FAs contributed approximately $202m into AFG during the statutory time covered by *Harvey*.[4] Accordingly, the gross settlement represents $75.22 per work month or $3,256 per person (less the $500,000 for the PAGA Tier 1 payment).[5] The settlement also represents approximately 5% of what Plaintiff contends is MSSB's total potential exposure. (Decl. of Wynne, ¶ 36.)

This settlement compares very favorably to the most recent similar case, *Tsyn v. Wells Fargo,* N.D. Cal. Case 14-cv-02552-LB, which settled for $9,500,000 as approved by Magistrate Judge Beeler. In *Tsyn*, the plaintiffs alleged virtually identical claims for unreimbursed business expenses under Labor Code § 2802 but also had claims for unpaid overtime compensation. Like Harvey, Tsyn was a Financial Advisor working for a financial services firm under a similar compensation plan, challenging a business expense program that was very similar to Morgan Stanley's AFG program. Thus, while *Tysn* involved nearly the same legal and factual issues, the *Tsyn* claims also were broader than the claims alleged here.

The *Tsyn* settlement equated to approximately $72.72 per work month, while the *Harvey* settlement equates to approximately $75.22 per work month. In terms of total exposure, this settlement is also consistent with *Tsyn,* representing 5% of MSSB exposure as compared to 5.75% of Wells Fargo's total exposure of $165 million.[6] (Decl. of Wynne, ¶ 40.)

This settlement also compares favorably to two other recent cases brought on behalf of California Financial Advisors. In *Brecher v. Citigroup Global Markets, Inc.,* S.D. Cal. Case

---

[3] This number increased slightly from Class Counsel's estimate of 126,702 at preliminary approval due to the delay caused by Attempted Intervenors' interference with this settlement.

[4] Based on an assumed exposure of $193.5m from the start of the *Harvey* statutory period of May 9, 2014 through June 12, 2019, this equates to approximately $3m in potential exposure per month. The period of June 12, 2019 to September 5, 2019 equates to 2.83 months Accordingly, because of the delay caused by Attempted Intervenors, MSSB total exposure increased by approximately $8.5m.

[5] $10.235m - $500k = $9.735m / 129,414 wm.  $9.735m / 2,989 R23 class members.

[6] Financial Advisors at Wells Fargo Advisors paid for sales assistants outside of its version of AFG. Specifically, FAs at Wells Fargo paid $38 million through their version of AFG and another $127 million outside of it. (Decl. of Wynne, ¶ 40.)

09-cv-1344, plaintiffs alleged unlawful forfeiture of benefits and also unreimbursed business expenses under Labor Code § 2802 for payments made to support staff. The court granted final approval of a $3,700,000 non-reversionary settlement on behalf of a 1,006 person class. Sixty-percent of the settlement was attributed to the expense reimbursement claim. Participating class members received $3,171 on average – as compared to $3,256 that is the average on a headcount basis employees can expect to receive here. (Decl. of Wynne, ¶ 43.) In *Litty v. Merrill Lynch & Co.*, L.A. Sup. Ct. Case No. BC582127, the court approved a $2,465,000 class action settlement reached on behalf of 2,501 FAs employed by Merrill Lynch in California. The *Litty* complaint alleged claims for unreimbursed business expenses under Labor Code § 2802 and derivative claims under the UCL and PAGA.  The average settlement in *Litty* was $1,147 per class member. (Decl. of Wynne, ¶ 44.)

Two major developments in the last 12-15 years have substantially driven down the settlement value of wage and hour lawsuits brought on behalf of California financial advisors. First, both courts and the U.S. Department of Labor have rejected the theory that financial advisors are entitled to overtime pay. *See, e.g. Hein v. PNC Fin. Servs. Group, Inc.*, 511 F.Supp.2d 563, 575 (E.D. Pa. 2007); *Tsyn v. Wells Fargo Advisors, LLC*, 2016 WL 612926, *11 (N.D. Cal. Feb. 16, 2016); U.S. Dept. of Labor, Wage & Hour Div., Opinion Letter FLSA2006-43, 2006 WL 3832994 (Nov. 26, 2006). Second, claims for unlawful wage deductions under Labor Code §§ 221-224 were much stronger than they are now because financial services firms' compensation plans did not clearly specify when financial advisors' commissions became "earned," making the plans vulnerable to attack as creating unlawful wage deductions. As a result of those lawsuits, financial service companies revised their compensation plans to clarify that commission wages did not become "earned" until all expenses listed in the plan had been deducted; and in *Koehl v. Verio, Inc.*, 142 Cal.App.4th 1313, 1330 (2006), the court affirmed that the earning of commission wages for purposes of Labor Code §§ 221-224 is dictated by the terms of the compensation plan. Thus, while *Garett v. Morgan Stanley & Co.,* S.D. Cal. Case No. 04-cv-1858, involved a class of California-based FAs represented by Plaintiff's counsel and settled for $42 million on a claims-made basis

