UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON HARVEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MORGAN STANLEY SMITH BARNEY LLC,<br><br>　　　　　Defendant. | Case No. 18-cv-02835-WHO<br><br>**FINAL APPROVAL ORDER**<br><br>Re: Dkt. Nos. 84, 85, 86, 91, 92, 93, 104, 105, 111 |

Before me is a proposed $10.2 million class action settlement between plaintiff Brandon Harvey and defendant Morgan Stanley Smith Barney LLC ("MSSB") (Harvey and MSSB are collectively the "Parties") to resolve allegations that MSSB routinely refused to cover work-related expenses for California Financial Advisors ("FAs"). The only two objectors to this settlement are plaintiffs in a similar suit filed in the Orange County Superior Court, *Chen v. Morgan Stanley Smith Barney*, Case No. 30-2014-00724866-CU-OE-CXC. Outten & Golden LLP, Haber Polk Kabat LLP, and Law Office of Laura Sullivan ("*Chen* counsel") represent Tracy Chen and Matthew Lucadano ("*Chen* plaintiffs") (*Chen* counsel and plaintiffs are collectively "Proposed Intervenors"). Proposed Intervenors were not able to bring their case to resolution after more than four years of litigating and now object to this settlement.

I have provided Proposed Intervenors with ample ability to participate in this class settlement approval process and analyzed each of their various objections, including objections that were not properly briefed but argued at the final approval hearing. I agree that heightened scrutiny applies, and I have applied it here. I overrule every other objection. This settlement is fair, adequate, and reasonable. I award attorneys' fees, costs and service awards to both Harvey and the Proposed Intervenors and find that Harvey deserves a greater portion for its success in

reaching a settlement with MSSB. IT IS HEREBY ORDERED THAT: Harvey's motion to strike Tracy Chen's objections is DENIED [Dkt. No. 104]; the objections of Matthew Lucadano and Tracy Chen are OVERRULED [Dkt. Nos. 92, 93]; Harvey's motion for final approval is GRANTED [Dkt. No. 105]; Harvey's motion for attorneys' fees, costs, and service awards is GRANTED in part [Dkt. No. 84]; Proposed Intervenors' motion to intervene for purposes of seeking attorneys' fees, costs and service awards is GRANTED [Dkt. No. 85]; Proposed Intervenors' motion for attorneys' fees, costs and service awards is GRANTED in part [Dkt. No. 86]; and Proposed Intervenors' motions to seal are GRANTED [Dkt. Nos. 91, 111].

## I.  HARVEY'S MOTION FOR FINAL APPROVAL OF SETTLEMENT

In compliance with the Preliminary Approval Order, all 3,297 conditionally certified Class and Aggrieved Employees have been given adequate notice. There are no objections except for Chen (who is not a class member) and Lucadano. Only seven (7) Class Members, representing .002% of the class, opted out. *See* Plaintiff's Motion for Final Approval of Class Action Settlement ("Final Approval Mot.") [Dkt. No. 105] 1; Declaration of Zachary Cooley Re: Notice Procedures ("Cooley Decl.") [Dkt. No. 105-2] ¶ 6. Lucadano did not opt-out. Cooley Decl. ¶ 6. No one other than counsel for the Parties and Proposed Intervenors appeared at the final approval hearing on February 5, 2020.

Having considered the settlement, I GRANT final approval of the settlement and ORDER as follows:

1.      I hereby enter Judgment and grant final approval of the Class and Aggrieved Employees Settlement and find that it is fair, reasonable, and adequate and satisfies the heightened standards for final approval of a pre-class certification settlement under federal law. The Parties shall fulfill the terms of the settlement. The classes covered by this Order are defined as follows:

> **Class Members**: All individuals employed by MSSB within the State of California from May 14, 2014, through the date of Preliminary Approval, September 5, 2019, who worked as Financial Advisors and/or Private Wealth Advisors.

> **Aggrieved Employees**: All current and former Financial Advisors who were employed by MSSB within the State of California at any time during April 23, 2013 through the date of Preliminary Approval, September 5, 2019.

2.     In return for a release of all claims that were asserted in the action, MSSB has agreed to create a non-reversionary $10,235,000 gross settlement fund consisting of $8,500,000 in cash, as well as $1,735,000 in future immediate payments of business expenses to pay categories of expenses for current California FAs that otherwise could have been submitted to the Alternative Flexible Grid ("AFG") program.

3.     Of the $10,235,000 gross settlement fund, $600,000 is attributed to the PAGA claims split across two PAGA periods.  $500,000 is allocated to the Tier 1 PAGA period between April 23, 2013 to May 9, 2014.  $100,000 is allocated to the Tier 2 PAGA period between May 9, 2014 to September 5, 2019.

4.     For the reasons stated below in Sections I.A. and I.B. of this Order, I OVERRULE the objections of Lucadano and Chen, except that I agree that a heightened scrutiny standard applies to pre-class certification settlements.  The standard has been met here.

5.     The settlement and this Judgment shall be binding on the 3,297 members of both the conditionally certified Class and Aggrieved Employees.  There are 2,989 Class Members (2,982 after the 7 opt-outs).  PAGA Tier 1 has 2,421 Aggrieved Employees and PAGA Tier 2 has 2,989 Aggrieved Employees.  *See* Cooley Decl. ¶¶ 5, 10, 12.  Approximately 87% of the PAGA Tier 1 Aggrieved Employees are in both the Rule 23 Class and in the PAGA Tier 2 group.  Declaration of Edward J. Wynne in Support of Motion for Final Approval of Class Action Settlement ("Wynne Decl.") [Dkt. No. 105-1] ¶ 31.

5.     Notice was mailed to all 3,297 members of the conditionally certified Class and Aggrieved Employees.  Cooley Decl. ¶ 6.  The notice of the settlement and notice methodology implemented by the Parties following the Preliminary Approval Order (i) was the best practicable notice under the circumstances; (ii) was reasonably calculated, under the circumstances, to apprise the Class and Aggrieved Employees of the pendency of the proposed settlement, their right to object to the proposed settlement, and their right to appear at the final fairness hearing; (iii) was due, adequate and sufficient notice to all persons entitled to receive notice; and (iv) complied fully with applicable law.

6.     The class was notified that up to 25% of the settlement amount may be allocated

for attorneys' fees, with an additional $35,000 in costs, for a total of $2,593,750. For the reasons stated in Section II of this Order, I GRANT in part Harvey's and Proposed Intervenors' motions for attorneys' fees, costs and service awards. Of the settlement amount, *Harvey*'s counsel is awarded 13% and *Chen*'s counsel is awarded 12%. After deduction of *Harvey*'s counsels' litigation expenses in the amount of $24,506.37 and *Chen*'s counsel litigation expenses in the amount of $186,603.25, which I approve, *Harvey*'s counsel shall receive $1,238,973 and *Chen*'s shall receive $1,143,667.38 in accordance with the process set out in the Parties' settlement agreement.

7.   I approve the service awards of $3,333.34, $3,333.33, and $3,333.33 to Tracy Chen, Matthew Lucadano, and Brandon Harvey, respectively, for a total of $10,000 in aggregate, which shall be paid in accordance with the process set out in the Parties' settlement agreement.

8.   I approve settlement administration fees and expenses to KCC Class Action Services, LLC in the amount of $32,000, which shall be paid in accordance with the terms of the Settlement.

9.   I approve payment to the California Labor & Workforce Development Agency ("LWDA") in the amount of $450,000, which shall be paid in accordance with the terms of the settlement.

10.   Within 21 days after distribution of all payments owing under the settlement, Harvey shall file a post-distribution accounting in accordance with the Procedural Guidance for Class Action Settlements found on the Court's website (www.cand.uscourts.gov/ClassActionSettlementGuidance).

11.   This document shall constitute final judgment for the purpose of Rule 58 of the Federal Rules of Civil Procedure. Without affecting the finality of this matter, this Court shall retain jurisdiction over this action and the parties for purposes of enforcing the terms and conditions of the Settlement.

**A.   Lucadano's Objections to Class Settlement**

Lucadano argues that: (1) a heightened scrutiny standard is required because this settlement is prior to class certification; (2) the settlement amount is unreasonably low; (3) Harvey

does not satisfy Rule 23 requirements because of intra-class rivalries and irreconcilable conflicts between class members and its sole representative; (4) the settlement shows signs of reverse auction; and (5) allocation of attorneys' fees, costs and service payments should recognize *Chen* plaintiffs and counsel. *See* Objections of Matthew Lucadano to Class Action Settlement ("Lucadano Objections") [Dkt. No. 92].

He presents no new argument or evidence as to the fourth issue concerning reverse auction. I will not repeat what I have already said and written on this subject, except to summarize again that settlement was reached by competent counsel through an arms-length negotiation that resulted in a fair, reasonable and adequate resolution of this matter. That the *Chen* plaintiffs value this case higher than the *Harvey* plaintiff, and after more than four years of litigation were neither able to reach agreement nor bring the matter close to resolution through trial does not turn the settlement in this more recently filed case into a reverse auction. I thoroughly explained in the Preliminary Approval Order why "[t]he circumstances giving rise to this proposed settlement and settlement amount do not show that a 'reverse auction' occurred." Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Prelim. Approval Order") [Dkt. No. 76] 3. I OVERRULE Lucadano's objection on this ground.

I will address the fifth issue regarding allocation of attorneys' fees below in conjunction with Harvey's and Proposed Intervenors' motions for attorneys' fees, costs and service payments. *See infra* Section II. For the reasons stated below, I SUSTAIN Lucadano's objection that a heightened scrutiny standard applies (which has been met here), and I OVERRULE his objections regarding the settlement amount and Rule 23 requirements.[1]

### 1.     Heightened Scrutiny Standard Applies

Lucadano argues that Harvey ignores binding Ninth Circuit precedent that settlements

---

[1] Lucadano also filed an opposition brief to Harvey's motion for final approval. *See* Objector Matthew Lucadano's Opposition to Plaintiffs' Motion for Final Approval of Class Action Settlement [Dkt. No. 107]. It is questionable whether Lucadano can file an opposition brief given that he is not recognized as an intervenor in this action. Regardless, his opposition brief points to issues already addressed at the preliminary approval stage for which he does not present new argument or evidence. The opposition brief also repeats arguments made in his and Chen's objections, which are squarely addressed in Sections I.A and I.B of this Order.

negotiated prior to class certification are not subject to a presumption of fairness, but instead require a heightened procedural and fairness scrutiny. Lucadano Objections 6-7. In a recent decision, the Ninth Circuit held that the "procedural burden is more strict when a settlement is negotiated absent class certification," and that a "district court abuses its discretion if it fails to apply an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019). I find that this settlement meets the heightened scrutiny standard.

In *Roes*, named plaintiffs filed a putative class and collective action alleging violations of the Fair Labor Standards Act ("FLSA") and various provisions of the California Labor Code and San Francisco municipal ordinance. 944 F.3d at 1039. The named plaintiffs, as well as nearly 4,700 members of the putative Rule 23 class, worked as exotic dancers at eleven nightclubs in San Francisco. *Id.* While the parties negotiated a settlement, separate counsel, who later represented the objectors, brought the same substantive claims in two separate misclassification suits against three of the nightclubs. *Id.* at 1040.

"Despite vigorous objections, the district court granted final approval, deemed the notice adequate, and awarded the requested attorneys' fees and service awards." 944 F.3d at 1043. Overall, the settlement provided "$2 million in cash, of which $950,000—more than the class would receive in total cash distribution—was allocated to attorneys' fees." *Id.*

The objectors appealed the district court's final approval of the settlement, arguing that it was required to apply heightened scrutiny of the settlement after being faced with several indicia of collusion and the inadequate settlement amount. 944 F.3d at 1048. The Ninth Circuit found that the district court applied an "incorrect legal standard and failed to employ the heightened scrutiny required to meet the strict procedural burden we impose for assessing class settlements negotiated prior to class certification," and therefore reversed and remanded because the district court abused its discretion in approving the settlement. *Id.*

The Ninth Circuit recognized that Rule 23(e) provides a set of factors for courts to use when assessing proposed settlements, but emphasized that "[w]here, however, the parties negotiate a settlement agreement before the class has been certified, settlement approval requires a higher

standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." 944 F.3d at 1048 (internal quotation marks and citation omitted). "Specifically, 'such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Id.* at 1048-49 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 946 (9th Cir. 2011)). The "subtle signs" of collusion which district courts are required to look for include:

> (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed [funds] to the defendant.

*Id.* at 1049 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015)).

The Ninth Circuit found that the district court failed to employ this standard because the settlement agreement: (1) included a clear sailing agreement, whereby the defendants agreed that they would not object to any attorneys' fees-and-expense award of up to $1 million; (2) provided a disproportionate cash distribution to attorneys' fees; (3) awarded exceptionally high incentive payments to the representative plaintiffs seemingly untethered from service to the class; and (4) included revisionary clauses that would return unclaimed funds to the defendants. 944 F.3d at 1050-1060.

The circumstances here are distinguishable. While there may be a clear sailing provision in the settlement, that is not enough to indicate signs of collusion. *See* Second Supplemental Declaration of Edward J. Wynne in Support of Preliminary Approval [Dkt. No. 65], Ex. 2 at ¶ 61(c) (hereinafter "Settlement Agreement") ("Class Counsel will apply to the Court for its Fees and Cost Award which Defendant will not object to.").[2] In *Roes*, the settlement provided "$2

---

[2] Proposed Intervenors point to a different paragraph as evidence of a clear sailing provision. Chen Objections 26; *see* Settlement Agreement ¶ 99 ("The Parties agree to leave the choice of whether to participate in the Settlement up to the Class Members. At no time shall any of the Parties or their counsel discourage Class Members from participating. The Parties and their counsel shall not solicit or otherwise encourage Class Members to submit written objections to the Settlement, to request exclusion or to appeal from the Court's Final Approval Order and Judgment."). They selectively quote from this paragraph and argue that Harvey agreed not to object, opt-out of the settlement or appeal the final approval order; that is not what the paragraph states. Rather, it states that Harvey shall not *solicit* other Class Members to object, opt-out or

million in cash, of which $950,000—more than the class would receive in total cash distribution—was allocated to attorneys' fees." 944 F.3d 1043. By contrast, about $2.5 million will be allocated as attorneys' fees, which is not more than the roughly $5 million that will be distributed to the Class and Aggrieved Employees after all other deductions. *See infra* Section II.B. Further, about $71,000 of the $2 million settlement was allocated as service awards in *Roes*, whereas only $10,000 of the $10.2 million settlement will be allocated as service awards here. 944 F.3d at 1043; *see infra* Section II.C.

The settlement in *Roes* also contained a reverter that returned unclaimed funds to the defendants. No such reversion is included here. At the hearing, Proposed Intervenors argued that the "Expense Fund" is evidence of a reversion. Transcript of Final Approval Hearing Held on February 4, 2020 ("Final Approval Transcript") [Dkt. No. 123] 7:8-11. This "Expense Fund" refers to the portion of the $10.2 million settlement amount, consisting of $1,735,000 that MSSB will allocate to future payments of business expenses. Settlement Agreement ¶ 15. There is no indication that any portion of the Expense Fund will revert back to MSSB. In fact, Parties describe the $10.2 million settlement amount as a non-reversionary settlement amount. *See* Final Approval Mot. 1, 8. I SUSTAIN Lucadano's objection that a heightened scrutiny standard applies here and find that this settlement meets that standard.

### 2.     The Class Settlement Amount is Reasonable

Lucadano contends that the settlement significantly undervalues the released claims as evident in analyses of MSSB's actual exposure, the strength of the claims, and comparator cases. *See* Lucadano Objections 7. He argues that total exposure is significantly higher than Harvey's estimates because Harvey's estimates are based only on his Labor Code section 2802 claim and ignores all other claims. *Id.* For example, the estimate does not include waiting time penalties under section 203 and failure to provide wage statements under section 226. *Id.* He cites to *Maciel v. Bar 20 Dairy, LLC*, No. 1:17-CV-00902-DAD-SKO, 2018 WL 5291969, at *6 (E.D. Cal. Oct. 23, 2018) as an example of when a class and PAGA settlement was rejected because

appeal final approval.

claims were released for no consideration.[3]

Lucadano's reliance on *Maciel* is misguided. The court there did not hold that all claims must be attributed with a value for purposes of evaluating the fairness of a settlement; it denied approval of a settlement that purported to release an added FLSA claim in exchange for no consideration. 2018 WL 5291969, at *6. The court found that plaintiffs "discounted the value of their FLSA claim entirely" because they "sought preliminary approval of the same $450,000 settlement that had been negotiated prior to the inclusion of the FLSA claim." *Id.* Because no additional compensation was negotiated in exchange for the parties' settlement of the FLSA claim, the court found that the settlement did not appear to be a fair and reasonable resolution of a bona fide dispute over FLSA provisions. *Id.* Unlike *Maciel*, the settlement agreement here does not release the added PAGA claim without consideration; the PAGA claim is released for a total of $600,000. *See infra* Section I.B.3.

Harvey did not ignore any claims, but rather made the "reasoned and informed decision to focus on the [section] 2802 claim which is the driver of this case." Plaintiff's Response to Objections to Class Settlement ("Oppo. Lucadano Objections") [Dkt. No. 116] 5. He explains that the section 203 claim for waiting time penalties was devalued because an award requires a finding of willfulness, and there is a good faith dispute here that will preclude such a finding. *Id.* The section 226 claim for wage statements was devalued because "not only is it purely derivative of the section 2802 claim, but also requires a finding that the defendant's actions were 'knowing and intentional.'" *Id.* (quoting Labor Code § 226(e)(1)).

---

[3] Lucadano also asserts that Harvey's discount is inappropriate given that the *Chen* case was on the verge of trial. Lucadano Objections 8. This proposition lacks authority. The eight factors that courts use in evaluating a proposed settlement include "the risk, expense, complexity, and likely duration of further litigation" and "the risk of maintaining class action status throughout the trial." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Rule 23(e)(2)(C)(i) also requires courts to take into account "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). In the Preliminary Approval Order, I noted that relief to the Class and Aggrieved Employees would be faster and more certain than what the Proposed Intervenors offer in their related state court case, which was filed over four years ago. Prelim. Approval Order 8. Although the *Chen* trial was set to begin January 14, 2019 before the state court stayed it, "the trial was for phase 1 of a two phase trial," each with its own set of possible appeals. *Id.* at 8-9. "In short, final approval of this settlement would provide members of the class and the aggrieved employees more certain and expeditious relief." *Id.* at 9.

"If the unconsidered claims are not particularly strong or valuable, such that they're not likely to have materially influenced the overall settlement, counsel's failure to consider the claims would not be a basis for rejecting the agreement." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1038 (N.D. Cal. 2016). For example, in *O'Connor v. Uber Techs., Inc.*, Judge Edward M. Chen agreed that "there were substantial risks as to the breaks claims, minimum wage and overtime claims, and workers' compensation claims, and it was therefore reasonable for Plaintiffs' counsel to assign no or little value to these claims when considering the overall full-verdict value." 201 F. Supp. 3d 1110, 1128-29 (N.D. Cal. 2016); *see also Cotter*, 193 F. Supp. 3d at 1038 (finding that failure to assess value of a particular gratuity claim "does not automatically invalidate the settlement they reached"). That some Labor Code claims are not valued does not automatically invalidate the settlement reached. Harvey persuasively explains why the Labor Code claims pointed out by Lucadano were not factored in his total exposure estimate.

Lucadano also contends that comparator settlements in the brokerage industry show that the settlement is unreasonably low. Lucadano Objections 8-9. He provides the same case cites as in the preliminary approval stage, which I considered and rejected. Prelim. Approval Order 6. His case comparators had higher exposure for the defendants because "they contained claims for unpaid overtime that are not alleged in *Harvey*," and because "they are older and predate changes in the legal landscape that made these types of lawsuits less lucrative." *Id.*; *see also id.* at 4-5 (explaining why Harvey's case citations are better comparators and why the settlement amount is reasonable). I OVERRULE Lucadano's objection as to the class settlement amount.[4]

### 3. Harvey Has Met Rule 23 Requirements

Lucadano argues that Harvey fails to meet Rule 23 requirements because: (1) the plan of allocation is deficient; (2) Harvey fails to provide sufficient information to the court to evaluate conditional class certification; (3) Harvey's counsel are inadequate; and (4) Class Settlement is not

---

[4] Proposed Intervenors raised a new comparator case at the final approval hearing. They argued that the class settlement amount in another case recently settled by Harvey's counsel was much higher than this settlement, but as Harvey's counsel explained, the procedural posture in that case was different because plaintiffs defeated defendant's summary judgment motions, won on appeal, and the class had been certified. Final Approval Transcript 20:17-21:4 and 22:7-9.

### a. Plan of Allocation

Lucadano contends that the plan of allocation is deficient because it does not take contributions to the AFG program into account as well as the estimated 600 class members who signed releases and 1,800 who signed arbitration agreements.  Lucadano Objections 10-11.  His briefing focuses on the first argument, but the second argument became the focus of Proposed Intervenors' oral argument at the final approval hearing.  Both arguments fail.

### i. Contributions to the AFG Program

The AFG program allows employees to elect a certain amount to use for business expenses at the beginning of a calendar year.  Lucadano contends that the plan of allocation is deficient because the claims are based on MSSB's AFG program, yet recovery under the plan is not based on each class members' contributions to AFG but on the amount of time each class member worked during the class period.  Lucadano Objections 10.  He argues that many class members did not participate in the AFG program and therefore have no AFG-based claims.  *Id.*  He states that between 24% and 30% of FAs did not participate in the AFG program in a given year during the class period.  *Id.* at 11 (citing to Declaration of Mark Humenik in Support of Objections by Class Member Matthew Lucadano and LWDA Proxy Tracy Chen in Opposition to Final Approval of Settlement [Dkt. No. 94] ¶ 109).  By contrast, many more FAs contributed a significant amount of money to AFG over the class period; accordingly, Lucadano asserts that a contribution-based allocation of the settlement amount is a better plan of allocation.  *Id.*

Harvey responds that while the AFG program was the driver of this settlement, a tenure-based allocation plan results in a fair settlement because it takes into consideration all unreimbursed business expenses that class members incurred.  Oppo. Lucadano Objections 10.  The settlement takes into account that FAs with longer tenure tend to spend more in business expenses than newer, shorter-term FAs.  *Id.* at 11.  Expenses incurred outside of AFG are very difficult to certify because they are vulnerable to defenses that such expenses are inherently individualistic (and thus not amenable to certification) and neither reasonable nor necessary (and therefore not compensable).  *Id.* at 10.  An allocation based solely on contributions to the AFG

program could also improperly include fraudulent expenses by FAs or inaccurately exclude potentially compensable business expenses that were never submitted under the AFG program. *Id.* at 10-11.

Based on the explanations and reasonable conclusion that longer-tenured FAs incur more business expenses, I conclude that the tenure-based plan of allocation here is fair.

### ii.    Releases and Arbitration Agreements

Lucadano's briefing primarily focuses on his objection that the plan of allocation does not take the AFG contributions into account. He only mentions in passing his concern that the plan of allocation does not differentiate between the 600 class members who signed releases and 1,800 who signed arbitration agreements, on the one hand, and those who did not. Lucadano Objections 11. He asserts that those with releases and arbitration agreements should receive less than those without. This argument became the focus of Proposed Intervenors' argument at the final approval hearing.

At the preliminary approval hearing, Harvey explained that inclusion of the 600 class members who had signed releases and 1,800 class members who had signed arbitration agreements showed the reasonableness of this settlement because those individuals might not otherwise recover (particularly considering those with arbitration agreements are less likely to pursue their claims in arbitration). Transcript of Preliminary Approval Hearing Held on June 12, 2019 ("Prelim. Approval Transcript") [Dkt. No. 70] 31:8-18. Harvey also argued it would be inappropriate to treat different segments of the class differently in their plan of allocation, depending on whether releases or arbitration agreements had or had not been signed. *Id.* at 31:19-22; *see also id.* at 31:23-32:2 ("Who knows why these people . . . would have signed these releases. Perhaps they were . . . attached to promissory notes or something like that where they didn't really have a choice in the matter. So that's not fair to shift money around that way.").

This appeared to me to be a benefit of the settlement to the class. As I stated at the preliminary approval hearing, "[t]he money that [MSSB] has offered and has been accepted [by] Harvey is not a small amount of money for people; and if they are unlikely either to get it because of the releases or unlikely to pursue it because of arbitration given who they are, that's a factor

that weighs in and then . . . the litigation risk of going forward in *Chen* is another thing that I need to consider." Prelim. Approval Transcript 13:2-8. Final approval of this proposed settlement will give compensation to those FAs who might otherwise not recover and "would provide members of the class and the aggrieved employees more certain and expeditious relief." Prelim. Approval Order at 9.

The Proposed Intervenors disagree. They said that they "think it's [] an interesting defect of the settlement that the plan of allocation does not take into account who's arbitration bound and who is bound by a release." Prelim. Approval Transcript. 10:14-16, 11:11-14. While this was not an issue focused on in the Proposed Intervenors' briefs opposing final approval, at the final approval hearing itself they argued that this was a significant defect in the plan of allocation. They claimed that Harvey is "selling out" 40% of the class without arbitration agreements to benefit the 60% with arbitration agreements. Final Approval Transcript 12:20-21. They made a similar argument as to the 20% of the class with releases, arguing that it is problematic that those who have released their class claims be allowed to "participate in this settlement at the exact same rate as someone who did not." *Id.* at 12:22-13:6. Essentially, they claimed that the people who are paying the price for these deficiencies in plan of allocation are the people who have the strongest claims who did not sign an arbitration agreement or a release. *Id.* at 13:14-20.

In support of their newly focused argument, Proposed Intervenors identified *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579 (9th Cir. 2015) as an example of where a class was decertified because it included both arbitration-bound and non-arbitration-bound individuals. Final Approval Transcript 12:10-18. In that late-identified case, the Ninth Circuit held, in a memorandum disposition opinion, that "[t]he district court abused its discretion to the extent it certified classes and subclasses that include employees who signed class action waivers." 596 F. App'x at 579. There, the named plaintiff's arbitration agreement did not contain a class action waiver and counsel did not dispute that those who signed such waivers have potential defenses that named plaintiff would be unable to argue on their behalf. *Id.* Accordingly, the Ninth Circuit found that "[t]o the extent the classes and subclasses include individuals who signed class action waivers, Avilez is not an adequate representative, Fed. R. Civ. P. 23(a)(4), and her claim lacks

13

typicality, Fed. R. Civ. P. 23(a)(3)." *Id.*

Harvey distinguished *Avilez* at the final approval hearing. In this case, there are people who have arbitration agreements and releases within the plan of allocation, as well as those who did not participate in AFG. He emphasized that "it is not practical to try to tease out all those little threads" and persuasively explained that while these factors could pose a serious hurdle to certification, that is "a risk factor here that actually supports this settlement" and shows "why people compromise," and therefore the ultimately reasonableness of the settlement. Final Approval Transcript 26:15-23.

Harvey noted that not all of the arbitration agreements and releases are identical because there were multiple iterations of them which arose in various contexts, *e.g.*, separation of employment, settlement of a claim, etc. Oppo. Lucadano Objections11. "[T]he various versions of releases are further varied by the fact that some are partial releases." *Id.*; *see* Declaration of Edward J. Wynne in Support of Response to Objections to Class Action Settlement [Dkt. No. 116-1] ¶ 4. The result is a mosaic of elements – those with expenses inside and outside of the AFG in varying amounts, diverse arbitration agreements or none at all, assorted releases or not at all, and any combination of the above. Oppo. Lucadano Objections 11.

Given all of these factors, I agree that a tenure-based allocation is a rational and efficient manner of allocation. *Id.* This is not like *Avilez* or *Brecher v. Citigroup Glob. Markets, Inc.*, No. 09-CV-1344-CAB (MDD), 2015 WL 13344782, at *2 (S.D. Cal. Feb. 6, 2015), where the parties were easily able to do an allocation based on whether class members signed releases or not because there was only one version of the release and the settlement only released claims related to business expense claims within the AFG program and not those outside of it. Oppo. Lucadano Objections 11 n.9.

Proposed Intervenors also alluded to a concern that arbitration-bound class members are driving down the overall settlement amount. But the discount applied to the overall settlement amount is not steep. As explained in my Preliminary Approval Order, *Tsyn v. Wells Fargo Advisors, LLC*, is a good comparator. The FAs in that case alleged identical claims for unreimbursed business expenses under Labor Code section 2802 and the challenged business

expense program was similar to MSSB's AFG program. Prelim. Approval Order at 4-5; Order Approving Class-Action and FLSA Settlement, *Tsyn v. Wells Fargo Advisors, LLC*, No. 3:14-cv-2552-LB (N.D. Cal. Nov. 1, 2018) [Dkt. No. 172]. Although *Tsyn* did not involve issues of releases and arbitration agreements, the $9.5 million settlement there is comparable to this $10.2 million settlement. *See* Harvey's Reply in Support of Motion for Preliminary Approval [Dkt. No. 58] 12. There is no evidence that inclusion of the FAs with releases or arbitration agreements has, in fact, driven down the value of the settlement for those without. That no class member objected other than Lucadano is instructive. The tenure-based plan of allocation is fair.

### b. Harvey Provided Sufficient Information Regarding His Potential Conflicts Relevant to his Typicality and Adequacy

Lucadano argues that Harvey fails "to provide sufficient information to the court to review, evaluate or certify the class (or appropriate sub-classes), and the limited information he did provide was inaccurate and misleading." Lucadano Objections 12. In particular, he asserts that the preliminary approval motion and SAC omit critical information about Harvey's work history at MSSB, and the disposition of the FINRA arbitration that MSSB filed against Harvey for his alleged theft of confidential information from the firm, as well as information about the scope of an "initial agreement" reached by the parties in December 2018 before the final settlement and plan of allocation was agreed to. *Id.*

Addressing each in turn, Harvey did provide information about his work history at the preliminary approval stage, which is what led me to conditionally certify the proposed Class. I found Harvey's claims "are typical of the Class Members" and that "Harvey and Class Counsel will fairly and adequately protect the interests of the Class Members." Prelim. Approval Order 9-10. Harvey also provided information about the "initial agreement" reached in December 2018. *See* Declaration of Andrew Livingston in Support of MSSB's Reply in Support of Harvey's Motion for Preliminary Approval [Dkt. No. 59-1] ¶ 28 (explaining that Harvey and MSSB executed a Memorandum of Understanding on December 12, 2018, which "involved a total payment of $9,735,000 ($8 million in cash and $1.735 million in future payments of business expenses) to resolve all class and representative claims for May 14, 2014 to the present").

Following a similar pattern, the third issue – Harvey's FINRA arbitration – was not significantly addressed in Lucadano's objection brief but nonetheless became the focus of Proposed Intervenors' oral argument at the final approval hearing. *See* Lucadano Objections 12 n.9. Proposed Intervenors argued that the Parties have not been forthcoming with information about the FINRA arbitration that MSSB filed against Harvey regarding the alleged theft of confidential information from the firm. Final Approval Transcript 10:5-8. They theorized that MSSB might have made a side agreement to waive or dismiss its claims in FINRA arbitration against Harvey in exchange for this settlement. Final Approval Transcript 10:9-15.

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P 23(e)(3). Here, the Parties have not revealed any side agreement reached between them, much less one that would support an inference that Harvey agreed to an unreasonable settlement of the class claims to resolve his individual FINRA case. MSSB has admitted on the record that the FINRA arbitration is ongoing, and therefore there is no agreement to disclose under to Rule 23(e)(3). *See* MSSB Non-Opposition to Final Approval and Response to Lucadano Objections [Dkt. No. 108] 10 n. 11 ("[T]he FINRA arbitration is ongoing and thus, there is no settlement to disclose pursuant to Rule 23(e)(3)."); *see also* Declaration of Andrew Livingston in Support of MSSB's Non-Opposition to Harvey's Final Approval of Settlement and Response to Objection of Matthew Lucadano and Non-Opposition to Harvey's Motion to Strike Objections of Tracy Chen ("Livingston Decl.") [Dkt. No. 110] ¶ 9; Final Approval Transcript 24:24-25. Lucadano has not shown that Harvey's FINRA arbitration undermines the adequacy of Harvey as a representative for certification of a settlement class.[5]

---

[5] MSSB points out that this argument flies in the face of arguments made by the *Chen* plaintiffs in the state court litigation; they argued that Chen was a suitable representative for PAGA aggrieved employees despite the fact that MSSB filed a FINRA claim against her for fraud, which resulted in her being banned from the financial services industry. *See* MSSB Non-Opposition to Final Approval and Response to Lucadano Objections [Dkt. No. 108] 11.

Harvey also argues that it is not uncommon for named plaintiffs in class actions arising from the securities industry to have other conflicts with their prior employer. Oppo. Lucadano Objections 13. He points to *Brecher v. Citigroup Glob. Markets, Inc.*, in which the court conditionally certified the class and found that the class representative would adequately protect the interest of

### c. Harvey's Counsel Are Adequate

I have already rejected Lucadano's argument that Harvey's counsel are inadequate. *See* Prelim. Approval Order 3 ("Harvey's counsel cannot be classified as ineffectual counsel."); *see also id.* at 10 ("Representative Plaintiff Brandon Harvey and Class Counsel will fairly and adequately protect the interests of the Class Members" and "Class Counsel is qualified to act as counsel for the Representative Plaintiff in his individual and representative capacities."). There was nothing in the final approving briefing or argument that undermined this conclusion.

### d. Class Settlement is the Superior Means to Resolving This Dispute

Finally, Lucadano argues that this class settlement is not a superior means to resolving the Parties' dispute because Proposed Intervenors' interest in maintaining the integrity of their own case warrants the denial of the proposed settlement class in this case. Lucadano Objections 15. But as I noted before, dissatisfaction that the defendant chose to settle with a particular plaintiff is not a legitimate argument to defeat settlement approval. *See* Prelim. Approval Order 2-3; *see also Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2012 WL 5873701, at *4 (S.D. Cal. Nov. 20, 2012) (rejecting a "reverse auction" argument where the intervenor "simply appear[ed] unhappy that his was not the class [defendant] chose to settle with").

All of Lucadano's objections, except for his point that a heightened scrutiny standard applies, are OVERRULED. I have applied heightened scrutiny and find that certification of a settlement class is warranted and that the settlement is fair, reasonable, and adequate.

## B. Chen's Objections to PAGA Settlement

In my previous order denying Proposed Intervenor's motion to intervene, I explained that "[i]t is my job to consider the interest of the state at the final approval stage," so intervention was not necessary to protect the state's interests. Order Denying Proposed Intervenor's Administrative Motion for Inclusion of Information in the Class Notice; Granting Motion to Seal; Denying Motion to Intervene [Dkt. No. 77] 5. I found that "[i]ntervention is [] unnecessary to protect the

---

class members despite owing money to the former employer under a promissory note. *See Brecher v. Citigroup Glob. Markets, Inc.*, No. 09-CV-1344-CAB (MDD), 2015 WL 13344782, at *2 (S.D. Cal. Feb. 6, 2015).

interest of the Proposed Intervenors" because "Lucadano is a class member . . . [who] may object

or opt out," and, therefore, could raise concerns on behalf of the other class members. *Id.* I made

clear that "Chen is not [a class member]" and under "applicable case law, PAGA aggrieved

employees have no ability to exclude themselves or object to the Settlement." *Id.*; Prelim.

Approval Order 13 (citing to *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 436 (9th Cir.

2015) and *Ochoa-Hernandez v. Cjaders Foods*, No. 08-2073, 2010 WL 1340777, at *5 (N.D. Cal.

Apr. 2, 2010)).

Regardless, Chen submits objections to the PAGA-portion of this settlement in her

representative proxy capacity on behalf of the State of California. Harvey moves to strike her

objections because it defies the express language of my previous orders. *See* Plaintiff's Motion to

Strike Objections of Tracy Chen and Request for Permission to Appear at Final Approval Hearing

[Dkt. No. 104] 3. He argues that the objections are an improper motion for reconsideration and

violate Rule 11 such that Chen should be sanctioned for her blatant violation of Civil Local Rule

7-9. *Id.* at 5. Chen responds that she has standing to object to the PAGA settlement because a

non-class member who can show "plain legal prejudice" from a settlement has "standing to object

to it, despite not being [a] member[] of the class." Chen Opposition to Motion to Strike

Objections [Dkt. No. 106] 1 (quoting 4 Newberg on Class Actions § 13:23)). Although she

concedes that the principle of "plain legal prejudice" comes from class action jurisprudence, she

argues that the rationale should also apply in the PAGA representative context.

In her objections to the PAGA-portion of this settlement, Chen argues that: (1) this court

lacks Article III standing over the PAGA claim; (2) Harvey lacks statutory and Article III standing

to maintain the PAGA claim; and (3) the PAGA settlement is unreasonably low. *See* Objections

of Tracy Chen, In Her Representative Proxy Capacity on Behalf of The State of California, To

PAGA Settlement and Request For Permission To Appear At Final Approval Hearing ("Chen

Objections") [Dkt. No. 93]. While Chen may not be allowed to file objections as a PAGA

aggrieved employee who is not a member of the class, I will consider her objections and explain

why I overrule them. Harvey's motion to strike is DENIED and I OVERRULE Chen's objections

as to all three issues.

18

### 1. Article III Jurisdiction over PAGA Claim

Chen claims that I cannot reach the merits of final approval because there is no Article III jurisdiction over the SAC's "expanded PAGA claim," *i.e.*, from April 23, 2013 to May 9, 2017. Chen Objections 10. To clarify what she means by "expanded PAGA claim," I explain the procedural history of this case.

On May 14, 2018, Harvey filed his class action complaint, bringing claims under various Labor Code provisions and California Business & Professions Code section 17200 *et seq*. Dkt. No. 1. A few months later, he filed the First Amended Compliant, adding a PAGA claim for which he sent a notice to the LWDA on May 9, 2018. Dkt. No. 11.

On May 6, 2019, I granted Parties' stipulation to allow Harvey to file the SAC for purposes of settlement only. Dkt. No. 50. On May 20, 2019, Harvey filed the SAC, which stated that the LWDA did not respond to his May 9, 2018 notice. *See* SAC ¶ 53. Harvey also "expanded" his PAGA claim to cover as far back as April 23, 2013. He added an allegation that "[o]n April 23, 2014, written notice of [MSSB's] Labor Code violations was given by an aggrieved employee to the [LWDA]," to which "[t]he LWDA did not respond." SAC ¶ 51.

That aggrieved employee was Tracy Chen. Chen argues that Harvey is not allowed to usurp her PAGA claim in this manner and contends that there is no Article III jurisdiction over the PAGA claim period that extends further back than May 9, 2017, the one-year PAGA limitations period of Harvey's PAGA notice. In other words, she asserts that no jurisdiction exists over the April 23, 2013 to May 9, 2017 PAGA period covered by this settlement. Chen Objections 10.

For the reasons stated below, I find that there is proper supplemental jurisdiction over the expanded PAGA claim.

### a. Supplemental Jurisdiction

The Ninth Circuit has held that PAGA is not sufficiently similar to Rule 23 to establish the original jurisdiction of a federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1124 (9th Cir. 2014). For supplemental jurisdiction to be present under 28 U.S.C. § 1367(a), a state law PAGA claim must be part of the same "case or controversy" as the claim(s) from which the supplemental jurisdiction

19

stems. The same "case or controversy" test involves analysis of: (1) whether the pendant (supplemental) state law claim derives from a "common nucleus of operative fact" as the claim(s) over which the federal court has original jurisdiction, and (2) "such that [plaintiff] would be expected to try them all in one judicial proceeding." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

Chen points out that CAFA is the sole basis pleaded for this court's jurisdiction and that the SAC does not allege any basis to exercise supplemental jurisdiction over Harvey's non-federal and expanded PAGA claim. Chen Objections 6. She argues that Article III does not permit Harvey to bootstrap her injury into federal court for his expanded PAGA claim. *Id.* at 13.

I disagree. There is supplemental jurisdiction over the PAGA claim because the class claims and the PAGA claims derive from a common nucleus of facts and would normally be tried together. That the SAC does not specifically plead supplemental jurisdiction is not fatal to the claim as long as the basis for jurisdiction is clear, which it is here. *See Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161-62 (9th Cir. 2005) (affirming district court's decision that "the existence of federal question jurisdiction was readily discernable from the face of the complaint, and therefore amendment was not necessary to cure [plaintiff's] technical pleading defect").

Harvey alleges that he and his fellow FAs were subject to the same compensation policies and procedures that resulted in the FAs being paid late, not receiving required wage statements, suffering unlawful wage deductions, and incurring business expenses without reimbursement. Plaintiff's Reply to Objections by Tracy Chen, Offered in Support of Motion for Final Approval ("Oppo. Chen Objections") [Dkt. No 119] 3; *see* SAC ¶¶ 19-21, 24-25, 41-43, 47. As a result, he contends that MSSB violated Labor Code sections 201-204, 204.2, 221, 223, 226, 400-410, 1174, and 1174.5. These are the same Labor Code violations for which Harvey seeks civil penalties under PAGA. SAC ¶ 50. The class and PAGA claims therefore derive from a common nucleus of facts, which would normally be tried together.

Courts routinely exercise supplemental jurisdiction over PAGA claims that are based on the same set of facts. *See, e.g.*, *Thompson v. Target Corp.*, No. EDCV-16-00839-JGB (MRWx), 2016 WL 4119937, at *12 (C.D. Cal. Aug. 2, 2016) ("Here, Plaintiff's PAGA and class claims

concern the same misconduct by Defendant and the PAGA claims are therefore properly within the Court's supplemental jurisdiction."); *Vawter v. United Parcel Serv., Inc.*, No. CV 18-1318-RGK-E, 2018 WL 4677583, at \*1 (C.D. Cal. Sept. 26, 2018) (retaining supplemental jurisdiction over PAGA claims related to class claims); *Wellons v. PNS Stores, Inc.*, No. 18-CV-2913 DMS (WVG), 2019 WL 2099922, at \*7 (S.D. Cal. May 14, 2019) (same). PAGA claims are also regularly tried alongside or tethered to Labor Code claims. *See, e.g.*, *Guerrero v Valentino's Rest. Holdings, Inc.*, No. 37-2015-00030224-CU-OE-CTL, 2017 WL 8217034, at \*2 (Cal. Super. Dec. 22, 2017) (trying Labor Code claims and PAGA claims together).

Chen has not provided any cases in which court found that a PAGA claim was not part of the same case or controversy as Labor Code claims pending in the same complaint. But in a footnote, she cites *Arias v. Superior Court*, 46 Cal.4th 969 (2009) to argue that the California Supreme Court has recognized the separate "case or controversy" nature of a PAGA representative claim as distinct from an aggrieved employee's individual claim. Chen Objections 12 n.10. This became the focus of Proposed Intervenors' supplemental jurisdiction argument at the hearing. Final Approval Transcript 16:11-18:23.

Chen has misconstrued the holding in *Arias*. The California Supreme Court held that a judgment in a PAGA representative action does not preclude aggrieved employees from later pursuing individual wage and hour claims founded on the same Labor Code violations because an employee plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." 46 Cal.4th at 986. That case does not address whether there is supplemental jurisdiction over PAGA claims in a class action lawsuit that also brings claims for Labor Code violations. In fact, the Ninth Circuit has affirmed decisions where district courts have exercised supplemental jurisdiction over PAGA claims even though the class claims were dismissed. *See, e.g.*, *Archila v. KFC U.S. Properties, Inc.*, 420 F. App'x 667, 669 (9th Cir. 2011) ("The dismissal of the class claims did not automatically deprive the district court of supplemental jurisdiction over the PAGA claims.")

### b. No Reason to Decline Supplemental Jurisdiction

Chen also argues that I should decline to exercise supplemental jurisdiction over Harvey's

21

PAGA claim. Under section 1367(c), a court may decline to exercise supplemental jurisdiction over a state law claim if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all of the claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). No ground for declining supplemental jurisdiction exists here.

### i. Exercising supplemental jurisdiction over the expanded PAGA claim is not a novel and complex issue of law.

Chen asserts that exercising jurisdiction over the expanded PAGA claim is an issue of first impression. Chen Objections 14. She contends that it raises unprecedented and novel or complex issues of state law, "including determining which of the two competing PAGA plaintiffs has authority to bring a PAGA claim (or bind the State and absent aggrieved employees to a release of civil penalty claims) for the time period spanning April 23, 2013 and May 9, 2017." *Id.* at 15.

As addressed below in Section I.B.2 of this Order, the standing issue is neither novel nor complex. Harvey has statutory standing to maintain his PAGA claim for the entire PAGA period in question. The two PAGA periods involved here also do not raise novel or complex issues because it follows the "sliding scale" approach used by Judge Chen in *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016). As I explained before, Tier 1 of the PAGA period allocates more penalties because there will be no class settlement payments for that period. Prelim. Approval Order 8.

### ii. The PAGA claim does not substantially predominate over the other class claims.

Chen contends that the "expanded PAGA claim . . . 'substantially predominates' over the more limited class claims under CAFA spanning a shorter time period." Chen Objections 15. She does not explain her argument any further and did not raise it at oral argument.

The expanded PAGA claim does not predominate over class claims. Although the expanded PAGA claim involves a slightly longer recovery period than the class claims, Chen does not argue that MSSB's policies were any different during that time period. *See* Oppo. Chen

Objections 4.

Chen's cite to *Duran v. Sephora USA, Inc.*, No. 17-CV-01261-WHO, 2017 WL 4156168 (N.D. Cal. Sept. 18, 2017) is also distinguishable.  In *Duran*, there were three related class actions against Sephora that were coordinated in state court.  *Id.* at *3.  In an effort to stay out of the coordinated proceedings, Duran filed an additional FLSA claim to his five state law claims in order to invoke federal jurisdiction.  *Id.*  I denied supplemental jurisdiction over the state law claims because they predominated over the single FLSA claim.  *Id.*  In contrast, the class claims here predominate because they include all of the Labor Code violations that are incorporated into the derivative PAGA claim, plus additional violations of the Wage Order 4-2011.  *See* SAC ¶¶ 23, 29.  Exercising supplemental jurisdiction over the PAGA claim will allow all of these related issues to be resolved together.

### iii.    The other class claims, over which there is original jurisdiction under CAFA, have not been dismissed.

Exercising supplemental jurisdiction is within the court's discretion.  Courts that have declined to exercise supplemental jurisdiction over PAGA claims have done so because related class claims have been dismissed, which is not the case here.  *See, e.g.*, *Echevarria v. Aerotek, Inc.*, No. 16-CV-04041-BLF, 2019 WL 2503377, at *6 (N.D. Cal. Jun. 17, 2019) (declining, under its discretion, to exercise supplemental jurisdiction over the PAGA claim after the class claims over which it had original jurisdiction had been dismissed); *Archila v. KFC U.S. Properties, Inc.*, 420 F. App'x 667, 669 (9th Cir. 2011) (finding dismissal of plaintiff's class claims did not automatically deprive district court of supplemental jurisdiction over plaintiff's PAGA claim, and, instead, district court had discretion whether to remand PAGA claim to state court).

Even though the class claims have not been dismissed, Chen attempts to argue that "federal jurisdiction is tenuous at best because [Harvey] lacks Article III standing." Chen Objections 15.  Specifically, she asserts that Article III standing is deficient because "(i) Harvey did not participate in AFG until 2017, (ii) did not receive an assignment of the State's (or Chen's) PAGA claim reaching back to April 2013, and (iii) did not exhaust administrative remedies under PAGA concerning many of the violations he now seeks to release."  *Id.* at 15-16.

United States District Court
Northern District of California

First, Harvey does not necessarily lack standing because he did not participate in AFG until 2017 because the SAC allegations and the settlement allocation are based on time worked at MSSB, not AFG participation. *See* Defendant MSSB's Statement of Non-Opposition to Plaintiff's Motion to Strike Objections of Tracy Chen and Request for Permission to Appear at Final Approval Hearing [Dkt. No. 109] 12. Harvey worked at MSSB from 2013 to 2018 and will be receiving payments under the Rule 23 class payment, Tier 1 PAGA payment, and Tier 2 PAGA payment. *See* Livingston Decl. ¶ 12 (stating that Harvey will be receiving $2,085.37, $20.47, $8.98, respectively). Chen's temporal standing arguments have no merit. The second and third arguments are also meritless, as discussed below in Section I.B.2. of this opinion.

### iv. No other compelling reasons exist to decline supplemental jurisdiction over the PAGA claim.

Chen argues that there is substantial risk that Harvey's PAGA claim is subject to future dismissal because courts are divided over whether a PAGA representative claim can survive in federal court absent certification under Rule 23, and the Ninth Circuit likely will resolve this split of authority in *Canela v. Costco Wholesale Corp.*, Case No. 18-16592. Chen Objections 16; *see Canela v. Costco Wholesale Corp.*, No. 13-CV-03598-BLF, 2018 WL 2331877, at *2 (N.D. Cal. May 23, 2018), *certificate of appealability granted,* No. 13-CV-03598-BLF, 2018 WL 3008532 (N.D. Cal. Jun. 15, 2018). Depending on the outcome in *Canela*, she contends that Harvey's PAGA claim may have to be dismissed or settlement approval may have to be revisited if the Ninth Circuit holds that PAGA actions must comply with Rule 23 in order to proceed in federal court. *Id.* at 16.

At issue in *Canela* is whether a plaintiff can maintain a PAGA-only action in federal court without certifying the class under Rule 23. Here, however, Harvey has not brought a PAGA-only action; instead he has brought a Rule 23 action asserting multiple state law claims, including various Labor Code claims, as well as a PAGA claim. I have conditionally certified the Class here and use my discretion to exercise supplemental jurisdiction over the PAGA claim. There is no need to grapple with whether the PAGA claim satisfies Rule 23 certification requirements or if

there is CAFA jurisdiction over the PAGA claim.[6]

Supplemental jurisdiction exists over the PAGA claim and I find no compelling reason to decline supplemental jurisdiction. Chen's objection as to lack of Article III jurisdiction over the PAGA claim is OVERRULED.

### 2.    Harvey Has Standing Over the PAGA Claim

#### a.    Statutory Standing

Chen argues that the PAGA release in this settlement is overbroad because it improperly expands the one-year limitations period to over five years. Chen Objections 17. She contends that Harvey lacks statutory standing to pursue or release an expanded PAGA representative claim pre-dating May 9, 2017, specifically from April 23, 2013 to May 9, 2017, because he cannot adopt Chen's PAGA notice to substitute for his own failure to timely exhaust administrative remedies. *Id.* However, the cases she cites to for this proposition discuss a different issue. *Id.* at 17 n. 14. Those cases are about PAGA claims that are time-barred because the underlying Labor Code violations contain a provision that requires plaintiffs to start administrative proceedings with the LWDA within one year of the alleged violation; they do not address whether a PAGA representative plaintiff can pursue claims before the one-year limitations period calculated based on the date the PAGA notice is sent to the LWDA.

Parties are allowed to settle PAGA claims even if plaintiffs never exhaust administrative remedies or allege it in their complaints.[7] If parties can release PAGA claims without having

---

[6] *Canela* was argued on January 6, 2020, and on January 9, 2020, the Ninth Circuit ordered the parties to brief whether the PAGA-only case was properly removed under CAFA in the first place. *See* Declaration of James F. Clapp in Support of Plaintiffs' Reply to Objections by Tracy Chen [Dkt. No. 119-1] ¶ 3 & Ex. 2.

[7] *See Waisbein v. UBS Fin. Servs. Inc.*, No. C-07-2328 MMC, 2007 WL 4287334, at *3 (N.D. Cal. Dec. 5, 2007) (release of Labor Code and PAGA claims in earlier settlement agreement barred later PAGA action even though original plaintiffs never exhausted administrative remedies); *Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 587 (2010) (release of "all claims" included PAGA claims even though plaintiffs did not exhaust administrative remedies or allege PAGA in their complaint); *Moody v. Charming Shoppes of Del., Inc.*, No. C 07-6073 MHP (JL), 2009 WL 10699672, at *15 (N.D. Cal. Dec. 18, 2009) ("[A]lthough PAGA was not [pleaded] in the operative complaint, nor were the administrative remedies exhausted, PAGA penalties can still be properly and validly included in the release."); *see also Smith v. CRST Van Expedited, Inc.*, No. 10-CV-1116-IEG (WMC), 2012 WL 5873701, at *3 (S.D. Cal. Nov. 20, 2012) (finding it is "well within this court's authority to release derivative claims, even if they are not expressly asserted in

United States District Court
Northern District of California

asserted them in the underlying lawsuit or otherwise exhausting PAGA's administrative remedies,

then it follows that Harvey and MSSB may agree to extend an already valid PAGA release time

period.

Of all the cases that Harvey and MSSB point to, *Brooks v. Life Care Ctrs. of Am.* is most

similar to the situation here. No. SACV 12-00659-CJC(RNBx), 2015 WL 13298569, at *7 (C.D.

Cal. Oct. 19, 2015). In that case, the court granted final approval of a settlement and overruled the

objections of two people who were plaintiffs in a separate action brought against the same

defendant for Labor Code violations. Objectors argued that the settlement was unfair because of

procedural and substantive deficiencies with the PAGA claims; specifically, they argued that the

PAGA notices that the plaintiffs submitted to the LWDA contained "insufficient legal and factual

background or that their notices . . . were in some respect untimely." *Id.* But the court found that

these technical deficiencies did not prevent final approval of the settlement because "it is settled in

California that parties can settle PAGA claims even when those claims were not asserted at all."

*Id.* Therefore, "[i]f parties can release PAGA claims without asserting them at all, it is indeed

difficult to see how this settlement is unfair because of the alleged technical deficiencies with the

PAGA claims at issue." *Id.*[8]

Contrary to Chen's contention, PAGA's administrative exhaustion requirement is designed

to protect the interests of the LWDA and defendants, not PAGA plaintiffs. Labor Code section

2699.3 requires a PAGA plaintiff to serve a pre-litigation notice "to give [LWDA] a timely

_____

the complaint"); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("[A]
federal court may release not only those claims alleged in the complaint, but also a claim based on
the identical factual predicate as that underlying the claims in the settled class action even though
the claim was not presented and might not have been presentable in the class action.").

[8] MSSB points out that *Chen* counsel themselves have settled cases that release claims predating
their one-year PAGA limitation period. Defendant MSSB's Statement of Non-Opposition to
Plaintiff's Motion to Strike Objections of Tracy Chen and Request for Permission to Appear at
Final Approval Hearing [Dkt. No. 109] 10 n.12; *see* Request for Judicial Notice [Dkt. No. 60-60],
Ex. 34 (copy of joint motion for preliminary approval of class action settlement in *Wolf v. The
Permanente Medical Group*, No. 3:17-cv-05345 (N.D. Cal. Mar. 29, 2018) where settlement
purports to release all Labor Code claims, including PAGA for class period beginning on
September 14, 2013, but PAGA limitations period only reached back to July 21, 2016, one year
prior to the LWDA letter); *see* Declaration of Andrew Livingston in Support of MSSB's Reply in
Support of Harvey's Motion for Preliminary Approval of Class Action Settlement [Dkt. No. 59-1]
¶ 65.

opportunity to investigate the alleged violation."  *Garnett v. ADT, LLC*, 139 F. Supp. 3d 1121, 1127 (E.D. Cal. 2015).  Chen's pre-litigation notice gave the LWDA the opportunity to investigate violations since April 23, 2013, but the LWDA declined to do so.  The LWDA would not be prejudiced if Harvey is allowed to maintain a PAGA claim spanning the entire period.  In fact, pursuant to Labor Code section 2699(l)(2), *Harvey* class counsel has provided the LWDA with a copy of the settlement and the LWDA has not objected.  Livingston Decl. ¶ 11; *see also* Wynne Decl. ¶ 34.

Likewise, the ordinary temporal scope of a PAGA claim is defined by the one-year limitations period but defendants may waive this statute of limitations affirmative defense.  *See* Cal. Code Civ. Proc. § 340(a); *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008).  By entering into an agreement that provides recovery for a period starting on April 23, 2013, MSSB has, for purposes of settlement, waived the statute of limitations defense.  Release of the expanded PAGA period was also done for consideration because MSSB agreed to provide an additional $500,000 to release PAGA claims in the Tier 1 period between April 23, 2013 and May 9, 2014.  Declaration of Edward J. Wynne in Support of Motion for Preliminary Approval of Class Action Settlement [Dkt. No. 48-2] ¶¶ 25, 29.[9]

### b.      Article III Standing

Harvey also has Article III standing concerning the PAGA claim.  "PAGA actions are basically *qui tam* suits, where plaintiffs are 'deputized' by the government to pursue civil penalties when employers have violated California labor laws.  Thus, based on an assignment theory, plaintiffs bringing claims under PAGA in a representative capacity have Article III standing." *Varsam v. Lab. Corp. of Am.*, 120 F. Supp. 3d 1173, 1182 (S.D. Cal. 2015); *see also Sakkab*, 806 F.3d at 435.

---

[9] Chen's cites to *Mendoza v. Nordstrom, Inc.*, 865 F.3d 1261, 1265 (9th Cir. 2017) and *Estate of Harrington v. Marten Transp.*, No. 15 Civ. 1419, 2017 WL 5513635, at *5-7 (C.D. Cal. Nov. 6, 2017) are inapposite because those cases are about attempts to substitute PAGA plaintiffs.  Chen Objections 19.  In both cases, courts denied substitution because the plaintiff either never exhausted administrative remedies as to *any* time period or because claims were time-barred as the notices were sent more than a year after employment termination.

United States District Court
Northern District of California

Chen argues that Harvey is only "deputized" to pursue claims from May 9, 2017 onward, whereas she is "deputized" to pursue claims from April 23, 2013 onward.  Chen Objections 8.[10]  Again, courts allow class settlements over PAGA claims even when plaintiffs have not met the administrative exhaustion requirement, and thus have not formally "deputized" themselves at all.  If plaintiffs can settle PAGA claims for which they have not been "deputized", it follows that Harvey can settle PAGA claims that extends beyond the period for which he deputized himself.

Chen is not the only one with authority to bring a PAGA claim for the period between April 23, 2013 and May 9, 2017.  PAGA does not have any limits on how many parallel PAGA actions may proceed simultaneously and there is no first-filed rule.  *See Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1012 (N.D. Cal. 2016) (finding PAGA action was not barred by first-to-file doctrine where another private plaintiff had already brought suit against the same employer in a representative capacity).

Harvey has both statutory and Article III standing over the PAGA claim.  Chen's objection regarding Harvey's standing over the PAGA claim is OVERRULED.

### 3.     The PAGA Settlement Amount is Reasonable

Chen's complaints regarding the PAGA-portion of the settlement amount are largely repetitive of what she argued and I addressed at the preliminary approval stage.  First, her estimate assumes that Harvey would have prevailed on every alleged Labor Code violation and received the full statutory penalty for each violation.  Similar to Lucadano's objections regarding the class settlement amount, she argues that Harvey undervalues the PAGA claim because his calculation is based on just one of the Labor Code violations at issue.  Chen Objections 21, 23.  As explained above in Section I.A.2, "[i]f the unconsidered claims are not particularly strong or valuable, such that they're not likely to have materially influenced the overall settlement, counsel's failure to consider the claims would not be a basis for rejecting the agreement."  *Cotter*, 193 F. Supp. 3d at

---

[10] Chen also argues that Harvey lacks Article III standing because he did not suffer an "injury-in-fact" that can be redressed by an award of civil penalties reaching back to April 23, 2013.  Chen Objections 8.  As discussed in Section B.1.b.iii. of this opinion, Harvey has Article III standing to pursue these claims because he worked at MSSB from 2013 to 2018 and will be receiving payments under the Rule 23 class payment, Tier 1 PAGA payment, and Tier 2 PAGA payment. *See* Livingston Decl. ¶ 12.

28

1038.

Second, she claims that Harvey erroneously calculates MSSB's PAGA liability for inaccurate wage statements under Labor Code section 226. Chen Objections 22. She argues that even if MSSB's wage statement violations are considered derivative of its section 2802 claims, MSSB's liability for those wage statement violations trigger a $250 per pay period penalty and not the $100 default that Harvey applied in his calculation. *Id.*

Civil penalties for violations of section 226(a) are available under section 226(e)(1), calculated at the default $100 per pay period penalty, or under section 226.3, calculated at the heightened $250 per pay period penalty. Cal. Labor Code § 226(e)(1); Cal. Labor Code § 226.3. The heightened penalty under section 226.3 is triggered only where the employer failed to provide any wage statements or to keep records at all, rather than fail to provide a compliant wage statement. *See, e.g.*, *Finder v. Leprino Foods Co.*, No. 1:13-CV-2059 AWI-BAM, 2015 WL 1137151, at *6 (E.D. Cal. Mar. 12, 2015) (finding requirements of section 226.3 are different than that of section 226(a)); *York v. Starbucks Corp.*, No. CV 08-07919 GAF (PJWx), 2012 WL 10890355, at *9 (C.D. Cal. Nov. 1, 2012) ("Plaintiff alleges only that relevant information was missing from her wage statements, not that Defendant failed entirely to furnish wage statements."). Harvey's SAC alleges that MSSB "willfully, intentionally and knowingly did not provide Plaintiff and other Financial Advisors with accurate itemized statements"; it does not allege that MSSB did not provide wage statements at all. SAC ¶ 20. Therefore, using the default amount of $100 per pay period is reasonable in this settlement context.

As I explained before, the "PAGA payment of $600,000 is also consistent with (or indeed higher than) the amounts awarded by other courts." Prelim. Approval Order 7. The two-tiered PAGA settlement is calculated using a "sliding scale" approach to PAGA penalties because this is a hybrid settlement that includes a Rule 23 claims and a PAGA claim. *Id.* $500,000 is allocated to the Tier 1 PAGA period between April 23, 2013 and May 9, 2014, representing a recovery of $18.02 per pay monthly pay period and roughly $228 per employee during that time. *Id.* at 8. $100,000 is allocated to the Tier 2 PAGA period that spans from May 9, 2014 to September 5, 2019. *Id.* The recovery under Tier 2 is lower because aggrieved employees in this tier also fall

within the class period and would recover from the larger cash payment amount in the settlement. *Id.*

Chen's cite to the higher PAGA settlement amount in *Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1072-73, 1109 (N.D. Cal. 2019) is also distinguishable "because of its procedural posture (an award after a bench trial) and the number of employees involved (between 51,824 and 75,791 aggrieved employees, depending on the violation)." Prelim. Approval Order 7. I OVERRULE Chen's objection as to the PAGA settlement amount.

Having reviewed each and every objection made by only two objectors to this settlement, Lucadano's and Chen's objections are OVERRULED. I apply the heightened scrutiny standard and find that the terms of this settlement are fair, reasonable and adequate to the Class and to each Class Member and Aggrieved Employee. Final approval of the settlement is GRANTED.

## II.     HARVEY'S AND PROPOSED INTERVENORS' MOTIONS FOR ATTORNEYS' FEES, COSTS AND SERVICE PAYMENTS

### A.     Entitlement to Fees

Proposed Intervenors argue that they are entitled to fees under state law principles governing fee and cost awards to prevailing parties or alternatively under the federal common law's "common fund doctrine". *See* Tracy Chen and Matthew Lucadano Motion for Award of Attorneys' Fees, Costs, and Service Awards ("Proposed Intervenors' Fees Mot.") [Dkt. No. 86] 6-7. Specifically, they contend that they are entitled to fees under various Labor Code sections, the PAGA's attorneys' fees provision in Labor Code § 2699(g)(1), and California Code of Civil Procedure section 1021.5. Harvey and MSSB disagree under both state and federal law.

Normally, "a federal court sitting in diversity applies the law of the forum state regarding an award of attorneys' fees." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 883 (9th Cir. 2000). Neither party squarely addresses whether state or federal law applies here, but I find Proposed Intervenors are entitled to a portion of the fees under either standard.

#### 1.     Entitlement Under California Rules

##### a.     California Civil Code Section 1021.5

California's private attorney general fees provision, California Code of Civil Procedure

section 1021.5, permits an attorneys' fee award "to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest." Cal. Civ. Proc. Code § 1021.5; *see Laffitte v. Robert Half Int'l Inc.*, 376 P.3d 672, 682 (Cal. 2016) (describing section 1021.5 as "codifying the private attorney general doctrine"). Section 1021.5 provides that "[u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . and (c) such fees should not in the interest of justice be paid out of the recovery, if any." Cal. Civ. Proc. Code § 1021.5.

As a threshold issue, Harvey argues that only parties can seek fees and unnamed class members, like Lucadano, who object to a settlement cannot be considered a party for purposes of section 1021.5. Plaintiff Brandon Harvey's Opposition to Motion for Award of Attorneys' Fees, Costs and Service Awards ("Oppo. Proposed Intervenors' Fees Mot.") [Dkt. No. 99] 16-17. But "[i]n order to effectuate the policy of Code of Civil Procedure section 1021.5, courts take 'a broad, pragmatic view of what constitutes a 'successful party.'" *People v. Investco Mgmt. & Dev. LLC*, 22 Cal. App. 5th 443, 458 (2018) (quoting *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 565 (2004)); *see Sharif v. Mehusa, Inc.*, 241 Cal. App. 4th 185, 192 (2015) ("In the absence of legislative direction in the attorney fees statute, the courts have concluded that a rigid definition of prevailing party should not be used."). Proposed Intervenors need not be "parties" in the strict sense in order to obtain fees under section 1021.5. *See Investco*, 22 Cal. App. 5th at 458-59 (finding formal intervention unnecessary for objectors to seek fees and concluding that trial court did not abuse its discretion in finding that objectors satisfied section 1021.5). *See infra* Section III.

Proposed Intervenors meet all three elements under section 1021.5 to obtain fees. First, they have provided a significant benefit to the general public or a large class of persons. Over four years of litigation plowed the ground for this settlement between Harvey and MSSB. *Chen* counsel amassed substantial evidence of Labor Code violations and exerted litigation pressure on

MSSB by successfully defeating summary adjudication and overcoming various other hurdles to get to the brink of trial.

Second, the LWDA did not pursue the case and *Chen* counsel undertook a significant financial burden to litigate these claims on a contingency basis over many years. *See Conservatorship of Whitley v. Maldonado*, 50 Cal. 4th 1206, 1211 (2010) ("[T]he purpose of section 1021.5 is . . . to compensate with attorney fees . . . all litigants and attorneys who step forward to engage in public interest litigation when there are insufficient financial incentives to justify the litigation in economic terms.").

Third, Proposed Intervenors will not be taking away from the fund because, as described below, the total fees that I allocate in this case do not exceed the amount noticed to the class. Accordingly, Proposed Intervenors are entitled to a portion of the fee award under section 1021.5.

That said, Harvey deserves the greater portion of the fees. While Proposed Intervenors invested many hours and years of their lives to pursue this litigation, the *Chen* trial, which was set to begin on January 14, 2019, was only for phase 1 of a two-phase trial. Prelim. Approval Order 8. Phase 1 would determine whether the *Chen* plaintiffs were aggrieved under PAGA; assuming that phase 1 appeals were exhausted in their favor, then phase 2 would commence as a representative action and, if successful, might also lead to two rounds of appeals. *Id.* at 9. Moreover, while I cannot evaluate the confidential settlement positions taken by the parties in *Chen*, I do know that mediation was not successful in *Chen*, that the *Chen* plaintiffs took an aggressive posture concerning their damages in litigation, and that the two phase trial with the potential of an appeal in between and at the end stood in the way of a recovery to class members here. On the other hand, Harvey negotiated a fair, reasonable and adequate settlement for the class after arms-length litigation and mediation. The Proposed Intervenors were several years away from benefiting the class through litigation when Harvey reached an agreement.

**b.      California Labor Code Provisions**

Proposed Intervenors also argue that they are entitled to fees under certain sections of the Labor Code. Proposed Intervenors' Fees Mot. 11. Specifically, they contend that they are entitled to fees under California Labor Code sections 218.5(a), 226(e)(1) and 2802(c)), as well as under

PAGA's attorneys' fees provision in Labor Code section 2699(g)(1). *Id.* When considering prevailing party status under any of the above Labor Code provisions, "a rigid definition of prevailing party should not be used." *Donner Mgmt. Co. v. Schaffer*, 142 Cal. App. 4th 1296, 1310 (2006). Instead, a court should examine the question based on a pragmatic assessment of which party succeeded "on a practical level." *Olive v. Gen. Nutrition Ctrs., Inc.*, 30 Cal. App. 5th 804, 824 (2018). This evaluation requires consideration "of the extent to which each party has realized its litigation objectives, whether by judgment, settlement, or otherwise." *Santisas v. Goodin*, 17 Cal. 4th 599, 622 (1998).

Proposed Intervenors and Harvey agree that the "prevailing party" element in these Labor Code provisions is the same as the "successful party" element in California Civil Code section 1021.5. Proposed Intervenors' Fees. Mot. 13; Oppo. Proposed Intervenors' Fees Mot. 19. Proposed Intervenors are prevailing parties and are entitled to fees under the Labor Code sections referenced above.

### 2. Entitlement to Fees Under the Common Fund Doctrine

If there is no contractual or statutory basis to award attorneys' fees in a class action case, a court may rely on the "common fund doctrine," a traditional equitable doctrine "rooted in concepts of quasi-contract and restitution." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). Although there is a line between incidentally benefitting the class and substantially benefitting it, Proposed Intervenors have crossed that line.

Harvey argues that Proposed Intervenors misstate the test for entitlement for fees under the common fund theory because the test is not just who confers a benefit to the class, but "whether attorneys' specific services benefits the fund – whether they tended to *create, increase, protect or preserve the fund*." *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994) (citation omitted) (emphasis added). Harvey contends that Proposed Intervenors do not meet this standard because they have been attacking this settlement since the start. Oppo. Proposed Intervenors' Fee Mot. 11.

The standard is not as narrow as Harvey suggests. The Ninth Circuit in *Rodriguez v. Disner* made clear that the standard is *either* increase the fund *or* otherwise substantially benefit it.

United States District Court
Northern District of California

688 F.3d 645, 652 (9th Cir. 2012).  It recognized that "[u]nder certain circumstances, attorneys for objectors may be entitled to attorneys' fees from the fund created by the class action litigation." *Id.* at 658.  It remanded to the district court "to reconsider the extent to which Objectors added value *that increased the fund or substantially benefitted the class members*, and to award attorney's fees accordingly."  *Id.* at 652 (emphasis added).  Even though Proposed Intervenors are objectors, I find they are entitled to a portion of the fees for the benefits they have provided to the settlement.

Whether under section 1025.1, the Labor Code provisions or the common fund doctrine, I find that Proposed Intervenors are entitled to a portion of the attorneys' fees, costs and service awards.

**B.    Calculated Attorneys' Fees and Costs**

The class was notified that 25% of the settlement amount was preliminarily approved for fees, with an additional $35,000 in costs, for a total of $2,593,750 to allocate for fees and costs.  From that total, I approve *Harvey*'s counsel costs of $24,506.37 and *Chen*'s counsel costs of $186,603.25, leaving $2,382,640.38 to be allocated for fees.  For the reasons I have described, *Harvey*'s counsel deserves a greater portion of the fees than *Chen*'s counsel given that they were able to achieve this settlement with MSSB, so of the settlement amount *Harvey*'s counsel is awarded 13% and *Chen*'s is awarded 12%.  That results in $1,238,973 for *Harvey*'s counsel, a 1.78x multiplier from their lodestar.   *Chen*'s counsel receives $1,143,667.38, a 0.22x multiplier from their lodestar.  In light of the circumstances in this matter, I find that this is the fairest allocation of fees from the perspective of the class.

**C.    Calculated Service Payments**

Harvey requests $10,000 service award, and the *Chen* plaintiffs, Chen and Lucadano, seek a portion of that award too.  I grant the service awards of $3,333.34, $3,333.33, and $3,333.33 to Chen, Lucadano, and Harvey, respectively, for a total of $10,000 in aggregate.

**III.    PROPOSED INTERVENORS' MOTION TO INTERVENE**

I find that Proposed Intervenors are entitled to a certain portion of the attorneys' fees, costs and service awards, but it is unclear whether they need to formally intervene in order to seek fees.

Proposed Intervenors explain that they moved to intervene for the limited purposes of receiving fees "out of an abundance of caution, although arguably intervention is not required." Proposed Intervenors' Fee Mot. 16, n.9; *see* Proposed Intervenors' Notice of Motion and Motion to Intervene [Dkt. No. 85].

*People v. Investco Mgmt. & Dev. LLC* supports the contention that "clearly interested parties" are not required to formally move to intervene to obtain attorneys' fees under section 1021.5 where the attorneys' "successes [are] related to the objective of" the action." 22 Cal. App. 5th 443, 458-59 (Ct. App. 2018). In *Investo*, defrauded investors specially appeared in an already-settled securities fraud action to challenge the settlement structure. *Id.* at 448. They sought attorneys' fees under section 1021.5 after achieving substantive changes to the judgment and order. *Id.* at 459. The court found that the failure of investors to formally intervene in the underlying securities fraud action did not preclude a fee award. *Id.* Formal intervention was not required because "respondents were successful in causing substantive changes to be made to the settlement," and "[t]hese successes were related to the objective of the [underlying] action because, in the court's reasonable view, they provided better protections to the victims of the securities fraud." *Id.*

As discussed above, I find that Proposed Intervenors are entitled to a portion of fees because they did play a role in driving MSSB to the table with Harvey, which ultimately provided a better and faster protection for the class. It is unclear whether intervention is required, but if it is, I GRANT Proposed Intervenor's motion to intervene for the limited purpose of receiving fees.[11]

---

[11] Harvey argues that I do not have jurisdiction to hear Proposed Intervenors' second motion to intervene because Proposed Intervenors filed a notice of appeal to my order denying their first motion to intervene, which is currently pending before the Ninth Circuit, Case No. 19-16955. *See* Opposition to Motion to Intervene [Dkt. No. 100] 4; Notice of Appeal [Dkt. No. 78]. MSSB argues that the Proposed Intervenors' motion is an improper motion for reconsideration. *See* MSSB's Opposition to *Chen* Motion to Intervene and Motion for Award of Attorneys' Fees, Costs, and Service Awards [Dkt. No. 103] 7. But Proposed Intervenors' two motions to intervene do not overlap. Their first motion was limited to challenging the substance of the settlement, and their second motion is limited to seeking attorneys' fees, costs and service awards. I have jurisdiction over this second motion to intervene, which is not a motion for reconsideration.

## IV.    PROPOSED INTERVENORS' MOTIONS TO SEAL

The Proposed Intervenors seek to file the following under seal: (i) portions of the Objections of Matthew Lucadano to Class Action Settlement; (ii) portions of the Objections of Tracy Chen, in Her Representative Proxy Capacity on Behalf of the State of California, to PAGA Settlement and Request for Permission to Appear at Final Hearing; (iii) portions of the Declaration of Mark Humenik in Support of Objections by Class Member Matthew Lucadano and LWDA Proxy Tracy Chen in Opposition to Final Approval of Settlement; (iv) Exhibits 14, 15, and 16 to the Declaration of Mark Humenik in Support of Objections by Class Member Matthew Lucadano and LWDA Proxy Tracy Chen in Opposition to Final Approval of Settlement; and (v) Exhibits 1, 2, and 3 to the Declaration of Jahan C. Sagafi in Support of Motion to Intervene and Motion for Award of Attorneys' Fees, Costs, and Service Awards Reply Briefs. *See* Objectors' Administrative Motion for Leave to File Under Seal Materials Related to Objections of Tracy Chen and Matthew Lucadano [Dkt. No. 91]; Proposed Intervenors' Administrative Motion for Leave to File Under Seal Materials Related to Motion to Intervene and Motion for Award of Attorneys' Fees, Costs, and Service Awards Reply Briefs [ Dkt. No. 111].  They state that portions of these documents and exhibits contain information designated as confidential by MSSB pursuant to the stipulated protective order in *Chen*.

Where information is submitted in connection with a pleading that "is more than tangentially related to the merits," the compelling justifications standard must be met to seal that information.  *Ctr. for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1103 (9th Cir. 2016). The information at issue here – information submitted in support of the Proposed Intervenors' objections to the motion for final approval as well as their motion for fees and motion to intervene – is on its face related to the merits of the matter and dispositive issues before the Court; whether to award fees to the Proposed Intervenors and approve the settlement.  *See also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006) (drawing distinctions between materials submitted in support of non-dispositive motion and materials submitted in support of dispositive motions).

MSSB filed a declaration in support of the motion to seal.  Declaration of Katherine Burns

in Support of Motion to Seal ("Burns Decl.") [Dkt. No. 95]; Declaration of Katherine Burns in Support of Motion to Seal [Dkt. No. 115]. It represents that the information at issue was designated confidential in *Chen* and should remain under seal because it is confidential and proprietary information regarding its compensation structures and commission policies, release of which could be prejudicial to MSSB's business or operations or would violate the privacy interests of third-parties. Burns Decl. ¶¶ 4-5. The detailed declaration in support provides adequate justification to meet the compelling justification standard for purposes of sealing information submitted in conjunction with the Proposed Intervenors' objections to the final approval motion and their motion for attorneys' fees, costs and service awards. The administrative motions to seal are GRANTED.

## CONCLUSION

For the reasons stated above, I OVERRULE Lucadano's objections to the class settlement, except for his objection that a heightened scrutiny standard applies here (which I have applied). Assuming that I can address Chen's objections as a PAGA aggrieved employee, I DENY Harvey's motion to strike her objections and I OVERRULE Chen's objections. I GRANT Harvey's motion for final approval of the settlement and GRANT in part both motions for attorneys' fees, costs, and service awards to be divided among the *Harvey* counsel and parties and *Chen* counsel and parties. Assuming intervention is necessary for Proposed Intervenors to seek fees, I GRANT their motion to intervene.

**IT IS SO ORDERED.**

Dated: March 3, 2020

William H. Orrick
United States District Judge