JAMES F. CLAPP (145814)
jclapp@clapplegal.com
MARITA MURPHY LAUINGER (199242)
mlauinger@clapplegal.com
CLAPP & LAUINGER LLP
701 Palomar Airport Road, Suite 300
Carlsbad, California 92011
Tel:   760-209-6565 ext. 101
Fax:  760-209-6565

EDWARD J. WYNNE (165819)
ewynne@wynnelawfirm.com
GEORGE R. NEMIROFF (262058)
gnemiroff@wynnelawfirm.com
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Facsimile: (415) 461-3900

Attorneys for Plaintiff
BRANDON HARVEY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA- SAN FRANCISCO DIVISION

| | |
|---|---|
| BRANDON HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN STANLEY SMITH BARNEY LLC,<br><br>Defendants. | CASE NO.   3:18-cv-02835<br><br>**PLAINTIFF BRANDON HARVEY'S OPPOSITION TO OBJECTORS' MOTION FOR DENIAL AND DISGORGEMENT OF FEES**<br><br>Date:   December 4, 2024<br>Time:  2:00 p.m.<br>Ctrm:  2, 17th Floor<br><br>Judge: Hon. William H. Orrick |

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................. 1

II.    THE MOU DOES NOT PROVE HARVEY OR CLASS COUNSEL HAD A CONFLICT OF INTEREST, AN ACCUSATION THE COURT HAS PREVIOUSLY REJECTED ................................................. 6

       A.  Applicable Law Regarding Conflicts of Interest .............................. 7

       B.  The MOU Did Not Create a Conflict Because It Was Unenforceable and Quickly Superseded ........................................... 9

       C.  The Dismissal Provision in the MOU Had No Impact on Negotiation of the Class Terms ............................................... 11

       D.  Any Conflict Created by the MOU Was Temporary, Inadvertent, Voluntarily Cured, and Did Not Harm the Class ............................. 13

III.   HARVEY DID NOT MISLEAD THE COURT ABOUT THE MOU ................ 15

       A.  The Parties Identified the MOU as Required by Rule 23(e)(3) ..................... 15

       B.  Harvey Had No Duty to Produce the MOU .................................... 16

       C.  Everything Class Counsel Told the Court About the MOU Was True ........... 17

       D.  It Made Sense to Postpone the Arbitration Pending Settlement Approval ..... 17

IV.    OBJECTORS HAVE WAIVED ANY RIGTHT TO FILE THIS MOTION ....... 18

V.     OBJECTORS ARE NOT ENTITLED TO RELIEF UNDER RULE 60(b) ......... 19

           1.  Objectors Have Failed to Specify the Grounds for Relief ....................... 19

           2.  The Motion is Not Timely ...................................................... 20

           3.  Objectors Cannot Satisfy Any Subsection of Rule 60(b).......................... 21

VI.    OBJECTORS ARE NOT ENTITLED TO RELIEF UNDER RULE 60(d)(3) OR THE COURT'S EQUITABLE POWER ............................................ 22

i

A.  Objectors Have Not Met Their Heavy Burder for Obtaining Relief Under Rule 60(d)(3) ................................................................................................. 22

B.  Objectors Have Failed to Prove the Court Should Exercise Its Equitable Power ...................................................................................................................... 22

VII.    THE COURT SHOULD STRIKE THE HUMENIK DECLARATION .............. 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3    *Albert D. Seeno Constr. Co. v. Aspen Ins. Uk Ltd.*
    2020 U.S. Dist. LEXIS 192418 (N.D. Cal. Oct. 16, 2020) .................................... 16

4
    *Ashford v. Steuart*
5        657 F.2d 1053 (9th Cir. 1981) ....................................................................... 20

6    *Boring v. Nationstar Mortg.*
    2014 U.S. Dist. LEXIS 1706 (E.D. Cal. Jan. 6, 2014) .................................... 19

7    *Brecher v. Citigroup Glob. Markets*
8        2015 U.S. Dist. LEXIS 194128 (S.D. Cal. Feb. 6, 2015) .................................... 7

9    *Casa Herra v. Beydoun*
    32 Cal.4th 336 (2004) ................................................................................. 11

10    *Cassidy v. Tenorio*
    856 F.2d 1412 (9th Cir. 1988) ....................................................................... 21
11
    *Cho v. Casnak LLC*
12        2024 U.S. Dist. LEXIS 179804 (N.D. Cal. Aug. 21, 2024) ......................... 19- 20

13    *City of Manhattan Beach v. Superior Court*
    13 Cal.4th 232 (1996) ............................................................................. 16, 17
14
    *FTC v. Elite IT Partners*
15        91 F.4th 1042 (10th Cir. 2024) ..................................................................... 18

16    *Harris v. TAP Worldwide*
    248 Cal.App.4th 373 (2016) ......................................................................... 11

17    *Harvey v. Morgan Stanley Smith Barney LLC*
18        2022 U.S. App. LEXIS 22670 (9th Cir. Aug. 15, 2022) .................................... 4

19    *Horne v. Flores,*
    557 U.S. 433 (2009) ..................................................................................... 21

20    *In re Bluetooth Headset Prods. Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011) ......................................................................... 10
21
    *In re Lithium Ion Batteries Antitrust Litig.*
22        2020 U.S. Dist. LEXIS 233607 (N.D. Cal. Dec. 10, 2020) ............................. 15

23    *Knisley v. Network Assoc.*
    312 F.3d 1123 (9th Cir. 2002) ......................................................................... 4

24    *Lazy Oil Co. v. Witco Corp.*
    166 F.3d 581 (3d Cir. 1999) ........................................................................... 8
25
    *Levander v. Prober*
26        180 F.3d 1114 (9th Cir. 1999) ....................................................................... 22

27    *Liu v. SEC*
    591 U.S. 71 (2020) ....................................................................................... 23
28

*Marroquin v. City of Los Angeles*
  112 F.4th 1204 (9th Cir. 2024) ............................................................................ 21, 22

*Mattei v. Hopper*
  51 Cal.2d 119 (1958) ........................................................................................ 10-11

*Meadows v. Dominican Republic*
  817 F.2d 517 (9th Cir. 1987) .................................................................................. 20

*Morrison v. Zangpo*
  2008 U.S. Dist. LEXIS 82999 (N.D. Cal. Sept. 30, 2008) ...................................... 18

*Pacific & Artic Ry. & Navigation Co. v. United Transp. Union*,
  952 F.2d 1144 (9th Cir. 1991) ................................................................................ 21

*Radcliffe v. Experian*
  715 F.3d 1157 (9th Cir. 2013) .................................................................................. 8

*Radcliffe v. Hernandez*
  818 F.3d 537 (9th Cir. 2016) ................................................................................. 4, 9

*Reeves v. Hanlon*
  33 Cal.4th 1140 (2004) .......................................................................................... 13

*Rodriguez v. Cnty. of Los Angeles*
  891 F.3d 776 (9th Cir. 2018) .................................................................................. 23

*Rodriguez v. Disner*
  688 F.3d 645 (9th Cir. 2012) ................................................................... 8, 13-14, 23

*Ruiz v. Snohomish Cnty. Pub. Util. Dist. No. 1*
  824 F.3d 1161 (9th Cir. 2016) ................................................................................ 21

*SEC v. Coldicutt*
  258 F.3d 939 (9th Cir. 2001) .................................................................................. 21

*Sharp v. Next Entertainment Inc.*
  163 Cal.App.4th 410 (2008) .................................................................................. 8, 9

*Sherman v Mutual Ben. Life Ins. Co.*
  633 F.2d 782 (9th Cir. 1980) .................................................................................. 16

*Sonner v. Premier Nutrition Corp.*
  971 F.3d 834 (9th Cir. 2020) .................................................................................. 23

*Trendsettah USA*,
  31 F.4th 1124 (9th Cir. 2022) ........................................................................... 20, 22

*U.S. v. Zolin*,
  491 U.S. 554 (1989) ............................................................................................... 12

*United States v. Sierra Pac. Indus.*
  862 F.3d 1157 (9th Cir. 2017) ................................................................................ 22

*Uzyel v Kadisha*
  188 Cal.App.4th 866 (2010) .................................................................................. 23

*Wells Fargo Bank*
  859 F.3d 295 (4th Cir. 2017) .................................................................................. 20

iv

*White v. Experian Info. Solutions*
  993 F.Supp.2d 1154 (C.D. Cal. 2014) ................................................... 4, 8, 9, 15

*Willis v. City of Fresno*
  2014 U.S. Dist. LEXIS 52565 (E.D. Cal. Apr. 14, 2014) ................................. 20

*Zamani v. Carnes*
  491 F.3d 990 (9th Cir. 2007) ................................................................. 20

**Statutes**

California Code of Civil Procedure §1856 ........................................... 16

California Evidence Code §1119 ......................................................... 4, 16

California Evidence Code §1123 ......................................................... 4, 16

**Other Authorities**

California Rules of Professional Conduct 1.7 ...................................... 7, 8

FRCP Rule 7 ....................................................................................... 19

FRCP Rule 23 ............................................................................... *passim*

FRCP Rule 60 ............................................................................... *passim*

Local Rule 7-2 .................................................................................. 23

Local Rule 7-5 .............................................................................. 23, 25

Local Rule 11-4 ................................................................................... 7

*Manual for Complex Litig.* (4th Ed. 2004), §21.631.......................... 15

I.    **INTRODUCTION**

On October 6, 2023, plaintiff Brandon Harvey and defendant Morgan Stanley Smith Barney LLC ("Morgan Stanley") reached two Court-approved stipulations with Objectors Tracy Chen and Matthew Lucadano ("Objectors") that were supposed to fully and finally resolve all disputes regarding the *Harvey* settlement.  In exchange for being paid their $1.3 million fee and cost award, Objectors promised to refrain from further objections and motions and allow the *Harvey* parties to finalize their settlement in peace.  ECF 157, 158.

But shortly after receiving their money in November 2023, Objectors reneged on the stipulations, first by collaterally attacking this Court's judgment in their state court action (*Chen*), and now by asking the Court to order Class Counsel to disgorge their fees and "reallocate" those fees to Objectors' counsel based on an alleged conflict of interest the Court has repeatedly found does not exist.  Not only does this motion defy the Court's orders, but it is based on a faulty premise—that the *privileged* Memorandum of Understanding, which never should have been produced in the *Chen* litigation, memorializes the settlement Harvey and Morgan Stanley ultimately reached and signed four months later.  It does not.

Harvey will briefly recount the procedural history of this case (of which the Court is already well-aware) and then summarize why the Court should not grant the relief Objectors have requested.  In the sections following, Harvey will discuss the applicable law and provide additional facts as necessary.  At the end of this brief, Harvey will explain why the 45-page Declaration of Mark Humenik, which attaches more than 400 pages of exhibits, is improper, inadmissible, and should be stricken.

On March 3, 2020, after a 14-month approval process and over 5,000 pages of briefing, the Court granted final approval of the class and PAGA settlement between Harvey and Morgan Stanley.  ECF 126.  In its 37-page final approval order, the Court carefully considered, and squarely rejected, 38 separate objections that Objectors had filed in opposition to the settlement.  Among the objections the Court overruled were three that Objectors have now resurrected in this motion: namely, that (1) Harvey and Class Counsel have a conflict of interest by virtue of Morgan Stanley's pending FINRA claims against

Harvey, (2) Harvey improperly discounted the class settlement in exchange for Morgan Stanley's agreement to dismiss its FINRA claim, and (3) Harvey and Class Counsel did not fully disclose the Memorandum of Understanding ("MOU") the parties had reached after the second of their three mediation sessions before Tripper Ortman. ECF 126 at pp. 15-16 (overruling objections); *see also id.* at pp. 9-10 (finding settlement amount to be reasonable in light of comparator settlements).

Dissatisfied with the Court's approval of the settlement, Objectors filed three appeals in the Ninth Circuit, including an appeal of the Court's award of $1.3 million in fees and costs to Objectors' counsel from the common fund. On August 15, 2022, the Ninth Circuit affirmed the Court's orders overruling Chen's objections and denying Objectors' motion to intervene, but vacated the Court's orders regarding the class settlement so that the Court could assess whether each class member had Article III standing. ECF 138.

Upon returning to this Court, Harvey and Morgan Stanley agreed on a procedure to establish class member standing (ECF 142, 144), and the parties reached two stipulations with Objectors to allow the settlement to go forward (ECF 154, 155). In exchange for being paid their $1.3 million fee and cost award, Objectors agreed to allow Harvey to renew his motion for final approval without further interference or involvement by Objectors. *Id.* On October 6, 2023, the Court approved the parties' stipulations, reaffirmed its findings regarding class certification and the fairness of the class settlement, and granted final approval. ECF 157, 158. The Court also awarded Class Counsel supplemental fees from interest earned on the common fund for defending the Court's orders on appeal. ECF 156. Objectors did not appeal any of the Court's orders, and on November 15, 2023, the claims administrator wired $1.3 million (less the Court-ordered 20% holdback) to Objectors' counsel. Declaration of Edward J. Wynne, filed herewith, ¶ 16. That was supposed to be the end of the dispute between the *Harvey* parties and Objectors.

Unfortunately, Objectors had other undisclosed plans. Although the *Harvey* settlement agreement released all PAGA claims dating back to April 23, 2013, the beginning of the *Chen* limitations period (ECF 48-3, ¶ 34), Objectors argued in *Chen* that the *Harvey*

2

settlement had no impact on their PAGA claim.  Unable to persuade Objectors to dismiss *Chen*, Morgan Stanley reached an agreement with Objectors to litigate a motion for summary judgment in *Chen* to determine whether the *Harvey* judgment fully disposed of that case.

In the course of preparing the stipulation of undisputed facts, Morgan Stanley's counsel produced the MOU to Objectors, without Harvey's prior knowledge or consent and in violation of the mediation privilege, which Harvey never waived. Wynne Dec. ¶ 8. Morgan Stanley has never satisfactorily explained to Harvey how or why that happened, but those questions are not relevant for purposes of this motion.  What is relevant is whether Morgan Stanley's unauthorized production of the MOU should cause this Court to vacate its March 6, 2020 and October 6, 2023 attorneys' fee orders, allow Objectors' counsel to walk away from agreements that paid them $1.3 million in class funds in exchange for ending the overzealous advocacy they have now resumed, and order Class Counsel to disgorge the fees they earned for negotiating, defending, and administering what the Court twice found was a "fair, reasonable, and adequate settlement for the class."  ECF 126, p. 32.

As a threshold matter, Objectors have waived any right to file this motion by entering into the "Stipulation and Order Regarding Attorneys' Fees," ECF 158 (October 6, 2023). Objectors agreed, and the Court ordered, that (1) the Court's previous orders regarding fees and costs would remain in effect, (2) Objectors would not file any further motions regarding fees and costs unless directed by the Court, and (3) Objectors would not oppose Class Counsel's motion for supplemental fees.  *Id.*  This motion violates every term of that stipulation and order. Objectors cannot claim they were mistaken or misled into agreeing to the stipulation because, on at least seven prior occasions, Objectors accused Harvey and Class Counsel of having the same conflict of interest they say the MOU now confirms.  *See* Section II below. Objectors waived the right to pursue those allegations in exchange for payment of their $1.3 million fee award.  The stipulation and order bars this motion.[1]

---

[1]    Separately, Tracy Chen has no right to join in this motion.  She is neither a party nor a class member and has no standing to challenge the Court's fee orders.  *Harvey v. Morgan Stanley Smith Barney LLC*, 2022 U.S. App. LEXIS 22670, *6-7 (9th Cir. Aug. 15, 2022) (dismissing Chen's appeal for lack of standing); *see also Knisley v. Network Assoc.*, 312 F.3d 1123, 1126 (9th Cir. 2002) (objector has standing to challenge fee award only if modifying

If the Court reaches the merits of the motion, which it need not, the Court should deny the requested relief. Morgan Stanley's unauthorized disclosure of the privileged, unenforceable, and superseded MOU does not prove Class Counsel had a conflict of interest or in any way misled the Court. But even if the Court were to find Harvey's entry into the MOU created a conflict, it was a temporary conflict that was inadvertent, promptly and voluntarily cured by Harvey and Class Counsel, and caused no harm to the class. *See White v. Experian Info. Solutions*, 993 F.Supp.2d 1154, 1165 (C.D. Cal. 2014), *as amended* (May 1, 2014), *aff'd sub nom. Radcliffe v. Hernandez*, 818 F.3d 537 (9th Cir. 2016) *(Radcliffe II)* (denying motion to disqualify class counsel because counsel's conflict was brief and arose from a provision in a defunct prior settlement agreement).

First, although the MOU did contain a reference to Morgan Stanley dismissing its FINRA claims against Harvey (ECF 172-1, p. 2), the MOU was never an enforceable contract, so Harvey obtained no individual benefit from it.[2] Because this is a class action, the MOU terms were not enforceable unless and until the Court approved them, which the parties never asked the Court to do. Instead, before ever seeking Court approval, the parties superseded the MOU with a new agreement, the "Class Action Settlement Agreement and Release" ("Agreement," ECF 48-3), which did *not* require Morgan Stanley to dismiss its FINRA claims. According to the Agreement's integration clause, the Agreement contained "the entire agreement between Plaintiff and Defendant relating to the Settlement," and all prior agreements were merged therein. ECF 48-3, ¶ 97, p. 28. Thus, consistent with the parties' repeated assurances to the Court, the dismissal of Morgan Stanley's FINRA claims was *not* part of the settlement they asked the Court to approve. ECF 110, ¶ 9 (Livingston

the award would benefit *objector*).

[2]      As discussed below, the MOU is protected from disclosure under California's mediation privilege, Cal. Evid. Code §1119(b), which applies in this CAFA diversity case. However, Cal. Evidence Code §1123(d) excepts from the privilege a "written settlement agreement" if the agreement is used to show "fraud, duress, or illegality." There are no reported cases construing section 1123(d), so to avoid an appellate issue, Harvey will assume the MOU is admissible in this motion for the limited purpose of proving or disproving Objectors' accusations of fraud. But in discussing the MOU for this limited purpose, Harvey does not intend to waive the mediation privilege.

4

Dec.); ECF 116-1, ¶ 5 (Wynne Dec.); ECF 123, p.25.  Moreover, because the MOU was never enforceable, it never conferred an individual benefit on Harvey, and the Court's previous finding that the mere *pendency* of the FINRA claims against Harvey did not pose a conflict remains correct.

Second, Harvey had no duty to produce the MOU during the approval process.  The MOU is a privileged document. Under paragraph 15, the only condition under which the MOU would have been admissible is if the parties had been "unable to agree on the final terms in a settlement agreement," which condition never happened because the parties reached the Agreement.  ECF 172-1, p.5.  FRCP 23(e)(3) requires settling parties to file a statement "identifying" any agreement in connection with a proposed class settlement. Although it is unsettled whether Rule 23(e)(3) applies to privileged, superseded MOUs, the parties nevertheless identified the MOU to the Court, thereby fully complying with the rule. ECF 59-1, ¶ 28; ECF 126, pp. 15-16 (finding that parties disclosed MOU).  This disclosure prompted Objectors, who were not parties and had no discovery rights, to ask the Court to order the parties to produce the MOU.  ECF 92, p. 19, n.9; ECF 123 pp. 9-10.  The Court denied the request (ECF 123, p. 43), and Objectors never renewed it after the appeal.

Third, the fact that the class settlement terms and the dismissal term appear in the same MOU does not prove Harvey traded one for the other.  To the contrary, as discussed in the declarations of Class Counsel Edward Wynne, James Clapp, Jeffrey Compton, and David Markun, filed herewith, the parties agreed on the class settlement terms first, and the proposed FINRA dismissal was "thrown-in" a week later to reach global peace.  Wynne Dec. ¶¶ 5-10; Clapp Dec. ¶¶ 4-6; Compton Dec. ¶¶ 12-18; Markun Dec. ¶¶ 3-4.  The FINRA arbitration had no impact on Harvey's class demands, which were driven largely by comparisons with settlements involving other broker-dealers.  *Id.*  Moreover, despite Mr. Humenik's unfounded speculation that the dismissal was worth "several hundreds of thousands of dollars to Harvey," Harvey steadfastly denies taking any property or soliciting any customers when he left Morgan Stanley.  Declaration of Brandon Harvey, filed herewith, ¶¶ 3-5.  The FINRA claims between Harvey and Morgan Stanley remain pending, and the

parties' recent attempt to settle the claims before a FINRA mediator failed. Compton Dec., ¶¶ 8-10; Markun Dec. ¶ 2. Contrary to Objectors' motion, the delay in conducting the arbitration is not evidence of a secret side deal. The reason the parties postponed the arbitration pending settlement approval is simply because the Agreement contains a general release of claims by Harvey, which if effective impacts the counterclaims Harvey has alleged in the arbitration. ECF 48-3, ¶ 61.b, pp. 12-14; Compton Dec. ¶ 9. It made no sense to arbitrate until the parties were sure what claims needed to be arbitrated.

Finally, at no point did Class Counsel mislead the Court. Class Counsel Wynne and Clapp have both practiced in this Court for more than 30 years, as has Morgan Stanley's lead counsel, Mr. Livingston. Wynne Dec. ¶¶ 2-3; Clapp Dec. ¶ 2. All three have declared there was and is no side agreement regarding the FINRA arbitration. Wynne Dec. ¶ 10; Clapp Dec. ¶ 9; ECF 110, ¶ 9 (Livingston Dec.). It is simply far-fetched to suggest these three attorneys would conspire to defraud the Court to obtain approval of what should have been a routine class action settlement. Moreover, everything Class Counsel told the Court during the final approval hearing about the FINRA arbitration and the MOU was and remains true: (1) the arbitration is "ongoing" and "hotly disputed"; (2) before signing the Agreement, the parties entered into an MOU, which is Class Counsel's typical practice; and (3) all of the terms of the parties' settlement are contained in the Agreement. ECF 123, pp. 24-25.

The Court should deny the motion in its entirety and allow the parties to finalize the fair, reasonable, and adequate settlement they reached six years ago.

## II.    THE MOU DOES NOT PROVE HARVEY OR CLASS COUNSEL HAD A CONFLICT OF INTEREST, AN ACCUSATION THE COURT HAS PREVIOUSLY REJECTED

This is now the *eighth* time Objectors have accused Harvey and Class Counsel of having a conflict of interest due to Morgan Stanley's pending FINRA claims against Harvey. Objectors made the same allegation: (1) in their January 23, 2019 Motion to Intervene (ECF 128, p.20 [arguing Harvey was in a "weak bargaining position" because of the FINRA claims]); (2) in their reply in support of intervention (ECF 138, p. 11 [speculating Morgan

Stanley's FINRA claims would "presumably be dismissed as part of the settlement"]); (3) in their opposition to Harvey's Motion for Preliminary Approval (ECF 52, p. 22); (4) in Lucadano's objection to the settlement (ECF 92, pp. 12-13 [demanding that the Court order Harvey to disclose the MOU and the status of the FINRA arbitration]); (5) in Chen's objection (ECF 93, p. 26, n. 20 [again speculating that Morgan Stanley had agreed to drop its FINRA claims and demanding production of the MOU]; (6) in opposition to Harvey's Motion for Final Approval (ECF 107, p. 8 [alleged "side agreement" creates conflict of interest]); and (7) during the February 5, 2020 final approval hearing (ECF 123, pp. 9-11).

In its March 3, 2020 final approval order, the Court rejected Objectors' conflict allegations.  The Court agreed with Harvey that his individual disputes with Morgan Stanley before FINRA did not render him an inadequate class representative.  ECF 126, pp. 16-17, n.5. *citing Brecher v. Citigroup Glob. Markets, Inc.*, 2015 U.S. Dist. LEXIS 194128, *6 (S.D. Cal. Feb. 6, 2015).  The Court found the class recovery was reasonable in light of comparator settlements involving other broker-dealers (ECF 126, p. 10), and there was no evidence to suggest "Harvey agreed to an unreasonable settlement of the class claims to resolve his individual FINRA case" (ECF 126, p. 16).  Thus, the Court concluded, "Lucadano has not shown that Harvey's FINRA arbitration undermines the adequacy of Harvey as a representative for certification of a settlement class."  *Id.*, p. 16.  Morgan Stanley's unauthorized production of the MOU in *Chen* does not change this analysis.

### A.      Applicable Law Regarding Conflicts of Interest.

The Northern District of California applies the ethics standards of the State Bar of California, including the California Rules of Professional Conduct.  Local Rule 11-4(a)(1).

CRPC Rule 1.7(b) states: "A lawyer shall not, without informed written consent from each affected client and compliance with paragraph (d), represent a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationship with another client … or by the lawyer's own interests."  A conflict under Rule 1.7 arises only when the circumstances of a particular case present a "substantial risk" that the lawyer's representation of the client would be "materially

1   and adversely" affected by the lawyer's own interests or duties to another client.  *Sharp v.*

2   *Next Entertainment Inc.* (2008) 163 Cal.App.4th 410, 426.

3        The Ninth Circuit has recognized that conflicts of interest "are not uncommon in class

4   action cases and arise for many different reasons."  *Rodriguez v. Disner*, 688 F.3d 645, 655

5   (9th Cir. 2012) (*Rodriguez II*).  Courts may properly tolerate "technical conflicts" to allow

6   qualified counsel to continue to represent the class.  *Id.*  Moreover, even if they technically

7   exist, conflicts might not be actionable if they are limited in time and cause no harm to the

8   class.  *See White*, 993 F.Supp.2d at 1165-1166; *Rodriguez II*, 688 F.3d at 660 n.12

9   (upholding award of fees to class counsel for work performed after conflict was eliminated);

10  *see also Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589-90 (3d Cir. 1999) (traditional rules

11  of professional conduct cannot be applied mechanically in class actions).

12       For example, in *White*, the original class settlement agreement contained a provision

13  for incentive awards conditioned on the named plaintiffs supporting the settlement.  The

14  district court approved the settlement, but objectors appealed.  The Ninth Circuit reversed

15  and vacated the settlement, holding that the conditional incentive award agreements created a

16  conflict of interest between plaintiffs and the class that rendered plaintiffs and their attorneys

17  inadequate to represent the class.  *Radcliffe v. Experian*, 715 F.3d 1157, 1165 (9th Cir.

18  2013).[3]  On remand, objectors' counsel moved to disqualify class counsel due to the conflict.

19  The court denied the motion because the conflict was temporary, arose from faulty settlement

20  terms, and no longer existed because the Ninth Circuit had disapproved the settlement.

21  *White*, 993 F.Supp.2d at 1165. The court reasoned that conflict rules should be applied

22  "flexibly," especially in cases where the conflicts are "cabined and brief." *Id.*  "The fact that

23  the conflict is not ongoing and does not call counsel's loyalty into question also mitigates

24  concerns about public confidence in the legal profession and the judicial process." *Id.* at

25  1166 (citation omitted).  In the second appeal, the Ninth Circuit agreed with the district

26  court's reasoning and held it did not abuse its discretion in declining to disqualify class

27  ────────────

28  [3]    Although Objectors rely heavily on the *Radcliffe* decision, Objectors conspicuously omit how the district court addressed the conflict upon remand in *White*.

8

counsel due to their temporary, cured conflict.  *Radcliffe II*, 818 F.3d at 548.

Finally, in class action cases, there is no requirement that class counsel obtain conflict waivers from absent class members.  *Sharp*, 163 Cal.App.4th at 431–32 (2008).  Objectors suggest Harvey should have obtained a waiver from the State, but there is no authority for this proposition even if there were an effective way to request a waiver, which there is not.

**B.      The MOU Did Not Create a Conflict Because It Was Unenforceable and Quickly Superseded.**

The existence of the FINRA dismissal clause in an unenforceable and superseded MOU did not raise a "substantial risk" that Class Counsel's representation of the class would be "materially and adversely affected" by their duties to Harvey, or vice versa.

The parties executed the MOU on December 12, 2018, between the second and third mediation sessions with Mediator Ortman.  ECF 172-1, p. 3.  The purpose of the MOU was to create a framework for approaching Objectors to invite them to participate in the settlement.  Wynne Dec. ¶ 7; ECF 172-1, p. 3.  Harvey's counsel was supposed to engage Objectors' counsel first, followed by Morgan Stanley's counsel, followed by a mediation.  *Id.*

Because neither Harvey nor Morgan Stanley could predict how Objectors' counsel would react, both sides expressly reserved the right to withdraw from the MOU in their sole discretion.  *Id.* ¶ 12.d, p. 4.  Morgan Stanley also retained a separate right to withdraw if it concluded it had "an unacceptable level of representative exposure in the Chen case as determined by [Morgan Stanley]."  *Id.* ¶ 13.

Following execution of the MOU, on January 17, 2019, Harvey, Morgan Stanley, and Objectors participated in a mediation overseen by both Tripper Ortman and Mark Rudy, which was unsuccessful.   ECF 36-4, ¶ 32.  Over the next several weeks, the *Harvey* parties and Objectors had further discussions through Mediator Ortman, which were also unsuccessful. ECF 48-2, ¶ 26.   On January 23, 2019, Objectors filed their Motion to Intervene, which effectively ended the discussions.  ECF 128.

At that point, Harvey and Morgan Stanley began negotiating the Agreement.  Wynne Dec. ¶¶ 11-12; Clapp Dec. ¶¶ 7-8.  Those discussions spanned several more weeks.  Finally,

9

1    on April 26, 2019, Harvey and Morgan Stanley signed the Agreement, and that same day,

2    Harvey filed a Motion for Preliminary Approval.  ECF 48, 48-3.

3        Contrary to Objectors' motion, the superseded MOU did not contain "every material

4    term" of the parties' eventual settlement.  Mtn. at p.5.  In addition to deleting the framework

5    for including Objectors in the settlement, the Agreement differed from the MOU in at least

6    eight material respects, including: (1) the Agreement allocated $600,000 to the PAGA claim

7    instead of $100,000 (*compare* ECF 48-3 §§48-49 to ECF 172-1 ¶ 8); (2) the Agreement

8    included formulas for tiering individual settlement payments (ECF 48-3 §61(a)(i) and (ii));

9    (3) the Agreement established a Qualified Settlement Fund (*id.* §67); (4) the Agreement

10   provided for 5% interest to be earned on the fund in the event of any appeal, not just an

11   appeal by Objectors (*compare id.* §79 to ECF 172-1 ¶ 2); (5) the Agreement included a

12   procedure for class members to dispute their work months (ECF 48-3 §§72-73); (6) the

13   Agreement included a *cy pres* procedure for uncashed checks (*id.* §79); (7) the Agreement

14   contained an integration clause (*id.* §97); and finally (8) the Agreement dropped the

15   requirement that Morgan Stanley dismiss its FINRA claims against Harvey.

16       At no point was the MOU an enforceable contract or the dismissal term an

17   enforceable promise.  A class action settlement is not effective until it is approved by the

18   district court, after a fairness hearing and only if the court finds the settlement is fair,

19   reasonable, and adequate.  Fed. R. Civ. P. 23(e); *In re Bluetooth Headset Prods. Liab. Litig.*,

20   654 F.3d 935, 946 (9th Cir. 2011).  Here, the parties never took a single step toward

21   requesting approval of the MOU because negotiations with Objectors were ongoing and, in

22   any event, the parties always intended to replace the MOU with a long-form settlement

23   agreement. Wynne Dec. ¶¶ 7, 11-12; Clapp Dec. ¶¶ 6-7.  Moreover, the MOU contained two

24   provisions that rendered it unenforceable as a matter of law.  First, both sides retained the

25   right to withdraw from the settlement in their sole discretion. ECF 172-1, ¶ 12.d, p. 4; *Mattei*

26   *v. Hopper*, 51 Cal.2d 119, 122 (1958) (a contract is illusory and not enforceable if the

27   promisor is "free to perform or to withdraw from the agreement at his own unrestricted

28   pleasure"); *Harris v. TAP Worldwide, LLC*, 248 Cal.App.4th 373, 385 (2016) (a contract is

10

1    unenforceable when the parties have an "unfettered or arbitrary right to modify or terminate

2    the agreement"). Second, the MOU states it would be admissible in court only if the parties

3    were "unable to agree on final terms in a settlement agreement," which they did. ECF 172-1,

4    ¶ 15, p. 4. Thus, the MOU did not, and was never intended to, confer an enforceable

5    individual benefit on Harvey.

6         Before the parties ever sought Court approval of the MOU, they replaced the MOU

7    with the Agreement, which did *not* require Morgan Stanley to dismiss its FINRA claims.

8    Because the Agreement contains an integration clause, it superseded the MOU with respect

9    to all aspects of the parties' settlement. ECF §97; *s Herra v. Beydoun*, 32 Cal.4th 336, 346

10   (2004) ("[A]n integrated written agreement *supersedes* any prior or contemporaneous

11   promise at variance with the terms of that agreement." (Emphasis original.)) As a matter of

12   law, there was and never could be an enforceable "side agreement" by Morgan Stanley to

13   dismiss its FINRA claims. Thus, Harvey never benefited from the settlement in a way the

14   class did not, and his interests *vis-a-vis* the class and the settlement remained exactly the

15   same as when the Court found he had no conflict.

16      **C.    The Dismissal Provision in the MOU Had No Impact on Negotiation of**

17              **the Class Terms**

18         Alternatively, Objectors argue even if the MOU was never an enforceable agreement,

19   the fact that class settlement terms and the FINRA dismissal appear in the same MOU raise

20   the inference that one was traded for the other. That is simply untrue.

21         The parties participated in their first two mediations with Mediator Ortman on

22   November 8 and 19, 2018. At no point during the negotiations of the class terms did the

23   parties discuss the FINRA arbitration. Wynne Dec. ¶¶ 5-9; Clapp Dec. ¶¶ 4-6; Compton

24   Dec. ¶¶ 13-15; Markun Dec. ¶ 4. Harvey formulated his class settlement demands in light of

25   the applicable law and by comparing the facts of this case to settlements involving other

26   broker-dealers. *Id.* Harvey never discounted his class settlement demands in any effort to

27   obtain any form of concession regarding the FINRA arbitration. *Id.*; Harvey Dec. ¶ 6.

28

PLAINTIFF'S OPPO. TO MTN FOR DENIAL AND DISGORGEMENT OF FEES          3:18-CV-02835

1    After the second mediation, the parties continued to negotiate the class terms with

2  Mediator Ortman's assistance.  Again, there was no discussion about dismissing the FINRA

3  arbitration.  Wynne Dec. ¶ 6; Clapp Dec. ¶ 5.  On November 21, 2018, the parties reached a

4  tentative verbal agreement regarding the class terms.  *Id.*; *see also* ECF 59-1, ¶ 28

5  (Livingston Dec.) (referencing the November 21, 2018 oral agreement to resolve the claims

6  asserted in *Harvey*). There was no verbal agreement or even a discussion regarding dismissal

7  of the FINRA claims.  Wynne Dec. ¶ 6; Clapp Dec. ¶ 5.  That same day, on November 21,

8  2018, Mediator Ortman sent Class Counsel an email summarizing the parties' tentative

9  settlement as of that date.  Wynne Dec. ¶ 6; Clapp Dec. ¶ 5.[4]

10    The first time the parties discussed the possibility of dismissing their respective

11  FINRA claims was when they exchanged the first draft of the MOU on November 28, 2018,

12  which was one week after the parties agreed on the class terms. Wynne Dec. ¶ 9; Clapp Dec.

13  ¶ 6. The mutual dismissal provision was simply a "throw-in" to reach global peace and had

14  no impact on the class terms.  *Id.*

15    Objectors' argument that Harvey must have reduced his demands because Morgan

16  Stanley's claims were worth "several hundred thousand dollars" is entirely speculative and

17  lacking in foundation.  As just explained, the class terms and the FINRA claims were

18  discussed separately.  Moreover, the FINRA claims were baseless and presented no financial

19  or disciplinary risk to Harvey for the following reasons:

20    On March 1, 2018, Harvey left his employment as a financial advisor at Morgan

21  Stanley to join Morgan Stanley's competitor, LPL.  On Harvey's last day, he packed up a

22  box with his personal belongings.  The box did not contain any Morgan Stanley property.

23  Shortly thereafter, Harvey sent out a "tombstone" letter announcing his new employment at

24  LPL.  At no point did Harvey solicit Morgan Stanley clients to transfer their accounts to LPL.

25  Harvey Dec. ¶¶ 3-5; Compton Dec. ¶¶ 4-5.  Under California law, Harvey had an absolute

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [4]    Mediator Ortman's email to Class Counsel is privileged. Nevertheless, Class Counsel
   will bring the email to the hearing if the Court would like to inspect it *in camera*.  *See U.S. v.*
28  *Zolin*, 491 U.S. 554, 568 (1989) (approving use of in camera inspections to permit court to
   review privileged documents without destroying privilege).

right to notify his former clients about his change in employment, even if Morgan Stanley considered the identities of those clients to be trade secrets. *Reeves v. Hanlon*, 33 Cal.4th 1140, 1156 (2004) (California trade secret law "does not forbid an individual from announcing a change of employment, even to clients on a protected trade secret list"). The handful of clients who followed Harvey to LPL did so in response to his tombstone letter, not because he improperly solicited them or stole Morgan Stanley's trade secrets. Harvey Dec. ¶¶ 3-5; Compton Dec. ¶¶ 4-5, 11.[5] Harvey had no incentive to discount the class claims in exchange for the dismissal, and did not, because he had nothing to fear from the arbitration.

In sum, because Morgan Stanley's claims against Harvey were (1) negotiated separately from the class terms, and (2) baseless, they had no impact on the class recovery.

### D. Any Conflict Created by the MOU Was Temporary, Inadvertent, Voluntarily Cured, and Did Not Harm the Class.

Neither Class Counsel nor Harvey ever had a conflict of interest. The mere fact that Morgan Stanley had *alleged* FINRA claims against Harvey did not pose a conflict, and Harvey never received an enforceable benefit from the settlement that the class did not. Nevertheless, if the Court finds Harvey's entry into the superseded MOU gave rise to a temporary conflict, it was unintentional, quickly and voluntarily cured, and caused no harm whatsoever to the class.

When considering an accusation of professional misconduct and its effect on attorneys' fees, the Court should consider the extent of any misconduct as well as its "gravity, timing, willfulness, and effect on the various services performed by the lawyer, and other threatened or actual harm to the client." *Rodriguez II*, 688 F.3d at 655- 656.

As discussed above, the proposed dismissal of the FINRA arbitration was an afterthought, first broached a week after the class terms had already been reached. The parties did not intend their MOU to be a final expression of their settlement because their

---

[5]    Mr. Compton has been counsel of record in more than 700 FINRA arbitrations and therefore is qualified to assess the possible financial and disciplinary risk of Morgan Stanley's claims against Harvey. Compton Dec. ¶ 11. Based on what Mr. Humenik has disclosed about his FINRA experience—his single arbitration defending Tracy Chen—Mr. Humenik is not.

1    goal was to *include* Objectors in the settlement.  In other words, the purpose of the MOU was

2    to memorialize a framework for inviting the Objectors to join, with the understanding that

3    additional negotiations would occur depending on how Objectors responded to the invitation.

4    Wynne Dec. ¶ 7.

5         When Objectors reacted so adversely to the parties' overture—i.e., by falsely

6    accusing the parties of collusion and engaging in "secret" negotiations even though Objectors

7    had just attended a full-day mediation with the parties—Harvey and Morgan Stanley went

8    back to the drawing board.  Although the main financial terms remained the same, the parties

9    negotiated improvements to the settlement to ensure it was scrupulously fair, including

10   allocating more money to the PAGA claims, agreeing on allocation formulas for equitably

11   dividing the settlement funds, expanding the situations in which the QSF would earn interest

12   on appeal, and, as relevant here, deleting the requirement that Morgan Stanley dismiss its

13   FINRA claims against Harvey.  Harvey had no problem with removing the dismissal term

14   because he knew the claims against him were baseless.  On the other hand, Harvey agreed to

15   *retain* his general release in favor of Morgan Stanley in the Agreement, despite its negative

16   impact on his FINRA counterclaims, because the custom and practice in class settlements is

17   that named plaintiffs give general releases, and the absence of such a release might have been

18   construed as an unfair benefit to Harvey.  Wynne Dec. ¶ 12; Clapp Dec. ¶ 8.

19        Thus, the parties' intent in modifying the terms of the MOU when drafting the

20   Agreement was not to conceal individual benefits to Harvey but to ensure such benefits did

21   *not* exist.  Wynne Dec. ¶ 12.

22        If the Court finds Harvey or Class Counsel had a temporary conflict of interest (it

23   should not), this case is very similar to *White*.  As in *White*, the contract term giving rise to

24   the alleged conflict was introduced after the class terms were negotiated and then quickly

25   removed from the settlement through a superseding agreement. (Here, the parties deleted the

26   dismissal term voluntarily instead of having it stricken by the Ninth Circuit.) As in *White*, the

27   dismissal term had no impact on the settlement amount, which was well-received by every

28   class member save Objectors and provided substantial relief for both the class and the state.

14

1    And as in *White*, Class Counsel "have committed no other ethical violations," "have

2    vigorously litigated the claims," and because the subject term was quickly removed from the

3    settlement, there was never a risk Class Counsel had to choose between clients with

4    conflicting interests.  993 F.Supp.2d at 1167.  In sum, there was no harm whatsoever to the

5    *Harvey* class and no need for the Court to exercise its equitable power to deny or require

6    disgorgement of fees.

7    **III.    HARVEY DID NOT MISLEAD THE COURT ABOUT THE MOU**

8         **A.    The Parties Identified the MOU as Required by Rule 23(e)(3).**

9         Rule 23(e)(3) states: "The parties seeking approval must file a statement identifying

10   any agreement made in connection with the proposal." The purpose of the rule is to disclose

11   "related undertakings that, although seemingly separate, may have influenced the terms of

12   the settlement by trading away possible advantages for the class in return for advantages to

13   others." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 U.S. Dist. LEXIS 233607, *78

14   (N.D. Cal. Dec. 10, 2020); Fed. R. Civ. P. 23, Advisory Comm. Notes to 2003 Amendments.

15   According to the *Manual for Complex Litigation*, "[t]he spirit of [Rule 23(e)(3)] is to compel

16   identification of any agreement or understanding that might have affected the interests of

17   class members by altering what they may be receiving or foregoing."  *Manual for Complex*

18   *Litig.* (4th Ed. 2004), §21.631, p. 319.  Once the agreements are identified, the court "may

19   direct the parties to provide to the Court or other parties a summary or copy of the full terms

20   of any agreement not identified by the parties that the court considers relevant to its review of

21   a proposed settlement."  Fed. R. Civ. P. 23, Advisory Comm. Notes to 2003 Amendments.

22        There are virtually no cases applying Rule 23(e)(3).  It is unsettled whether the rule

23   applies to privileged agreements or agreements that were superseded and therefore not part of

24   the proposed class action settlement.

25        Nevertheless, out of an abundance of caution, the parties identified the MOU to the

26   Court, both in writing and during the final approval hearing.  ECF 59-1, ¶28; ECF 123, p. 25.

27   Class Counsel also told the Court, correctly, that all the settlement terms for which the parties

28   were seeking approval were contained in the Agreement.  ECF 123, p. 25.  Class Counsel's

1    intent was to fully comply with Rule 23(e)(3).  Wynne Dec. ¶ 14.

2         **B.    Harvey Had No Duty to Produce the MOU.**

3         Throughout the approval process, the MOU remained a privileged, inadmissible, and

4    superseded document. Harvey had no duty to introduce it into evidence.

5         In diversity actions, California's mediation privilege applies.  *Albert D. Seeno Constr.*

6    *Co. v. Aspen Ins. Uk Ltd.*, 2020 U.S. Dist. LEXIS 192418, *8 (N.D. Cal. Oct. 16, 2020).

7    California Evidence Code §1119(b) protects from disclosure all "writings" prepared "in the

8    course of, or pursuant to, a mediation or a mediation consultation."  The MOU, which was

9    drafted after the parties' second mediation session in anticipation of a scheduled third session

10   with Objectors (Wynne Dec. ¶¶ 7-12), was a writing prepared in the course of a mediation

11   and therefore was inadmissible under section 1119.  Moreover, the MOU was not a "written

12   settlement agreement" exempt from the privilege (Evidence Code §1123) because, under

13   paragraph 15, the MOU was admissible and enforceable only if the parties "were unable to

14   agree on final terms in a settlement agreement."  ECF 172-1, ¶ 15, p.3.  This condition never

15   happened, so the MOU remained subject to the privilege. Harvey never waived the privilege.

16   Wynne Dec. ¶ 8.

17        The MOU was also inadmissible under California's parol evidence rule, California

18   Code of Civil Procedure §1856(a).  *See Sherman v Mutual Ben. Life Ins. Co.*, 633 F.2d 782,

19   784 (9th Cir. 1980) (California's parol evidence rule applies in diversity cases).  Because the

20   Agreement contained an integration clause, the MOU could not be introduced to contradict

21   its terms.  *City of Manhattan Beach v. Superior Court*, 13 Cal.4th 232, 238 (1996).

22        Finally, Harvey had no duty to produce the MOU to Objectors.  Objectors were not

23   parties, had no discovery rights, and their requests for the Court to order the parties to

24   produce the MOU were denied.  When the case returned from the Ninth Circuit, Objectors

25   abandoned their requests for the MOU in exchange for payment of their fees and costs.

26        **C.    Everything Class Counsel Told the Court About the MOU Was True.**

27        Objectors recklessly and repeatedly accuse Class Counsel of lying to the Court about

28   the MOU and the FINRA arbitration.  But below is the sum total of what Class Counsel told

16

the Court about those topics at the final hearing:

> The FINRA arbitration.  I am not a party to that case.  I'm not representing Harvey.  I can tell you that all I know is that it is ongoing.  It's an active FINRA arbitration. I will say that the claims are hotly disputed, that Harvey rejects the claims made by Morgan Stanley and says they're completely without basis ….

> The MOU, well, I mean, we told the Court, per the requirements, that there was an MOU.  We always have MOUs in our settlements.  There's nothing unusual with that.  We identified it.

> But the important part here is, that just forms the basis for the settlement that's before this Court.  That's the document we're moving on, and all the terms are in there [referring to the Agreement].  ECF 123, pp. 24-25.

Objectors haven't identified a word in that passage that is false, and everything Class Counsel said about the MOU and the FINRA claims remains true even today.  Wynne Dec. ¶ 15.

**D.     It Made Sense to Postpone the Arbitration Pending Settlement Approval.**

Morgan Stanley filed its FINRA action against Harvey on March 1, 2018.  Compton Dec. ¶ 2.  On June 15, 2018, Harvey filed counterclaims against Morgan Stanley in the FINRA action for unfair competition and declaratory relief.  *Id.*  While the *Harvey* settlement was pending, Harvey and Morgan Stanley stipulated several times to postpone the FINRA arbitration.  Compton Dec. ¶¶ 8-10.  Most recently, the arbitration was scheduled for November 12, 2024.  However, on October 22, 2024, the parties agreed to another short continuance of the arbitration so they could participate in a mediation before FINRA mediator Rob Herschman.  *Id.* ¶ 10. That mediation took place on November 8, 2024, but it did not result in a settlement.  The arbitration remains pending.  Markun Dec. ¶ 2.  A new arbitration date will be scheduled.

Objectors contend the parties' delay in conducting the FINRA arbitration is evidence of a secret side agreement between the parties to dismiss it.  That is simply false.  Instead, the reason why Harvey agreed to postpone the arbitration pending approval of the class settlement is because the Agreement requires Harvey to give a general release of claims in favor of Morgan Stanley.  ECF 48-3, ¶61.b, p. 16.  That release impacts Harvey's ability to

17

1  assert counterclaims against Morgan Stanley in the FINRA arbitration. It made no sense to

2  conduct the arbitration until the parties were sure what claims need to be arbitrated.

3  Compton Dec. ¶ 9.   Now that the *Harvey* settlement has been approved, the arbitration is

4  moving forward.

5  **IV.    OBJECTORS HAVE WAIVED ANY RIGHT TO FILE THIS MOTION**

6        On October 6, 2023, the Court approved the stipulation between Objectors and Class

7  Counsel resolving their disputes over attorneys' fees.  ECF 158.  Objectors entered into the

8  stipulation despite alleging on at least seven previous occasions that Harvey and Class

9  Counsel had a conflict of interest due to the FINRA claims and the supposed agreement to

10  dismiss them.  *See* Section II above.  That stipulation and order bars this motion.

11        "A stipulation and order is a binding agreement between parties to a dispute that is

12  enforceable as a contract …. [R]elief from a stipulation will be granted only upon a showing

13  of good cause sufficient to invalidate a contract, such as fraud, overreaching, duress, or

14  mistake." *Morrison v. Zangpo*, 2008 U.S. Dist. LEXIS 82999, *8 (N.D. Cal. Sept. 30, 2008).

15  A court can also permit withdrawal of a stipulation to prevent "manifest injustice." *Id.* at *9

16  *citing Waggoner v. Dallaire*, 767 F.2d 589, 593 (9th Cir. 1985).  Stipulations not to challenge

17  orders or judgments are common and enforceable. *FTC v. Elite IT Partners, Inc.,* 91 F.4th

18  1042, 1047 (10th Cir. 2024) (enforcing waiver of right to seek vacatur under Rule 60(b)).

19        Objectors have not argued they entered into the stipulation due to fraud, overreaching,

20  duress or mistake, nor could they. It has been Objectors' unwavering position throughout this

21  litigation that Harvey and Class Counsel supposedly have a conflict of interest arising from

22  the FINRA claims.  Objectors agreed (with the Court's approval) not to pursue those

23  allegations in exchange for payment of their fees and costs from the common fund. Morgan

24  Stanley's unauthorized production of the MOU does not change the circumstances under

25  which Objectors agreed to the stipulation.  Nor should the Court allow Objectors to withdraw

26  from the stipulation to prevent "manifest injustice."  There is no manifest injustice in

27  enforcing a stipulation that paid Objectors *in full* for the benefits the Court found they

28  conferred on the class. The stipulation also operates as a waiver of any future application by

18

1    Objectors for fees.  Thus, to the extent the motion seeks to "re-allocate" fees to Objectors'

2    counsel (Notice of Mtn., p. i), that request should also be denied.

3    **V.    OBJECTORS ARE NOT ENTITLED TO RELIEF UNDER RULE 60(b)**

4        The Court should deny Objectors relief under Rule 60(b) for three additional reasons:

5            **1.    Objectors Have Failed to Specify the Grounds for Relief.**

6        FRCP Rule 60(b) provides six separate grounds for relieving a party from a final

7    judgment or order, but Objectors never identify the subsection under which they are seeking

8    relief or explain why the evidence satisfies the applicable legal standard.  Notice of Mtn., p. i;

9    Mtn, p. 23.  Instead, Objectors' legal analysis consists of a single conclusory sentence: "Each

10   prong [of Rule 60(b)] is satisfied for the reasons already stated."  Mtn., p. 23.  That is

11   insufficient and should be deemed a waiver of any request for relief under Rule 60(b).

12       FRCP Rule 7(b)(1)(B) requires that motions "state with particularity the grounds for

13   seeking the order." The purpose of this requirement is to "provide the opposing party with a

14   meaningful opportunity to respond and the court with enough information to process the

15   motion correctly." *Boring v. Nationstar Mortg., LLC*, 2014 U.S. Dist. LEXIS 1706, *9 (E.D.

16   Cal. Jan. 6, 2014) (cleaned up) (denying request for relief that was supported only by a

17   "conclusory and ambiguous argument").

18       More generally, "[i]n our adversarial system of adjudication, courts follow the

19   principle of party presentation and rely on the parties to frame the issue for decision and

20   assign to courts the role of neutral arbiter of matters the parties present." *Cho v. Casnak LLC*,

21   2024 U.S. Dist. LEXIS 179804, *4 (N.D. Cal. Aug. 21, 2024) *quoting United States v.

22   Sineng-Smith*, 590 U.S. 371, 375 (2020) (cleaned up).  In *Cho*, the court denied a motion to

23   vacate a judgment because the motion "does not address the proper standard for relief from a

24   final judgment." *Id.* at *2. Similarly, in *Willis v. City of Fresno*, 2014 U.S. Dist. LEXIS

25   52565, *43-44 (E.D. Cal. Apr. 14, 2014), the court denied a motion to vacate because the

26   moving party failed to tether any of its arguments to the requirements of Rule 60(b).  The

27   Court should deny this motion for the same reasons.

28

PLAINTIFF'S OPPO. TO MTN FOR DENIAL AND DISGORGEMENT OF FEES                3:18-CV-02835

## 2. The Motion Is Not Timely.

Rule 60(b) motions "must be made within a reasonable time," and if brought under subsections (1), (2), or (3), no later than one year after entry of the order or judgment. Fed. R. Civ. P. 60(c)(1). "What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." *Ashford v. Steuart,* 657 F.2d 1053, 1055 (9th Cir. 1981). Motions brought under subsections (1), (2), or (3) can be untimely even if filed within a year of the judgment if the delay was unreasonable. *Meadows v. Dominican Republic*, 817 F.2d 517, 520-21 (9th Cir. 1987). The moving party bears the burden of proving its Rule 60(b) motion is timely. *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 300 (4th Cir. 2017).

Here, Objectors waited until September 23, 2024 to file their motion to vacate the March 3, 2020 and October 6, 2023 orders. Objectors offer no explanation whatsoever for their delay in filing the motion. Even if the event triggering the motion was Morgan Stanley's production of the MOU in May 2024 (Humenik Dec. ¶ 9), Objectors fail to explain why it took them four months to file this motion. Objectors have failed to meet their burden of proving timeliness, and they should not be allowed to attempt that burden for the first time in their reply. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("[D]istrict court[s] need not consider arguments raised for the first time in a reply brief.")[6]

### 3. Objectors Cannot Satisfy Any Subsection of Rule 60(b).

As noted above, each subsection under Rule 60(b) has a different standard, and Objectors bear the burden of proof as to each element. *Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir. 1988). Objectors have not met their burden as to any subsection:

---

[6]    The Ninth Circuit's remand to allow the Court to assess class member standing did not reset the one-year deadline for challenging the March 3, 2020 order relating to fees. *See Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1135 (9th Cir. 2022) (deadline restarts when appellate decision "disturb[s] or revise[s] the previous, plainly settled rights and obligations of the parties.") Here, Objectors and Harvey expressly stipulated the Ninth Circuit's decision did *not* disturb this Court's fee determinations, which remained in effect. ECF 158, p. 4:2-4. Therefore, to the extent the motion challenges the March 3, 2020 order under Rule 60(b)(1), (2), or (3), the one-year deadline has passed.

1      Rule 60(b)(1) permits vacatur due to mistake, inadvertence, surprise, or excusable

2  neglect. Objectors have failed to prove how any of these grounds apply, especially since they

3  have been accusing Harvey and Class Counsel of the same misconduct since 2019.

4      Rule 60(b)(2) allows vacatur for "newly discovered evidence," but only if the moving

5  party exercised reasonable diligence in requesting the information earlier.  *Marroquin v. City*

6  *of Los Angeles*, 112 F.4th 1204, 1215 (9th Cir. 2024). Here, Objectors could have renewed

7  their request for the MOU when the case returned from the Ninth Circuit, but they chose to

8  abandon that request in exchange for payment of their $1.3 million fee and cost award.

9      Rule 60(b)(3) permits vacatur due to fraud or misconduct. In addition to proving

10  fraud by clear and convincing evidence, the moving party must prove it was reasonably

11  diligent.  *Pacific & Artic Ry. & Navigation Co. v. United Transp. Union*, 952 F.2d 1144,

12  1148 (9th Cir. 1991). Objectors have not made either showing.

13      Rule 60(b)(4) applies if the judgment is void due to lack of jurisdiction.  *See Ruiz v.*

14  *Snohomish Cnty. Pub. Util. Dist. No. 1*, 824 F.3d 1161, 1165 (9th Cir. 2016). It is undisputed

15  the Court has jurisdiction over the parties and the subject matter.

16      Rule 60(b)(5) permits vacatur if, *inter alia*, "applying it prospectively is no longer

17  equitable." *Marroquin v. City of Los Angeles*, 112 F.4th 1204, 1217 (9th Cir. 2024).  This

18  phrase requires "a significant change either in factual conditions or in law" that renders

19  continued enforcement "detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433,

20  447 (2009). Relief under subsection (b)(5) cannot be granted "simply because a party finds it

21  is no longer convenient to live with the terms of the order." *SEC v. Coldicutt*, 258 F.3d 939,

22  942 (9th Cir. 2001). Here, the public interest in finality of judgments and upholding

23  settlement agreements outweighs any private interest Objectors might have in vacating the

24  orders.

25      Finally, Rule 60(b)(6)'s "catch-all" provision does not apply to situations covered by

26  the other subsections of Rule 60(b).  *Morroquin v. City of Los Angeles*, 112 F.4th at 1217

27  (9th Cir. 2024). Moreover, relief under Rule 60(b)(6) is reserved for "extraordinary

28  circumstances," *Id*.  Objectors have failed to prove the catch-all provision applies.

1    **VI.    OBJECTORS ARE NOT ENTITLED TO RELIEF UNDER RULE 60(d)(3) OR**

2    **THE COURT'S EQUITABLE POWER**

3    **A.    Objectors Have Not Met Their Heavy Burden for Obtaining Relief Under**

4    **Rule 60(d)(3).**

5    FRCP 60(d)(3) allows the court to set aside a judgment for "fraud on the court."

6    Such relief is available only to prevent a "grave miscarriage of justice." *United States v.*

7    *Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1167 (9th Cir. 2017).  Evidence that could have been

8    discovered earlier through the exercise of reasonable diligence cannot support a motion based

9    on fraud on the court.  *Id.* at 1169.

10    To meet this heavy burden, Objectors must prove that Harvey or Class Counsel made

11    (1) an intentional, material misrepresentation that (2) goes to the central issue in the case,

12    (3) harms the integrity of the judicial process, and (4) affected the outcome of the case.  *Id.* at

13    1168.  Non-disclosure of evidence does not constitute fraud on the court, nor does perjury by

14    a party or witness.  *Levander v. Prober*, 180 F.3d 1114, 1120 (9th Cir. 1999).  Rather, "only

15    the most egregious misconduct, such as bribery of a judge or members of a jury, or the

16    fabrication of evidence by a party in which an attorney is implicated will constitute a fraud

17    on the court." *Trendsettah*, 31 F.4th at 1134.

18    Here, neither Harvey nor Class Counsel intentionally misrepresented any aspect of

19    the settlement.  The privileged, unenforceable, and superseded MOU, if relevant at all, was

20    not a central issue in the case.  The failure to disclose the MOU did not harm the integrity of

21    the judicial process because the FINRA dismissal term had no impact whatsoever on the

22    class recovery.  No one was harmed.  A "grave miscarriage of justice" did not occur.

23    **B.    Objectors Have Failed to Prove the Court Should Exercise Its Equitable**

24    **Power.**

25    In class action cases, a federal court has the equitable authority to deny or order

26    disgorgement of fees.  *Rodriguez II*, 688 F.3d at 653.[7]  But this authority is not unlimited.

27    ───────────────

28    [7]    It is unclear whether a claim for disgorgement of fees is governed by California or
federal law.  *Compare Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 809 (9th Cir. 2018)
(fee awards in cases brought under state law are governed by state law) *to Sonner v. Premier*

22

1   The purpose of disgorgement is not to punish the alleged wrongdoer, but to ensure the

2   wrongdoer does not profit from the alleged misconduct.  *Liu v. SEC*, 591 U.S. 71, 79-80

3   (2020).  Thus, the proper measure of disgorgement (if any) is the net profits the wrongdoer

4   received as a result of the alleged illegal activity.  *Id.*; *accord Uzyel v Kadisha*, 188

5   Cal.App.4th 866, 894 (2010) (party seeking disgorgement must produce evidence permitting

6   a reasonable approximation of wrongful gain attributable to alleged misconduct).  An order

7   of disgorgement that results in a windfall to the alleged victims is inequitable.  *Liu*, 591 U.S.

8   at 80.

9       Here, Objectors ask the Court to order Class Counsel "to disgorge to the class the fees

10  they received for services performed during and after counsel's negotiation of" the MOU.

11  Notice of Mtn., p. i.  In other words, Objectors want Class Counsel to refund the gross

12  revenues they received for all services performed dating back to December 2018, without

13  regard to whether the class suffered any harm, and without any offset for the cost of

14  providing those services or the benefits the class received from counsel's work. Objectors'

15  request is wholly inconsistent with federal and California law.

16  **VII.    THE COURT SHOULD STRIKE THE HUMENIK DECLARATION**

17      Mr. Humenik's 45-page declaration, which includes more than 400 pages of exhibits,

18  should be stricken.  First, the declaration consists almost entirely of argument and

19  conclusions rather than facts, in violation of Local Rule 7-5(b).  Second, Objectors' purpose

20  in placing arguments and conclusions in Mr. Humenik's declaration was to evade Local Rule

21  7-2(b)'s 25-page limit for memoranda of points and authorities.

22      With regard to his specific testimony: Mr. Humenik has not shown he is an expert in

23  valuing or defending against FINRA claims and therefore is not qualified to opine about

24  Harvey's potential financial or disciplinary exposure.  He also has no personal knowledge

25  about the facts or evidence underlying the FINRA claims against Harvey.  His testimony

26  about the results of FINRA proceedings involving other financial advisors lacks foundation,

27  *Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020) (when exercising equitable power, federal
    courts apply federal common law).  In any event, the laws regarding disgorgement appear

28  similar.

is based on hearsay, and violates the best evidence rule. His repeated quotations and summaries of what other documents say violate the best evidence rule, are hearsay, argumentative, and are intended to evade the 25-page limit for memoranda.

| Evidence | Objection to Evidence |
|---|---|
| ¶ 8 | 8:26-9:18: quotations and summaries of what other documents say violate the best evidence and hearsay rules. |
| ¶ 10 | Misstates the cited evidence. Best evidence; hearsay. |
| ¶¶ 11-12 | Best evidence; hearsay; argumentative as to "previously undisclosed side deal" at 3:26. |
| ¶¶ 21-22 | Best evidence; hearsay. |
| ¶ 23 | "Harvey's personal liability exposure is immense" at 6:20 lacks foundation and is improper opinion. The remainder of the paragraph, 6:20-7:5, violates the best evidence and hearsay rules. |
| ¶ 24 | "because most lawyers who practice before FINRA charge hourly fees…." at 7:6-7 lacks foundation. The second sentence, 7:9-14, violates the best evidence and hearsay rules. |
| ¶¶ 27-33 | Testimony about results of other FINRA cases lacks foundation, violates the best evidence and hearsay rules, and is irrelevant. |
| ¶ 40 | "when Harvey engaged in the misconduct …" at 10:26-27 lacks foundation and is argumentative. |
| ¶ 41 | Testimony about results of other disciplinary actions lacks foundation, violates the best evidence and hearsay rules, and is irrelevant. |
| ¶ 44 | "backdrop of Harvey's defense costs and substantial monetary and disciplinary exposure" at 13:8-9 lacks foundation, is improper opinion, and is argumentative. |
| ¶¶ 47-48 | Testimony about contents of Livingston and Wynne declarations is argumentative and violates best evidence and hearsay rules. |
| ¶ 49 | Lacks personal knowledge about the "oral settlement agreement" and what the MOU "memorializes." Argumentative. |
| ¶ 52 | "their agreement to dismiss the FINRA action" at 14:17-18 assumes facts, lacks foundation. |
| ¶ 54 | "substantially the same" is argumentative and conclusory. Testimony about MOU versus the Agreement is best evidence, hearsay |
| ¶¶ 55, 56 | Testimony about Wynne/Sagafi telephone call lacks foundation and is based on hearsay. |

| ¶¶ 58-68 | Testimony about the contents of earlier pleadings is argumentative, violates the best evidence rule, the hearsay rule, and Local Rules 7-5(a) and 7-2(a). |
|---|---|
| ¶ 71 | "their settlement agreement included a promise …" at 18:25-27 lacks foundation, is argumentative and assumes facts. |
| ¶¶ 73-75 | Testimony about content of pleadings is argumentative, violates the best evidence rule, the hearsay rule, and Local Rules 7-5(a) and 7-2(a). |
| ¶¶ 77-78 | Argumentative. Assumes facts. Misstates the evidence. |
| ¶¶ 79-81 | Testimony about the Agreement is argumentative and violates the best evidence rule, the hearsay rule, and Local Rules 7-5(a) and 7-2(a). |
| ¶ 89 | "Unlike class representative Harvey" is argumentative, assumes facts. |
| ¶¶ 83-88, 90, 95-97 | Testimony about contents of pleadings is argumentative and violates the best evidence rule, the hearsay rule, and Local Rules 7-5(a) and 7-2(a). |
| ¶ 98 | "Undisclosed agreement" at 25:8 is argumentative and assumes facts. The remainder of the paragraph, 25:9-13, lacks foundation and is improper opinion. |
| ¶¶ 95-122 | Testimony about contents of pleadings is argumentative and violates the best evidence rule, the hearsay rule, and Local Rules 7-5(a) and 7-2(a). |
| ¶¶ 124-129 | Testimony about contents of final approval hearing transcript is argumentative and violates the best evidence rule, the hearsay rule, and Local Rules 7-5(a) and 7-2(a). |
| ¶¶ 131-140 | Testimony about contents of pleadings is argumentative, violates the best evidence rule, the hearsay rule, and Local Rules 7-5(a) and 7-2(a). |
| ¶¶ 156-165 | Testimony about other cases involving "side agreements" lacks foundation, is hearsay, and is irrelevant. |

Dated: November 13, 2024                    CLAPP & LAUINGER LLP


                                            */s/ James F. Clapp*
                                            _____
                                            JAMES F. CLAPP
                                            Attorneys for Plaintiff
                                            BRANDON HARVEY