LYNNE C. HERMLE (STATE BAR NO. 99779)
lchermle@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025-1015
Telephone:     (650) 614-7400
Facsimile:     (650) 614-7401

ANDREW R. LIVINGSTON (SBN 148646)
alivingston@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105
Telephone:     (415) 773-5700
Facsimile:     (415) 773-5759

KATIE E. BRISCOE (SBN 287629)
kbriscoe@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, California 95814
Telephone:     (916) 447-9200
Facsimile:     (916) 329-4900

Attorneys for Defendant
MORGAN STANLEY SMITH BARNEY LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON HARVEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN STANLEY SMITH BARNEY LLC,<br><br>Defendant. | Case No. 3:18-cv-02835 WHO<br><br>**DEFENDANT MORGAN STANLEY SMITH BARNEY LLC'S OPPOSITION TO OBJECTORS' MOTION FOR DENIAL AND DISGORGEMENT OF ATTORNEYS' FEES FROM CLASS COUNSEL AND MOTION TO VACATE ORDERS AWARDING ATTORNEYS' FEES TO CLASS COUNSEL**<br><br>Judge: Hon. William H. Orrick<br>Date:   December 4, 2024<br>Time:   2:00 p.m.<br>Dept:   Courtroom 2, 17th Floor |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ....................................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND.............................................. 2

      A.    Chen Files a PAGA-Only Action in California State Court ...................... 2

      B.    The FINRA Action and Harvey's Class and PAGA Claims ..................... 3

      C.    Efforts to Mediate *Chen* and *Harvey* .......................................................... 3

      D.    Objectors Seek to Disrupt the Settlement, Accusing the Parties of
            Collusion and Citing the MOU ................................................................... 4

      E.    The Court Grants Final Approval and Awards Objectors Attorneys' Fees ........... 5

      F.    Objectors File Four Appeals with the Ninth Circuit and the Court Again
            Grants Final Approval .................................................................................. 6

      G.    In *Chen*, Morgan Stanley Moves for Summary Judgment Based On the
            Preclusive Effect of the *Harvey* Settlement ............................................. 7

      H.    The FINRA Action Remains Pending .......................................................... 7

III.  ARGUMENT ............................................................................................................. 8

      A.    The Superseded MOU Does Nothing to Change That the Settlement Is
            Fair, Adequate, and Reasonable .................................................................. 8

            1.    The Superseded MOU Is Not a Side Agreement That Was Required
                  to Be Disclosed ................................................................................... 9

            2.    The Settlement Agreement Was Fair, Adequate, and Reasonable
                  When the Court Approved It and It Remains So Now............................. 11

      B.    The Court's Prior Orders Are Proper and There is No Basis to Vacate
            Them ............................................................................................................. 13

            1.    Relief Under Rule 60(b) is Not Available as Objectors Could Have
                  Raised their Concerns on Appeal ....................................................... 13

            2.    Rule 60(b)(2) Does Not Apply Because the Outcome Would Not
                  Have Been Different Had the MOU Been Previously Produced ............. 13

            3.    There Was No Fraud, Misrepresentation, or Misconduct as
                  Required for Rule 60(b)(3), Let Alone "Fraud on The Court" ................. 14

                  a.    There Was No Fraud, Misrepresentation, or Misconduct............. 14

                  b.    Objectors Had Ample Opportunity to Present their
                        Arguments Even Absent Seeing the MOU .................................. 15

            4.    There Was No Fraud on the Court ......................................................... 15

            5.    Objectors Cannot Evade the Stipulation ............................................... 17

      C.    The Court Should Strike the Humenik Declaration ............................................. 19

IV.   CONCLUSION ......................................................................................................... 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bressman*,
874 F.3d 142 (3d Cir. 2017)................................................................................ 17

*Briseno v. Bonta*,
621 F. Supp. 3d 1065 (C.D. Cal. 2022)................................................................ 20

*Briseno v. Henderson*,
998 F.3d 1014 (9th Cir. 2021).............................................................................. 11

*Casey v. Albertson's Inc.*,
362 F.3d 1254 (9th Cir. 2004)........................................................................ 14, 15

*De Saracho v. Custom Food Machinery, Inc.*,
206 F3d 874 (9th Cir. 2000)................................................................................. 14

*In re Eastern Sugar Antitrust Litig.*,
697 F.2d 524 (3d Cir. 1982)................................................................................. 10

*Feature Realty, Inc. v. City of Spokane*,
331 F.3d 1082 (9th Cir. 2003).............................................................................. 13

*GemCap Lending, LLC v. Quarles & Brad, LLP*,
269 F. Supp. 3d 1007 (C.D. Cal. 2017)................................................................ 20

*Grady v. RCM Techs., Inc.*,
671 F.Supp.3d 1065 (C.D. Cal. 2023)............................................................. 10, 11

*Inland Concrete Enters., Inc. v. Kraft*,
318 F.R.D. 383 (C.D. Cal. 2016).......................................................................... 13

*King County v. Rasmussen*,
299 F.3d 1077 (9th Cir. 2002).............................................................................. 20

*Krommenhock v. Post Foods, LLC*,
255 F. Supp. 3d 938 (N.D. Cal. 2017) ................................................................. 21

*Lofton v Wells Fargo Home Mortg.*,
230 Cal.App.4th 1050 (2014)............................................................................... 10

*Morrison v. Zangpo*,
No. C-08-1945 EMC, 2008 WL 4449585 (N.D. Cal. Sept. 30, 2008)................... 19

*Park v. Transamerica Ins. Co.*,
917 F. Supp. 731 (D. Hawaii 1996) ..................................................................... 17

*Radcliffe* v. *Experian Info. Sols. Inc.*,
    715 F.3d 1157 (9th Cir. 2013)................................................................. 10, 16, 17

*U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*,
    971 F.2d 244 (9th Cire. 1992).................................................................. 20

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012)................................................................... 10

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
    944 F.3d 1035 (9th Cir. 2019).................................................................. 11

*Seymour v. Summa Vita Cinema, Inc.*,
    809 F.2d 1385 (9th Cir. 1987).................................................................. 18

*Silver v. Exec. Car Leasing Long-Term Disability Plan*,
    466 F.3d 727 (9th Cir. 2006)................................................................... 20

*Special Devices, Inc. v. OEA, Inc.*,
    131 F. Supp. 2d 1171 (C.D. Cal. 2001)..................................................... 21

*Tesoro Ref. & Mktg. Co. v. Pac. Gas & Elec. Co.*,
    No. 14-cv-00930-JCS, 2015 WL 5675861 (N.D. Cal. Sept. 28, 2015) ................. 18

*Turrieta v. Lyft, Inc.*,
    16 Cal.5th 664 (2024) ........................................................................... 11

*United States v. Barrueta*,
    No. CR-94-20050-JW, 1996 WL 101197 (N.D. Cal. Feb. 29, 1996)..................... 18

*United States v. Beggerly*,
    524 U.S. 38 (1998) ............................................................................... 14

*United States v. Sierra Pac. Indus.*,
    100 F. Supp. 3d 948 (E.D. Cal. 2015) ................................................. 15, 16

*United States v. Sierra Pac. Indus., Inc.*,
    862 F.3d 1157 (9th Cir. 2017)......................................................... 14, 16

*Valerio v. Boise Cascade Corp.*,
    80 F.R.D. 626 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981) ............. 15, 16

*In re Wawa, Inc. Data Sec. Litig.*,
    85 F.4th 712 (3d Cir. 2023)..................................................................... 10

*Wolff v. California*,
    236 F. Supp. 3d 1154 (C.D. Cal. 2017)..................................................... 13

*Yith v. Nielsen*,
    343 F. Supp. 3d 938 (E.D. Cal. 2018)....................................................... 21

**Statutes**

28 U.S.C. § 1715(b)(5) ............................................................................................... 9

CAFA ........................................................................................................................... 9

Cal. Lab. Code § 2699(s)(2) ....................................................................................... 9

Civil L.R. 7-3(a) ........................................................................................................ 19

Civil L.R. 7-4(b) ........................................................................................................ 19

**Other Authorities**

Fed. R. Evid. 602 ...................................................................................................... 22

Rule 23 ..................................................................................................... 5, 8, 9, 11, 12

Rule 60(b) ..................................................................................................... 10, 13, 14

1    **I.**    __INTRODUCTION__

2         Faced with impending dismissal of their subsumed state court action, Objectors Tracy

3    Chen and Matthew Lucadano come storming back into this Court yet again in another ill-

4    conceived effort to undermine the *Harvey* settlement, advancing re-packaged arguments and

5    attempting to manufacture something out of nothing.

6         This most recent attempt to convince this Court to reverse itself apparently was trigged by

7    Morgan Stanley's filing of a motion for summary judgment in the *Chen* case in which it is asking

8    the court to dismiss that action on res judicata and collateral estoppel grounds as a result of the

9    *Harvey* settlement.  Relying on the *Harvey* parties' early MOU in *Harvey* that was later

10   extinguished by the final settlement agreement here, Objectors seized upon a now defunct

11   provision for mutual dismissal of the parties' cross claims in the FINRA action involving Harvey

12   and Morgan Stanley (the "walkaway"). Although the walkaway was never part of the settlement

13   for which Harvey sought and received approval (the "Settlement") and has been long since

14   extinguished, Objectors argued in *Chen* that it provides a basis for the court to decline to apply

15   res judicata and collateral estoppel based on the Settlement. In response, the court in *Chen*

16   informed Objectors that, should they wish to attack (again) the validity of the Settlement, they

17   would need to do it before this Court (again).

18        Now, Objectors come before the Court crying fraud, collusion, and the like, attempting to

19   disguise old arguments as new. But the Court previously heard and rejected these same

20   arguments, including Objectors' false accusations of collusion and concealment of a surreptitious

21   "side deal" regarding the FINRA action.  And contrary to Objectors' flawed arguments, the

22   superseded MOU need not have been disclosed during the approval of the Settlement in this

23   Court, and the since-extinguished walkaway had no impact on class recovery. Indeed, at the time

24   the *Harvey* parties reached an agreement in principle to resolve this action—including the

25   financial consideration for the class and PAGA settlement—there was no discussion about the

26   FINRA arbitration.[1]  It was only several weeks later—well after price had been agreed upon—

27   _____

28   [1] Morgan Stanley offers factual context regarding the *Harvey* parties' original agreement in
     principle and the subsequent MOU without waiving the mediation or settlement privileges.

DEF.'S OPP'N TO OBJECTORS' MOT. FOR DENIAL
OF ATTYS' FEES AND MOT. TO VACATE
3:18-cv-02835 WHO

that the parties entered into the MOU with the mutual walkaway.[2] Even then, the MOU and its reference to the FINRA action was short-lived, as a further mediation involving the *Harvey* parties and the Objectors resulted in a broader settlement that was captured in the Class Action Settlement Agreement and Release ("Agreement") that the Court approved. That Agreement superseded and extinguished the MOU.

Just as Morgan Stanley and Class Counsel previously and accurately represented to the Court, there is no "side deal." The MOU and the mutual walkaway in it were but a preliminary statement of the settlement that were eclipsed by the Agreement and never otherwise resurrected. Indeed, the FINRA arbitration has been pending throughout this action. The parties there recently mediated the case, but they were unable reach a resolution. The action remains pending, and a hearing is likely to be reset if the parties cannot reach agreement.

Simply put, the MOU and the bygone walkaway in it are of no moment—they do not create an insurmountable conflict nor do they in any way undermine the Court's finding (twice) that the Settlement is fair, adequate, and reasonable. The Court should deny Objector's motion in full.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[3]

### A.  Chen Files a PAGA-Only Action in California State Court

On May 27, 2014, Tracy Chen filed *Chen et al. v. Morgan Stanley Smith Barney, LLC*, Case No. 30-2014-00724866-CU-OE-CXC ("*Chen*") in Orange County Superior Court. Declaration of Andrew Livingston ISO Oppo. to Objectors' Mot. for Denial of Atty's Fees and Mot. to Vacate ("Livingston Decl.") ¶ 2. On November 17, 2017, Matthew Lucadano joined Chen as a plaintiff. Livingston Decl. ¶ 4.

---

[2] The crux of Objectors' argument appears to be that the FINRA action was so valuable to Morgan Stanley and Harvey that it somehow drove the negotiations of the class and PAGA settlement, resulting in a lower gross settlement amount in this case. This theory is absurd on its face, ignores the critical role this Court played in evaluating the Settlement, and shows a complete lack of understanding of FINRA proceedings.

[3] Morgan Stanley does not seek to rehash all facts that it has put before the Court concerning Objectors and their efforts in this case. For a more complete recitation, *see* ECF No. 108, 109, 126.

**B.   The FINRA Action and Harvey's Class and PAGA Claims**

On April 25, 2018, Morgan Stanley filed a statement of claim against Harvey with FINRA. Livingston Decl. ¶ 5, Ex. A. On May 9, 2018, Harvey submitted a PAGA notice to the LWDA. Livingston Decl. ¶ 6. On May 14, 2018, Harvey filed a class action in this Court on behalf of current and former financial advisors. ECF No. 1. On July 12, 2018, Harvey filed his First Amended Complaint adding a PAGA claim. ECF No. 11. On May 20, 2019, Harvey filed his Second Amended Complaint ("SAC"). ECF No. 55.

**C.   Efforts to Mediate _Chen_ and _Harvey_**

Consistent with the Northern District Local Rules, the _Harvey_ parties agreed on an ADR procedure, choosing private mediation. ECF No. 22. On November 8, 2018, the _Harvey_ parties attended a full-day mediation but did not reach a resolution. Livingston Decl. ¶ 7. The parties returned for a second full day of mediation on November 19, 2018, but again did not reach resolution. _Id._ However, on November 21, 2018, after further discussions with the mediator, the parties reached an agreement in principle to resolve Harvey's class and PAGA claims in exchange for $9,735,000, and clarified the scope of the class. _Id_. At the time of the agreement, the parties made no mention of the FINRA arbitration, nor had the parties discussed dismissing it.[4] _Id_. At no point before the parties reached agreement on the value and scope of the class did the parties discuss potentially including resolution of the FINRA action as a contemplated settlement term. _Id_. After weeks of negotiations, on December 12, 2018, the parties executed an MOU with a mutual walkaway from the FINRA arbitration. _Id._

On January 17, 2019, Morgan Stanley, Harvey, and the Objectors attended an ultimately unsuccessful global three-way mediation with mediators Mark Rudy and Francis "Tripper" Ortman.[5] Livingston Decl. ¶ 9. Objectors left in the early afternoon before the case resolved, and Morgan Stanley thereafter reached an agreement with Harvey involving a total payment of

---

[4] Without waiving the mediation or settlement privileges, should the Court find it helpful, Morgan Stanley is willing to provide the Court for in-camera review a November 21, 2018 email exchange with the mediator outlining the terms for the parties' agreement in principle.

[5] Years prior, the parties in _Chen_ mediated with Mr. Rudy but the mediation was unsuccessful, as were follow up efforts by Mr. Rudy. Mr. Ortman was the mediator that assisted the _Harvey_ parties in reaching resolution.

1    $10,235,000 to resolve all class and representative claims from April 23, 2013, through the date

2    of preliminary approval (including those at issue in *Chen*). *Id.*

3         On April 26, 2019, after months of negotiating, the *Harvey* parties executed the

4    Agreement which contains the entire agreement between the *Harvey* parties. Livingston Decl. ¶

5    11; ECF No. 48-3 ¶ 97 ("This Agreement … contains the entire agreement between Plaintiff and

6    Defendant relating to the Settlement and transactions contemplated hereby, and all prior or

7    contemporaneous agreements, understandings, representations, and statements, whether oral or

8    written and whether by a Party or such Party's legal counsel, are merged herein."). By its terms,

9    the Agreement supersedes and extinguishes the MOU and all of its terms. The Agreement does

10   not include any term relating to the FINRA arbitration, and no agreement—oral, written, or

11   otherwise—was made to dismiss the FINRA action in connection with the resolution of this case.

12   Livingston Decl. ¶ 11; *see generally* ECF No. 48-3.

### D.    Objectors Seek to Disrupt the Settlement, Accusing the Parties of Collusion and Citing the MOU

13
14
         As the Court is well aware, Objectors' arguments about Harvey's purported conflicts and

15   a "side deal" are not new— Objectors have asserted them at every stop in their quest to

16   undermine the Settlement. Indeed, from the time Objectors moved to intervene in this action on

17   January 23, 2019, they insisted, among other things, that there was collusion and presumed the

18   FINRA arbitration would "be dismissed as part of the settlement." ECF No. 38 at 11:9-12; ECF

19   No. 28 at 15:23-24;. Their amicus briefs in opposition to preliminary approval raised similar

20   arguments, claiming that Harvey had been in a "weak" bargaining position in part because of the

21   pending FINRA action. *Id.* ECF No. 52. at 22:10-18. Objectors pressed these same points in a

22   lengthy argument at the June 12, 2019 preliminary approval hearing, in response to which the

23   Court noted the Settlement:

24
25               "appears to be reasonable value offered to the class that's consistent
                 or better than some comparable cases. There's significant litigation
26               risk and there's no collusion that I saw in the evidence presented to
                 me in negotiations."

27   Livingston Decl. ¶ 12, Ex. B at 4:8-11.

28

On September 5, 2019, the Court denied the Motion to Intervene and granted Harvey's Motion for Preliminary Approval. ECF Nos. 76-77. In doing so, it addressed and rejected each argument raised by Objectors. Consequently, it concluded that the settlement is "fair and reasonable to the Class Members when balanced against the probable outcome of further litigation" and that it was "reached as the result of intensive, serious and non-collusive negotiations." ECF No. 76 at 2:3-12.

**E.**    **The Court Grants Final Approval and Awards Objectors Attorneys' Fees**

Objectors participated extensively in the final approval proceedings, opposing the settlement through multiple lengthy objections (both written and oral), a second motion to intervene, and a motion for attorneys' fees. ECF Nos. 85-86, 92-93, 107. Objectors' various filings contain nearly identical underlying factual arguments they seek to re-package for consideration here.

For example, in his objection to the Settlement, Lucadano claimed that Harvey "fail[ed] to disclose the identifying agreements required by Rule 23(e)(3)" including the MOU and any agreement related to the FINRA action. ECF No. 92 at 12:13-18. Both Chen and Lucadano in their respective objections and in their opposition to final approval requested that the Court order Harvey and Morgan Stanley to disclose information regarding the FINRA action. ECF Nos. 92 at 12 n.9, 93 at 26 n.20, 107 at 8 n.11.

In opposing final approval, Objectors again demanded that Harvey and class counsel were "irreconcilably conflicted," citing many of the same cases they now cite in the instant Motion. ECF No. 107 at 8:8-10:8. The Court granted final approval on March 3, 2020, noting it considered each of Objectors' "various objections, including objections that were not properly briefed but argued at the final approval hearing." ECF No. 126 at 30:9-11. Applying "heightened scrutiny," the Court concluded the "terms of this settlement are fair, reasonable and adequate to the Class and to each Class Member and Aggrieved Employee." *Id.* at 1:25-27. The Court expressly considered and rejected each of Objectors' objections, including Objectors' objections regarding alleged collusion involving Harvey's pending FINRA action. *Id.* at 16:1-22.

1    Counsel for Objectors were awarded $1,143,667.38, 12% of the total Settlement in

2   attorneys' fees, while Harvey's counsel was awarded $1,238,973, 13% of the total settlement. *Id.*

3   at 34:15-20. The court awarded Harvey's counsel a slightly larger share in attorneys' fees because

4   "they were able to achieve this settlement with MSSB." *Id.* The court also granted service awards

5   in the amount of $3,333.33, $3,333.34, and $3,333.33 to Harvey, Chen, and Lucadano,

6   respectively. *Id.* at 34:24-25.

7    **F.    Objectors File Four Appeals with the Ninth Circuit and the Court Again
       Grants Final Approval**

8

9    Objectors appealed this Court's order denying intervention on October 1, 2019. ECF No.

10   78. Objectors also filed separate appeals to the final approval order on March 23, 2020: Chen in

11   her capacity as a PAGA representative and Lucadano as a class member. ECF Nos. 128-129. As

12   before this Court, on appeal Objectors again asserted arguments regarding alleged collusion. *See*

13   No. 19-16955, ECF No. 14 at 55; No. 20-15510, ECF No. 25 at 10-11. On August 15, 2022, the

14   Ninth Circuit issued its decision as to all of the appeals. No 19-16955, ECF No. 115.01. The

15   Ninth Circuit affirmed in part, dismissed in part, vacated in part, and remanded to the district

16   court "to assess Article III standing of the class members…" *Id.* at 11.

17   Following the Ninth Circuit's remand, the *Harvey* parties proposed a process to address

18   the Ninth Circuit's concerns regarding the Article III standing of class members who did not

19   participate in AFG. ECF No. 142. The *Harvey* parties collected the necessary data and Harvey

20   filed Supplemental Briefing in Support of Plaintiff's Motion for Final Approval. ECF No. 152.02.

21   In conjunction with the supplemental briefing, Harvey's counsel also sought additional fees. ECF

22   No. 152. Notably, Objectors, Harvey, and Morgan Stanley subsequently entered into a stipulation,

23   which the Court approved, that included an agreement by Objectors not to oppose Harvey's 2023

24   fee motion. ECF Nos. 155, 158. On October 6, 2023, the Court granted final approval of the

25   settlement. ECF No. 156. No further appeals were filed. Livingston Decl. ¶ 14. The Settlement

26   took effect and was administered and paid out (save for the second distribution that the Court has

27   authorized and which is underway to issue payment to a small number of individuals

28   inadvertently left off the original distribution).

**G.    In *Chen*, Morgan Stanley Moves for Summary Judgment Based On the Preclusive Effect of the *Harvey* Settlement**

On December 7, 2023, after the *Harvey* settlement became final and binding, at a status conference in *Chen*, Morgan Stanley expressed its continued position that *Harvey* fully extinguishes all of Objectors' claims. Livingston Decl. ¶ 15. Objectors disagreed. Accordingly, the court in *Chen* permitted Morgan Stanley to file a motion for summary judgment to determine the preclusive effect of the *Harvey* settlement and final judgment. *Id*. ¶ 15. The *Chen* parties thereafter negotiated a stipulation of facts. *Id*.

On May 24, 2024, Morgan Stanley filed its motion for summary judgment arguing that the *Chen* Plaintiffs' case is completely precluded on res judicata and collateral estoppel grounds by the *Harvey* Settlement. Livingston Decl. ¶ 16. Days later, without warning, *Chen* Plaintiffs served extensive written discovery and deposition notices related to the MOU on Morgan Stanley, Harvey, and Harvey's counsel. Livingston Decl. ¶ 17. Because *Chen* is stayed except for the limited purpose of adjudicating Morgan Stanley's summary judgment motion, Morgan Stanley requested an informal discovery conference ("IDC"). *Id*. At the *Chen* IDC, Objectors argued that the MOU's FINRA arbitration walkaway should have been disclosed and that, had it been disclosed, this Court would have concluded there was an insurmountable conflict or reverse auction. *Id*. Judge Claster determined that, should Objectors wish to argue that the Settlement was fraudulently obtained, they would need to do so before this Court. *Id*.

**H.    The FINRA Action Remains Pending**

The FINRA action between Harvey and Morgan Stanley had been pending throughout the class settlement approval process, the subsequent appeals, and settlement distribution. Declaration of Thomas J. Momjian ISO Oppo. to Objectors' Mot. for Denial of Atty's Fees and Mot. to Vacate ("Momjian Decl.") ¶¶ 2-3. Contrary to Objectors baseless allegations, the *Harvey* parties did not stall the FINRA action as part of some nefarious conspiracy theory. Mot. at 8. Instead, the FINRA arbitration remained on hold to assess what impact, if any, the Settlement might have, as the Agreement included a broad release from Harvey that Morgan Stanley believes would have barred Harvey's claims against it in the FINRA action. Momjian Decl. ¶ 3; ECF No. 48-3 ¶ 61b.

1    Given Objectors' innumerable attempts to thwart the Settlement, the FINRA hearing was

2    postponed to occur after the Settlement was final to avoid the parties from needlessly wasting

3    time and resources preparing and arbitrating an unsettled set of claims. Momjian Decl. ¶ 3.

4        The FINRA arbitration hearing had been set for November 12, 2024. Momjian Decl. ¶ 4.

5    However, the hearing was taken off calendar as the parties agreed to attend mediation on

6    November 8, 2024 with mediator Robert Herschman, who specializes in FINRA matters.   The

7    parties were unable to reach a resolution at mediation. *Id.* ¶ 5. The FINRA action remains

8    ongoing and, if the parties do not reach a resolution shortly, it is expected that the action will be

9    reset for hearing. *Id.* ¶ 6.

10   **III.    ARGUMENT**

11        **A.    The Superseded MOU Does Nothing to Change That the Settlement Is Fair, Adequate, and Reasonable**

12        Objectors' Motion sparks déjà vu as they desperately attempt to save their state court

13   action by crying collusion and accusing the *Harvey* parties of an improper side agreement—just

14   as they have for years, only this time under the guise of "new" information. But the so-called new

15   information is not new, and it has no bearing on the settlement reached in the first instance, let

16   alone the Agreement ultimately approved by the Court. The parties and the Court have been down

17   this road before—arguably too many times. All the would-be malfeasance that Objectors seek to

18   portray—collusion, concealment, side deals—have been presented to the Court multiple times

19   over and were considered and rejected as any barrier to the Settlement.[6] *See* ECF No. 126.

20   A review of the MOU does not change the Court's previous evaluation. ***First***, the parties were not

21

22   _____

     [6] Objectors have (baselessly and unsuccessfully) cried collusion throughout this action, insisting

23   that: (1) Morgan Stanley engaged in a reverse auction (*see* ECF Nos. 52 at 1:25-2:3, 93 at 26:11-15); (2) Harvey failed to identify agreements pursuant to Rule 23(e)(3), including the MOU (*see*

24   ECF No. 92 at 12:13-22); (3) the FINRA action left Harvey in a purportedly weak bargaining position (*see* ECF Nos. 38 at 11:9-12, 52 at 22:10-18), and (4) Harvey and class counsel are

25   conflicted (*see* ECF No. 107 at 8:8-10:8), and they also sought discovery regarding the MOU. *See* ECF Nos. 92 at 12 n.9, 93 at 26 n.20, 107 at 8 n.11. And, indeed, they have repeatedly raised the

26   very issues about which they now complain. *See, e.g.*, ECF No. 92 (Lucadano Objections to Class Action Settlement) at 12:13-22 (Harvey "fails to disclose the identifying agreements required by

27   Rule 23(e)(3), including (i) the initial MOU reached by the *Harvey* parties in December 2018");
     ECF No. 107 (Lucadano Opposition to Final Approval) at 8 (arguing that "Harvey and class

28   counsel are irreconcilably conflicted" and requesting the production of the initial MOU as "required by Rule 23(e)(3).").

DEF.'S OPP'N TO OBJECTORS' MOT. FOR DENIAL
OF ATTYS' FEES AND MOT. TO VACATE
3:18-cv-02835 WHO

1  required to disclose the MOU because: (1) the FINRA walkaway came to exist only *after* the

2  parties had already reached an agreement in principle to resolve this action; (2) the MOU was

3  superseded—and the mutual walkaway extinguished—by the Settlement Agreement, which is the

4  document upon which Harvey moved for and received court approval; and (3) no subsequent

5  "side agreement" regarding the FINRA action was ever made or effectuated. ***Second***, in finding

6  that the Settlement is fair, adequate, and reasonable, the Court closely examined the settlement

7  amount and nothing in the MOU makes the settlement any less valuable. The Motion should be

8  rejected in full.

9  **1.    <ins>The Superseded MOU Is Not a Side Agreement That Was Required to Be Disclosed</ins>**

10      Objectors insist that the superseded MOU's FINRA walkaway is a "side deal" that the

11  *Harvey* parties were required to, but did not, disclose. Not so. Rule 23(e)(3) requires parties to

12  identify "any agreement made in connection with the proposal" to settle a class action. Fed. R.

13  Civ. P. 23(e)(3).[7] "The spirit of Rule 23(e)(3) is to compel identification of any agreement or

14  understanding that might have *affected the interests of class members by altering what they may*

15  *be receiving or foregoing*." Ann. Manual Complex Lit. § 21.631 (4th ed. 2022) (emphasis added)

16  (providing the example of side agreements that "reveal additional funds that might have been paid

17  to the class that are instead paid to selected claimants or their attorneys"). The *Harvey* parties

18  were not required to disclose the FINRA walkaway provision, a term that never was part of the

19  Agreement and was never operative.

20      First, the FINRA walkaway had no impact whatsoever on what the class would receive or

21  forego. As set forth above, the FINRA mutual walkaway was <ins>*not*</ins> part of the parties' agreement in

22  principle to resolve this matter—rather, the parties had agreed on price weeks before entering into

23  the MOU, which included a walkaway merely as an add-on term. Livingston Decl. ¶ 7. In other

---

[7] Similarly, Objectors incorrectly claim that the MOU was required to be disclosed under both CAFA and PAGA. Mot. at 2. Yet, CAFA requires the disclosure only of any settlement or agreement made "***contemporaneously***" with the class settlement; it does not require disclosure of a non-contemporaneous agreement rendered moot by the signing of the final agreement, as happened here. 28 U.S.C. § 1715(b)(5) (emphasis added). And nothing in PAGA—either explicitly or implicitly— requires disclosing agreements to resolve unrelated claims that a PAGA plaintiff might have. Cal. Lab. Code § 2699(s)(2).

DEF.'S OPP'N TO OBJECTORS' MOT. FOR DENIAL
OF ATTYS' FEES AND MOT. TO VACATE
3:18-cv-02835 WHO

1    words, at the time the parties negotiated the short-lived FINRA walkaway, the settlement amount

2    had already been determined and agreeing to mutually dismiss cross FINRA claims came at no

3    expense to the class. *Id.* Accordingly, any notion that—despite being long defunct—the mutual

4    walkaway term somehow still "infected" the Settlement is nonsense and fails.[8] It is the *Agreement*

5    upon which Harvey moved for and obtained approval from the Court and under which the

6    settlement payments have been paid, not the MOU. It is the terms in the *Agreement* that bind the

7    parties, not the MOU. Thus, it is the Agreement that needed to be—and was—disclosed.

8        Second, the FINRA walkaway ***no longer existed*** when Harvey moved for and obtained

9    Court approval of the Agreement.[9] Following the attempted 3-way global mediation in January

10   2019, the *Harvey* parties re-negotiated the terms by which they agreed to resolve this matter,

11   increasing both the scope and amount of the Settlement. Livingston Decl. ¶ 9. The FINRA action

12   was not a factor in the negotiations, nor the ultimate deal reached. Livingston Decl. ¶¶ 7, 11.

13   Indeed, the longform Agreement upon which Harvey obtained Court approval did not provide for

14   dismissing the FINRA action and, by its own terms, the Agreement superseded the MOU and

15   extinguished the FINRA walkaway. *See* ECF No. 48-3 ¶ 97 (Entire Agreement). Thus, while the

---

[8] Moreover, Objectors' argument that Harvey stood to gain such extraordinary benefit from FINRA walkaway that it skewed his judgment in accepting a $10.2 million settlement on behalf of the class is not only speculative but strains credulity. Unsurprisingly, Objectors' valuation of a mutual walkaway provision is inflated, just as was their valuation of the class claims at issue. ECF No. 126 at 8-10.

[9] Objectors cite a slew of case law as supposed "support" for their argument that a conflict existed. However, these cases stand for nothing more than the unremarkable proposition that a court must consider the impact of conflicted representation on a settlement, and that the Court retains authority to do so at this late stage. *See, e.g.*, Mot. at 9-11. Objectors do not attempt to analogize the facts of these many cases with the facts here. *Id.* That is because they cannot. ***None*** of Objectors' cited authority found a conflict of interest or concluded that collusion exists based on terms in a preliminary agreement ***that were unenforceable and moot*** by the time the parties reached actual settlement. *See, e.g.*, *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) (finding incentive agreements that *remained enforceable* following settlement created a conflict of interest); *Radcliffe* v. *Experian Info. Sols. Inc.*, 715 F.3d 1157 (9th Cir. 2013) (same); *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712 (3d Cir. 2023) (remanding to consider whether "clear sailing" term in the *final settlement agreement* was reasonable)*; In re Eastern Sugar Antitrust Litig.*, 697 F.2d 524 (3d Cir. 1982) (denying Rule 60(b) motion for failure of plaintiffs' counsel to disclose ongoing merger negotiations); *Lofton v Wells Fargo Home Mortg.*, 230 Cal.App.4th 1050 (2014) (considering impact of supplemental common fund settlement that endured following the entry of settlement); *Grady v. RCM Techs., Inc.*, 671 F.Supp.3d 1065, 1077 (C.D. Cal. 2023) (finding large proposed service award and release of individual claims *in final settlement* weighed against approval).

DEF.'S OPP'N TO OBJECTORS' MOT. FOR DENIAL
OF ATTYS' FEES AND MOT. TO VACATE
3:18-cv-02835 WHO

1   MOU was live for a handful of months from December 2018 to April 2019, it was not in effect at

2   the time the Court examined settlement approval and its disclosure was not required.

3       Moreover, no other agreement was entered into regarding the FINRA arbitration as part of

4   the settlement of this action. Rather, the FINRA action was scheduled to proceed in arbitration on

5   November 12, 2024. Momjian Decl. ¶ 4. However, as described above, the parties took the

6   hearing off calendar to engage in private mediation with a mediator specializing in FINRA

7   disputes, but the November 8, 2024 mediation was unsuccessful. *Id.* ¶ 5. The FINRA action

8   remains ongoing. *Id*. ¶ 6.

9       In sum, the *Harvey* parties complied with the obligation under Rule 23(e)(3), as the

10  executed Agreement upon which Harvey moved reflects all terms made in connection with the

11  proposal to settle the class action and neither the MOU nor its FINRA mutual walkaway were

12  required to be disclosed. ECF No. 48-3.

13      **2.    The Settlement Agreement Was Fair, Adequate, and Reasonable When the Court Approved It and It Remains So Now**

14      Objectors argue that prior nondisclosure of the MOU prevented the Court from being able

15  to properly evaluate settlement approval and deprived the LWDA and the class of a meaningful

16  opportunity to opt out. Mot. at 1-2. Again, not so. The Court previously considered Objectors'

17  arguments—including cries of collusion, concealment, and side deals—and correctly concluded

18  that, notwithstanding Objectors' sensational accusations, the Settlement was fair, adequate, and

19  reasonable. ECF No. 126 at 1, 15-16. That Objectors now have a copy of the long-superseded

20  MOU is of no moment.

21      Much of Objector's cited authority simply stands for the unremarkable premise that the

22  Court must closely review class settlements to ensure that the deal is fair, and that parties have

23  not 'colluded' at the absent parties' expense. *See* Mot. at 11-12 *citing In re Bluetooth Headset*

24  *Prod. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011); *Briseno v. Henderson*, 998 F.3d 1014,

25  1027-28 (9th Cir. 2021); *Grady v. RCM Techs., Inc.*, 671 F.Supp.3d 1065, 1077 (C.D.Cal. 2023);

26  *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019); *Turrieta v. Lyft, Inc.*, 16

27  Cal.5th 664, 692 (2024). Yet, this Court already did precisely that when it applied heightened

28  scrutiny at final approval. The short-lived FINRA walkaway is irrelevant and in no way

DEF.'S OPP'N TO OBJECTORS' MOT. FOR DENIAL
OF ATTYS' FEES AND MOT. TO VACATE
3:18-cv-02835-WHO

1   undermines the Court's finding that the Settlement is fair, adequate, and reasonable.

2        First, nothing about the MOU transforms the Settlement from sufficient to insufficient.

3   This was not a "cheap" or "steeply discounted" settlement as Objectors seek to portray. Objectors

4   ignore that the Court, in granting approval, conducted a ***thorough and independent analysis of***

5   ***the Settlement's value, including evaluating the Settlement against several comparator cases***

6   involving similar claims, finding the Settlement to provide as much or more value than similar

7   settlements. ECF Nos. 126 at 5-10, 123 at 29:9-25, 76 at 4-9. That the parties at one point

8   contemplated a mutual walkaway from the FINRA action does nothing to devalue the Settlement.

9   The consideration provided under the Agreement was sufficient before and it remains so now.

10       Second, the defunct FINRA walkaway had no bearing on what class members may or may

11  not receive under the Settlement. All of Objectors' arguments rely on the same false premise that,

12  "[w]hen the FINRA side deal entered the negotiations, Harvey lost his ability to advance the

13  interests of the State and class." Mot. at 15:10-11. But that is plainly inaccurate. The parties had

14  already agreed in principle as to the settlement amount weeks before the mutual FINRA

15  walkaway entered the conversation. Livingston Decl. ¶ 7. Because the FINRA walkaway was an

16  afterthought not present in the negotiation of the agreement in principle, Harvey cannot be said to

17  have "lost his ability to advance" the interests of the class. Thus, regardless of the MOU, the

18  Settlement remains fair, adequate, and reasonable, as the Court already found in March 2020.

19       Moreover, courts are clear that, even if the MOU had been a side agreement subject to

20  disclosure (it was not), not all side agreements impact the class settlement. For example, in

21  evaluating a class settlement under Rule 23, the district court in *Rowe v. E.I. DuPont de Nemours*

22  *and Company* held that "the class representatives' individual settlement agreements did not

23  influence the terms of the class settlement." No. 06-1810 (RMB/AMD), 2011 WL 3837106, *5

24  (D.N.J. Aug. 26, 2011). Similarly, in *Mandalevy v. BofI Holding, Inc.*, the court found that the

25  nondisclosure of a blow-up clause threshold in a separate side agreement did not invalidate the

26  settlement agreement because it did not "relate to what the class members will receive, or signal

27  that there is a side agreement made solely for the benefit of the attorneys." No. 3:17-CV-667-

28  GPC-MSB, 2022 WL 4474263, *9 (S.D. Cal. Sept. 26, 2022).

DEF.'S OPP'N TO OBJECTORS' MOT. FOR DENIAL
OF ATTYS' FEES AND MOT. TO VACATE
3:18-cv-02835 WHO

**B.**      **The Court's Prior Orders Are Proper and There Is No Basis to Vacate Them**

Objectors implore the Court to vacate its prior orders under Rule 60(b) yet fail to identify which of the six subdivisions under which they are moving or why those grounds apply. Nor do Objectors bother to explain what orders they think should be vacated or to what extent. Presumably, Objectors rely on under Rule 60(b)(2) or (3). However, neither standard is met, and the motion must be denied.

### 1.      Relief Under Rule 60(b) is Not Available as Objectors Could Have Raised Their Concerns on Appeal

Relief under Rule 60(b) is available ***only*** on a ground that could not have been presented in a direct appeal. *See Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383, 407 (C.D. Cal. 2016) (Rule 60(b) motion must be denied if issues raised "could have been addressed on appeal") (emphasis omitted); *Wolff v. California*, 236 F. Supp. 3d 1154, 1161 (C.D. Cal. 2017) (same). Here, all of Objectors' arguments could have been—and were—presented before the Court and in their multiple appeals, and they never sought review of the Court's denial of their request for discovery as to the FINRA action. *See* No. 19-16955, ECF No. 14 at 55; No. 20-15510, ECF No. 25 at 10-11. On these grounds alone, their Motion should be denied.

### 2.      Rule 60(b)(2) Does Not Apply Because the Outcome Would Not Have Been Different Had the MOU Been Previously Produced

Relief under Rule 60(b)(2) is available only where the moving party shows: (1) "the evidence relied on in fact constitutes 'newly discovered evidence' within the meaning of Rule 60(b)"; (2) they "exercised due diligence to discover this evidence"; and (3) "***the newly discovered evidence must be of 'such magnitude that production of it earlier would have been likely to change the disposition of the case***.'" *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (citation omitted) (emphasis added).

Nothing in the MOU, including the long-dead FINRA walkaway, constitutes new evidence likely to have caused the Court to deny settlement approval had it been produced earlier. As discussed above, the FINRA walkaway ceased to exist at the time Harvey sought approval of the Settlement and, in any event, it played no part in reaching the gross settlement amount—not for the original agreement in principle nor the ultimate Agreement. Livingston Decl. ¶¶ 7, 11.

Given the belatedly contemplated and quickly extinguished mutual walkway had no bearing on what the class would or would not receive, it is unlikely the outcome here would have been any different had the MOU been disclosed earlier.

### 3.     There Was No Fraud, Misrepresentation, or Misconduct as Required for Rule 60(b)(3), Let Alone "Fraud on The Court"

To prevail under Rule 60(b)(3), the moving party must show by clear and convincing evidence "that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004). The rule "is aimed at judgments which were unfairly obtained, not at those which are factually incorrect." *De Saracho v. Custom Food Machinery, Inc.*, 206 F3d 874, 880 (9th Cir. 2000) (citation omitted). Indeed, relief under Rule 60(b)(3) is "available only to prevent a grave miscarriage of justice." *United States v. Beggerly*, 524 U.S. 38, 47 (1998). Fraud on the court necessarily "must involve an unconscionable plan or scheme which is designed to improperly influence the court in its decision." U*nited States v. Sierra Pac. Indus., Inc*., 862 F.3d 1157, 1168 (9th Cir. 2017) (citation omitted). Additionally, "[m]ere nondisclosure of evidence is typically not enough to constitute fraud on the court." *Id.* (alteration in original).

Objectors have not—and cannot—make any of the required showings, as, despite their false and offensive accusations, there was no fraud, misrepresentation, or other misconduct, and certainly nothing prevented Objectors from presenting—many times over—a full-throated argument about the MOU and FINRA arbitration.

### a.     There Was No Fraud, Misrepresentation, or Misconduct

Contrary to Objectors' disparaging accusations, the representations and actions by the *Harvey* parties and their counsel have been ***accurate and appropriate***. Objectors' theories consist of a series of false premises. The parties did not "conceal" the MOU—rather, as set forth above, they were not required to produce it and so did not. *See*, *supra*, Section I. In representing that there was no side deal to dismiss the FINRA arbitration, that also was true: the mutual FINRA walkway did not exist at the time the parties reached an agreement in principle to resolve the

1  matter, and it had been superseded and extinguished by the Agreement. Livingston Decl. ¶¶ 7, 11.

2  Nor was there some surreptitious understanding to dismiss the FINRA arbitration—as the parties

3  represented, the FINRA action remains pending following a recent failed mediation.  Momjian

4  Decl. ¶¶ 5-6.

### b.  Objectors Had Ample Opportunity to Present their Arguments Even Absent Seeing the MOU

Objectors have not argued that the alleged conduct prevented them from "fully and fairly

presenting the [case]." *Casey*, 362 F.3d at 1260. Nor can they. Even without the MOU, Objectors

argued *ad nauseum* that the *Harvey* parties colluded, insisting, among other unfounded things,

that there must be a "side deal" in to dismiss the FINRA arbitration. *See* ECF Nos. 52 at 22:10-

18, 93 at 26:11-15. The Court, having considered these arguments and applied heightened

scrutiny (ECF No. 126 at 1:25-26, 3:10-12, 5:23-8:17), nevertheless found the Settlement was

fair, adequate, and reasonable. There is no basis to believe that having the MOU in hand would

have enabled Objectors to make better or different arguments, nor could Objectors credibly argue

they were prevented from presenting their arguments without it, as indeed they did.

### 4.  There Was No Fraud on the Court

The actions of which Objectors complain are insufficient to establish a fraud, let alone

fraud on the court. The phrase "fraud on the court" "is '(to) be read narrowly, in the interest of

preserving the finality of judgments, which is an important legal and social interest.'" *Valerio v.*

*Boise Cascade Corp.*, 80 F.R.D. 626, 641 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981)

(citation omitted) (cited by Objectors at 23-24) (alteration in original). "The party seeking relief

must prove fraud on the court by clear and convincing evidence." *United States v. Sierra Pac.*

*Indus.*, 100 F. Supp. 3d 948, 956 (E.D. Cal. 2015), *aff'd sub nom*, *United States v. Sierra Pac.*

*Indus., Inc.*, 862 F.3d 1157. Moreover, "only the most egregious misconduct, such as bribery of a

judge or members of a jury, or the fabrication of evidence by a party in which an attorney is

implicated, will constitute fraud on the court." *Valerio*, 80 F.R.D. at 641.

There was no misrepresentation here, as set forth above, let alone an "intentional material

misrepresentation" as is required for fraud on the court. Mot. at 23. Material misrepresentations

1  are those that "go 'to the central issue in the case,' and must 'affect the outcome of the case.'"

2  *Sierra Pac. Indus., Inc.*, 862 F.3d at 1168. In other words, a material misrepresentation "must

3  'significantly change the picture already drawn by previously available evidence.'" *Id.* However,

4  "'[m]ere nondisclosure of evidence is typically not enough to constitute fraud on the court." *Id.*

5  (alteration in original); *accord Sierra Pac. Indus.*, 100 F. Supp. 3d at 956 ("Non-disclosure by an

6  officer of the court, however, does not rise to this level if it had a 'limited effect on the district

7  court's decision' and the withheld information would not have 'significantly changed the

8  information available to the district court.'") (citation omitted); *Valerio*, 80 F.R.D. at 641[10]

9  ("nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily

10  rise to the level of fraud on the court").

11      As set forth above, the MOU was not required to be disclosed and the parties'

12  representations as to the FINRA action and a FINRA walkaway were true. There was no

13  misrepresentation nor concealment. Even had the parties been required to disclose the short-lived

14  FINRA walkaway, such nondisclosure would not constitute fraud on the court. Given the Court

15  applied heightened scrutiny and undertook an in-depth review of the Settlement's value, including

16  compared to similar cases, any nondisclosure of the MOU had a "limited effect" and would not

17  have "significantly changed the information available." Moreover, the MOU does not go to the

18  "central issue" or "affect the outcome."

19      The cases upon which Objectors rely upon do not mandate a different finding. In *Radcliffe

20  v. Experian Information Solutions, Inc.*, the Ninth Circuit affirmed the district court's reversal of

21  a settlement where the settlement agreement granted incentive awards to the class representatives

22  that were conditioned upon them supporting the settlement and were unreasonable in the amount

23  relative to the expected class member payouts. 715 F.3d 1157, 1161 (9th Cir. 2013). The court

24  found these circumstances caused the representatives' interests to diverge from the class

---

25

26  [10] *Valerio* is narrower than Objectors would have the Court believe. Mot. at 24:6-7. In dicta, the court in *Valerio* explained that under the circumstances "affirmative misrepresentations *of financial condition* in order to obtain court approval of a class action settlement would establish fraud on the court." 80 F.R.D. at 643 n.13 (emphasis added). However, here, there was no such affirmative misrepresentation regarding the defendant's financial condition to obtain court approval of some lowball settlement, rendering the dictum inapplicable.

28

members' interests. *Id.* Neither circumstance is applicable here. Harvey, Chen, and Lucadano all received a third of $10,000 as an incentive payment, and the Settlement did not rid Harvey of the FINRA claims against him. ECF No. 126 at 34:23-25. Nor was any provision in the settlement agreement conditioned upon Harvey supporting the settlement. *See generally* ECF No. 48-3. Thus, class counsel could not have "orchestrated" or "advocated" for disparate incentive awards as class counsel in *Radcliffe* was guilty of doing. *Radcliffe*, 715 F.3d at 1168 (concurrence).

In *In re Bressman*, 874 F.3d 142 (3d Cir. 2017), plaintiffs' counsel, Folkenflik, seeking to recover the full amount of a default judgment, intentionally omitted the millions of dollars previously recovered on behalf of plaintiffs several months earlier in order to prevent defendants from receiving an offset for the amount already paid. *Id.* at 150-151. The Third Circuit found that Folkenflik's actions rose to the level of fraud on the court. *Id. Bressman* is inapplicable and distinguishable. *Bressman* did not involve a class action settlement, but rather a bankruptcy default judgment with distinct disclosure requirements, conducted on an ex parte basis. Moreover, the separate and undisclosed settlement in *Bressman* was final and in effect, whereas, here, the MOU was superseded long before the proceedings began. Thus, unlike Folkenflik, the *Harvey* parties honestly conveyed the non-existence of a side agreement. Additionally, Folkenflik affirmatively deceived the court in order to receive an "unjustified recovery" (*id.*), but there is no such claim of receipt of an unjustified recovery here, nor can there be. The settlement agreement provided the class $10.2 million, and that amount was unaffected by the MOU provision at issue. Objectors have failed to prove fraud on the court by clear and convincing evidence and their Motion must be denied.

### 5. Objectors Cannot Evade the Stipulation

Objectors demand that they be allowed to evade the stipulation[11] they entered regarding attorneys' fees, concluding—without authority or even explanation—that to hold them to their word would be manifestly unjust. Mot. at 24-25.

Generally, "stipulations fairly entered into are favored." *Park v. Transamerica Ins. Co.*,

---

[11] Morgan Stanley was also a party to the stipulation in which Objectors agreed not to oppose Harvey's counsel's fee requests in 2023. ECF No. 155.

DEF.'S OPP'N TO OBJECTORS' MOT. FOR DENIAL
OF ATTYS' FEES AND MOT. TO VACATE
3:18-cv-02835-WHO

917 F. Supp. 731, 735 (D. Hawaii 1996). "In order to have a stipulation withdrawn, the party

seeking such withdraw must show that (1) the stipulation resulted in manifest injustice; (2) lack of

prejudice to the opposing party; and (3) minimal inconvenience to the Court." *United States v.*

*Barrueta*, No. CR-94-20050-JW, 1996 WL 101197, at *1 (N.D. Cal. Feb. 29, 1996) (citing

*Seymour v. Summa Vita Cinema, Inc.*, 809 F.2d 1385, 1388 (9th Cir. 1987)). Objectors cannot

demonstrate any of the three elements.

First, Objectors fail to demonstrate that manifest injustice would result if the stipulation is

not disregarded. Their reliance on *Tesoro Ref. & Mktg. Co. v. Pac. Gas & Elec. Co.*, No. 14-cv-

00930-JCS, 2015 WL 5675861, at *10 (N.D. Cal. Sept. 28, 2015), is misplaced. The court in

*Tesoro* only stated in dicta that a party's withholding of "relevant information in bad faith" would

"*likely* constitute manifest injustice." Mot. at 25 (emphasis supplied); *see Tesoro Ref. & Mktg.*

*Co.,* 2015 WL 5675861, at *14. Moreover, it also explained that the withholding of relevant

information in bad faith would need to have been done for the purpose of avoiding an adverse

consequence to the moving party's detriment. *Id.* Objectors allege that the MOU demonstrates

that Harvey withheld "relevant information in bad faith." Mot. at 25. However, because the MOU

was long since superseded and has not had any bearing or relevance to this case at least since it

was extinguished, it does not qualify as "relevant information." Nor does it meet the qualifier of

being withheld "in bad faith." The *Harvey* parties were under no obligation to disclose the MOU

to Objectors, nor did the Objectors request that the MOU be disclosed in connection with the

stipulation. It cannot be said that the *Harvey* parties withheld the MOU in bad faith for the

purpose of avoiding some unknown adverse outcome that would cause some detriment to

Objectors.

Second, allowing Objectors to withdraw from the stipulation would certainly prejudice

Harvey and Morgan Stanley. Harvey and Morgan Stanley have proceeded through final approval

and settlement disbursement based on the stipulation. *See Seymour*, 809 F.2d at 1388 (finding

relief from a stipulation would have prejudiced non-moving party where they had prepared for

trial based on the stipulated facts). Withdrawing from the stipulation over a year later would

wreak havoc on the execution of the settlement and unfairly undermine the finality of the case for

DEF.'S OPP'N TO OBJECTORS' MOT. FOR DENIAL
OF ATTYS' FEES AND MOT. TO VACATE
3:18-cv-02835-WHO

1  the parties and the class.

2       Finally, withdrawing the stipulation would cause more than minimal inconvenience to the

3  Court. The withdrawal of the stipulation would thereby allow Objectors to make an unwarranted,

4  unsupported, and belated challenge to the award of attorneys' fees to Class Counsel that this

5  Court decided with good cause over a year ago. Doing so would only serve to open Pandora's box

6  and cause the Court to needlessly re-consider the parties' previous arguments.

7       Moreover, Objectors have long accused Harvey and Morgan Stanley of entering into an

8  improper side deal to dismiss the FINRA action. *See, e.g.*, ECF Nos. 38 at 11:9-12, 52 at 22:10-

9  18, 52 at 1:25-2:3, 92 at 12:13-22, 93 at 26:11-15, 107 at 8:8-10:8. This theory is not new, and

10 Objectors had long asserted to the Court their speculations by the time they entered into the

11 stipulation. Should they have wanted the production of the MOU to be required before entering

12 into the stipulation, they could have conditioned the stipulation on the MOU's production. They

13 did not, and they must live with that decision. Livingston Decl. ¶ 13; *see Morrison v. Zangpo*, No.

14 C-08-1945 EMC, 2008 WL 4449585, at *3-4 (N.D. Cal. Sept. 30, 2008) (cited by Objectors at

15 25) (holding that moving party who drafted offending agreements could not withdraw from

16 stipulation where he offered nothing more than his "realization that he may have made a tactical

17 error."). Objectors cannot now be allowed to end run around their poor decision-making by

18 demanding this Court ignore a fair stipulation because they are facing a complete dismissal of

19 their state court case.

20       **C.    The Court Should Strike the Humenik Declaration**

21       Objectors attempt to circumvent the Court's page limits through a 45-page attorney

22 declaration that is replete with improper argument and factual assertions that are not relevant to—

23 or cited within—their briefing. Their overlong filing, for which Objectors did not obtain prior

24 approval as required, should be disregarded or stricken.[12]  *See* Civil L.R. 7-4(b). Specifically, the

25 Court should strike all statements in Mark Humenik's declaration that: (1) discuss the law,

26 advance legal arguments, or make legal conclusions, (2) set forth additional factual materials that

27 

---

28 [12] The foregoing objections and requests to strike are made pursuant to Civil L.R. 7-3(a).

DEF.'S OPP'N TO OBJECTORS' MOT. FOR DENIAL
OF ATTYS' FEES AND MOT. TO VACATE
3:18-cv-02835-WHO

1  are not germane to the issues before this Court and/or are not referenced in Objectors' brief, and

2  (3) are speculative, conjectural, and/or not based on Humenik's personal knowledge.

3      First, Objectors improperly use the Humenik declaration and their requests for judicial

4  notice as vehicles to advance additional legal arguments—complete with argument headings—

5  and assert legal conclusions. As just one example, the Humenik declaration goes on at length

6  arguing about the "significant" financial exposure that Objectors insist Harvey faced under the

7  FINRA claims, and then marches through FINRA panel decisions issued in unrelated

8  proceedings, FINRA and SEC disciplinary actions taken against non-parties, and proceedings

9  held and documents filed in unrelated and factually distinguishable cases. ECF. No. 177

10  ("Humenik Decl.") ¶¶ 23-33, 41, 156-165, 171-179, 183-189 & Exhs. 4-12, 16-32, 35-39.

11      It is well-settled that a party cannot circumvent briefing page limits by citing to legal

12  authorities set forth in an attorney declaration. *E.g.*, *King County v. Rasmussen*, 299 F.3d 1077,

13  1081 (9th Cir. 2002) (citing Rule 56(e)) ("[d]eclarations, which are supposed to 'set forth facts as

14  would be admissible in evidence,' should not be used to" include "legal arguments outside of the

15  briefs"); *Silver v. Exec. Car Leasing Long-Term Disability Plan*, 466 F.3d 727, 732 n.2 (9th Cir.

16  2006) ( "court properly excluded a 46-page declaration submitted by [the plaintiff's] attorney"

17  because it, among other things, "contain[ed] legal argument that was not appropriate for a

18  declaration"); *GemCap Lending, LLC v. Quarles & Brad, LLP*, 269 F. Supp. 3d 1007, 1026 (C.D.

19  Cal. 2017) (sustaining objections to attorney declaration because "[l]egal arguments are

20  inappropriate in declarations").

21      Moreover, the Court may not take judicial notice of these legal authorities in the manner

22  Objectors seek. Courts may only take judicial notice of proceedings in other courts where "those

23  proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens

24  Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cire. 1992). Absent any direct relation, a district

25  court may take judicial notice of proceedings and documents that were filed in another court—

26  because the fact of such litigation and filings cannot reasonably be disputed—however, a court

27  cannot take judicial notice of the factual findings of another judicial body, or of the truth of the

28  matters asserted in the filings. *Briseno v. Bonta*, 621 F. Supp. 3d 1065, 1069 n. 3 (C.D. Cal. 2022)

DEF.'S OPP'N TO OBJECTORS' MOT. FOR DENIAL
OF ATTYS' FEES AND MOT. TO VACATE
3:18-cv-02835 WHO

1    (recognizing that, while courts may take judicial notice of documents filed in another court, " 'it

2    may do so not for the truth of the facts recited therein,' but simply for the fact that the documents

3    exist and were filed, which 'is not subject to reasonable dispute.' " (quoting *S.B. by & through*

4    *Kristina B. v. Cal. Dept. of Educ.*, 327 F. Supp. 3d 1218, 1229 n.1 (E.D. Cal. 2018)). Thus, while

5    this Court may take judicial notice of the fact of the FINRA panel decisions, the fact of the

6    disciplinary actions, and the fact of the filings in other litigation, the Court may not consider the

7    veracity of the information in those documents, and it may not take judicial notice of the

8    inferences that Objectors argue are appropriate to draw from those documents.

9          *Second*, Objectors improperly use the Humenik declaration to detail—across nearly 25

10    pages—their version of the procedural history of this case, disregarding briefing page limits and

11    droning on about matters that are not relevant to the instant Motion. Humenik Decl. ¶¶ 14-19, 44-

12    140. Moreover, the Humenik declaration devotes *over seven pages* to discussing the FINRA

13    arbitration between Morgan Stanley and Harvey, FINRA panel awards issued in other matters,

14    Humenik's unsupported assessment of Harvey's risk of professional discipline, and disciplinary

15    actions taken against other registered representatives. Humenik Decl. ¶¶ 20-43. But Objector's

16    brief mentions these seven pages of "factual assertions" in a single paragraph, and even therein

17    only cites to six of the 23 paragraphs. Mot. at 3:7-18. The Court should disregard all factual

18    material contained in the declaration but omitted from the brief, and consider the "arguments set

19    forth in the memorandum of points and authorities **only**" and otherwise only "look [to] the

20    declaration as cited in the memorandum to adequately support the facts therein."). *Special*

21    *Devices, Inc. v. OEA, Inc.*, 131 F. Supp. 2d 1171 (C.D. Cal. 2001) (emphasis added); *see also,*

22    *e.g.*, *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 956 n.19 (N.D. Cal. 2017) **(Orrick,**

23    **J.)** ("[t]he parties cannot avoid the page limitations for briefs by relying on declarations" and

24    limiting analysis to those materials specifically identified in the brief); *Yith v. Nielsen*, 343 F.

25    Supp. 3d 938, 951 n.19 (E.D. Cal. 2018) (reprimanding counsel for "circumventing the Court's

26    rule on page limitations by filing lengthy declarations of counsel wherein he adds additional

27    factual information and elaborates on legal arguments" and noting the court will sanction any

28    further such conduct).

1    Finally, Humenik's declaration is chock-full of conjecture, speculation, and declaratory

2 statements lacking any foundation. *See* Fed. R. Evid. 602 (witness must possess personal

3 knowledge). For example, Humenik repeatedly refers to the extinguished MOU as containing a

4 "side deal" that influenced the ultimate settlement amount while simultaneously acknowledging

5 that neither he nor the Objectors or their other legal counsel were present at the mediation where

6 an agreement in principle was reached, participated in the negotiations, or otherwise have any

7 knowledge about the walkaway or the FINRA action between Harvey and Morgan Stanley

8 outside of the language in the extinguished MOU. Humenik Decl. ¶¶ 23, 34 (speculating as to

9 Harvey's potential exposure and discipline based on Morgan Stanley's claims asserted in the

10 FINRA proceeding); ¶ 24 (speculating how Harvey and other FINRA claimants compensate their

11 attorneys); ¶¶ 44, 84 (speculating as to Harvey's potential liability and exposure and discipline as

12 a result of the FINRA proceedings parties' agreement to mediate this case); ¶¶ 47-49 (speculating

13 as to when parties agreed to the now defunct walkaway provision); ¶¶ 51-53, 57, 62-68, 71, 75-

14 78, 86-93 (speculating as to whether Harvey filed a copy of the December MOU with the LWDA,

15 disclosed the walkaway, or was even required by law to disclose the walkaway). Because these

16 assertions are without any factual basis and otherwise lack any foundation, they are inadmissible

17 and the Court should disregard and/or strike these statements.

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

1    **IV.    <u>CONCLUSION</u>**

2            For the foregoing reasons, Morgan Stanley respectfully requests that the Court deny the

3    Objectors' Motion for Denial and Disgorgement of Attorneys' Fees from Class Counsel and

4    Motion to Vacate Orders Awarding Attorneys' Fees to Class Counsel.

5    Dated: November 13, 2024                    LYNNE C. HERMLE
                                                 ANDREW R. LIVINGSTON
6                                                KATIE E. BRISCOE
                                                 Orrick, Herrington & Sutcliffe LLP
7

8                                                By: _____ /s/ *Andrew R. Livingston* _____
9                                                        Andrew R. Livingston
                                                         Attorneys for Defendant
10                                               Morgan Stanley Smith Barney LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28