Laura Sullivan (Cal. Bar No. 220529)
LAW OFFICE OF LAURA SULLIVAN
423 South Estate Drive
Orange, CA 92869
Telephone: (949)293-9932
Email: laurasullivan@laurasullivanlaw.com

Mark Humenik (Cal. Bar No. 231917)
POLK KABAT, LLP
423 South Estate Drive
Orange, CA 92869
Telephone: (949) 636-5754
Email: mhumenik@polkkabat.com

*Attorneys for Matthew Lucadano and Tracy Chen*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BRANDON HARVEY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MORGAN STANLEY SMITH BARNEY LLC,<br><br>Defendant. | Case No. 3:18-cv-02835-WHO<br><br>**MATTHEW LUCADANO AND TRACY CHEN'S REPLY TO DEFENDANT MORGAN STANLEY'S OPPOSITION TO MOTION FOR DENIAL AND DISGORGEMENT OF FEES FROM CLASS COUNSEL**<br><br>Judge: Hon. William H. Orrick<br>Date: December 4, 2024<br>Time: 2:00 p.m.<br>Room: Courtroom 2, 17th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. THE CLOSER TO WHOLE TRUTH .....................................................................2

III. THE MEDIATION PRIVILEGE DOES NOT APPLY ..........................................2

IV. *CHEN* STATUS......................................................................................................2

V. CLASS COUNSEL'S UNDISCLOSED CONFLICT AROSE FROM DUAL REPRESENTATION IN SEPARATE CASES .......................................................3

VI. MORGAN STANLEY *CHOSE* NOT TO RESOLVE HARVEY'S CONFLICT, WHICH GAVE IT SETTLEMENT LEVERAGE ...................................................4

VII. THE PARTIES MISUSED THE FINRA ACTION TO INDUCE HARVEY'S SALE OF CHEN'S CLAIMS, AND TO CLOSE THE "GLOBAL" SETTLEMENT .....................6

VIII. THE COVER-UP WAS NO CURE .......................................................................6

IX. THE PARTIES' CONCEALMENT DOES NOT PRECLUDE THE COURT FROM EVALUATING THE EFFECT OF HARVEY'S CONFLICT OF INTEREST ...............8

X. THE PARTIES' "NO HARM, NO FOUL" ARGUMENT IS INSUPPORTABLE ......10

XI. THE CLASS IS ENTITLED TO RELIEF .............................................................10

    A. The Parties' Silence Concedes the Court May Order Disgorgement Without Vacating Prior Orders............................................................................10

    B. Objectors' Procedural Stipulation Does Not Bar Class Relief ............................11

    C. Objectors Meet the Standards Under Rule 60......................................................12

XII. OBJECTIONS TO THE HUMENIK DECLARATION LACK MERIT .......................14

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Robertson*, 882 F.2d 421 (9th Cir. 1989) .................................................................. 13

*Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2015 WL 3863249 (N.D.Cal. June 19, 2015) ........................................................................................................... 2

*Bradshaw v. City of Los Angeles*, CV 19-6661-GW-MARx, 2024 WL 1601196 (C.D. Cal. Mar. 1, 2024) ................................................................................................................ 10

*Brooks v. Yates*, 818 F.3d 532 (9th Cir. 2016) ............................................................................. 9

*Bynoe v. Baca*, 966 F.3d 972 (9th Cir. 2020) ............................................................................. 13

*Del Campo v. Mealing,* No. C 01-21151 JW, 2011 WL 6176223 (N.D.Cal. Dec. 7, 2011) ................................................................................................................................... 4

*Doe v. Busby*, 661 F.3d 1001 (9th Cir. 2011) .............................................................................. 9

*Durkin v. Shea & Gould*, 92 F.3d 1510, 1517 (9th Cir. 1996) ................................................... 10

*Fair v. Bakhtiari*, 195 Cal.App.4th 1135 (2011) ....................................................................... 10

*France v. Bernstein*, 43 F.4th 367 (3d Cir. 2022) ....................................................................... 8

*FTC v. Elite IT Partners, Inc.*, 91 F.4th 1042 (10th Cir. 2024) ................................................. 11

*Grady v. RCM Techs., Inc.*, 671 F.Supp.3d 1065 (C.D.Cal. 2023) .............................................. 5

*Harris v. TAP Worldwide, LLC,* 248 Cal.App.4th 373 (2016) ..................................................... 9

*In re Intermagnetics America, Inc.*, 926 F.2d 912 (9th Cir. 1991) ............................................ 14

*In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712 (3d Cir. 2023) ........................................... passim

*Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383 (C.D. Cal. 2016) ................................. 13

*Janik v. Rudy, Exelrod & Zieff,* 119 Cal.App.4th 930 (2004) .................................................... 10

*LaCour v. Marshalls of California, LLC,* 94 Cal.App.5th 1172 (2023) ...................................... 3

*Levander v. Prober (In re Levander),* 180 F.3d 1114 (9th Cir. 1999) ........................... 10, 11, 13

*Marroquin v. City of Los Angeles*, 112 F.4th 1204 (9th Cir. 2024) ........................................... 13

*Martinez v. Shinn*, 33 F.4th 1254 (9th Cir. 2022) ..................................................................... 13

*Moniz v. Adecco USA Inc.*, 72 Cal.App.5th 56 (2021) ................................................................ 3

*Morrison v. Zangpo*, 2008 WL 4449585 (N.D. Cal. Sept. 30, 2008) ........................................ 12

*Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995) ........................... 11, 13, 14

*Radcliffe v. Experian Information Solutions, Inc.*, 715 F.3d 1157 (9th Cir. 2013)..........4

*Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197 (N.D. Cal. 2013).......................11

*Rodriguez v. Barnett*, 52 Cal.2d 154 (1959) ...................................................................9

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012).......................................................10

*Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035 (9th Cir. 2019).........................6

*Seymour v. Summa Vista Cinema,* 809 F.2d 1385 (9th Cir.1987)..................................11

*Sharp v. Next Entertainment, Inc.*, 163 Cal.App.4th 410 (2008).....................................7

*Sierra Sch. Equip. Co. v. Lafayette In. Co.,* No. 1:23-cv-01496-JLT-CDB 2024 WL 85596 (E.D.Cal. Jan. 8, 2024) .........................................................11

*Tatum v. Schwartz*, No. Civ. S-06-01440 DFL EFB, 2007 WL 419463 (E.D. Cal. Feb. 2007) .........................................................................................11

*Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050 (1992)..............3

*Turrieta v. Lyft, Inc.*, 16 Cal.5th 664 (2024)....................................................................3

*Walker v. Apple, Inc.*, 4 Cal.App.5th 1098 (2016) ................................................ passim

*White v. Experian Information Solutions*, 993 F.Supp.2d 1154 (C.D.Cal. 2014)............7

**Statutes**

Cal. Bus. & Prof. Code § 6068........................................................................................13

Cal. Civ. Code § 1573.....................................................................................................12

Cal. Civil Code § 1710(3)...............................................................................................12

Cal. Lab. Code § 2699 ....................................................................................................13

**Rules**

Cal. R. Prof. Cond. 1.7....................................................................................................13

Cal. R. Prof. Cond. 3.3....................................................................................................13

Fed. R. Civ. P. 23(e)........................................................................................................13

Fed. R. Civ. P. 23(e)(3).....................................................................................................9

Fed. R. Civ. P. 60(b).......................................................................................................13

Fed. R. Civ. P. 60(b)(2) ..................................................................................................13

Fed. R. Civ. P. 60(b)(3) ..................................................................................................13

Fed. R. Civ. P. 60(b)(6) ..................................................................................................13

Fed. R. Civ. P. 60(c)(1) ........................................................................................................... 13

Fed. R. Civ. P. 60(d)(3) ........................................................................................................... 13

N.D. Cal. Civil L.R. 7-5(a) ...................................................................................................... 14

v

REPLY TO MORGAN STANLEY'S OPPOSITION TO MOTION FOR DENIAL AND DISGORGEMENT OF ATTORNEYS' FEES AND TO VACATE ORDERS - CASE NO. 18-cv-02835-WHO

## I. INTRODUCTION

Settling defendants typically care about their bottom line. Here, Morgan Stanley opposes relief that would benefit the class (its own employees) at no cost to it. Morgan Stanley's protest of unlocking Pandora's box to release judicial chaos at *this phase* is unfounded. But it is a good metaphor for the problems the parties created when they used their collateral case to leverage a settlement in this representative action. Objectors, however, do not ask to disturb the settlement. Morgan Stanley has no stake in the outcome of this Motion.

Insofar as the opposition tries to excuse Morgan Stanley's lack of candor, it fails:

1. Morgan Stanley assumes, incorrectly, that the parties inadvertently manufactured Harvey's conflict of interest when they drafted the FINRA walk-away term. This overlooks the conflict that was inherent in class counsel's concurrent representation of Harvey in the FINRA Action *from day one*. Class counsel was required to, but didn't, inform Harvey, the Court, Lucadano, the State, and the class about their conflicted representation.

2. Class counsel's conflict is not a technicality unique to class actions, and thus tolerated by the Court for the benefit of the class. It is an ordinary conflict arising from dual representation in different cases which threatens counsel's loyalty, and was concealed from the Court.

3. Contrary to Morgan Stanley's efforts to downplay the role played by the FINRA Action, it used its leverage from that case to bring Harvey to the settlement table, including Harvey's FINRA counsel at each mediation. Morgan Stanley then used the promise of a FINRA dismissal to induce Harvey to settle Chen's PAGA claim.

4. The parties did not "quickly extinguish" their FINRA bargain after Objectors asked them about it. They instead converted the walk-away to a standstill agreement and concealed both agreements from Objectors, the class, the State, and the Court.

5. The conflict continues to this day. Harvey's exposure in the FINRA Action persists, because Morgan Stanley continues to hold it over his head until this case resolves. Harvey and his attorneys still have the same, competing incentive they always had "to push less hard for the interests of [the class and State], even if they fail to realize that they are doing so." *In re Wawa, Inc. Data Sec. Litig.*, 85 F.4th 712, 726 (3d Cir. 2023).

6. In a years-long, coordinated effort with class counsel, Morgan Stanley deliberately frustrated the Court's gatekeeping role on behalf of the class and State, withholding its misuse of the FINRA Action to leverage Harvey's and Chen's representative claims.

## II. THE CLOSER TO WHOLE TRUTH

Objectors' Reply to Harvey's Opposition, Section II, discusses the parties' new disclosures. Objectors incorporate that section by reference to avoid redundancy. However, an important half-truth warrants highlighting: While the parties insist that the FINRA walk-away deal was not explicitly traded for Harvey's class claims, their explanations are conspicuously silent about Chen's PAGA claims -- which *were* explicitly traded in exchange for the FINRA dismissal. The MOU obligated class counsel to "approach Plaintiffs' counsel in the Chen case… to attempt to get the Plaintiffs in that case… to resolve the Chen case for the sum of $500,000." [Humenik Dec., Ex. 1, ¶ 12(a)] If that failed, Harvey agreed to settle Chen's claims himself for $500,000. [*Id.*, ¶ 12(c)] In exchange, he received the FINRA walk-away in his service incentive payment. [*Id.*, ¶ 8]

## III. THE MEDIATION PRIVILEGE DOES NOT APPLY

Both parties attempt to preserve their claimed mediation privilege while selectively disclosing partial information. [Morgan Stanley Opp., p. 1., n. 1; Harvey Opp., p. 4, n. 2; p. 12, n. 4] The parties cannot have it both ways. The privilege is waived. *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2015 WL 3863249, at *12-13 (N.D.Cal. June 19, 2015) (rejecting request to use contents of mediation privileged documents "as both a sword and a shield. A party in civil litigation cannot put the contents of a document at issue and ask the Court to consider the contents of that document in deciding an issue on the merits while at the same time shielding its adversary from also considering the contents of that document. Litigating a case in that fashion is inconsistent with both the adversary system and due process." (summarizing cases)).

Objectors do not consent to the parties' production of their mediator's email in camera. Objectors are entitled to review any document that the Court considers in connection with this Motion, and any other previously withheld, relevant information.

## IV. *CHEN* STATUS

      Morgan Stanley raises the issue of whether Harvey's settlement will bind the plaintiffs in the *Chen* case. This is a decision for the *Chen* court and is not relevant to this Motion. *LaCour v. Marshalls of California, LLC,* 94 Cal.App.5th 1172, 1190-91 (2023) (federal court's approval of PAGA settlement as fair and reasonable did not preclude state court's finding that settling plaintiff did not adequately represent the State; rejecting res judicata defense); *Moniz v. Adecco USA Inc.*, 72 Cal.App.5th 56, 84 (2021) (the preclusive effect of a prior judgment based on a PAGA settlement is determined by the court in which it is asserted, not the court that rendered it), disapproved in part on other grounds, *Turrieta v. Lyft, Inc.*, 16 Cal.5th 664 (2024).

      If the Court considers *Chen*'s posture, the parties' discussion of it is misleading. First, ever since the *Harvey* parties entered their settlement, the *Chen* plaintiffs maintained that the settlement would not preclude their claims. They have not changed their position. [Livingston Dec., ¶ 15] Second, while the *Chen* plaintiffs entered a procedural stipulation in this case to facilitate a prompt ruling on the parties' attorneys' fee motions without the necessity of refiling briefs the Court already considered [Dkt. No. 158], there was no settlement concerning the fee motions. Nor did the stipulation address Objectors' state court claims. Third, the *Chen* court did not suggest that the plaintiffs try to "attack… the validity of the settlement…. before this Court," or that they "needed" to do anything in this case. [Opp., pp. 1, 7] The issue at the IDC was whether *Chen* plaintiffs are entitled to discovery regarding the *Harvey* parties' FINRA agreements. Judge Claster remarked that plaintiffs' allegations of secret side deals raised a potential fraud on this Court, and suggested they bring them to the Court's attention. He did not "determine" any issue at an *informal* discover conference. [Humenik Dec., ¶ 148, Ex. 33]

## V. CLASS COUNSEL'S UNDISCLOSED CONFLICT AROSE FROM DUAL REPRESENTATION IN SEPARATE CASES

      Unlike a technical, intra-class dispute, the conflict here involves "different cases and *does* seriously threaten the policy concerns underlying the duty of loyalty." *Walker v. Apple, Inc.*, 4 Cal.App.5th 1098, 1115 (2016). Class counsel owe a duty of undivided loyalty to each of the parties they represent -- Harvey in his FINRA Action, the unnamed class members, and the State. *Truck Ins. Exchange v. Fireman's Fund Ins. Co.*, 6 Cal. App. 4th 1050, 1056 (1992). The parties'

1  FINRA side-dealing thus did not create a conflict of interest among Harvey and the represented

2  parties, but rather actualized their inherent conflict. It opened Pandora's box.

3        Morgan Stanley was aware that Lucadano did not consent to class counsel's conflicted

4  representation, and there is no indication that class counsel obtained knowing conflict waivers

5  from Harvey or anyone else. *Walker*, 4 Cal.App.5th at 1107-1110 (class counsel represented

6  unnamed class member because her identity was known and she was a member of certified class).

7  Nor did counsel "report[ ] potential conflict issues to the district court." *Radcliffe v. Experian*

8  *Information Solutions, Inc.*, 715 F.3d 1157, 1167 (9th Cir. 2013).

9  **VI.   MORGAN STANLEY *CHOSE* NOT TO RESOLVE HARVEY'S CONFLICT,**

10  **     WHICH GAVE IT SETTLEMENT LEVERAGE**

11        The parties suggest Objectors are zealots or purists who don't appreciate the technical

12  conflicts that can arise in class actions. However, Harvey's conflict is not a technicality that may

13  be tolerated because it assists the class. (The parties did not give the Court the chance to evaluate

14  whether and how it could be tolerated.) It was not complex, sneaky, unexpected, or rapidly

15  developing. Harvey's conflict is not unique to class actions, but is an ordinary conflict arising

16  from class counsel's concurrent representation in two cases. As the court observed in *Walker,*

17  there is no basis to relax the ethical rules concerning concurrent representation in different cases,

18  even if one happens to be a class action. *Walker*, *supra* at 1115 (balancing test that arguably

19  applies in class actions "has no application" where the conflict "is the type that can arise in

20  individual litigant suits—it just happens to have arisen in a class action")(automatic

21  disqualification rule applied to concurrent representation); *Del Campo v. Mealing,* No. C 01-

22  21151 JW, 2011 WL 6176223, at *2-3 (N.D.Cal. Dec. 7, 2011) (automatic disqualification rule

23  applied to counsel representing two separate groups of plaintiffs in parallel class actions).

24        Moreover, Objectors do not argue that Harvey's conflict was "insurmountable." [Opp., p.

25  2] Had the conflict arising from class counsel's concurrent representation been disclosed when it

26  should have been, the Court could have taken steps to contain it, e.g., by conditioning Harvey's

27  representation of the class on the parties' agreement to unconditionally dismiss the FINRA

28  Action, or else arbitrate or settle the FINRA claims before settling the representative claims (or

4
REPLY TO MORGAN STANLEY'S OPPOSITION TO MOTION FOR DENIAL AND DISGORGEMENT OF
ATTORNEYS' FEES AND TO VACATE ORDERS - CASE NO. 18-cv-02835-WHO

vice versa).[1] Morgan Stanley *chose* not to surmount the conflict because it gave Morgan Stanley leverage. There is no denying that the sword of the FINRA Action hanging over Harvey's head rationally created an incentive for Harvey and his attorneys "to push less hard for the interests of [the class], even if they fail[ed] to realize that they [were] doing so." *In re Wawa,* 85 F.4th at 712.

Morgan Stanley fallaciously argues that the walk-away term was trivial compared to the $10.235 million it paid to settle the case. Here, again, Morgan Stanley omits that it traded the FINRA walk-away for Harvey's release of Chen's PAGA claim for **$500,000**, from which Harvey received **$8.98**. [Dkt. No. 126, p.4]. The value of the FINRA dismissal *to Harvey* is the gauge of the conflict. Harvey was a small producer facing the prospect of a former employer with enormous resources seeking injunctive relief against him and his employer, compensatory and punitive damages, and attorneys' fees (his own and Morgan Stanley's). [Compton Dec., ¶ 5; Harvey Dec., ¶ 5; Humenik Dec. Ex. 3, pp. 9-10] Neither Morgan Stanley nor Harvey addresses the undeniable threat of the FINRA Action on Harvey's employment.[2] In stark contrast to the declarations of Mr. Clapp and Mr. Wynne, Harvey does not say that *he* didn't value getting out from under the FINRA Action. The promise of a FINRA dismissal was worth more *to Harvey* than $8.98 (or his total recovery of $2,100 on his representative claims). No one credibly claims otherwise. Morgan Stanley could, and did, use the promise of a walk-away as leverage.[3]

If the walk-away deal really meant "nothing" to Morgan Stanley, it could have eliminated the risk of bargaining with a conflicted class representative by agreeing to the walk-away, no

---

[1] Or, if the parties would not or could not eliminate the threat to Harvey's and class counsel's loyalty, the Court could have appointed Lucadano class representative and Morgan Stanley could have negotiated a settlement with him.

[2] In *Walker, supra*, the court disqualified counsel from representing the class because counsel might have to cross-examine the defendant-employer's store manager, who was also a class member represented by counsel in a separate action. Finding a tangible conflict of interest, the Court ruled that the class member-manager was entitled to counsel who would loyally protect her employment prospects, unencumbered by the litigation strategy they owed the class in the other action. "While the parties focus on the degree to which their interests in the outcomes of the litigation conflict, the conflict is much more practical and fundamental: [class counsel] may jeopardize [class member's] employment prospects." 4 Cal.App.5th at 1111.

[3] Considering defense costs alone, the value of a FINRA dismissal far exceeds the incentive payments that compromised other class representatives, especially those who settled early. *Grady v. RCM Techs., Inc.*, 671 F.Supp.3d 1065, 1079 (C.D.Cal. 2023) (summarizing cases).

strings attached, and gone on to settle the representative claims. It did not, even after the parties were caught bargaining with the FINRA Action, which added "another level of complexity to what was already going to be a difficult settlement approval process." [Clapp Dec., ¶ 8] Morgan Stanley was not willing to neutralize the leverage that the FINRA Action created over Harvey, because it incentivized him to close the deal. The value of the promised walk-away is obvious.

## VII. THE PARTIES MISUSED THE FINRA ACTION TO INDUCE HARVEY'S SALE OF CHEN'S CLAIMS, AND TO CLOSE THE "GLOBAL" SETTLEMENT

The parties say they negotiated the price of the class claims (but not Chen's PAGA claim) before they discussed dismissing the FINRA claim explicitly. Assuming this is so, it does not mean the walk-away deal did not serve a purpose in negotiating the price of the class claims.

First, everyone knew the FINRA claim was pending, FINRA counsel attended each mediation, and the parties understood that a resolution of the class claims would include a term for global resolution of all claims among the parties. No one needed to reference the FINRA dismissal explicitly. As noted in *WaWa*, "the fact that the agreement came after the parties had settled class compensation [does not] end the inquiry." 85 F.4th at 726. Harvey and his attorneys expected that a mutual release was around the corner, which necessarily would extract Harvey from his FINRA trouble and pave the way for his attorneys' fee award. "[T]hat knowledge simply might cause them to push less hard for the interests of [the class], even if they fail to realize that they are doing so." *Id.* Hence the "grave problems" raised by separate peace deals in class actions. *Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1056 (9th Cir. 2019).

Second, even if the price of Harvey' class claims was negotiated before the FINRA walk-away was spelled out in the MOU, there was *no deal until the MOU was signed*. The promise of global peace, for Harvey, meant dismissal of the FINRA Action. This is what brought him to the table *and* sealed the deal. Global peace, for Morgan Stanley, meant dismissal of Chen's claims. And this is exactly what it extracted from Harvey in exchange for the FINRA dismissal.

## VIII. THE COVER-UP WAS NO CURE

Harvey, Lucadano, and the absent parties were *each* entitled to class counsel's undivided loyalty. After bargaining for the FINRA walk-away as a term of the class/PAGA settlement

without informed consent, class counsel's ethical conflict became intractable. Counsel could not neutralize their prior preference of Harvey's interests over the class by now preferring the class over Harvey. *Sharp v. Next Entertainment, Inc.*, 163 Cal.App.4th 410, 428 (2008) ("Attorneys who concurrently represent more than one client should not have to choose which client's interest are paramount or make a choice between conflicting duties."). If the parties removed the FINRA walk-away (as they claim to have done), it resurrected Harvey's exposure in the FINRA Action. This prejudiced Harvey. Even if his attorneys tried to get Harvey's informed consent – and none say they tried – "it would be unseemly for [Harvey's] own counsel to force this Hobson's choice on [him] for the potential benefit of other clients. Doing so would violate [counsel's] duty of loyalty to [Harvey]." *Walker*, 4 Cal.App.5th at 1112. Morgan Stanley denies that the parties' intentions were "nefarious," but this is beside the point. "The rule is designed not alone to prevent the dishonest practitioner from fraudulent conduct, but as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to attempt to reconcile conflicting interests." *White v. Experian Information Solutions*, 993 F.Supp.2d 1154, 1163 (C.D.Cal. 2014) (citation omitted).

Moreover, the parties did not really favor the class or the State when/if they dumped the walk-away deal. The taint remained, although the source of it was concealed from the Court's scrutiny. Cf. *Wawa*, 85 F.4th at 726-727 (noting that the improper effect of a fee reversion clause persisted after the settling parties removed it from their agreement). After removing the FINRA dismissal from Harvey's incentive payment, the parties did not neutralize Harvey's, or class counsel's, ongoing conflict, e.g. by arranging an unconditional mutual FINRA dismissal, unconnected to the class settlement, or resolving the FINRA Action before returning to mediation (as Chen did). They did not renegotiate the settlement. The represented parties received nothing in exchange for withdrawing the walk-away deal. The parties' "cure" served only Morgan Stanley and class counsel, who pushed the settlement through and successfully requested attorneys' fees, including a hefty multiplier for "the significant results achieved for the Class." [Dkt. No. 84, p. 17] The presence of the FINRA dismissal as a class action incentive payment, "even [if] temporary, suggests coordinated rather than zealous advocacy" for the absent parties. *Id.*

1  Morgan Stanley also fails to confront the parties' agreement to stay prosecution of the
2  FINRA Action until this action resolves. At a minimum, the settlement bought Harvey six plus
3  years of peace. [Compton Dec., ¶¶ 8-9; Momjian Dec., ¶ 3] The standstill agreement might make
4  perfect sense for the parties, as they argue. Nevertheless, it creates an incentive for Harvey and
5  his attorneys "to push less hard for the interests of [the class], even if they fail to realize that they
6  are doing so." *Wawa*, 85 F.4th at 726. The standstill agreement may appear less troubling on its
7  face than the promise of an outright dismissal, but its effect for the class and State is similar.
8  Harvey remains a compromised representative. Morgan Stanley exploited that vulnerability.

## IX. THE PARTIES' CONCEALMENT DOES NOT PRECLUDE THE COURT FROM EVALUATING THE EFFECT OF HARVEY'S CONFLICT OF INTEREST

Morgan Stanley repeatedly argues that the Court already considered Harvey's adequacy, including whether side deals existed, precluding their "re-packaging" here – regardless that the new package includes previously withheld evidence. It is true that Objectors suspected the parties misused the FINRA Action to leverage the class/PAGA settlement (although they didn't know class counsel is also FINRA counsel, amplifying the pull on counsel's divided loyalties). It is also true that Objectors demanded, unsuccessfully, that the parties disclose their full information. The Court, however, took the parties at their word. Contrary to Morgan Stanley's arguments, the Court's reliance on the parties' duty of candor is not Objectors' fault.

Before the side deals came to light, Objectors "had no discovery rights," according to the parties. [Harvey Opp., p. 16] More important, Lucadano, the class, and the State were entitled to rely on class counsel's representations (now shown to be false) that there has "never been" any side agreement involving Harvey's FINRA action and that the MOU contained no such term. Morgan Stanley calls it "poor decision-making" to rely on opposing counsel's statements and omissions, but "[r]easonable diligence does not require parties to assume the other side is lying." *France v. Bernstein*, 43 F.4th 367, 379 (3d Cir. 2022). A "reasonably diligent litigant" may rely on opposing counsel's representations "without launching a separate fact-checking investigation." *Id.* The deceived party should not "be penalized for accepting his opponent's [mis]representations," which would pile[ ] one unfairness on another. *Id.* at 380-381. *See also Brooks v. Yates*, 818 F.3d

532, 535 (9th Cir. 2016) (reasonable diligence "does not require an overzealous or extreme pursuit of any and every avenue of relief," but instead "requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances.") (quoting *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011)).

Morgan Stanley, like Harvey, fails to confront its lack of candor. Even while conceding they agreed to stay prosecution of the FINRA Action pending the resolution of this case, the parties continue to insist no deal exists. [Harvey Opp., p. 6:10-11 ("there was and is no side agreement regarding the FINRA arbitration."); Morgan Stanley Opp., p. 11:3-4 ("no other agreement was entered into regarding the FINRA arbitration as part of the settlement of this action."). The walk-away deal was "live" when the parties opposed intervention. The side-agreement was in force during every milestone that followed. The parties coordinated to mislead this Court and the Ninth Circuit to conclude otherwise.

Like Harvey, Morgan Stanley justifies misleading the Court with inapplicable contractual defenses. Rule 23(e)(3) mandates disclosure of "any agreement," not just enforceable ones. And the parties did not couch their denials to alert the Court there could be undisclosed, "unenforceable" side agreements. The Court's job was not to enforce the parties' side deals, but to assess whether they might have affected the interests of the absent parties by altering what they may be receiving or giving up. Regardless of whether the FINRA walk-away was removed, superseded, or modified to a standstill agreement, it was critical to the Court's analysis. *In re Wawa*, 85 F.4th at 726-727.

Of course, the MOU *is* enforceable pursuant to its terms, despite the parties' right to withdraw for a one-week period. [Humenik Dec., Ex. 1, ¶ 15] *Harris v. TAP Worldwide, LLC,* 248 Cal.App.4th 373, 388 (2016) (a contract that allows one party to unilaterally terminate the agreement is not illusory if the termination power has limitations). Here, the parties' *reciprocal* right to withdraw could be exercised only pursuant to certain conditions; the MOU also contained unconditional terms [Ex. 1, ¶ 12(d)]; and the parties did not exercise their right to withdraw, at which point they were bound unconditionally. *Rodriguez v. Barnett*, 52 Cal.2d 154, 160-161 (1959).

## X.  THE PARTIES' "NO HARM, NO FOUL" ARGUMENT IS INSUPPORTABLE

That the Court found the settlement is fair and reasonable (before Harvey's undisclosed side deals surfaced) is no silver bullet. Courts have rejected similar "no harm, no foul" arguments like those raised here, because "[t]he adequacy of *relief*… is not necessarily the same as adequacy of *representation*." *Bradshaw v. City of Los Angeles*, CV 19-6661-GW-MARx, 2024 WL 1601196, at *6 (C.D. Cal. Mar. 1, 2024) (emphasis in original) (ruling that a claim for violation of the due process rights of the plaintiff and the class was not precluded by the court's approval of the settlement, which was made "before the evidence of collusion came to light") (citing *Durkin v. Shea & Gould*, 92 F.3d 1510, 1517 (9th Cir. 1996) ["The fact that a party received a settlement that was 'fair and equitable' does not mean necessarily that the party's attorney was competent or that the party would not have received a more favorable settlement had the party's incompetent attorney been competent."]); *Janik v. Rudy, Exelrod & Zieff,* 119 Cal.App.4th 930, 945 (2004) (court's approval of class action settlement as fair and reasonable did not preclude a finding the class was not adequately represented).

It is impossible to know how much more an unconflicted plaintiff would have achieved for the class and State. We do know Morgan Stanley was not willing to take the risk of bargaining with an unconflicted representative, undercutting its "no harm, no foul" argument. Aside from the dollars and programmatic relief that potentially was lost, the class and State were deprived of their counsel's undivided loyalty, undermining "public trust in the scrupulous administration of justice and the integrity of the bar." *Walker*, at 2201. Conflicted representation is itself damaging. *Fair v. Bakhtiari*, 195 Cal.App.4th 1135, 1153-1154 (2011) (forfeiture of legal fees does not require proof of damages because the harm is "the decreased value of the representation itself."); *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (a lawyer's misconduct "affects the value of the lawyer's services."); *In re Levander,* 180 F.3d 1114, 1120 (9th Cir. 1999).

## XI.  THE CLASS IS ENTITLED TO RELIEF

### A.  The Parties' Silence Concedes the Court May Order Disgorgement Without Vacating Prior Orders

The parties do not address Objectors' authority, which establishes the Court does not need

10

REPLY TO MORGAN STANLEY'S OPPOSITION TO MOTION FOR DENIAL AND DISGORGEMENT OF ATTORNEYS' FEES AND TO VACATE ORDERS - CASE NO. 18-cv-02835-WHO

to vacate its prior orders to re-evaluate class counsel's entitlement to fees. [motion, pp. 9-10; *see also, In re Levander,* 180 F.3d at 1119] Their failure to address Objectors' argument concedes it. *Sierra Sch. Equip. Co. v. Lafayette In. Co.,* No. 1:23-cv-01496-JLT-CDB 2024 WL 85596, at *3 (E.D.Cal. Jan. 8, 2024) (non-moving party's silence concedes [movants'] arguments by failing to address them"); *Tatum v. Schwartz*, No. Civ. S-06-01440 DFL EFB, 2007 WL 419463, at *3 (E.D. Cal. Feb. 2007) ("[Plaintiff] tacitly concedes this claim by failing to address defendants' argument in her opposition"); *Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1210 (N.D. Cal. 2013) (argument conceded where party failed to address it in opposition).

### B. Objectors' Procedural Stipulation Does Not Bar Class Relief

Objectors' stipulation [Dkt. No. 158] does not shield class counsel's fees from the Court's informed re-evaluation. It is procedural, designed to facilitate the Court's prompt ruling on the parties' fee motions without the necessity of refiling briefs the Court already considered. There was no settlement concerning the fee motions. The stipulation thus did not waive the right of any party to challenge final judgment or any collateral order regarding fees, whether by appeal, motion to vacate, or invoking the Court's equitable authority for benefit of the absent class members. *Cf. FTC v. Elite IT Partners, Inc.*, 91 F.4th 1042, 1045 and fn. 2 (10th Cir. 2024). Nor did the stipulation limit Objectors' or the class members' rights to seek disgorgement of fees allocated in the *vacated* 2020 Final Approval Order. It provides only that Objectors would not oppose the 2023 motion for supplemental fees. Objectors complied with the stipulation.

Even if the stipulation purported to settle all issues concerning class counsel's fees, it would not prevent the Court from fulfilling its own duty on behalf of the absent parties. First, the parties' violation of the duty of candor violated judicial integrity, which the Court has the independent power to correct. *See, Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1133 (9th Cir. 1995) ("even assuming that [party] was not diligent in uncovering the fraud, the district court was still empowered to [order post-judgment relief under Rule 60], as the court itself was a victim of the fraud"). Second, Objectors are entitled to relief from the stipulation if necessary. *Seymour v. Summa Vista Cinema,* 809 F.2d 1385, 1388 (9th Cir.1987) (trial court has wide discretion to grant relief from stipulation). Intervening events, including the revelation of the

1   MOU's formerly concealed, *complete* terms, warrant relief.

2   As Harvey acknowledges, the stipulation may be withdrawn or invalidated on contractual
3   grounds or to prevent manifest injustice. Both prongs are readily established. Concealment,
4   especially when arising from a fiduciary relationship, invalidates a contract. *See, e.g.,* Cal. Civ.
5   Code §§ 1573(1) (constructive fraud), and 1710(3) ("deceit" includes the suppression of a fact by
6   one who is bound to disclose it, or who gives information of other facts which are likely to
7   mislead). Harvey's related argument that Objectors' *counsel* would not suffer "manifest injustice"
8   if the stipulation is enforced misses the point. The absent class members will suffer if their
9   counsel retains from the common fund fees incurred while laboring under a secret, tangible
10  conflict of interest. Class counsel was duty-bound to share the MOU with Lucadano (their client)
11  but instead hid it from him, indicating disloyalty *and* manifest injustice.

12  The parties' reliance on *Morrison v. Zangpo*, 2008 WL 4449585 (N.D. Cal. Sept. 30,
13  2008), to shift the blame to Objectors for not conditioning the stipulation on a renewed demand
14  for the MOU is badly misplaced. *Morrison* denied relief to a party who made a unilateral mistake
15  when drafting a stipulation agreeing to arbitrate. *Id.* at **3-4. The mistake here – by Movants and
16  the Court -- was believing the repeated (mis)representations from opposing counsel that there
17  was, and never had been, a side deal to disclose. The mistake was not unilateral on Movants' part,
18  it was induced by the parties. Morgan Stanley mocks the duty of candor in attributing this to
19  Objectors' "poor decision-making."

20  Morgan Stanley's claimed inconvenience is not only the fault of the parties, but also
21  overblown. Morgan Stanley will not be prejudiced. It got the discounted settlement it bargained
22  for. No "havoc" will ensue if fees are restored to the class.

23  **C.     Objectors Meet the Standards Under Rule 60**

24  This Motion is timely. Objectors learned of the concealed MOU terms in late May 2024
25  and immediately sought discovery in *Chen*. After Judge Claster suggested raising issues here,
26  Objectors promptly asked the parties to provide their information voluntarily. Their informal
27  efforts were rejected. [Humenik Dec., at ¶¶166-167, Exs. 24-27]. Objectors filed their Motion a
28  few weeks after the parties refused to answer Objectors' questions. Cf. *Bynoe v. Baca*, 966 F.3d

972, 980-982 (9th Cir. 2020) (seven-month delay in bringing Rule 60(b) motion was reasonable).

Morgan Stanley's argument that Rule 60(b) relief is unavailable because Objectors could have raised their issues on appeal misstates the law and cannot be squared with the plain language of Rule 60(c)(1). Objectors are not seeking Rule 60 relief to circumvent their deadline to appeal a judgment. They are seeking *post-judgment* relief based on intervening events that occurred after the deadline to appeal. Cf. *Inland Concrete Enters., Inc. v. Kraft*, 318 F.R.D. 383 (C.D. Cal. 2016) (Rule 60(b) relief was not warranted where "errors of law, fact, or logic committed by the [court] had occurred, *and were obvious, by the time this Court entered judgment*").

The motion specifies the bases for relief, including under (i) the Court's equitable powers, (ii) Rule 23(e), (iii) Rule 60(b), (iv) Rule 60(d)(3), (v) Cal. R. Prof. Cond. 1.7 and 3.3, (vi) Bus. & Prof. Code § 6068, and (vii) PAGA. "[A] district court should consider a Rule 60(b) motion under the subsection that most naturally applies to the motion's substance, regardless of the label used." *Marroquin v. City of Los Angeles*, 112 F.4th 1204, 1216 (9th Cir. 2024).[4]

The evidence supports Rule 60(d)(3) or Rule 60(b) relief. Incredibly, Morgan Stanley argues Objectors had "ample opportunity" to present challenges to Harvey's adequacy "even absent seeing the MOU." [Opp., p. 15]. Morgan Stanley omits mentioning how the parties castigated Objectors before the Ninth Circuit for making accusations of a FINRA side deal with "no evidence" in hand because it "never" existed. [Humenik Dec. at ¶¶ 132-133, 135-136]. Counsel cooperated in a "scheme by one party to hide a key fact from the court and the opposing party." *Pumphrey, supra,* at 1130 (participation of in-house counsel in scheme to hide evidence established fraud on the court). As in *Pumphrey*, counsel "defraud[ed] … the court, and [opposing

---

[4] Although Objectors were denied intervention-party status, Lucadano is a class member. It is thus unclear whether Rule 60 subsections (b)(2) or (b)(3) apply since the offending "party" was largely class counsel, or whether the catch-all "extraordinary circumstances" provision in Rule 60(b)(6) is more appropriate. *See, Martinez v. Shinn*, 33 F.4th 1254, 1262 (9th Cir. 2022); *Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir. 1989). In any event, Rule 60(d)(3) provides an alternative basis for vacatur and/or *amending the final judgment regarding fees* since the concealment here was committed by officers of the court and harmed the integrity of the judicial process. *See, Levander v. Prober (In re Levander),* 180 F.3d 1114, 1119 (9th Cir. 1999) (explaining that final judgment can be amended for "[f]raud upon the court," which is a "fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.").

party] through the use of inaccurate, incomplete, and misleading responses," the "presentation of fraudulent evidence, and *the failure to correct the false impression*" created by their half-truths and omissions. 62 F.3d at 1132 (emphasis added). And here, class counsel hid key facts about the MOU from the Court *and* the class members they represent to prop up their own (and Harvey's) adequacy under Rule 23 to influence the Court in rendering its fee award. *Cf. In re Lavender*, *supra,* 180 F.3d at 1117, 1120 (finding fraud on the court where party concealed asset transfer to shell entities and concealed those facts from the court at the attorneys' fee hearing).

Movants do not have to show that the final *settlement* outcome would have been different to partially vacate or amend the final judgment relating to class counsel's fee awards. First, it does not matter whether this Court would have – in hindsight – approved the settlement had it known the facts five years ago when it should have. *In re Intermagnetics America, Inc.*, 926 F.2d 912, 917 (9th Cir. 1991) (relief for fraud on the court does not "necessarily require a showing that the [movant] was prejudiced by the misconduct," but whether "the alleged misconduct 'harms' the integrity of the judicial process.") (citations omitted); *Pumphrey*, *supra*, 62 F.3d at 1132-1133. Second, the prejudice that the Motion seeks to correct is the payment of unearned attorneys' fees from the common fund. Morgan Stanley does not argue that the Court would have awarded class counsel's fees (including a multiplier) for conflicted representation.

**XII.   OBJECTIONS TO THE HUMENIK DECLARATION LACK MERIT**

The parties' request to strike the Humenik declaration lack merit. Consistent with Local Rule 7-5(a), Objectors submitted the declaration to support the mixed factual-legal assertions in their Motion about the *Harvey* parties having perpetrated a fraud on the court by repeatedly mischaracterizing the terms of their MOU and failing to correct many false impressions concerning the FINRA Action status. That showing entailed a thorough summary of the parties' voluminous filings and declarations submitted to this Court and the Ninth Circuit to assist the Court, not to evade page limits.

The parties' objections to the FINRA materials on hearsay and foundational grounds are meritless. Those materials are not offered to prove the truth of the underlying facts or matters described in those cases; they are offered as support for Humenik's opinion concerning Harvey's

exposure, and to show that class counsel (including MZC) were on notice of Harvey's significant financial and disciplinary exposure in the FINRA Action.[5] The FINRA cases also are admissible for impeachment purposes because they undercut class counsel's declaration statements that Morgan Stanley's claims in the FINRA Action "were weak" [ECF 180-5, ¶ 4], that Harvey had "nothing to fear" from the FINRA Action, and that a voluntary dismissal of the FINRA Action by Morgan Stanley has no value for Harvey. The grounds for admissibility of the FINRA cases are no different than the parties' repeated citations and requests to judicially notice comparable settlements in other class action cases to bolster their contention that the settlement was fair, reasonable and adequate, or to impeach statements or legal arguments made by counsel in comparable cases. [ECF 60]. Harvey's "best evidence" objections likewise have no application since the authenticity of the FINRA documents are not reasonably in dispute.

The parties' objections on the grounds that the declaration advances "legal arguments" or is "argumentative" (e.g., by quoting prior pleadings) also should be rejected. Humenik's short-hand description of the MOU as a "previously undisclosed side deal" is not additional legal argument, but a mixed factual-legal contention that is addressed in Objectors' brief and supported by the additional details in the declaration. Nor is it "argumentative" for the Humenik declaration to pinpoint the precise statements made by class counsel and Morgan Stanley's counsel that form the factual basis for Movants' allegations that a fraud on the Court occurred during earlier proceedings.

Dated: November 22, 2024

Respectfully submitted,

By:    /s/ Mark Humenik
Mark Humenik

*Attorneys for Matthew Lucadano and Tracy Chen*

---

[5] Given its experience, MZC knew or should have known this FINRA authority when it participated in settlement negotiations and reviewed the MOU trade-off of Harvey's representative claims for the FINRA dismissal. Exhibits 4 to 8 of the Humenik declaration were referenced in Morgan Stanley's Statement of Claim, and Exhibits 9 to 12 each involved recent FINRA decisions where Morgan Stanley was a party.