1   (equating to $219 per work month for FAs), it is not a useful benchmark to evaluate this

2   proposed settlement.[7] (Dkt. 48-1, Decl. of Clapp, ¶ 5.)

3          The PAGA payment is entirely consistent with amounts awarded by other courts both

4   in terms of a relative amount and absolute amount. As set forth above, the parties have

5   designated $600,000 for the PAGA payment divided into two tiers – one payment of $500,000

6   for the Tier 1 PAGA Payment (i.e., the *Chen*-only period) and another payment of $100,000

7   for the Tier 2 PAGA Payment (i.e., the *Harvey* period). The total PAGA payment of $600,000

8   is 5.8% of the Maximum Settlement Amount.

9          In *Tsyn v. Wells Fargo Advisors*, *supra*, Judge Beeler approved a $20,000 allocation to

10  the LWDA from a $9,500,000 gross settlement representing .2% of the total settlement. In

11  *Alvarez v. Farmers Ins. Exch.*, No. 3:14-CV-00574-WHO, 2017 WL 2672710, at *2 (N.D. Cal.

12  Jan. 17, 2017), an FLSA case, this Court approved a payment of $30,000 to the LWDA from a

13  $4,900,000 settlement representing .6% of the total settlement. In *Blandino v. MCM Constr.,*

14  *Inc.,* No. C 12-1729 WHO, 2014 WL 11369763, at *2 (N.D. Cal. Mar. 6, 2014), a wage and

15  hour class action, this Court approved a $25,000 to the LWDA from a $865,000 settlement

16  representing 2.8% of the total settlement.

17         Other district courts in California have approved similar PAGA allocations. In

18  *Villalobos v. Calandri Sonrise Farm LP*, No. CV 2122615 PSG (JEMx), 2015 WL 12777959,

19  (C.D. Cal. Dec. 4, 2015), the court approved a $5,900 allocation to the LWDA representing

20  .8% of the settlement. 2015 WL 12777959, at *3. In *Bautista v. Harvest Mgmt. Sub LLC*, No.

21  CV1210004FMOCWX, 2014 WL 12579822, at *3 (C.D. Cal. July 14, 2014) the court

22  approved a $15,000 allocation to the LWDA representing .6% of the settlement. *See also, In re*

23  *M.L. Stern Overtime Litig.*, No. CV 07-0118 BTM (JMAx), 2009 WL 995864, at *1 (S.D. Cal.

24  Apr. 13, 2009) (approving PAGA settlement of 2% or $20,000); *Hopson v. Hanesbrands, Inc.*,

25  CV 08-0844 EDL, 2008 WL 3385452, at *1 (S.D. Cal. Apr. 13, 2009) (approving a PAGA

26  settlement of .3% or $1,500. Indeed, some courts have approved settlements alleging PAGA

27

28  ---
    [7] *Garrett* alleged unpaid overtime under federal and state law, as well as claims for
    unreimbursed business expenses under Labor Code sections 221-224, 400-410, and 2802.

1  where no allocation was made to the claim. *See, e.g., Nordstrom Comm'n Cases*, 186

2  Cal.App.4th 576, 589 (2010) (approving settlement of wage and hour class claims and PAGA

3  claims under which no money was allocated to the PAGA claims).

4      Here, the $600,000 allocation to the LWDA represents 5.8% and is therefore within the

5  range of allocations courts have approved.

6  **CONCLUSION**

7      In light of the forgoing, Plaintiff respectfully requests that the Court grant the motion for

8  final approval of the class action settlement and authorize payment to the class and aggrieved

9  employees.

10

11  DATED:  December 31, 2019        WYNNE LAW FIRM

12             */s/ Edward J. Wynne*
           Edward J. Wynne

13             *Class Counsel*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT